1  CHARLES L. COLEMAN, III (CA. Bar No. 65496)
   ANDREW T. CAULFIELD (CA. Bar No. 238300)
2  HOLLAND & KNIGHT LLP
   50 California Street, 28th Floor
3  San Francisco, California  94111
   Telephone: (415) 743-6900
4  Facsimile: (415) 743-6910
   charles.coleman@hklaw.com
5  andrew.caulfield@hklaw.com

6  Attorneys for Plaintiff
   DAVID KAYNE
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10            SAN JOSE DIVISION  -- E-FILING

11 DAVID KAYNE, an individual citizen  )  Case No.  C 07-4721 JF (RS)
   of Georgia,                         )
12                                     )  **NOTICE OF MOTION AND**
                  Plaintiff,           )  **MOTION FOR TEMPORARY**
13                                     )  **RESTRAINING ORDER AND**
            vs.                        )  **PRELIMINARY INJUNCTION;**
14                                     )  **BRIEF IN SUPPORT OF MOTION**
   THE THOMAS KINKADE COMPANY,         )
15 formerly known as MEDIA ARTS        )  **Hearing Date:   October 5, 2007**
   GROUP, INC., a Delaware Corporation, )  **Time:          9:00 a.m.**
16                                     )  **Courtroom:      3, 5th Floor**
17              Defendant.             )

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 ────────────────────────────────────────────────────────────────
   PLAINTIFF'S MOTION AND BRIEF IN SUPPORT           CASE NO. C 07-4721 JF (RS)
   OF T.R.O AND PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA  94111
Tel: (415) 743-6900
Fax: (415) 743-6910

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUES TO BE DECIDED ........................................3

    A.    Unconscionable "arbitration" clause........................................3

    B.    TKC's Anticipated Defenses. ................................................4

    C.    Balancing of Harm for Purposes of Injunctive Relief................................................................4

II.   STATEMENT OF RELEVANT FACTS ........................................5

    A.    Summary of Relief Requested ................................................5

    B.    Background Facts................................................6

III.  ARGUMENT AND LEGAL AUTHORITIES................................................9

    A.    The District Court Is the Proper Forum for Mr. Kayne's Challenge to the Enforceability of TKC's Unconscionable Arbitration Clause ........................9

    B.    Standard of Review ................................................11

    C.    There Is a Strong Likelihood That Mr. Kayne Will Succeed on the Merits of His Complaint ........................12

        1.    The Arbitration Provision Is Procedurally Unconscionable

            a.    The Arbitration Agreement Is a Contract of Adhesion ........................13

            b.    TKC Failed To Make Disclosures to Mr. Kayne as Required by California and Federal Franchise Law ........................14

        2.    The Arbitration Provision Is Substantively Unconscionable................................................16

    D.    Mr. Kayne Will Suffer Immediate, Irreparable Injury if a Injunctive Relief Is Denied ........................19

    E.    The Balance of Harms Tips Sharply in Mr. Kayne's Favor ........................20

        1.    TKC Will Suffer Little or No Irreparable Harm if a Preliminary Injunction Is Granted ........................20

        2.    Public Policy Favors a Preliminary Injunction ........................21

IV.   CONCLUSION................................................21

-i-

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Arcamuzi v. Continental Air Lines, Inc.,*

819 F.2d 935 (9th Cir. 2001) ...............................................................11

*Big Country Foods, Inc. v. Board of Education,*

868 F.2d 1085 (9th Cir. 1989)..............................................................12

*Caribbean Marine Serv. Co. v. Baldridge,*

844 F.2d 668 (9th Cir. 1988)................................................................19

*Davis v. O'Melveny & Myers LLC,*

485 F.3d 1066, at 1071-1072 (9th Cir. 2007) .........................................10

*Ferguson v. Countrywide Credit Indus., Inc.,*

298 F.3d 778 (9th Cir. 2002).................................................................14

*International Jensen, Inc. v. Metrosound U.S.A,*

4 F.3d 819, 822 (9th Cir. 1993).............................................................12

*Johnson v. California State Board of Accountancy,*

72 F.3d 1427 (9th Cir. 1995).................................................................12

*Midgett v. Tri-County Metro. Transp. Dist. of Oregon,*

254 F.3d 846 (9th Cir. 2001).................................................................19

*Nagrampa v. Mailcoups, Inc.,*

469 F.3d 1257 (9th Cir. 2006) ................................................ 3-5, 9-14, 18-21

*Republic of the Philippines v. Marcos,*

862 F.2d 1355 (9th Cir. 1988)...............................................................12

*Simula, Inc. v. Autoliv, Inc.,*

175 F.3d 716, 725 (9th Cir. 1999)..........................................................19

*Southwest Voter Registration Ed. Project v. Shelley,*

344 F.3d 914 (9th Cir. 2003) .................................................................11

*State of Alaska v. Native Village of Venetie,*

# TABLE OF AUTHORITIES

## (Continued)

**Page**

856 F.2d 1384 (9th Cir. 1988)......................................................................20

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.,*

240 F.3d 83 (9th Cir. 2001) .......................................................................11


**STATE CASES**

*Armendariz v. Foundation Health Psychcare Services Inc.,*

24 Cal. 4th 83 (2000) .................................................................................16

*Cruz v. Pacificare Health Systems, Inc.,*

30 Cal. 4th 303, 316 (2003) ..........................................................................7

*Gentry v. Superior Court.,*

42 Cal.4th 443 (2007) .................................................................. 12, 13, 20

*Higgins II v. Super. Ct.,*

140 Cal. App. 4th 1238 (2006) ...................................................................14

*In re First Alliance Mortgage Co.,*

280 B.R. 246, 251 (C.D. Cal. 2002) ...........................................................19

*Stirlen v. Supercuts, Inc.,*

51 Cal. App. 4th 1519, 1535 (1997) ...........................................................18


**FEDERAL STATUTES**

9 U.S.C. §2...................................................................................................9

15 U.S.C. §§ 41-58.....................................................................................15

Federal Trade Commission Act ..............................................................8, 15


**STATE/LOCAL STATUTES**

California Corporations Code § 31000 ...................................................... 15

Local Rule 6-3 ..............................................................................................1

---

iii

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT          CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

CHARLES L. COLEMAN, III (CA. Bar No. 65496)
ANDREW T. CAULFIELD (CA. Bar No. 238300)
HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
San Francisco, California  94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910
charles.coleman@hklaw.com
andrew.caulfield@hklaw.com

Attorneys for Plaintiff
DAVID KAYNE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION  -- E-FILING

| | |
|---|---|
| DAVID KAYNE, an individual citizen of Georgia, <br><br> Plaintiff, <br><br> vs. <br><br> THE THOMAS KINKADE COMPANY, formerly known as MEDIA ARTS GROUP, INC., a Delaware Corporation, <br><br> Defendant. | Case No.  C 07-4721 JF (RS) <br><br> **NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; BRIEF IN SUPPORT OF MOTION** <br><br> **Hearing Date:  October 5, 2007**[1] <br> **Time:             9:00 a.m.** <br> **Courtroom:     3, 5th Floor** |

**Notice of Motion:** **TO DEFENDANT THE THOMAS KINKADE**

**COMPANY ("TKC") AND ITS ATTORNEYS OF RECORD:  PLEASE TAKE**

**NOTICE THAT,** on October 5, 2007 at 9:00 a.m., or as soon thereafter as counsel

may be heard by the Court, at Courtroom 3 (5th floor) of the United States

Courthouse in San Jose, which is located at 280 South 1st Street, San Jose,

California, 95113, plaintiff David Kayne will (and hereby does) move for the

---

[1]    Pursuant to Local Rule 6-3 and the accompanying separate Motion To Shorten Time, plaintiff is seeking a hearing of this matter on October 5, 2007, or on such other date as the Court may set between now and October 15, 2007.  This motion seeks to enjoin defendant from proceeding with an "expedited arbitration" hearing set to occur on October 16, 2007, in which plaintiff would be precluded from calling any witnesses or conducting discovery.

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT                    CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1  following relief: A temporary restraining order and preliminary injunction enjoining

2  TKC from proceeding further with, and from attending, the October 16, 2007

3  arbitration presently pending before the American Arbitration Association, entitled

4  *The Thomas Kinkade Company v. David Kayne* (AAA No. 74-181-E-000733-06), or

5  any other arbitral proceeding pursuant to the "expedited" arbitration procedure set

6  out in Exhibit "A" to plaintiff's complaint herein, until further order of this Court.

7  **PLEASE TAKE FURTHER NOTICE** that this motion is and will be based on the

8  following accompanying pleadings filed concurrently with this Notice, together with

9  such responsive and reply pleadings as may hereafter be filed, the Complaint on file

10 herein, and such other matters as may properly come before the Court at or in

11 connection with the hearing of this motion: (1) The brief memorandum of points and

12 authorities that follows this notice;  (2) The Declaration of David Kayne in support

13 of this motion and exhibits attached thereto; (3) The Declaration of Charles L.

14 Coleman, III in support of this motion and exhibits attached thereto; (4) The

15 Certificate of Service of the summons, complaint and other documents (Local Rule

16 5-6); (5) The [Proposed] Temporary Restraining Order; (6) The [Proposed]

17 Preliminary Injunction; (7) The accompanying Motion To Shorten Time for hearing

18 of this motion (Local Rule 6-3); (8) The Declaration of Charles L. Coleman, III in

19 support of the Motion To Shorten Time; and (9) The [Proposed] Order Shortening

20 Time to respond to this motion.

21         **Statement of Relief Requested:**  By this motion and the accompanying

22 Motion To Shorten Time, plaintiff David Kayne ("Mr. Kayne") seeks a temporary

23 restraining order and preliminary injunction to prevent defendant TKC from

24 proceeding further with a purported "expedited" arbitration procedure under which

25 it is seeking to conduct an arbitration "hearing" without affording Mr. Kayne the

26 right to call witnesses or conduct discovery, even though Mr. Kayne disputes TKC's

27 claim and even though TKC's claim is for an amount in excess of $1.15 million.  As

28

---

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT                    CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1    is more fully set out below, Mr. Kayne submits that TKC's purported "expedited"

2    arbitration clause is unconscionable and violative of the principles recently

3    announced in *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (*en banc*),

4    *Davis v. O'Melveny & Myers LLC*, 485 F.3d 1066, 1071 (9th Cir. 2007) and other

5    recent cases holding that it is for the courts to determine whether an arbitration

6    clause is unconscionable.  For the reasons set out below and in the accompanying

7    declarations, the "expedited" arbitration procedure that TKC seeks to implement on

8    October 16, 2007 is unconscionable and should be enjoined.

9    ## MEMORANDUM OF POINTS AND AUTHORITIES

10   **I.    STATEMENT OF ISSUES TO BE DECIDED:**

11   **A.    Unconscionable "arbitration" clause:** Whether the "expedited"

12   arbitration procedure described in an "Application for Credit" drafted by TKC is

13   unconscionable under the standards recently articulated in *Nagrampa v. Mailcoups,*

14   *Inc.*, 469 F.3d 1257 (9th Cir. 2006) (*en banc*) and other recent cases, where: (a) The

15   "Application for Credit" and accompanying "Personal Guaranty" was a contract of

16   adhesion presented to Mr. Kayne in circumstances giving rise to procedural

17   unconscionability; (b) In presenting its agreements to plaintiff David Kayne, TKC

18   was required to, but did not, comply with the disclosure requirements of California

19   and federal franchise laws; (c) The AAA "expedited" arbitration procedure

20   referenced in TKC's agreement was designed and intended for disputes less than

21   $75,000, whereas TKC now seeks to use this procedure to demand over $1.15

22   million from Mr. Kayne; (d) TKC's standard arbitration agreement even purports to

23   further restrict Mr. Kayne's hearing rights beyond what is contemplated in the AAA

24   "Expedited" Rules for disputes less than $10,000 by providing that no discovery may

25   be conducted and that the parties "*waive all right to any hearing requiring witness*

26   *production*"; (e) TKC's agreement would require that Mr. Kayne (a small business

27   owner located in the Buford, Georgia with no businesses in California) to defend

28

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT                    CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1    against TKC's "expedited" arbitration hearing in Santa Clara County, California;

2    and (f) Mr. Kayne would not be able to present his defenses to TKC's claims without

3    discovery or the right to call and cross-examine live witnesses.   [Answer: YES].

4    **B.    TKC's Anticipated Defenses:**  Plaintiff anticipates that TKC's

5    defenses to his claims will seek to divert attention from the clear unconscionability

6    of its "expedited" arbitration clause by focusing instead on the following issue

7    expected to be raised in TKC's anticipated motion due to be filed on October 4, 2007:

8    Whether Mr. Kayne is somehow precluded, by virtue of having contended (in

9    separate proceedings before Judge Pannell of the U.S. District Court for the

10   Northern District of Georgia) that no agreement *was ever formed* between TKC and

11   Mr. Kayne that included an arbitration provision where: (a) The question of

12   whether Mr. Kayne formed an agreement with TKC (issues of offer, acceptance and

13   consideration) is *separate* from whether the arbitration clause in that agreement is

14   or was *unconscionable*; (b) Mr. Kayne's complaint expressly disavows any intention

15   to "re-litigate" the issues presented to Judge Pannell; and (c) In any event, the

16   Ninth Circuit's *en banc* decision in *Nagrampa* was not issued until *after* Mr. Kayne

17   had presented is other arguments (based on pre-*Nagrampa* law) to Judge Panel.

18   [Answer: NO.]

19   **C.    Balancing of Harm for Purposes of Injunctive Relief:**  Whether

20   plaintiff David Kayne's motion for a temporary restraining order and preliminary

21   injunction should be granted where: (a) Plaintiff has a strong case on the merits,

22   based on *Nagrampa* and the circumstances, terms and effect of TKC's arbitration

23   clause; (b) Mr. Kayne faces possible irreparable harm if TKC is permitted to pursue

24   its "expedited" arbitration "hearing" on October 16; (c) TKC, by contrast, will suffer

25   no apparent harm if it is required to wait a few more days or weeks before pursuing

26   its purported claim against Mr. Kayne (which allegedly arose in 2002) in an

27   appropriate forum (a court) and under appropriate rules providing minimum due

28

- 4 -

1   process rights to Mr. Kayne; and (d) The requested injunctive relief will simply

2   preserve the *status quo* so that this Court can consider and rule on Mr. Kayne's

3   complaint before the TKC "arbitration" occurs.  [Answer: YES.]

4   ## II.    STATEMENT OF RELEVANT FACTS

5   ### A.    Summary of Relief Requested:

6   Plaintiff David Kayne ("Mr. Kayne") seeks a temporary restraining order and

7   preliminary injunction to prevent defendant The Kinkade Company ("TKC") from

8   enforcing an unconscionable and unlawful "expedited" arbitration provision

9   contained in certain franchise agreement documents signed by Mr. Kayne.

10  The Complaint does not seek to contest the validity or enforceability of TKC's

11  "Application for Credit" and "Personal Guaranty" documents in their entirety.

12  Instead, it asserts that the arbitration provision set out in the "Application for

13  Credit" (which TKC seeks to apply through the "Personal Guaranty") is

14  unconscionable, and therefore unenforceable, under the standards recently

15  articulated in the Ninth Circuit's *en banc* decision in *Nagrampa v. Mailcoups, Inc.*,

16  469 F.3d 1257 (9th Cir. 2006) ("*Nagrampa*").  The provisions at issue here – which

17  would require Mr. Kayne to travel across the United States to try to defend against

18  a claim for over $1.15 million in a forum where he has no right to call and cross-

19  examine witnesses or conduct discovery – clearly are unconscionable under

20  *Nagrampa* and other recent decisions.  *See* the Complaint on file herein and the

21  Declaration of David Kayne ("Kayne Dec.") verifying the factual allegations of the

22  Complaint.  *See also*, the Declaration of Charles L. Coleman ("Coleman Dec.")

23  accompanying this memorandum, authenticating various documents in this matter.

24  Because TKC intends to proceed with the October 16 arbitration "hearing" in

25  the absence of injunctive relief from this Court, Mr. Kayne seeks either: (a) A

26  temporary restraining order preventing Mr. Kayne from proceeding further with

27  the arbitration, coupled with an expedited hearing on a preliminary injunction

28

- 5 -

1    within ten (10) days thereafter; or (b) If a temporary restraining order is not issued,

2    a preliminary injunction to be issued based on a hearing to be conducted on October

3    5, 2007 (based on TKC's anticipated October 4 motion filing), or on such other date

4    as the Court may determine on or before October 15, 2007 (the day before TKC's

5    "expedited" arbitration is set to occur).

6    **B.    Background Facts**

7    David Kayne ("Mr. Kayne") is the founder, President and (along with his

8    wife, Tracy) the principal shareholder of his family owned art gallery, Kayne Art

9    Galleries of Georgia, Inc. ("KAG"), a Georgia Corporation.  Complaint, ¶ 9; Kayne

10   Dec., ¶¶ 3, 4.  KAG was founded in order to market Thomas Kinkade art work and

11   reproductions in the Atlanta area.  *Id.*  The Thomas Kinkade Company ("TKC")

12   controls, distributes, and markets Thomas Kinkade artwork and TKC-

13   manufactured reproductions through a nationwide network of dealers.  Complaint,

14   ¶ 10; Kayne Dec., ¶ 3.  The authorized dealers are categorized based on the volume

15   of artwork and TKC-manufactured reproductions the dealer would purchase from

16   TKC to sell to customers.  *Id.*

17   Mr. Kayne was encouraged by TKC to become a TKC authorized dealer of the

18   highest level, a "Signature Dealer."  Complaint, ¶ 11; Kayne Dec., ¶ 3.  As an

19   enticement to sign up as a "Signature Dealer," TKC offered Mr. Kayne, and other

20   potential dealers of this level, exclusive territories in which to sell the products,

21   exclusive marketing opportunities, incentives such as cash and prizes, and other

22   purported benefits.  *Id.*  These inducements were explained and offered to those who

23   attended TKC's motivational "training" sessions.  Mr. Kayne attended one such

24   "training" session at TKC's headquarters in Santa Clara County, California, where

25   TKC encouraged and induced Mr. Kayne to become a "Signature Dealer."

26   Complaint, ¶¶ 12-13; Kayne Dec., ¶ 3.

27

28

- 6 -

1    TKC represented to Mr. Kayne and other prospective and actual dealers that

2    the company adhered to certain "Christian values" of Thomas Kinkade and further

3    represented to Mr. Kayne and other dealers that they would be dealing with TKC in

4    an atmosphere of mutual trust and respect.  Complaint ¶12; Kayne Dec., ¶ 3. TKC

5    often referred to its dealers as its "partners."  *Id.*  Based on representations

6    regarding the company's "trustworthiness," Mr. Kayne refrained from scrutinizing

7    the agreement documents to the extent he normally would have in other business

8    ventures. *Id.*

9        Based on TKC's representations, Mr. Kayne was induced to sign, and did sign

10   on behalf of KAG, a series of standard form "Dealer Agreements" prepared by TKC

11   (then operating as "Media Arts Group, Inc.").  Complaint, ¶12 and Exhibit "B"

12   thereto; Kayne Dec., ¶3.  The Dealer Agreements required KAG to purchase at least

13   $100,000 of art inventory per dealer location from TKC in the first year of the

14   agreements and also required an achievement of at least $200,000 in retail sales per

15   dealer location in the first year.  Both of these requirements were subject to

16   adjustment in later years "according to a formula applied to every Signature

17   Gallery."  Complaint, ¶ 13 and Exhibit "B"; Kayne Dec., ¶ 3.

18       TKC and KAG entered into Dealer Agreements in 1999-2000.  Complaint,

19   ¶14; Kayne Dec., ¶ 3 .  In or about October 2001, after the Dealer Agreements were

20   entered into, TKC presented Mr. Kayne with TKC's standard form "Application for

21   Credit" (hereinafter "Application") and "Personal Guaranty" (hereinafter

22   "Guaranty").  *Id.*; Complaint, Exhibit "A".  Embedded in the Application and

23   referred to by reference in the Guaranty is the "expedited" arbitration provision

24   that TKC now seeks to apply against Mr. Kayne, and which is the subject of the

25   Complaint in this case.  *Id.*  The "expedited arbitration" provision states:

26

27

28

-7-

DISPUTES: ANY DISPUTE OR CONTROVERSY ARISING FROM THIS AGREEMENT WILL BE RESOLVED BY ARBITRATION BY THE AMERICAN ARBITRATION ASSOCIATION AT SANTA CLARA COUNTY, CALIFORNIA.  THE LANGUAGE OF THE ARBITRATION SHALL BE ENGLISH.  THE NUMBER OF THE ARBITRATORS SHALL BE ONE. THE PARTIES AGREE THE AMERICAN ARBITRATION ASSOCIATION'S EXPEDITED RULES SHALL APPLY ***AND THEY WAIVE ALL RIGHT TO ANY HEARING REQUIRING WITNESS PRODUCTION.  THE ARBITRATOR SHALL ISSUE AN AWARD BASED UPON THE WRITTEN DOCUMENTARY EVIDENCE SUPPLIED BY THE PARTIES***.  THE ARBITRATOR'S AWARD SHALL BE BINDING AND FINAL.  THE LOSING PARTY SHALL PAY ALL ARBITRATION EXPENSES, INCLUDING ALL ATTORNEY'S FEES.  [*Italics and bold added*].

*Id.*  The "Personal Guaranty", which accompanied the Application, states that "[a]s

Guarantor, [Mr. Kayne] is also bound by the above arbitration clause." *Id.*

TKC is a California-based business that is subject to the California Franchise

Investment Law (Cal. Corps. Code §§ 31000, *et seq.*) and corresponding federal

regulations promulgated by the Federal Trade Commission (46 C.F.R. Part 436),

but KAG never provided the required disclosures to Mr. Kayne or his family-owned

company (Kayne Art Galleries of Georgia, Inc., or "KAG"); had it done so, Mr. Kayne

would not have signed the "Personal Guaranty" or the "Application for Credit" *See*

Complaint, ¶¶ 15-29; Kayne Dec., ¶ 3.

After Mr. Kayne was induced to have KAG become a Signature Dealer and to

subsequently sign the KAG "Application for Credit" and accompanying "Personal

Guaranty", the relationship between TKC and KAG (and Mr. Kayne) soured.  The

relationship between the parties deteriorated because the high volume art business

that TKC required and encouraged its Signature Dealers (including KAG) to

develop proved to be increasingly unprofitable.  Complaint, ¶ 33; Kayne Dec., ¶ 3.

KAG and other Signature Dealers became disillusioned with the business model

that had been sold to them by TKC without adequate and detailed disclosures.  *Id.*

The parties then engaged in a series of legal disputes in which TKC pursued KAG,

and Mr. Kayne personally, for debts allegedly resulting from KAG's inability to sell

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT          CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1    the large volume of TKC artwork required under TKC's "Signature Dealer"

2    agreements.[2]

3        Nearly five years after Mr. Kayne signed the "Personal Guaranty," TKC filed

4    a demand for arbitration with the American Arbitration Association, invoking the

5    "expedited" arbitration procedures set out the Application and referred to by

6    reference in the Guaranty. Kayne Dec., ¶¶ 3, 8 and Exhibit 2 thereto (Arbitration

7    demand). TKC thereafter increased and supplemented its claim to over $1.15

8    million. Coleman Dec. ¶ 3 and Exhibit 2 thereto. At no time has TKC or its counsel

9    indicated that TKC has agreed to waive the draconian limitations on the scope of

10   the arbitration it is seeking to conduct under the arbitration clause at issue as set

11   out in Exhibit "A" to the Complaint. Declaration of Charles L. Coleman in Support

12   of Motion To Shorten Time, ¶ 4. In this motion, Mr. Kayne seeks injunctive relief to

13   prevent this unconscionable arbitration clause from being applied against him.

14   **III.    ARGUMENT AND LEGAL AUTHORITIES**

15       **A. The District Court Is the Proper Forum for Mr. Kayne's Challenge**

16          **to the Enforceability of TKC's Unconscionable Arbitration Clause.**

17       As an initial matter, this Court is the proper venue for a determination of the

18   legality of the arbitration provision contained in the Application and allegedly

19   incorporated by reference in the Guaranty. The *Nagrampa* decision recently held

20   that: "[w]hen the crux of the complaint is not the invalidity of the contract as a

21   whole, but rather the arbitration provision itself, then the federal courts must

22   decide whether the arbitration provision itself is invalid and unenforceable

23   pursuant to 9 U.S.C. § 2 of the FAA." *Nagrampa, supra*, 469 F.3d at 1264. Thus,

24   the Court must closely examine the Complaint to determine whether striking the

25   arbitration provision may affect the validity of the "Application for Credit" or

26   _____

27   [2]    A summary of the parties' legal disputes is set out in the Complaint, ¶¶ 33-44, as
     verified by Mr. Kayne in the Kayne Dec. at ¶ 3.

28

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT                    CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1  "Personal Guaranty" in their entirety. *See id.* When this is done, it is clear that the

2  facially and actually unconscionable "expedited" arbitration clause is severable from

3  the remaining terms of these documents. Similarly, in *Davis v. O'Melveny & Myers*

4  *LLC*, 485 F.3d 1066, at 1071-1072 (9th Cir. 2007), the court relied on *Nagrampa* in

5  stating that "whether . . .[the] arbitration clause is unconscionable is for the court to

6  decide." Thus, Mr. Kayne's Complaint is filed as a response to TKC's arbitration

7  demand because the arbitration clause itself is unconscionable, and this Court is

8  the right place to resolve that issue.

9        In response to TKC's effort to enforce  its "expedited" arbitration clause, Mr.

10  Kayne's Complaint seeks declaratory and injunctive relief only as to the arbitration

11  provision and not as to the entirety of the "Application for Credit" and "Personal

12  Guaranty". Specifically, in the First Cause of Action, Mr. Kayne seeks a declaration

13  that the  arbitration provisions of Exhibit A are unlawful, unconscionable,

14  unenforceable, and void as a matter of law, so that if TKC wishes to pursue Mr.

15  Kayne under the "Personal Guaranty", it must do so in a court of law, in which Mr.

16  Kayne will be afforded a full, fair and complete hearing and due process.

17  Complaint, ¶ 60. Alternatively, this cause of action requests that, in the event that

18  an award or other form of relief is given to TKC by the AAA arbitrator appointed

19  pursuant to Exhibit "A", David Kayne be entitled to a declaration that any such

20  award is unenforceable and void. Complaint, ¶ 61.

21        In his Second Cause of Action, Mr. Kayne asserts that TKC should be

22  preliminarily and permanently enjoined from pursuing this or any other arbitration

23  under the provisions of Exhibit "A", and (if necessary) enjoined from seeking to

24  enforce any arbitral award against Mr. Kayne that it might obtain in connection

25  with Exhibit "A". Complaint, ¶ 64. In the Third Cause of Action, Mr. Kayne seeks a

26  declaration that TKC's attempt to enforce the "expedited" arbitration provisions of

27  Exhibit A, or any award issued as a result thereof, is an "unlawful, unfair or

28

- 10 -
PLAINTIFF'S MOTION AND BRIEF IN SUPPORT                    CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1    fraudulent business act or practice" within the meaning of California Unfair

2    Competition Law. Complaint at ¶ 68. The Fourth and final Cause of Action

3    requests a preliminary and permanent injunction enjoining TKC from pursuing this

4    or any other arbitration under the provisions of Exhibit "A", as said provisions are

5    unlawful and violate the California Unfair Competition Law as applied to Mr.

6    Kayne. Complaint, ¶¶ 70-71. In this regard, Mr. Kayne's request for an injunction

7    under the Unfair Competition Law is not subject to arbitration where it serves a

8    public purpose. *Cruz v. Pacificare Health Systems, Inc.*, 30 Cal. 4th 303, 316 (2003).

9        Thus, because Mr. Kayne does not challenge or threaten in this proceeding to

10   invalidate the contract as a whole, but rather, challenges the legality of the

11   arbitration provision itself, *Nagrampa* instructs that this Court is "required to turn

12   to California law to address [Mr. Kayne's] arguments regarding the

13   unconscionability of the arbitration provision." *See Nagrampa, supra*, 469 F.3d at

14   1271.

15       B. **Standard of Review**

16       The Ninth Circuit's well-established standard for a preliminary injunction

17   requires that the moving party show either (1) a combination of probable success on

18   the merits and the possibility of irreparable injury, or (2) that serious questions are

19   raised and the balance of hardships tips sharply in favor of the moving party.[3]

20   *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839-40

21   (9th Cir. 2001) (internal citation omitted); *see also Arcamuzi v. Continental Air*

22   *Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 2001). These standards are not two separate

23   tests but, rather, outer reaches of a single continuum. *Stuhlbarg International*

24   *Sales Co., supra*, 240 F.3d at 840; *International Jensen, Inc. v. Metrosound U.S.A, 4*

25

26   [3] Courts often also consider whether the public interest favors the issuance of the
     injunction. *See Southwest Voter Registration Ed. Project v. Shelley*, 344 F.3d 914,
27   917-18 (9th Cir. 2003).

28
_____
                                    - 11 -

1   F.3d 819, 822 (9th Cir. 1993). They represent two points on a sliding scale in which

2   the degree of irreparable harm increases as the probability of success on the merits

3   decreases. *Big Country Foods, Inc. v. Board of Education*, 868 F.2d 1085, 1088 (9th

4   Cir. 1989).

5          As set forth in detail below, Mr. Kayne meets either prerequisite and should

6   be granted a preliminary injunction to prevent TKC from pursuing arbitration

7   under an unconscionable and unenforceable arbitration provision.

8          **C. There Is a  Strong Likelihood That Mr. Kayne Will Succeed on the**

9          **Merits of His Complaint**

10         Mr. Kayne is required only to demonstrate the "irreducible minimum" that he

11  has a "fair chance of success on the merits" of his case. *Johnson v. California State*

12  *Board of Accountancy*, 72 F.3d 1427, 1429-30 (9th Cir. 1995); *see also Republic of the*

13  *Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). It is well-established

14  that unconscionability is a generally applicable contract defense, which may render

15  an arbitration provision unenforceable. *Nagrampa, supra*, 469 F.3d at 1280

16  (internal citation omitted). California courts have extended the doctrine of

17  unconscionability to embrace franchise agreements. *Id.* at 1280. California law is

18  applied law to determine whether the arbitration provision at issue here is

19  unconscionable. *See id.*

20         In determining whether an agreement to arbitrate is "unconscionable" and

21  hence unenforceable, the prevailing California view is that a sliding scale should be

22  invoked whereby if strong evidence of procedural unconscionability is presented,

23  less evidence is necessary with respect to substantive unconscionability, and vice-

24  versa. *Nagrampa, supra*, 469 F.3d at 1280; *Gentry v. Superior Court.*, 42 Cal.4[th]

25  443, 64 Cal. Rptr. 3d 773, 793 (2007). There is strong evidence that the "expedited"

26  arbitration provision at issue here is both procedurally and substantively

27

28

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT                          CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1    unconscionable, and will ultimately be declared void and unenforceable under

2    California law. *See* Complaint and Kayne Dec., ¶ 3.

3    ### 1. **The Arbitration Provision Is Procedurally Unconscionable**

4    ### a. **The Arbitration Agreement Is a Contract of Adhesion**

5    The threshold inquiry in California's unconscionability analysis is "whether

6    the arbitration agreement is adhesive." *Nagrampa, supra*, 469 F.3d at 1281. An

7    adhesive contract is defined as a standardized contract, imposed upon the

8    subscribing party without an opportunity to negotiate the terms. *Id.* (citation

9    omitted). Standards for procedural unconscionability are satisfied by a finding that

10   the arbitration provision was presented on a take-it-or-leave-it basis and that it was

11   oppressive due to an inequality in bargaining power that resulted in no real

12   negotiation and an absence of meaningful choice. *Id.* Courts have found that

13   ordinary contracts of adhesion, although they are indispensable facts of modern life

14   that are generally enforced, contain a degree of procedural unconscionability even

15   without any notable surprises, and "bear within them a clear danger of oppression

16   and overreaching." *Gentry, supra*, 64 Cal. Rptr. at 793 (citation omitted).

17   Here, Mr. Kayne was presented with the arbitration provision embedded in a

18   take-it-or leave it, standard contract of adhesion entitled "Application for Credit"

19   which was drafted entirely by TKC. Mr. Kayne was provided with no real

20   opportunity to negotiate the terms of the arbitration provision. Complaint, ¶¶ 30-31

21   Kayne Dec. at ¶ 3. Furthermore, Mr. Kayne, on behalf of KAG, was in a

22   substantially weaker bargaining position than TKC.

23   TKC's agreements were part of what was, in fact, a franchise relationship,

24   although TKC did not provide the required disclosures. Complaint, ¶¶ 15-29;

25   Kayne Dec. ¶ 3. Franchise agreements have some characteristics of adhesion

26   because of the "vastly superior bargaining strength" of the franchisor. *See*

27   *Nagrampa, supra*, 469 F.3d at 1282 (citation omitted). In addition to KAG's status

28

- 13 -

1    as TKC's franchisee, TKC was an existing creditor of KAG, which had signed Dealer

2    Agreements obliging KAG to continue to purchase hundreds of thousands of dollars

3    of TKC's mass-produced reproductions as inventory.  Complaint, ¶ 13-14, 30-32.

          **b.    TKC Failed To Make Disclosures to Mr. Kayne as**

               **Required by California and Federal Franchise Law.**

6          An important factor in the procedural unconscionability analysis is the

7    manner in which the contract or the disputed clause was presented or negotiated.

8    *Nagrampa, supra*, 469 F.3d at 1282.  Procedural unconscionability focuses on the

9    factors of surprise and oppression, with surprise being a function of the reasonable

10   expectations of the weaker party. *Higgins II v. Super. Ct.*, 140 Cal. App. 4th 1238,

11   1249 (2006); *see also Nagrampa, supra*, 469 F.3d at 1280.  Surprise involves the

12   extent to which the supposedly agreed-upon terms of the bargain are hidden in the

13   prolix printed form drafted by the party seeking to enforce the disputed terms

14   *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002).

15   Oppression arises from an inequality of bargaining power which results in no real

16   negotiation and an absence of meaningful choice. *Id.*

17         Mr. Kayne has strong evidence of both surprise and oppression.  Mr. Kayne

18   was presented with an adhesive contract and was not specifically informed of the

19   existence of the arbitration provision.  Kayne Dec., ¶12.  The provision is buried in a

20   two page document entitled "Application for Credit," and contains no clear

21   indication or heading regarding an agreement to arbitrate.  Complaint, Exh A.;

22   Kayne Dec. ¶ 3.  The agreement to arbitrate in the "Personal Guaranty" section is

23   even less conspicuous.  Mr. Kayne is supposedly required to submit to the

24   "expedited" arbitration provision contained in the prior section by virtue of a single

25   sentence  in the Guaranty: "As Guarantor, I am also bound by the above arbitration

26   clause."  This sentence apparently incorporates the preceding "expedited"

27   arbitration provision which includes no signal or heading identifying the provision

28   

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT                    CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1    as an arbitration agreement.  Mr. Kayne was certainly surprised, five years after

2    signing the document, to learn that not only did KAG agree to arbitrate in a

3    particular manner, but that he was personally obligated to do so as well.

4    Complaint, ¶ 31, Kayne Dec. ¶3.

5         The arbitration provision also is unduly oppressive due to the manner in

6    which it was presented.  Specifically, TKC failed to provide applicable disclosures as

7    required by California and Federal Franchise laws and regulations, which rendered

8    Mr. Kayne unable to make an informed decision regarding the arbitration provision

9    itself.

10        Pursuant to the California Franchise Investment Law ("CFIL") set forth in

11   California Corporations Code §§ 31000, *et seq.*, TKC was required to, but did not,

12   make detailed disclosures to KAG and/or to Mr. Kayne on a wide variety of subjects

13   specified in the Uniform Franchise Offering Circular ("UFOC"), prescribed by the

14   California Commissioner of Corporations, and pursuant to the CFIL.  Complaint,

15   ¶¶ 17-18, 21-22; Kayne Dec. ¶ 3.  Prior to signing the Application  containing the

16   "expedited" arbitration provision, neither Mr. Kayne nor KAG received any

17   disclosures detailing the financial details of the Dealer Agreement arrangement, the

18   Application or the Guaranty.  *Id.*  At no point in time during the parties'

19   relationship did TKC provide Mr. Kayne or KAG with the required disclosures. *Id.*

20        Pursuant to federal franchising regulations (16 C.F.R. Part 436—"Disclosure

21   Requirements and Prohibitions Concerning Franchise"), promulgated by the

22   Federal Trade Commission ("FTC") under the Federal Trade Commission Act (15

23   U.S.C. §§ 41-58), and specifically under 16 C:F.R. Part 536, TKC was required to,

24   but did not, make detailed financial disclosures to KAG and/or to Mr. Kayne about

25   the Dealer Agreement arrangement as well as the Application and the Guaranty.

26   Complaint, ¶¶ 27-29; Kayne Dec., ¶ 3.  Notably, "item 17.u" and "17.v" of the

27   "Disclosure Items" required under 16 C.F.R. § 436.5 called for explicit disclosures by

28

- 15 -

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT                        CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1   TKC of the dispute resolution and forum provisions of any agreements it entered

2   into with franchisees and their principals.  Prior to signing the Application and

3   Guaranty containing the "expedited" arbitration agreement, neither Mr. Kayne, nor

4   KAG received any disclosures detailing the financial details of the Dealer

5   Agreement arrangement, the Application, or the Guaranty contained therein.

6   Complaint, ¶¶ 27-29, Kayne Dec. § 3.

7          Thus, the manner in which Mr. Kayne was presented with the "expedited"

8   arbitration provision, was procedurally improper and fraught with oppression due

9   to the fact that Mr. Kayne was not provided with the disclosures that both federal

10  and California law require.  These failures prevented Mr. Kayne, as a franchisee in

11  a substantially weaker bargaining position and without an opportunity to negotiate,

12  from making an informed decision regarding the arbitration provision contained in

13  the "Credit Application" and "Personal Guaranty".  These franchise-related issues

14  merely exacerbated the independently-sufficient procedural unconscionability that

15  attended the presentation and execution of the "Application for Credit" and

16  "Personal Guaranty".

17         At the time he signed the Application on behalf of KAG and the Guaranty in

18  2001, it was not within Mr. Kayne's reasonable expectations that, five or six years

19  later, without extending any additional credit to KAG or any separate credit to Mr.

20  Kayne, or even manifesting its "acceptance" of the Application, TKC would now

21  assert that it is entitled to conduct a "no witness," "no discovery" mini-hearing in

22  California that court result in Mr. Kayne facing an award against him personally

23  for more than one million dollars.  Complaint, ¶ 31, Kayne Dec. ¶ 3.

24              **2.  <u>The Arbitration Provision Is Substantively Unconscionable.</u>**

25         An arbitration provision is substantively unconscionable if it is overly harsh

26  or generates one-sided results.  *Armendariz v. Foundation Health Psychcare*

27  *Services Inc.*, 24 Cal. 4th 83, 114 (2000).  In this case, the "expedited" arbitration

28

- 16 -

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT          CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1   provision heavily favors the drafter, TKC.  It states that the parties must agree to

2   the AAA's "expedited rules," yet simultaneously requires the franchisee to agree to

3   substantive modifications to the rules themselves, without any notice to the

4   franchisee as to how the "expedited rules" have been modified.  For example, Rule

5   E-6 states:

6

7           *Where no party's claim exceeds $10,000*, exclusive of interest and arbitration
            costs, and other cases in which the parties agree, the dispute shall be
            resolved by submission of documents, *unless any party requests an oral*
8           *hearing*, or the arbitrator determines that an oral hearing is necessary.  The
            arbitrator shall establish a fair and equitable procedure for the submission of
9           documents.  [Italics added].

10  Coleman Dec., ¶ 2 and Exhibit 1 thereto.  The plain language of Rule E-6 indicates

11  that the Rule was intended for claims that are less than $10,000, while the amount

12  in controversy here is now over $1.15 million. Coleman Dec. ¶ 3 and Exhibit 2

13  thereto.  Similarly, the "expedited" arbitration provision requires a waiver of "all

14  right to any hearing requiring witness production," and that the award will be

15  based strictly "upon the written documentary evidence supplied by the parties."

16  Yet, Expedited Rule 6 clearly states that a party can request an oral hearing, with

17  no restrictions as to witness production.

18          It is a matter of  business common sense that the  "expedited" documents-

19  only rules contemplated by the AAA are intended for commercial disputes between

20  merchants where the only question presented is an accounting for invoices and

21  receipts in amounts so small as to make it uneconomical to have a full-blown

22  hearing on the subject.  This is a far cry from the use to which TKC now seeks to

23  put the clause that it drafted.  TKC seeks over $1.15 million from a small Georgia

24  business owner that hotly disputes TKC's claim and has a number of defenses that

25  will be precluded by the application of the "expedited" procedures.  Kayne Dec. ¶ 12.

26          As was foreseeable when it induced people to sign its agreements, TKC's

27  provision containing the modified "expedited rules" heavily favors TKC, whose

28

- 17 -

1    position is simply "pay up and don't argue".   No explanation for these restrictions,

2    which remove all notion of basic fairness and due process from the proceeding, can

3    be found in the documents and no explanation was given orally to Mr. Kayne.  *See*

4    Complaint, ¶ 31 and Kayne Dec., ¶¶ 3, 12.  Similarly, only a legally sophisticated

5    party could have possibly understood that the modified "expedited" rules were

6    considerably less favorable to Mr. Kayne than those set forth in AAA's Commercial

7    Rules designed for million-dollar disputes  Moreover, "even experienced but legally

8    unsophisticated businessmen may be unfairly surprised by unconscionable contract

9    terms." *Gentry, supra*, 64 Cal. Rptr. at 795 (citing *Stirlen v. Supercuts, Inc.*, 51 Cal.

10   App. 4th 1519, 1535 (1997)).

11        The arbitration provision also contains a forum selection clause, which

12   requires the arbitration to take place in Santa Clara County, California, TKC's

13   principal place of business.  Complaint, Exhibit "A"; Kayne Dec. ¶ 3 and Exhibit 1

14   thereto.  To assess the reasonableness of "place and manner" provisions in an

15   arbitration clause, the respective circumstances of the parties are considered.

16   *Nagrampa, supra*, 469 F.3d at 1288.  Here, the parties' bargaining positions were

17   unequal, which resulted in an oppressive contract of adhesion, containing a forum

18   selection clause.  The forum selection clause requires Mr. Kayne, a citizen of

19   Georgia, to travel thousands of miles across the country to California, while TKC

20   has a minimal travel burden, if any, as its principal place of business is within the

21   same county as the selected forum.  Mr. Kayne, along with other small franchisees

22   located outside of California, must incur additional traveling and living expenses

23   and increased costs associated with having counsel familiar with California law.

24        Similar to the forum selection clause at issue in *Nagrampa*, the forum

25   selection clause here "has no justification other than as a means of maximizing

26   advantage over [franchisees]." *Nagrampa, supra*, 469 F.3d at 1289-90.  TKC could

27   have reasonably expected that the selected forum in California would have

28

-------------------------------------------------------

- 18 -

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT               CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1  effectively precluded out of state franchisees, including KAG and Mr. Kayne, from

2  asserting claims and defenses against it due to burdens and expenses that the

3  forum selection places on small business owners. *See id.* at 1290.

4      Mr. Kayne has presented substantial evidence supporting his claim that the

5  arbitration provision is unconscionable. *See* Complaint, Exhibit "A" thereto, and the

6  Kayne Dec. As alleged in the Complaint, "an unconscionable contract amounts to

7  an unfair business practice under Business and Professions Code Section 17200."

8  *See In re First Alliance Mortgage Co*, 280 B.R. 246, 251 (C.D. Cal. 2002). Thus, Mr.

9  Kayne has demonstrated a strong likelihood of success on the merits of the

10  Complaint.

11      **D.    Mr. Kayne Will Suffer Immediate, Irreparable Injury If**

12          **Injunctive Relief Is Denied.**

13      In addition to demonstrating a "fair chance of success" on the merits of his

14  Complaint, Mr. Kayne also can demonstrate a significant threat of irreparable

15  injury warranting injunctive relief. *See  Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716,

16  725 (9th Cir. 1999). Such harm must be immediate or imminent. *Caribbean*

17  *Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988); *Midgett v. Tri-*

18  *County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-51 (9th Cir. 2001).

19      In this case, TKC has already noticed and demanded the "expedited"

20  arbitration. An arbitrator has been appointed, and the "hearing" is set to occur on

21  October 16, 2007. Coleman Dec., ¶ 7 and Exhibit 6 thereto. Mr. Kayne is faced

22  with the immediate and untenable position of either waiving his *Nagrampa*-based

23  objections to the arbitration or succumbing to an unconscionable arbitration

24  procedure where he will be forced to forfeit all rights to meaningful discovery,

25  witness testimony, and cross-examination in an unfavorable forum. Mr. Kayne has

26  several substantial defenses regarding the claims that TKC is asserting against

27  him. Kayne Dec., ¶ 12. In order to establish these defenses, however, Mr. Kayne

28

- 19 -

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT          CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1  must be allowed the basic due process rights of conducting meaningful discovery,

2  calling and  cross-examining witnesses. *Id.*

3      If the arbitration is allowed to proceed under the unconscionable arbitration

4  provision, Mr. Kayne will be subjected to an arbitration procedure where he will be

5  deprived of the right to present an adequate defense.  Exhibit A declares that such

6  an award would be "binding and final."  Accordingly, while Mr. Kayne retains the

7  right to challenge any arbitral award resulting from the hearing based on

8  *Nagrampa* and other recent case law (such as *Gentry*) dealing with the

9  unconscionability of the arbitration clause, he has a significant and legitimate

10  interest in determining *before* the arbitration occurs whether it is unconscionable.

11      **E.  The Balance of Harms Tips Sharply in Mr. Kayne's Favor.**

12      Where plaintiff shows a strong likelihood of success on the merits and a

13  threat of irreparable harm, an order granting a preliminary injunction need not

14  reach the balance of hardships.  Indeed, "[i]f the balance of harm tips decidedly

15  toward the plaintiff, then the plaintiff need not show as robust a likelihood of

16  success on the merits as when the balance tips less decidedly.  *State of Alaska v.*

17  *Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988).  As demonstrated

18  above, Mr. Kayne is highly likely to succeed on the merits of his case, and certainly

19  has at least a "fair chance" of success.  Even if the Court determines that the

20  likelihood of his success is less than "strong" and continues to the balancing of

21  hardships analysis, the balance tips decidedly in Mr. Kayne's favor.

22      **1.    TKC Will Suffer Little or No Irreparable Harm if A**

23          **Preliminary Injunction is Granted**

24      In contrast to the immediate and irreparable harm Mr. Kayne will suffer

25  should the "expedited" arbitration proceed, TKC faces no potential harm which

26  cannot later be reconciled or vindicated if a preliminary injunction is granted.

27  Should the court ultimately determine that the "expedited" arbitration provision is

28

- 20 -

1   in fact lawful and enforceable, TKC can promptly reschedule the proceeding to take

2   place on an "expedited" basis.  TKC has adequate and available remedies for any

3   delay and can seek (and is seeking) interest on any monetary award that it may

4   ultimately receive, if any.  Moreover, TKC has demonstrated that time is not "of the

5   essence" as the "Personal Guaranty" has been in effect for several years, but TKC

6   has just recently decided to pursue Mr. Kayne under this premise.  *See* Complaint,

7   ¶42, Kayne Dec., ¶ 3, Coleman Dec., ¶ 3 and Exhibit 2 thereto (containing TKC's

8   assertion that the underlying "debt" being pursued was incurred in 2002).  Any

9   incremental delay in the scheduling of the arbitration until the completion of Mr.

10  Kayne's lawsuit will not bring TKC any significant harm.

11                  **2.      Public Policy Favors A Preliminary Injunction**

12          As codified in California Civil Code sections 1667 and 1670.5, California has

13  a strong public policy against the enforcement of illegal contracts or unconscionable

14  clauses contained in contracts.  Therefore, it is in the interest of the general public

15  that this Court determine the legality of the "expedited" arbitration provision.

16  Similarly, it is in the public's interest that TKC not be allowed to exercise or enforce

17  the provision embedded in its form contracts against Mr. Kayne, other franchisees,

18  or the general public, until a full adjudication regarding the legality of the provision

19  has been completed.

20  **IV.    CONCLUSION**

21          *Nagrampa* and its progeny now make it clear that it is for the courts, and not

22  the arbitrator, to determine whether an arbitration clause is unconscionable and

23  hence unenforceable.  If the clause is unconscionable, so too is the result of any

24  arbitral award resulting from the application of such a clause over the timely

25  objection of the adversely affected party.

26          Mr. Kayne has a strong interest in confirming, *before* the arbitration occurs,

27  whether the facially-unconscionable "expedited" procedures in TKC's clause will be

28

- 21 -

PLAINTIFF'S MOTION AND BRIEF IN SUPPORT          CASE NO. C 07-4721 JF (RS)
OF T.R.O AND PRELIMINARY INJUNCTION

1   deemed to pass muster under *Nagrampa, Davis, Gentry* and other recent cases in

2   California and the Ninth Circuit addressing this issue.  TKC will necessarily have

3   to face this issue sooner (before the arbitration) or later (after it seeks to confirm

4   any arbitral award) based on the tainted "expedited" procedure.  TKC can claim no

5   real prejudice by having the issue presented  and resolved now rather than later.

6          For each of the reasons identified above, Mr. Kayne respectfully requests that

7   this Court grant his motion for a temporary restraining order and preliminary

8   injunction.   Proposed forms of order accomplishing this are filed concurrently with

9   this motion.

10  Dated:  October 1, 2007                    Respectfully submitted,

11                                             HOLLAND & KNIGHT LLP

12

13                                             _____

14                                             CHARLES L. COLEMAN, III
                                               ANDREW T. CAULFIELD
15
                                               Attorneys for Plaintiff and Moving Party
16                                             DAVID KAYNE

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -