1  DANA N. LEVITT, PC (CA Bar No. 77180)
   CHARLES E. WEIR (CA Bar No. 211091)
2  JASON D. STRABO (CA Bar No. 246426)
   McDERMOTT WILL & EMERY LLP
3  2049 Century Park East, Suite 3800
   Los Angeles, CA  90067-3218
4  Telephone:    310.277.4110
   Facsimile:    310.277.4730
5  dlevitt@mwe.com
   cweir@mwe.com
6  jstrabo@mwe.com

7  Attorneys for Defendant
   THE THOMAS KINKADE COMPANY

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13 | DAVID KAYNE, an individual citizen of | CASE NO.  C 07-4721 (JF) (RS)
   | Georgia,
14 |                                        | **DEFENDANT'S OPPOSITION TO**
   |              Plaintiff,                 | **PLAINTIFF DAVID KAYNE'S MOTION**
15 |                                        | **FOR A TEMPORARY RESTRAINING**
   |        v.                              | **ORDER**
16 |
   | THE THOMAS KINKADE COMPANY,             | **DATE:       October 5, 2007**
17 | formerly known as MEDIA ARTS           | **TIME:       9:00 am**
   | GROUP, INC., a Delaware Corporation,,  | **JUDGE:      Hon. Jeremy Fogel**
18 |                                        | **DEPT.:      3, 5th Floor**
   |              Defendant.
19

20

21

22

23

24

25

26

27

28

*MCDERMOTT WILL & EMERY LLP*
*ATTORNEYS AT LAW*
*LOS ANGELES*

1

## TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ........................................................................................................1

4    II.   STATEMENT OF FACTS .........................................................................................4

5          A.    Background of the Parties...............................................................................4
            B.    The Parties' Contractual Relationship ...........................................................4
6                1.    The Dealer Agreements .......................................................................4
                 2.    The Credit Agreement .........................................................................4
7          C.    Kayne and Kayne Galleries Default on Their Obligations to TKC.................5
            D.    History of Disputes Between Kayne and TKC ...............................................5
8                1.    The San Francisco Arbitration..............................................................5
                 2.    The Arbitration Award Against Kayne Galleries is Confirmed .................7
9                3.    Kayne Seeks to Enjoin the Arbitration Under the Credit Agreement..........7
                 4.    Pursuant to the District Court's Order TKC Proceeds with the
10                     Arbitration.........................................................................................8
                 5.    The Timing of the Kayne's Lawsuit and TRO Application .......................9
11         E.    Kayne's Allegations in this Action .................................................................9

12   III.  KAYNE'S REQUEST FOR A TRO MUST BE DENIED ........................................9

13   IV.   KAYNE HAS ZERO CHANCE TO SUCCEED ON THE MERITS.......................10

14         A.    All of Kayne's Claims Are Plainly Barred by Res Judicata .............................10
            B.    Kayne's Attempts to Avoid Judge Pannell's Ruling are Absurd ....................13
15               1.    Kayne's Distinction Between Contract Formation and Contract
                       Validity is Meaningless .....................................................................13
16               2.    Whether or not Kayne Disavows "Relitigation" of Issues is
                       Irrelevant........................................................................................14
17               3.    The Timing of the Nagrampa Decision Does Not Help Kayne.................14
            C.    The Arbitration Clause is Not Unconscionable ..............................................16
18               1.    The Arbitration Agreement is Not Procedurally Unconscionable.............17
                 2.    The Arbitration Clause is Not Substantively Unconscionable .................18

19   V.    KAYNE CANNOT SHOW IRREPARABLE HARM.............................................19

20   VI.   PUBLIC POLICY FAVORS TKC ...........................................................................21

21   VII.  THE COURT SHOULD STRONGLY CONSIDER SANCTIONS ...........................22

22   VIII. CONCLUSION.........................................................................................................22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Baker v. Gold Seal Liquors, Inc.,*
417 U.S. 467 (1974).................................................................................10

*Baldwin v. Traveling Men's Association,*
283 U.S. 522 (1931).................................................................................21

*Beacon Theatres, Inc. v. Westover,*
359 U.S. 500 (1959)...................................................................................9

*Blinco v. Green Tree Servicing LLC,*
400 F.3d 1308 (11th Cir. 2005).................................................................21

*Boire v. Pilot Freight Carriers, Inc.,*
515 F.2d 1185 (5th Cir. 1975)...................................................................20

*Brown v. Felsen,*
442 U.S. 127 (1979)...........................................................................10, 14

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440 (2006).................................................................................15

*C.D. Anderson & Co. v. Lemos,*
832 F.2d 1097 (9th Cir. 1987)...................................................................11

*Citibank, N.A. v. Citytrust,*
756 F.2d 273 (2d Cir. 1985).....................................................................20

*Clark v. Bear Sterns & Co., Inc.,*
966 F.2d 1318 (9th Cir. 1992)...................................................................17

*Clifton v. Attorney General of State of California,*
997 F.2d 660 (9th Cir. 1993).....................................................................15

*Coenen v. R.W. Pressprich& Co.,*
453 F.2d 1209 (2nd Cir. 1972)..................................................................21

*Doctor's Associates, Inc. v. Casarotto,*
517 U.S. 681 (1996).................................................................................15

*Dogherra v. Safeway Stores, Inc.,*
679 F.2d 1293 (9th Cir. 1982)...................................................................22

*Federated Department Stores, Inc. v. Moitie,*
452 U.S. 394 (1981)...........................................................................15, 21

*Gelco Corp. v. Coniston Partners,*
811 F.2d 414 (8th Cir. 1987) ..............................................................19, 20

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

**TABLE OF AUTHORITIES**
(continued)

Page

*Hart Steel Co. v. Railroad Supply Co.*,
    244 U.S. 294 (1917)...................................................................................21

*In re International Nutronics, Inc.*,
    28 F.3d 965 (9th Cir. 1994) ...............................................................10, 11, 14

*International Union of Operating Eng'rs, v. Karr*,
    994 F.2d 1426 (9th Cir. 1993) ........................................................................11

*Miller v. California Pacific Medical Ctr.*,
    19 F.3d 449 (9th Cir. 1994) ...........................................................................10

*Nagrampa v. Mailcoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) .............................................................14, 15, 16, 18

*Offshore Sportswear, Inc. v. Vuarnet International, B.V.*,
    114 F.3d 848 (9th Cir. 1997) ........................................................................17

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
    388 U.S. 395 (1967)....................................................................................15

*Stanley v. University of Southern California*,
    13 F.3d 1313 (9th Cir. 1994) .......................................................................9, 10

*Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*,
    2006 U.S. Dist. LEXIS 36590 (N.D. Tex. June 6, 2006) ........................................20

**STATE CASES**

*24 Hour Fitness v. Superior Court*,
    66 Cal. App. 4th 1199 (1998) ........................................................................18

*A & M Produce Co. v. FMC Corp.*,
    135 Cal. App. 3d 473 (1982) ........................................................................16

*Abramson v. Juniper Networks, Inc.*,
    115 Cal. App. 4th 638 (2004) ........................................................................18

*Aron v. U-Haul Company of California*,
    143 Cal. App. 4th 796 (2006) ...................................................................16, 17

*Boyce v. Fisk*,
    110 Cal. 107 (1895) ...................................................................................16

*McManus v. CIBC World Markets Corp.*,
    109 Cal. App. 4th 76 (2003) ........................................................................18

**FEDERAL STATUTES**

72 F.R. 15444, 15495.......................................................................................18

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

16 C.F.R. 436.1 ...................................................................................................................18

4

16 C.F.R. 436.5 ...................................................................................................................17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## I.     INTRODUCTION

By his Complaint and Motion for a Temporary Restraining Order (the "TRO"), David Kayne ("Kayne") effectively asks this Court to enjoin an Order from Judge Charles Pannell of the Northern District of Georgia compelling the parties to arbitration pursuant to the arbitration provision in a Credit Application and Personal Guaranty dated October 2, 2001 (the "Credit Agreement and Personal Guaranty").  In making this bizarre eleventh-hour request to this Court, Kayne's TRO papers omit much of the relevant litigation history between the parties and is an exercise in extreme intellectual dishonesty about the litigation history it does describe.  Kayne's TRO papers are thus misleading and just plain wrong.  The following three prior proceedings are essential to understanding why Kayne's TRO request must fail:

- **Kayne's Georgia Action:**  Kayne grossly misrepresents the prior Georgia litigation.  It is not as if Kayne woke up one morning only to find himself suddenly involved in some "separate proceeding" in Georgia in which he happened to contend that no agreement was ever formed between himself and The Thomas Kinkade Company ("TKC").  Notice of Motion and Motion for Temporary Restraining Order and Preliminary Injunction (hereinafter, "TRO Brief"), p. 4.  No, in fact, after TKC initiated this California arbitration on July 10, 2006, Kayne chose his forum in Georgia and sued TKC seeking both to enjoin this arbitration and a declaration that the arbitration agreement was invalid.  Declaration of Charles E. Weir in Support of Defendant's Opposition to Plaintiff's Motion for Temporary Restraining Order ("Weir Decl."), Ex. 12, pp. 186-194.  This is the same relief he seeks in this case.  In response to Kayne's petition in Georgia, TKC moved to compel arbitration.  Judge Charles Pannell rejected all of Kayne's defenses to the validity and enforceability of the same arbitration clause at issue in this case and ordered the parties to engage in the arbitration Kayne again seeks to enjoin.  Weir Decl., Ex. 11, pp. 174-176.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- **The San Francisco Arbitration**:  In his TRO papers Kayne does not even mention the prior arbitration with TKC that commenced in late 2002 in San Francisco (the "San Francisco Arbitration").  TKC initiated the San Francisco arbitration to collect the very same debt at issue here.  Kayne advanced some 16 counterclaims and affirmative defenses in the San Francisco Arbitration.  Importantly, Kayne asserted the exact same defenses he asserts here - that he was fraudulently induced to enter into the Dealer Agreements on behalf of his company, that TKC violated the franchise laws, and that TKC did not make adequate disclosures.  The San Francisco Arbitration was a full evidentiary hearing lasting 12 days.  A panel of three arbitrators found that Kayne failed to prove any of his claims.  Weir Decl. Ex. 5.  Moreover, the San Francisco Arbitration panel - including Kayne's own party appointed arbitrator - found that Kayne and his company, Kayne Art Galleries of Georgia, Inc. ("Kayne Galleries") owed TKC approximately $600,000.  *Id.*

- **The San Francisco Arbitration Award is Confirmed in Part**:  Following the San Francisco Arbitration the parties filed cross-motions to confirm and vacate the award.  Kayne argued that if his personally liability was going to be determined under the Personal Guaranty, it had to be determined pursuant to the expedited arbitration rules contained in the Personal Guaranty, and not the arbitration provisions contained in the Dealer Agreements, which required a full evidentiary hearing.  Importantly, Kayne never contended in the San Francisco Arbitration that the arbitration agreement in the Personal Guaranty was unconscionable or that the AAA's expedited procedures were somehow unlawful.  Indeed, in his Motion to Vacate, he effectively invited the Court to conclude that the fault with the San Francisco Arbitration award against him personally was simply that it had been initiated pursuant to the wrong arbitration clause.  Weir Decl. Ex. 6, pp. 75-77.  Following Kayne's lead, Judge Susan Illston confirmed the arbitration award and issued a judgment against Kayne Galleries (including the rejection of all counterclaims for fraudulent inducement and violations of the franchise laws), but

- 2 -

1   agreed with Kayne on his issue of his personal liability.  Judge Illston vacated the

2   award against Kayne individually precisely because the expedited rules in the

3   Personal Guaranty were not followed.  Weir Decl. Ex. 8, pp. 88, 91.

4   Once the true litigation history is exposed, it is clear Kayne is not some poor victim he

5   desperately tries to portray himself in his TRO papers.  Rather, Kayne has sufficient resources to

6   engage in legal gamesmanship in District Courts throughout the country in an effort to evade, or at

7   least delay, the payment of a debt that has been established since 2002.  Indeed, the very timing of

8   the TRO request raises serious questions about its true purpose.  Kayne has known that TKC

9   intended to follow Judge Pannell's order to arbitrate since April 5, 2007, the date TKC notified

10  Kayne and the AAA that it wished to resume the current arbitration (referred to herein as the

11  "McCauley Arbitration").[1]  Nevertheless, Kayne elected to wait until two weeks prior to the

12  hearing date to assert his latest claims.  If there truly was an exigency, why was this proceeding

13  not brought six months ago?  The answer is obvious, Kayne's claims had no merit then and they

14  have no merit now.

15  In short, Kayne's TRO request fails miserably as he cannot meet any of the three necessary

16  elements.  First, Kayne's claims are plainly barred by the doctrines of res judicata and collateral

17  estoppel, among numerous other infirmities.  Accordingly, there is no likelihood of success on the

18  merits.  Second, Kayne admits in his TRO papers that he does not lose the right to present his

19  groundless unconscionability claims and California Business and Professions Code § 17200

20  claims to this Court after the conclusion of the McCauley Arbitration.  As a result, there is no

21  reason his claims cannot be heard on full notice, and certainly there is no irreparable injury if the

22  McCauley Arbitration is not enjoined.  See TRO Brief pp. 19-20.  Third, Kayne obviously has

23  adequate remedies at law.  The arbitration is about money; if Kayne is correct (and he is not) and

24  the arbitration clause is invalid, any award against him will be vacated in due course.  Having

25  failed to satisfy any of the elements required for a TRO – including asserting totally frivolous

26  claims for relief in a deceptive manner – Kayne's request for a TRO must be denied and the Court

27  [1]  The arbitration that Kayne seeks to enjoin is referred to herein as the "McCauley Arbitration"

28  after Pepperdine Law Professor Jay McCauley was jointly selected by the parties to act as the
    arbitrator.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1   should use its inherent power to sanction Kayne and his counsel for this egregious misuse of the

2   legal process.

3   **II.**    **STATEMENT OF FACTS**

4       **A.**    **Background of the Parties**

5       Thomas Kinkade is a world renowned artist.  TKC produces, markets and distributes Mr.

6   Kinkade's artwork through various distribution channels.  One of these distribution channels is

7   known as the "Thomas Kinkade Signature Gallery Program."  Complaint ¶ 8.

8       Kayne is the owner and President of Kayne Galleries.  Kayne and Kayne Galleries owned

9   and operated seven Signature Galleries in the Atlanta area.  Kayne opened his first Signature

10   Gallery in 1998 and his last in 2001.  *Id.* ¶ 9.

11      **B.**    **The Parties' Contractual Relationship**

12         1.    The Dealer Agreements

13       TKC, Kayne and Kayne Galleries entered into numerous agreements.  Included in these

14   various agreements were seven different Signature Gallery Dealer Agreements which authorized

15   Kayne Galleries to open and operate the Kinkade galleries (the "Dealer Agreements").  Complaint

16   ¶ 13.

17         2.    The Credit Agreement

18       In October 2001, Kayne signed and returned to TKC an application for credit for Kayne

19   Galleries and a Personal Guaranty.  Complaint ¶ 31.  The Personal Guaranty made Kayne

20   personally liable for the debts of Kayne Galleries.  Thereafter, TKC extended some $600,000 in

21   credit to Kayne Galleries.  Kayne has maintained in the Georgia Action (unsuccessfully) and

22   again pleads in this case, that while he agreed to the terms of the Credit Agreement and Personal

23   Guaranty, TKC (despite granting Kayne Galleries $600,000 in credit) never agreed to the terms.

24   Complaint ¶ 32, Weir Decl. Ex. 12, p. 182-183.  Accordingly, Kayne claims that he does not have

25   to pay TKC.  As discussed below, this contention was rejected by Judge Pannell in the Georgia

26   Action.  Judge Pannell found that the Credit Agreement and Personal Guaranty is a fully formed

27   contract and that the arbitration provision is valid and binding.  Weir Decl. Ex. 11; pp. 174-175.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

**C.    Kayne and Kayne Galleries Default on Their Obligations to TKC**

In late 2002, Kayne Galleries and Kayne were delinquent in their payments to TKC. Because of these delinquencies, TKC terminated the contracts with Kayne and Kayne Galleries and initiated the San Francisco Arbitration.  Complaint ¶ 35.

**D.    History of Disputes Between Kayne and TKC**

1.    The San Francisco Arbitration

In late 2002, TKC initiated the San Francisco Arbitration against Kayne and Kayne Galleries to recover approximately $600,000.  Complaint ¶ 35.  Kayne Galleries counterclaimed in the arbitration, seeking millions of dollars in damages based on multiple causes of action, including alleged breaches of contract, fraud and violations of franchise law.  Weir Decl. Exs. 1, 2, pp. 11-12, 19-44.  The franchise law claims are particularly relevant here as Kayne bases the current Section 17200 claim and procedural unconscionability claims on alleged violations of franchise law.  The counterclaim in the San Francisco Arbitration alleged that "Media Arts[2] violated the California Franchise Investment law in entering the franchise agreement with [Kayne Galleries]."  Weir Decl. Ex. 1, p. 12.  Further, TKC was specifically alleged to have violated the Federal Trade Commission Act and the Code of Federal Regulations.  *Id.*  Kayne argued that the dealer agreements were actually franchise agreements.  Kayne's opening brief contains the following statements:

"Media Arts is likely to vigorously contest its status as a franchisor, however if it walks like a duck, quacks like a duck, swims like a duck, and meets the legal definition of a duck, it's a duck.

\*          \*          \*

The dealer agreements at issue here are actually franchise agreements, and the Kayne galleries are indeed franchises under those agreements."

Weir Decl., Ex. 2, pp. 26-27.

Kayne went on to argue in the San Francisco arbitration that "[i]t is undisputed that [TKC] did not register as a franchise and that [TKC] did not provide franchise disclosures to Counter-

---

[2] TKC was formerly known as Media Arts.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1    claimants.  Therefore, [TKC] is liable to Counter-claimants for damages in connection with the

2    failure to disclose as well as in connection with the misrepresentation made to Counter-claimants

3    in the course of selling the franchise to counterclaimants." *Id.* at p. 29.  In this case, Kayne seeks

4    injunctive relief based upon the identical "failure to disclose" and "failure to register" theories.

5         On August 27, 2004 the majority of the Panel in the San Francisco Arbitration rejected all

6    of Kayne's counterclaims.  The Panel's award provided as follows:

7         7.  Respondent's 39 paragraph counterclaim contains some 16 major factual

8         conclusions, all of which were vigorously contested in this arbitration, and it

9         contains at least as many separate causes of action, including breach of the

10        covenant of good faith and fair dealing, unfair competition, anti-trust, RICO,

11        Federal Trade Commission Rules & Regulations, illegal termination, tortuous

12        [sic] interference with business relations, 'tortuous interference with business

13        expectancy-inspective economic advantage (sic)' fraudulent disclosure, price

14        discrimination, etc.

15        8.  By the close of evidence Respondent's causes of action had been pared to six:

16        (1) the dealer agreement is unconscionable (so its provisions barring

17        consequential and punitive damages is void); (2) Sherman Anti-Trust Act &

18        Clayton Act; (3) Unfair Trade Practices Act; (4) Interference with Prospective

19        Economic Advantage; (5) Fraud; and (6) California franchise [sic] Act.

20        9.  **Respondent has not proven by a preponderance of evidence the elements**

21        **of even one of these causes of action.**

22   (emphasis added) Weir Decl. Ex. 3, p. 50.

23        In addition to rejecting all of Kayne's counterclaims, the three-judge arbitration panel

24   awarded TKC $588,555 for art that was ordered by Kayne Galleries and delivered by TKC, but

25   never paid for.  The arbitration panel further found that the Personal Guaranty contained in the

26   Credit Agreement was binding and enforceable on Kayne and that he was personally liable for the

27   debts of Kayne Galleries.  Indeed, the Panel specifically noted in its "Reasons for Award" that

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Kayne testified that he signed the personal guarantee provisions and that he "'now' understands

2  his obligation under those provisions." Weir Decl. Ex. 3, p. 50.

3          **2.**      <u>The Arbitration Award Against Kayne Galleries is Confirmed</u>

4        After securing its arbitration award in the San Francisco Arbitration against Kayne and

5  Kayne Galleries, TKC moved to confirm the award in the Northern District of California.

6  Complaint ¶ 37.  In response, Kayne moved to vacate the award against him as an individual on

7  the ground that he was not a party to the Dealer Agreements that contained the arbitration clauses

8  pursuant to which the San Francisco Arbitration was initiated.  *Id.*  Specifically, Kayne argued that

9  disputes under the Credit Agreement and Personal Guaranty had to be arbitrated under the AAA

10  expedited rules, before a single arbitrator, in Santa Clara County.  The San Francisco Arbitration

11  was initiated under the Dealer Agreements and involved a lengthy and full evidentiary hearing

12  before a three-judge panel.  Weir Decl. Ex. 6; pp. 75-77.  The District Court confirmed the award

13  against Kayne Galleries, but agreed with Kayne with respect to the Personal Guaranty and vacated

14  the award against him personally.  Weir Decl. Ex. 8, 87-90.  The District Court found that because

15  the arbitration procedures called for in the Credit Agreement and Personal Guaranty were not

16  followed, the San Francisco Arbitration Panel did not have the authority to hold Kayne

17  individually liable.[3]  *Id.* at 88.

18          **3.**      <u>Kayne Seeks to Enjoin the Arbitration Under the Credit Agreement</u>

19        Following the District Court's order vacating the award against Kayne, on July 10, 2006

20  TKC initiated arbitration proceedings pursuant to the terms of the Credit Agreement and Personal

21  Guaranty.  Complaint ¶ 42; Weir Decl. Ex. 12, p. 185.  Kayne refused to arbitrate and ultimately

22  filed the Georgia Action seeking to enjoin the McCauley Arbitration.  He also asked for a

23  declaration that there was no valid and binding agreement to arbitrate.  Weir Decl. Ex. 12; pp.

24  [3] Once TKC initiated the arbitration at issue in this case under the expedited procedures called for

25  in the Personal Guaranty, Kayne shifted course and now claims that he is entitled a full
   evidentiary hearing.  Kayne, however, had his full hearing and lost.  In an effort to avoid that loss,

26  he argued to Judge Illston that his liability under the Personal Guaranty had to be determined
   pursuant to the arbitration procedures set forth in the Credit Agreement and Personal Guaranty.

27  TKC followed Kayne's suggestion and initiated an arbitration under the AAA's expedited rules,
   in Santa Clara County before a single arbitrator.  Kayne now claims that such procedures are

28  unfair and he is entitled to a full hearing.  At some point, this procedural gamesmanship must
   stop.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1   186-190.  TKC agreed to stay the McCauley Arbitration until the Georgia Action could be

2   decided.  Second Declaration of Charles E. Weir in Support of Defendant's Opposition to

3   Plaintiff's Motion for Temporary Restraining Order ("Second Weir Decl."), ¶ 2.  TKC filed a

4   motion in the Georgia Action to compel arbitration on the grounds that the Credit Agreement and

5   Personal Guaranty (a document which Kayne admits he executed) contained a valid and

6   enforceable arbitration clause.  In response, Kayne asserted that the Credit Agreement and

7   Personal Guaranty and the arbitration provision were invalid and void.  Kayne argued that the

8   Credit Agreement and Personal Guaranty were: (1) not supported by consideration, (2) were never

9   accepted by TKC, and (3) violated the Georgia Statute of Frauds.  Kayne also argued that the

10  arbitration clause did not cover disputes relating to the Personal Guaranty.  Complaint ¶ 43.

11        In support of his petition for injunctive and declaratory relief, Kayne argued that the

12  Georgia court must act quickly to enjoin the proceeding because of the AAA's expedited rules.

13  Specifically, Kayne alleged that "The American Arbitration Association's expedited rules allow

14  for only one arbitrator and do not allow for any hearing requiring witness production….As a

15  decision may be reached by the arbitrator at anytime, Kayne will suffer irreparable and immediate

16  harm if Defendant is allowed to proceed with this arbitration prior to this Court's determination of

17  the arbitrability of this case."  Weir Decl. Ex. 12, pp. 193-194.

18        On March 29, 2007 Judge Charles Pannell of the Northern District of Georgia rejected

19  each of Kayne's defenses to the enforcement of the arbitration clause and compelled the parties to

20  arbitration.  Kayne appealed Judge Pannell's ruling to the Eleventh Circuit.  Weir Decl. Ex. 13.

21        4.    Pursuant to the District Court's Order TKC Proceeds with the Arbitration

22        No stay of Judge Pannell's order was requested or entered.  Accordingly, on April 5, 2007

23  TKC contacted the AAA and informed them that the arbitration should proceed.  In response,

24  Kayne again raised the same objections that were made to Judge Pannell, refused to arbitrate and

25  made various threats against TKC, TKC's Counsel and the AAA regarding the order to arbitrate.

26  Second Weir Decl. ¶ 2,3, Exhibit 16.  Fortunately, Professor McCauley properly concluded that he

27  was required to comply with Judge Pannell's Order and he set the matter for hearing consistent

28  with the parties' arbitration agreement.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

5.    The Timing of the Kayne's Lawsuit and TRO Application

The timing of Kayne's current lawsuit and TRO request is suspect and indicative of the continued bad faith and gamesmanship that characterizes Kayne's litigation strategy. Kayne's counsel first threatened this lawsuit as early as August 8, 2007 on a conference call with Professor McCauley. On this same conference call Professor McCauley set the arbitration hearing date for October 16, 2007. Second Weir Decl., ¶ 4. Despite setting the hearing for much further out than was required under the AAA's expedited rules, the October 16th date was agreed to by TKC at the request of Kayne's counsel. Kayne also urged the AAA and the arbitrator to stay the arbitration in contravention of Judge Pannell's Order. Professor McCauley orally ruled on September 4, 2007, that he would not stay the arbitration. *Id.* ¶ 5. Professor McCauley's written opinion followed shortly thereafter. Weir Decl. Ex. 15. Thus, despite knowing from at least August 8, 2007 that the arbitration hearing would take place on October 16, 2007 and having threatened as early as August 8, 2007 that he would seek to enjoin the arbitration, Kayne waited until October 2, 2007 to serve his request for injunctive relief. Kayne could easily have brought his complaint and request for injunctive relief on full notice, but instead choose to wait almost two months.

**E.    Kayne's Allegations in this Action**

While Kayne purports to bring "new" claims unrelated to the allegations he brought in prior proceedings, he, in fact, seeks the same relief he sought in the Georgia Action. Specifically, he now seeks (just as he did in the Georgia Action) a declaratory judgment that the arbitration clause in the Credit Agreement and Personal Guaranty is not enforceable and that the arbitration initiated by TKC on July 10, 2006 should be enjoined. Complaint ¶¶ 54-71. Kayne bases his requests on two legal theories – the arbitration provisions in the Credit Agreement and Personal guaranty are unconscionable and they are void because they violate California Business and Professions Code Section 17200 ("Section 17200").

**III.    KAYNE'S REQUEST FOR A TRO MUST BE DENIED**

To obtain injunctive relief, Kayne must show that he has no adequate remedy at law. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   federal courts has always been irreparable harm and inadequacy of legal remedies."). To obtain a

2   temporary restraining order, Kayne must show the additional element of probability of success on

3   the merits. In evaluating whether he can establish probability of success on the merits, Kayne

4   must establish either (1) a combination of probable success on the merits and the possibility of

5   irreparable injury, or (2) that serious questions on the merits are raised and the balance of

6   hardships tips sharply in its favor. *Miller v. California Pacific Medical Ctr.*, 19 F. 3d 449, 456

7   (9th Cir. 1994). Even if the balance of the hardships tips sharply in a his favor, Kayne must show

8   as an "irreducible minimum," a fair probability of success on the merits. *Stanley*, 13 F.3d at 1320.

9   Kayne cannot meet any of these requirements.

10  **IV.    KAYNE HAS ZERO CHANCE TO SUCCEED ON THE MERITS**

11          In his TRO papers Kayne asserts only his unconscionability claim in support of the

12  "likelihood of success on the merits" element. TRO Brief, *en passim*. Accordingly, while the

13  Section 17200 claim fails for a litany of reasons[4], because Kayne does not rely on it in his Motion

14  for a TRO, TKC will focus on the numerous flaws in Kayne's "unconscionability" assertions.

15          **A.    All of Kayne's Claims Are Plainly Barred by Res Judicata**

16          The doctrine of res judicata is well-established. It bars a party from bringing a claim if a

17  court has rendered final judgment on the merits of the claim in a previous action involving the

18  same parties or their privies. *In re International Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994)

19  (doctrine of claim preclusion barred bankruptcy trustee from asserting antitrust claim where the

20  trustee could have raised antitrust issues at prior hearings). "Res judicata bars all grounds for

21  recovery that could have been asserted, whether they were or not, in a prior suit between the same

22  parties on the same cause of action." (internal citations omitted) *Id.*; *Brown v. Felsen*, 442 U.S.

23  127, 131 (1979) ("[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that

24  were previously available to the parties, regardless of whether they were asserted or determined in

25  the prior action"); *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) (compulsory

26

27  [4] Many of the reasons Kayne's unconscionability claims fail overlap with why Kayne's Section
    17200 claims fail. For example, both claims are plainly barred by res judicata. Additionally,
28  each rely on alleged violations of franchise laws and Kayne is collaterally estoppel from
    rearguing. The identical claims were raised and rejected in the San Francisco Arbitration.

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   counterclaim that was not asserted was barred in future actions); *International Union of Operating*

2   *Eng'rs, v. Karr*, 994 F. 2d 1426, 1430-1431 (9th Cir. 1993) (claim for underpayment of pension

3   funds was barred by prior action which sought to collect delinquent payments to funds); *C.D.*

4   *Anderson & Co. v. Lemos*, 832 F. 2d 1097, 1099-1100 (9th Cir. 1987) (where parties had a

5   contract requiring "any dispute…between the parties to be arbitrated," an arbitral award granted

6   on customer's claim for return of deposits and forgiveness of debt for certain stock transactions

7   precluded broker from subsequently asserting securities fraud and RICO claims arising from same

8   transaction).

9        The Ninth Circuit applies a four part test to determine whether successive suits involve the

10  same cause of action: (1) whether rights or interests established in the prior judgment would be

11  destroyed or impaired by prosecution of the second action; (2) whether substantially the same

12  evidence is presented in the two actions; (3) whether the two suits involve infringement of the

13  same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *In re*

14  *International Nutronics, Inc.*, 28 F.3d at 969. Of these factors, the fourth factor, i.e., whether the

15  two suits arise out of the same transactional nucleus of facts is the most important. *Id.*; *C.D.*

16  *Anderson & Co.*, 832 F. 2d at 1099-1100 (9th Cir. 1987).

17       Kayne's newest Complaint clearly meets each element of this test. In the Georgia Action,

18  Kayne sought an order declaring that the arbitration provision contained in the Credit Agreement

19  and Personal Guaranty was invalid and unenforceable. Weir Decl. Exs. 10, 12, pp. 124, 186-191.

20  Kayne also asked the Georgia court to enjoin the arbitration commenced by TKC on July 10, 2006

21  on the grounds that there was no valid agreement to arbitrate. Weir Decl. Ex. 12, pp. 193-194. In

22  this action, Kayne asks the Court to declare that the exact same arbitration provision is invalid and

23  unenforceable – the same relief that was denied in the Georgia Action. Complaint ¶ 60. Kayne

24  also asks this Court to enjoin the same arbitration commenced by TKC on July 10, 2006 – again,

25  the same relief that was denied in the Georgia Action.

26       Turning specifically to the elements, there is no doubt that each element is met and that

27  Kayne's current Complaint is patently frivolous. First, it is clear the second action will "destroy

28  the prior judgment." Kayne is simply asking this Court to disagree with Judge Pannell and grant

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

the same relief that was earlier denied by the Georgia court.  Second, not only will "substantially the same evidence" be presented, but the identical evidence will be presented.  Both cases are and were about the enforceability of the same agreement.  Third, exactly the same rights are at issue, namely whether Kayne must arbitrate with TKC pursuant to the arbitration provisions of the Personal Guaranty.  Finally, and again obviously, the two suits arise out of the same transactional nucleus of facts.  Each suit involves exactly the same agreement and seeks exactly the same relief.

Ironically, while res judicata obviously applies in this instance to bar Kayne's current claims, it must be noted that there are numerous instances in this case where Kayne asserts the exact opposite of what he asserted in Georgia.  Thus, not only does Kayne seek to undermine all of the policies associated with res judicata, he would have this Court impose the unfair burden on TKC of having to defend two separate actions based on diametrically opposite assertions by Kayne.  Indeed, as the table below illustrates Kayne made a series of tactical decisions and assertions in the Georgia Action that became inconvenient to his current goals (inconvenient because he was unsuccessful) and which he now simply disavows.  Because of this bad faith and gamesmanship, and the application of res judicata is particularly just.

| California Action | Georgia Action |
| --- | --- |
| Asserts that California law applies to the interpretation of the contract because Kayne apparently prefers California's unconscionability rules.  TRO Brief, *en passim*.[5] | Asserted in both the District Court and 11th Circuit that California law does not apply, but that Georgia law applies because Kayne concluded that the Georgia Statute of Frauds worked to his advantage.  Weir Decl. Ex. 10, pp. 128-130. |
| Asserts that the AAA's Expedited Rules do not prevent a hearing with witnesses because Kayne believes that it helps his unconscionability | Asserted that the AAA's Expedited Rules prevent witnesses from testifying because Kayne sought to establish the existence of |

---

[5]  While Kayne is correct that California law applies to this case, it cannot be overlooked that he made the tactical decision to disavow California law and assert Georgia law applied.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

| arguments.  TRO Brief, p. 17. | exigent circumstances to support his request for a TRO.  Weir Decl. Ex. 12, pp. 193-194.[6] |
|---|---|
| Asserts that the Dealer Agreements provide him as an individual with protections under the Franchise laws.  TRO Brief, p. 14. | Asserted that he individually was not a party to the Dealer Agreements because it supported his effort to show failure of consideration.  Weir Decl. Ex. 10, pp. 116-118, 122-123. |

### B.    Kayne's Attempts to Avoid Judge Pannell's Ruling are Absurd

Without citing to any authority, in his TRO papers, Kayne claims he is entitled to ignore Judge Pannell's order compelling the parties to arbitration for these specious reasons. Specifically, Kayne argues he can ignore Judge Pannell's order because:

(a) The question of whether Mr. Kayne formed an agreement with TKC (issues of offer, acceptance and consideration) is *separate* from whether the arbitration clause in the agreement is or was *unconscionable*; (b) Mr. Kayne's complaint expressly disavows any intention to "re-litigate" the issues presented to Judge Pannell; and (c) In any event, the Ninth Circuit's *en banc* decision in *Nagrampa* was not issued until *after* Mr. Kayne had presented is (sic) other arguments (based on pre-*Nagrampa* law) to Judge Panel (sic).

TRO Brief p. 4. Each assertion fails.

1.    Kayne's Distinction Between Contract Formation and Contract Validity is Meaningless.

This purported "distinction" between challenging the enforceability of an agreement on formation grounds vs. unconscionability grounds is fanciful and absurd.  Essentially, Kayne is arguing that he can maintain two actions in two different district courts regarding the enforceability of the exact same agreement, if the first action deals only with whether an agreement was formed while the second action deals with whether the same agreement is legally

---

[6]  Kayne was correct in Georgia.  The Expedited Rules do not permit witnesses.  *See* Section IV.C.2, *infra*.

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

valid.  This is plainly wrong.  *Brown*, 442 U.S. at 131; *In re International Nutronics, Inc.,* 28 F.3d at 969 (barring "all grounds for recovery that could have been asserted, whether they were or not").  When Kayne sought an injunction and a declaration from the Georgia court that he did not have to arbitrate with TKC, he was obligated to bring all of his claims regarding the enforceability of the arbitration agreement.  Further, when TKC moved to compel arbitration, Kayne was obligated to raise all of his defenses to the enforcement of the arbitration agreement.  *Id.*  This plainly includes the claims brought here, i.e. that the arbitration provisions are unenforceable because they are unconscionable.  Having asserted and lost in the Georgia Action that the arbitration agreement is unenforceable, the law is clear that Kayne cannot now run to another district court seeking the same relief regarding the same contract.  In Georgia, he challenged the agreement's validity on both formation and Statute of Frauds grounds; now, in California, he challenges the agreement's validity on unconscionability grounds.  What is next?  A challenge in Texas that the arbitration agreement is invalid because it was procured by duress?  Clearly this is not how the judicial system should work.  Kayne's claims are barred.  *Brown*, 442 U.S. at 131; *In re International Nutronics, Inc.,* 28 F.3d at 969.

> ### 2.    Whether or not Kayne Disavows "Relitigation" of Issues is Irrelevant

Kayne's second assertion borders on the insulting.  Kayne argues he is free to ignore Judge Pannell's order and seek the same relief in this Court simply because in his Complaint he claims he does not seek to relitigate the Georgia Action.  TRO Brief, p. 4.  While Kayne's "because I said so" argument may have worked in grade school, it does not work here.  Whether or not he believes his claims are barred by basic legal principals is not the controlling precedent.  If parties could avoid the application of res judicata by simply "disavowing" its application, there would be no res judicata rule left.

> ### 3.    The Timing of the *Nagrampa* Decision Does Not Help Kayne

Again without citing any authority, Kayne's argues that he can maintain his current claims despite seeking the identical relief in Georgia, because *Nagrampa v. Mailcoups, Inc.,* 469 F. 3d 1257 (9th Cir. 2006) was decided after he presented his arguments in the Georgia Action.  This argument is empty and without merit for numerous reasons.  First, there is no exception to the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    application of res judicata in this circumstance.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S.

2    394, 398 (1981) (plaintiff in prior action was barred from pursuing subsequent action for same

3    claim even though his co-plaintiffs in the prior action had successfully appealed the judgment);

4    *Clifton v. Attorney General of State of California*, 997 F. 2d 660, 663 (9th Cir. 1993) (new statute

5    permitting parole hearing every two years was not a sufficient change in circumstance to avoid

6    claim preclusion effect of prior judgment).  A party is not allowed to relitigate his case in a new

7    forum because the law changes after a judgment was issued.  *Id.*

8        Second, *Nagrampa* plainly did not make any "new law."  It applied California

9    unconscionability rules to an arbitration clause pursuant to a Supreme Court precedent that is forty

10   years old.  Indeed, even a superficial analysis of *Nagrampa* makes clear that there are no "new"

11   legal principals.  *Nagrampa* simply applies the rule set out in *Prima Paint Corp. v. Flood &*

12   *Conklin Mfg. Co.*, 388 U.S. 395 (1967).  Specifically, if a party challenges the arbitration

13   provisions in a contract it is a matter for the courts to decide; if, however, the challenge is to the

14   validity of the agreement as a whole it is a matter for the arbitrator.  *Prima Paint Corp.*, 388 U.S.

15   at 403-404.  This rule was reinforced recently by the Supreme Court in *Buckeye Check Cashing,*

16   *Inc. v. Cardegna*, 546 U.S. 440 (2006).  Kayne was fully aware of these decisions as he cited both

17   of them to the District Court in Georgia in support of his challenge to the arbitration clause in the

18   Credit Agreement and Personal Guaranty.  Weir Decl., Ex. 10.  Moreover, as the *Nagrampa*

19   court's own survey of the case law reveals, jurisdictions have dealt with this precise issue in the

20   context of an unconscionability challenge and have determined that if the challenge is to the

21   arbitration clause itself, it is a matter for the courts.  *Nagrampa*, 469 F.3d at 1271-1277.  Indeed,

22   *Nagrampa* cites to Supreme Court precedent that is over ten years old stating "[i]t is well-

23   established that unconscionability is a generally applicable contract defense, which may render an

24   arbitration provision unenforceable.  *Nagrampa*, 469 F.3d at 1280, citing *Doctor's Assocs., Inc. v.*

25   *Casarotto*, 517 U.S. 681, 686–687 (1996).

26       Accordingly, to the extent that Kayne is claiming that it is only with the *Nagrampa* case

27   that he had the right to challenge an arbitration clause on unconscionability grounds, Kayne's

28   claim is false.  Even an extremely limited review of the case law would have revealed that an

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1    unconscionability challenge to the arbitration clause itself could have been brought in the Georgia

2    Action.  In addition, California courts have recognized the principal that contracts can be void

3    because they are "unconscionable" for over one hundred years.  *Boyce v. Fisk*, 110 Cal. 107, 114

4    (1895) (discussing unconscionability as a defense to contract enforcement.)  Again, even a cursory

5    review of *Nagrampa* would have revealed to Kayne and his counsel that the *Nagrampa* court was

6    applying long established California law regarding unconscionability.  *Nagrampa*, 469 F.3d at

7    1280, citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).  *Nagrampa* did

8    not create new law.

9        Third, in an effort to make it appear that he could not have raised the unconscionability

10    issue in the Georgia Action, Kayne blatantly misrepresents the timing of the *Nagrampa* decision

11    in relation to the Georgia Action.  Complaint ¶ 47.  The *Nagrampa* decision was filed December

12    4, 2006.  Judge Pannell issued his order in the Georgia Action on March 29, 2007.  Kayne had

13    nearly four months to bring the "new law" to Judge Pannell's attention and he chose not to.  Thus,

14    even if there was an exception to the res judicata rules (which there is not) and even if *Nagrampa*

15    actually set out  "new law" (which it does not), Kayne had ample opportunity to raise the

16    "unconscionability argument" in the Northern District of Georgia.  Kayne's "new law" argument

17    is frivolous.[7]

18    **C.    The Arbitration Clause is Not Unconscionable**

19        Under California law, a provision in a contract is unconscionable and unenforceable only

20    if it is "procedurally" unconscionable and "substantively" unconscionable.  *Aron v. U-Haul*

21    *Company of California*, 143 Cal. App. 4th 796, 808 (2006).  "The procedural element focuses on

22    two factors: oppression and surprise." *Id.*  "Oppression arises from an inequality of bargaining

23

24    [7] The fact of the matter is that Kayne specifically selected Georgia as a forum for his claims and
      made the tactical (albeit incorrect) decision to assert that Georgia law governed the Credit
25    Agreement and Personal Guaranty.  Kayne took this position because he believed that the Georgia
      Statute of Frauds made the Personal Guaranty unenforceable.  Accordingly, without obviously
26    contradicting himself, he could not assert before Judge Pannell that California law applied and
      that the Georgia court should follow the California unconscionability rules set out in *Nagrampa*
27    or that California's unfair competition law barred the claims.  He made a tactical decision  that
      Georgia law was more friendly to his claims, having lost before Judge Pannell, he cannot now
28    abruptly change course and seek to apply California law.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1    power which results in no real negotiation and an absence of meaningful choice.  Surprise

2    involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a

3    prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (internal

4    quotations and citations omitted).  The substantive element looks at the contract terms themselves

5    and analyzes whether they are "overly harsh" or "shock the conscience." *Id.*  "Shock the

6    conscience" is not to been confused with unreasonable.  "[I]t is important that courts not be thrust

7    in the parternalistic role of intervening to change contractual terms that the parties have agreed to

8    merely because the court believes the terms are unreasonable." *Id.*

9            1.    The Arbitration Agreement is Not Procedurally Unconscionable

10        To demonstrate procedural unconscionability, Kayne relies heavily on TKC's alleged

11   failure to comply with California and Federal franchise disclosure rules.  Kayne's reliance is

12   woefully misplaced for three reasons.

13        First, Kayne Galleries asserted the exact same Franchise law violations against TKC in the

14   San Francisco Arbitration and lost.  Weir Decl. Ex. 3.  Accordingly, Kayne is collaterally

15   estopped from attempting to relitigate the franchise law issues.  "Collateral estoppel, or issue

16   preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the

17   same parties." *Offshore Sportswear, Inc. v. Vuarnet International, B.V.,* 114 F.3d 848, 850 (9th

18   Cir. 1997) (quoting *Clark v. Bear Sterns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir. 1992)).

19   "Collateral estoppel..., generally applies when an issue finally decided in an earlier action is

20   involved in a second action, and the parties involved in the second action are bound by the first

21   decision."

22        Second, the Federal Regulations that he relies upon were not effective until July 1, 2007,

23   long after the transactions between the parties were concluded and even after the arbitration at

24   issue was commenced.  Specifically, Kayne points to "[o]f particular relevance here, 'item 17.u

25   and 17.v' of the 'Disclosure Items' required under 16 C.F.R. § 436.5 called for explicit

26   disclosures by TKC of the dispute resolution and forum provisions of any agreements it entered

27   into with franchisees and their principals." TRO Brief pp. 15 - 16.  As the Federal Trade

28   Commission makes clear in its final rule making publication, the obligation to disclose dispute

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1    resolution terms did not exist in the regulations prior to the July 1, 2007 amendments.  72 F.R.

2    15444, 15495 ("Item 17 expands on the original Rule by requiring disclosures pertaining to

3    dispute resolution, including any arbitration or mediation requirements, as well as forum-selection

4    and choice of law provision disclosures."); *see also* 16 C.F.R. 436.1 (precursor to 16 C.F.R. 436.5

5    requiring disclosure of 14 items, but not dispute resolution terms).  Accordingly, even if TKC was

6    required to make disclosures under federal regulations (which it was not), the federal regulations

7    that would have governed the transactions did not require the disclosure of dispute resolution

8    terms.

9         Third, Kayne's assertion that the arbitration provisions were not disclosed is simply not

10   true.  To believe Kayne's claim one must believe that Kayne was capable of understanding the

11   identical arbitration clause in a lengthy "offering circular" but was somehow incapable of

12   comprehending it in a two page document.  There is not surprise here.

13              2.    The Arbitration Clause is Not Substantively Unconscionable

14        The arbitration provisions on their face are not "one sided" as the expedited rules apply

15   equally to both parties.  Complaint Ex. A.  "The paramount consideration in assessing

16   unconscionability is mutuality."  *Abramson v. Juniper Networks, Inc.,* 115 Cal. App. 4th 638, 657

17   (2004).  Courts have routinely rejected unconscionability attacks when there is mutuality as there

18   is here. *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 100 -101 (2003) (holding

19   that clause requiring all disputes be submitted to arbitration was mutual and not unconscionable);

20   *24 Hour Fitness v. Superior Court*, 66 Cal. App. 4th 1199, 1215 (1998) (rejecting

21   unconscionability claim because the arbitration clause applied equally to both parties).  The

22   existence of mutuality is only one of the facts that distinguishes this case from *Nagrampa,* 469

23   F.3d at 1285.  In *Nagrampa* there was no mutuality.  Unlike this case, Mailcoups, Inc. did not

24   have to arbitrate all of its claims against Nagrampa, while Nagrampa was obligated to arbitrate all

25   of her claims against Mailcoups, Inc.  Moreover, using rules promulgated by a nationally

26   recognized third party, the AAA rules simply cannot be deemed to "shock the conscience."

27   Indeed, the AAA, specifically designs its rules to be fair to both arbitrating parties.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -                      OPPOSITION TO
                                                                                MOTION FOR TRO
                                                                                (No. 07-4721 (JF) (RS))

1    Further, Kayne's attempt to manufacture substantive unconscionability by characterizing

2    the arbitration provisions in the Credit Agreement and Personal Guaranty as substantively

3    modifying the expedited rules fails. The arbitration provisions do not allow witnesses; but none

4    are allowed under the expedited rules either. Kayne's construction of Rule E-6 is simply wrong.

5    While the expedited rules do permit oral arguments, they do not permit witnesses. This

6    conclusion is clear when one compares the expedited rules with the regular commercial

7    arbitration rules. The regular arbitration rules specifically discuss the exchange of documents and

8    witness lists. Second Weir Decl., Ex. 17, R-21. In fact the regular arbitration rules require

9    "oaths" (Rule 25), discuss how witnesses will be examined (Rule 30), subpoenaing witnesses to

10    the hearing (Rule 31) and various other provisions regarding the presentation of witnesses.

11    Second Weir Decl. Ex. 16. In contrast, the expedited rules contain no discussion of witnesses. In

12    fact, Rule E – 5 requires the parties only to "exchange copies of all exhibits they intend to submit

13    at the hearing." Second Weir Decl., Ex. 17. The Rule says nothing about witness disclosures.

14    Kayne's construction of the rules would mean that the parties could call unlimited, undisclosed

15    witnesses. When read in connection with the procedures in the Commercial Arbitration Rules

16    that do allow witnesses, it is obvious that Kayne's construction is wrong.

17    Accordingly, far from trying to hide the nature of the proceeding and the fact that there

18    would be no witnesses under the AAA expedited rules, TKC simply repeated that fact in the

19    arbitration clause. Thus, the "no witnesses" language actually hurts, rather than, helps Kayne's

20    claim of surprise.

21    **V.    KAYNE CANNOT SHOW IRREPARABLE HARM**

22    Kayne utterly fails to establish irreparable harm. This failure to show irreparable harm is,

23    by itself, a sufficient ground upon which to deny a preliminary injunction. *Gelco Corp. v.*

24    *Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

25    The language in Kayne's own brief establishes that he will not be irreparably harmed if

26    this injunction does not issue. Kayne states:

27    [W]hile Mr. Kayne retains the right to challenge any arbitral award resulting from

28    the hearing based on *Nagrampa* and other recent case law (such as *Gentry*)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    dealing with the unconscionability of the arbitration clause, he has significant and

2    legitimate interest in determining before the arbitration occurs whether it is

3    unconscionable.

4    TRO Brief p. 20.  This appears to be a variation of Kayne's prior "because I said so" argument as

5    Kayne does not tell us what this injury actually is.  Indeed, as Kayne acknowledges, he will have

6    the opportunity to present his unconscionability defenses after the arbitration.  If, Kayne's

7    unconscionability claim is correct (and it is not), any arbitration award based on the

8    unconscionable arbitration provisions in the Credit Agreement and Personal Guaranty would be

9    vacated.  Kayne will have lost absolutely nothing.  There is simply no showing of any injury by

10    allowing the arbitration to proceed, let alone an irreparable injury.[8]  Kayne's TRO must be denied

11    on this ground alone.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

12        In addition, delay in seeking a remedy is an important factor bearing on the need for a

13    preliminary injunction.  *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, 2006 U.S. Dist. LEXIS

14    36590, at *3 (N.D. Tex. June 6, 2006); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.

15    1985) (10 week delay) *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975)

16    (three month delay).  A substantial period of delay militates against the issuance of a preliminary

17    injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.

18    *Id.*

19        Kayne has repeatedly delayed seeking relief.  Judge Pannell of the United States District

20    Court for the Northern District of Georgia issued his order compelling the parties to arbitration

21    over six months ago, on March 29, 2007.  Weir Decl., Ex. 11.  Kayne could have sought this

22    remedy at that point in time.  TKC signaled its desire to resume the arbitration pursuant to Judge

23    Pannell's order on April 5, 2007.  Kayne could have sought this remedy at that point in time.

24    Professor McCauley set the October hearing date on August 8th.  Second Weir Decl., ¶¶ 2, 4.

25    could have sought this remedy at that point in time.  Kayne filed his Complaint in this action on

26    September 12, 2007.  He certainly could have sought this remedy at that point in time.  In each

27    ────────────
[8]  For the exact same reason, Kayne cannot show that he has no adequate remedy at law.  In fact,

28    he admits he has adequate remedies following the arbitration.  Accordingly, Kayne's TRO request
    should be rejected for this additional reason.

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1    instance, he elected to delay and wait until two weeks before the hearing date to seek this relief.

2    This pattern of substantial and repeated delay weighs heavily against Kayne's claims of

3    irreparable harm.

4    **VI.    PUBLIC POLICY FAVORS TKC**

5        Kayne's unsupported public policy plea fails.  If public policy considerations

6    favor any party, they favor TKC.  The principals of res judicata embody strong federal

7    policies to promote an efficient judicial system.  "Public policy dictates that there be an

8    end of litigation; that those who have contested an issue shall be bound by the result of

9    the contest, and that matters once tried shall be considered forever settled as between the

10    parties." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981), citing *Baldwin

11    v. Traveling Men's Association*, 283 U.S. 522, 525 (1931).  "[The] doctrine of res judicata

12    is not a mere matter of practice or procedure inherited from a more technical time than

13    ours. It is a rule of fundamental and substantial justice, 'of public policy and of private

14    peace,' which should be cordially regarded and enforced by the courts...." *Federated

15    Dep't Stores*, 452 U.S. at 401, citing *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294,

16    299 (1917).

17        In addition, Kayne's TRO request tramples on the strong federal policies favoring

18    the enforcement of arbitration agreements.  *Blinco v. Green Tree Servicing LLC*, 400 F.

19    3d 1308, 1311 (11th Cir. 2005) (noting "the unquestionably strong federal policy

20    favoring arbitration").  "In deciding the question of arbitrability, the federal policy is to

21    construe liberally arbitration clauses, to find that they cover disputes reasonably

22    contemplated by this language, and to resolve doubts in favor of arbitration…" *Coenen

23    v. R.W. Pressprich& Co.*, 453 F.2d 1209, 1212 (2nd Cir. 1972).

24        Moreover, Kayne's public policy assertion are completely unsupported.  Kayne

25    does not provide any evidence that there are any other "franchisees" or members of the

26    "general public" that are or will be subject to the arbitration clause at issue.  At this time,

27    TKC is unaware of any other party who is similarly positioned with Kayne, i.e. one who

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO
MOTION FOR TRO
(No. 07-4721 (JF) (RS))

1  refuses to pay their debts, insists on manipulating the legal system and is subject to this

2  particular arbitration provision at issue.  Kayne's public policy plea rings hollow.

3  **VII.    THE COURT SHOULD STRONGLY CONSIDER SANCTIONS**

4       Courts have the inherent power to sanction parties and to order the payment of

5  attorney's fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or

6  for oppressive reasons.'"  *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th

7  Cir. 1982).  "Bad faith may be found, not only in the actions that led to the lawsuit, but

8  also in the conduct of the litigation."  *Id.* (citations omitted).  Because an award of

9  attorneys' fees for bad faith is punitive, it should only be imposed in "exceptional cases

10 and for dominating reasons of justice."  *Id.* (citations omitted).  Within these guidelines,

11 however, "an award of attorneys' fees is within the district court's discretion."  *Id.*  TKC

12 submits that this motion falls with the range of conduct that warrants an award of

13 attorneys' fees and costs to TKC.  If the Court is inclined to grant fees, TKC's counsel

14 will submit a declaration substantiating the fees and costs associated with this opposition.

15 **VIII.   CONCLUSION**

16      For the foregoing reasons, including that Kayne has no chance of success on the merits and

17 there is absolutely no showing of irreparable injury, the Court should deny Kayne's request for a

18 temporary restraining order.  Additionally, given Kayne's abuse of the TRO process and the legal

19 system as a whole, TKC urges the Court to exercise its inherent power to sanction Kayne for this

20 frivolous request.

21 Dated: October 3, 2007                    McDERMOTT WILL & EMERY LLP

22                                          DANA N. LEVITT, PC
                                           CHARLES E. WEIR

23                                          JASON D. STRABO

24

25                                          By:_____/s/_____

26                                             Charles E. Weir
                                              Attorneys for Defendant

27                                          THE THOMAS KINKADE COMPANY

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES