IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAVID KAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 1:06-CV-2168-CAP |
| v. | ) | |
| | ) | |
| THE THOMAS KINKADE COMPANY, | ) | |
| f/k/a MEDIA ARTS GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

### I.    STATEMENT OF THE CASE

Defendant seeks to have this Court enforce an arbitration agreement between the parties that does not exist. Defendant seeks to arbitrate whether Kayne is personally liable for the alleged debts of Kayne Art Galleries of Georgia, Inc. ("Kayne Art Galleries") and if so, the amount of that liability. Unfortunately, Defendant has confused the Credit Application between Defendant and Kayne Art Galleries of Georgia, Inc., which contains an arbitration provision to arbitrate *all disputes arising from the Credit Application*, and the Personal Guaranty ("Personal

Exhibit 10
Page 114

Guaranty[1]") between Defendant and Kayne, in which Kayne agrees merely to be bound by Kayne Art Galleries' agreement to arbitrate disputes arising *from the Credit Application*.

Under the Supreme Court's most recent ruling in <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, --U.S. --, 126 S.Ct. 1204, 1208 (2006), this Court is the proper tribunal to determine (i) whether the subject matter Defendant seeks to arbitrate falls within the purview of the arbitration provision in the Credit Application, and (ii) whether Kayne and Defendant ever concluded an agreement binding Kayne to arbitrate *any* issues. Kayne requests that this Court deny Defendant's motions to compel arbitration and to dismiss Kayne's complaint.

## II.   STATEMENT OF FACTS

Defendant is a manufacturer/distributor of artwork. (Plaintiff's verified Petition for Declaratory Judgment and Injunctive Relief ("Verified Complaint") ¶ 7). In April 1998, Kayne entered into discussions with Defendant about investing in a Thomas Kinkade Signature Gallery dealership and filled out an application for credit as part of Defendant's pre-qualification of potential dealership investors. (Kayne Aff. ¶ 3). This application for credit was for Defendant to determine

---

[1] For the sake of simplicity and without conceding that the Personal Guaranty rises to the level of a concluded agreement, from this point forward the "purported Personal Guaranty" is referred to as the Personal Guaranty.

Exhibit 10
Page 115

whether Kayne was financially viable and capable of financing the start-up of one of Defendant's galleries. (Kayne Aff. ¶ 4). Neither Kayne nor Kayne Art Galleries ever purchased artwork from Defendant pursuant to this April 1998 application for credit. (Order Denying Plaintiff's Motion to Confirm Arbitration Award and Granting Defendants' Motion to Vacate or Modify Award ("District Court Order") attached to Def.s' Memo. of Points and Authorities in Supp. of its Mot. to Compel Arbitration and Dismiss all Claims of David Kayne ("Defendant's Memorandum") as Exhibit "F", pp. 2; Kayne Aff. ¶ 5).

Dealer Agreements

Kayne Art Galleries, a Georgia corporation, became a dealer of Defendant's artwork, by entering into a series of Signature Dealer Agreements ("Dealer Agreements") with Defendant beginning in November, 1998.[2] (Kayne Aff. ¶ 6; Verified Complaint ¶¶ 1, 8). Six of the seven Dealer Agreements between Kayne Art Galleries and Defendant are attached to David Kayne's Affidavit as Exhibits "A" through "F". (Kayne Aff. ¶ 7). The Dealer Agreements governed the relationship, including rights and obligations, between Kayne Art Galleries and Defendant. (Kayne Aff. ¶ 10). Kayne signed all of the Dealer Agreements as a

---

[2] While the Personal Guaranty and Credit Application are specifically at issue in this case, these Dealer Agreements define in specific detail the relationship between Defendant and Kayne Art Galleries.

3

Exhibit 10
Page 116

corporate officer of Kayne Art Galleries.    (Kayne Aff. ¶ 8).    Kayne has not

individually, in his personal capacity, ever entered into a Dealer Agreement with

Defendant. (Kayne Aff. ¶ 9; Verified Complaint ¶ 9).    Kayne Art Galleries began

operating its galleries in 1998, purchased Defendant's artwork on credit pursuant

to the Dealer Agreements, and sold the artwork in its stores in Georgia.  (Kayne

Aff. ¶11).

   Defendant shipped the paintings from California to Kayne Art Galleries via

private carrier, generally Federal Express, and paid the Federal Express bill itself.

(Kayne Aff. ¶ 12).   Defendant would then subsequently bill Kayne Art Galleries

for the shipping costs.  (Kayne Aff. ¶ 13).   The Dealer Agreements provided that

the risk of loss of the goods in transit was on Defendant, and in the event paintings

became damaged during shipment, Kayne Art Galleries was required by the Dealer

Agreements to return the damaged artwork to Defendant.   (Dealer Agreements,

Standard Terms and Conditions § 8).   Defendant would then handle any disputes

with Federal Express.  (Dealer Agreements, Standard Terms and Conditions § 8).

   All seven Dealer Agreements (from 1998 to 2001) contain the same

provision which provides as follows:

> DEALER is approved for extended, net 60 day (from
> date of invoice), credit terms on all purchases.  Should
> DEALER fail to keep account current in credit status
> (e.g. if DEALER is on credit hold), MEDIA ARTS

Exhibit 10
Page 117

> reserves the right to cease any and all shipments until the account is returned to current credit status. Subject to DEALERS right to cure default, should the account become more than 90 days past due, MEDIA ARTS reserves the right to terminate this agreement or move DEALER to a lower strata (i.e. Authorized, Premier or Showcase Premier).

(Dealer Agreement 1, § 3(h), <u>Dealer Obligations</u>, Dealer Agreements 2-7, § 2(h),

<u>Dealer Opportunities</u>.) The "DEALER" is Kayne Art Galleries. As all sales were

pursuant to the Dealer Agreements, therefore, Kayne Art Galleries was approved

for credit, net 60 days from the date of invoice, for each gallery operated by Kayne

Art Galleries. This net 60 days is further confirmed by the Statements of Account

from Defendant to Kayne Art Galleries, where both the invoice date and the due

date are listed as 60 days apart. (Kayne Aff. ¶ 27, Exhibit "G").

<u>The Credit Application</u>

Although Kayne Art Galleries had not come close to exhausting its credit

limit, several years after the parties established their relationship, Defendant

presented it with an "Application for Credit" ("Credit Application"). ((Kayne Aff.

¶ 15; Verified Complaint ¶ 26). As a corporate officer of Kayne Art Galleries,

Kayne signed the Credit Application on October 2, 2001. (Kayne Aff. ¶ 16). A

true and correct copy of the Credit Application is attached to the Verified

Complaint as Exhibit "A". (Kayne Aff. ¶16).

5

Exhibit 10
Page 118

The Credit Application contains an arbitration clause, which provides as follows:

> Disputes: Any dispute or controversy *arising from this agreement* will be resolved by arbitration by the American Arbitration Association at Santa Clara County, California. The language of the arbitration shall be English. The number of the arbitrators shall be one. The parties agree the American Arbitration Association's expedited rules shall apply and they waive all right to any hearing requiring witness production. The Arbitrator shall issue an award based upon the written documentary evidence supplied by the parties. The Arbitrator's award shall be binding and final. The losing party shall pay all arbitration expenses, including all attorney's fees.

(Verified Complaint ¶ 16). The arbitration provision in the Credit Application limits its applicability to disputes arising from "this agreement," thus referring only to disputes arising from the Credit Application. The customary consideration for the Credit Application was an increase in credit limit. (Kayne Aff. ¶17).

### The Personal Guaranty

Defendant also presented Kayne individually with a Personal Guaranty for his signature. (Kayne Aff. ¶ 18). Both the Personal Guaranty and Credit Application were in a form document drafted by Defendant. (Kayne Aff. ¶ 19). In his individual capacity, Kayne signed the Personal Guaranty which provides as follows:

6

Exhibit 10
Page 119

The undersigned, for consideration do hereby individually and personally guaranty the full and prompt payment of all indebtedness heretofore or hereafter incurred *by the above business*. This guaranty shall not be affected by the amount of credit extended or any change in the form of said indebtedness. Notice of the acceptance of this guaranty, extension of credit, modification in the terms of payment, and any right or demand to proceed against the principal debtor is hereby waived. This guaranty may be revoked by written consent of the creditor. Any revocation does not revoke the obligation of the guarantors to provide payment for indebtedness incurred prior to the revocation. I authorize the creditor and their assigns to obtain a consumer credit report and to contact my references as necessary. *As guarantor, I am also bound by the above arbitration clause.* [*emphasis added*]

(Kayne Aff. ¶ 20). The Personal Guaranty, the only alleged agreement between Kayne and Defendant, does not contain an arbitration clause. The Personal Guaranty simply refers to, without incorporating, the arbitration clause contained in the Credit Application between Kayne Art Galleries and Defendant. By agreeing to be bound by the arbitration clause in the Credit Application, Kayne agreed to arbitrate only issues between Kayne Art Galleries and Defendant arising from the Credit Application, like the amount of money Kayne Art Galleries might owe to Defendant. Significantly, not included in the arbitration clause of the Credit Application is any agreement to arbitrate issues arising from the Personal Guaranty or the amounts possibly owed by Kayne individually. Agreeing to be

Exhibit 10
Page 120

bound by the arbitration clause in the Credit Application does not subject Kayne to the type of arbitration Defendant seeks in this case.

Although it was not required that a dealership's individual owner sign the "Personal Guaranty," at a previous arbitration between Defendant and Kayne Art Galleries, an employee of Defendant testified as follows:

Q:  Would there be any benefit to the dealer to sign the personal guarantee?

A:  Sure.  I mean I would give more credit to someone who signed a personal guarantee than someone who did not sign it.

(Kayne Aff. ¶ 33, Exhibit "I").  This "more credit" ("Additional Credit") was to be the consideration for the dealership's owner signing the Personal Guaranty.

Kayne Art Galleries and Kayne transmitted via fax a copy of the signed Credit Application and Personal Guaranty to Defendant on October 2, 2001 from its offices in Georgia.  (Kayne Aff. ¶ 22).  Defendant never notified Kayne or Kayne Art Galleries that it had received, approved, or otherwise acted upon the Credit Application or Personal Guaranty.  (Kayne Aff. ¶ 23; Verified Complaint ¶¶ 19, 20).  While the submissions of the Credit Application and Personal Guaranty were separate offers by Kayne Art Galleries and Kayne to Defendant, Defendant never responded and never accepted them.

The consideration upon acceptance of the offers would have been an increase in credit limit for Kayne Art Galleries.  No increase in credit or credit

8

Exhibit 10
Page 121

limit was granted to Kayne Art Galleries after October 2, 2001. (Kayne Aff. ¶ 27). Prior to October 2, 2001 the credit limit was $899,000.00, and after October 2, 2001 the credit limit was $899,000.00. (Kayne Aff. ¶ 27, Exhibit "G"). There was no other consideration for the Credit Application or Personal Guaranty, and the relationship between the parties remained exactly the same before and after the offers were transmitted. (Kayne Aff. ¶ 28).

<u>2002 Arbitration</u>

Defendant initiated arbitration proceedings against Kayne Art Galleries and Kayne and his wife Tracy Kayne individually in 2002 pursuant to the Dealer Agreements. (District Court Order, p. 2; Kayne Aff. ¶ 29). Defendant contended that Kayne Art Galleries had ordered artwork from Defendant and that Defendant had delivered the artwork to Kayne Art Galleries, but that Kayne Art Galleries never paid Defendant for the artwork. (Kayne Aff. ¶ 30). Significantly, Defendant did not seek arbitration against Kayne Art Galleries for lack of payment pursuant to either the Credit Application or the April 1998 application for credit, which Defendant has deceptively referred to as the "Initial Credit Application." (Def.'s Mot. to Compel Arbitration Pursuant to 9 USC § 4 and to Dismiss all Claims of David Kayne Pursaunt to FRCP 12(b)(1) and 12(b)(6), p. 3; Kayne Aff. ¶ 31). Rather, Defendant sought arbitration specifically and only pursuant to the Dealer

Exhibit 10
Page 122

Agreement.   (Kayne Aff. ¶ 32).   Although the arbitrators found in favor of Defendant against Kayne Art Galleries and Kayne, the United States District Court for the Northern District of California refused to enter judgment against Kayne, finding that he was not a party to the Dealer Agreements on which the arbitration was based.  In other words, the payments in which Kayne Art Galleries had fallen behind were pursuant to the Dealer Agreements, not to any credit application. (District Court Order, p. 2).

<u>Demand for Arbitration</u>

Defendant seeks private arbitration against Kayne as a way to prevent the sunlight from falling on its improper business practices which are currently the subject of an FBI investigation.[3]  Defendant has requested an arbitrator determine specifically whether Kayne "is personally liable for the debts of Kayne Art Galleries."  In other words, Defendant has requested an arbitrator determine issues arising from the Personal Guaranty.  There is, however, no agreement between Kayne and Defendant to arbitrate issues arising from the Personal Guaranty.  A true and correct copy of the Defendant's Demand for Arbitration, filed in Santa Clara County, California is attached to the Verified Complaint as Exhibit "B".

---

[3] See Kim Christensen, *Painter Said to be Focus of FBI Probe*, L.A. Times, August 29, 2006 attached hereto as **Exhibit "A"**.

Exhibit 10
Page 123

No contracts were ever concluded by submission of the Credit Application or the Personal Guaranty, thus Kayne is not bound by any of the provisions contained therein. There was never any assent to the Credit Application or Personal Guaranty, by way of acceptance or performance, and Defendant never provided any consideration for either the Credit Application or Personal Guaranty. Defendant's failure to accept the Credit Application and Personal Guaranty and its failure to provide consideration for the Credit Application and Personal Guaranty means that neither alleged agreement was concluded. Therefore Defendant has no agreement to arbitrate with Plaintiff, and the AAA has no jurisdiction to hear the issue of arbitrability.

<u>Kayne and Kayne Art Galleries are not interchangeable</u>

Prior to discussing the legal issues in this case, it is important to emphasize that Kayne and Kayne Art Galleries are separate legal entities, and are not interchangeable, despite Defendant's continual misleading suggestions to the contrary. The United States District Court for the Northern District of California specifically found that Kayne individually *never* entered into any Dealer Agreements with Defendant, that Kayne individually was consequently *not* bound by any Dealer Agreements thus such determination is res judicata and should not be presented in this Court to the contrary. (District Court Order).

Exhibit 10
Page 124

This is important to note, because throughout Defendant's Memorandum Defendant portrays alleged "facts" in this case as involving both Kayne and Kayne Art Galleries, when indeed only Kayne Art Galleries is at issue. Defendant claims Kayne entered into "numerous" agreements with Defendant, which false and res judicata. Defendant further states that "Kayne Galleries and Mr. Kayne were significantly delinquent in their obligations" to Defendant, which again is false and res judicata since Kayne was not a party to the Dealer Agreements which created any obligations. Last, Defendant incorrectly states that "Mr. Kayne and Kayne Galleries counterclaimed" in the 2002 arbitration, which, yet again, is false and res judicata.

Defendant's motions to compel arbitration and to dismiss should therefore be denied, and this Court should proceed with hearing the merits of this case.

## III.    ARGUMENT AND CITATION OF AUTHORITIES

### A.    Standards for Defendant's motions.

Defendant has filed a Motion to Compel Arbitration and Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim. There are no grounds to dismiss this case for either want of jurisdiction or failure to state a claim, and Defendant cannot meet the standard necessary for this Court to compel arbitration. As such, dismissing this case and/or compelling arbitration are improper in this case.

Exhibit 10
Page 125

1.    Subject Matter Jurisdiction

This case is governed by the Supreme Court's recent decision in <u>Buckeye</u> and its prior decision in <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 87 S.Ct. 1801. <u>Buckeye</u> holds that there are three challenges a party may make to a motion to compel arbitration: (1) challenge the arbitration provision itself; (2) challenge the validity of the contract as a whole which contains the arbitration provision; and (3) challenge "whether an agreement between the alleged obligor and oblige was ever concluded." 126 S.Ct. at 1208.

In this case, Kayne is challenging both the arbitration provision itself (item 1 above) and whether an agreement was ever concluded between the parties (item 3 above), both of which are determinations to be made by the court. <u>Buckeye</u> explicitly held that challenges to the arbitration clause itself are to be ruled on by the court, not an arbitrator. <u>Buckeye</u>, 126 S.Ct. at 1208. In addition, the court is to decide whether a party is bound to arbitrate, *as well as the specific issues the party must arbitrate.* <u>AT&T Tech., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 649 (1986). Furthermore, in a footnote, <u>Buckeye</u> makes it clear that the opinion does not address the issue of whether any agreement was concluded, and cited approvingly cases holding that in such circumstances the issue of arbitrability is for the court. <u>Chastain v. Robinson-Humphrey Co.</u>, 957 F.2d 851 (11th Cir. 1992);

13

Exhibit 10
Page 126

See also Sandvik AB v. Advent Int'l Corp., 220 F.3d 99 (3rd Cir. 2000); Sphere Drake Ins. Ltd. V. All American Ins. Co., 256 F.3d 587 (7th Cir. 2001); Sphar v. Secco, 330 F.3d 1266 (10th Cir. 2003). This Court, therefore, is the proper tribunal to determine arbitrability in this case.

### 2.    Failure to State a Claim

In deciding Defendant's Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, this Court may only look to the pleadings. See Public Citizen, Inc. v. Miller, 813 F. Supp. 821, 827 (S.D. Ga. 1993), aff'd, 992 F.2d 1548 (11th Cir. 1993). "When faced with a motion to dismiss under Rule 12(b)(6), the Court construes the complaint broadly, accepting all facts pleaded therein as true and viewing all inferences in a light most favorable to the plaintiff." Id. (citing Cooper v. Pate, 378 U.S. 546, 546, (1964)); Gottesman v. Fischer, 922 F. Supp. 605, 609 (N.D. Ga. 1996). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "'The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim . . . all the Rules require is a "short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" In re Johannessen, 76 F.3d

14

Exhibit 10
Page 127

347, 349-50 (11th Cir. 1996) (quoting <u>Conley</u> 355 U.S. at 47, 78 S. Ct. at 103) (alterations in original).  Kayne has set forth facts and claims arising from those facts which state claims for declaratory judgment and injunctive relief in federal court.

       3.     <u>Compel Arbitration</u>

"In determining whether to compel arbitration, the court must consider the following:  (1) whether there is a valid written agreement to arbitrate;  (2) whether the dispute between the parties falls within the scope of the arbitration agreement; and (3) whether the party asserting the claims has failed or refused to arbitrate the claims." <u>Madden v. Protection One Alarm Monitoring, Inc.</u>, 358 F.Supp. 2d 1218 (N.D. Ga. 2004).  In this case (i) there is no valid written agreement to arbitrate between Kayne and Defendant, and (ii) the scope of the arbitration provision by which Kayne agreed to be bound does not encompass the subject matter at issue. While Kayne does refuse to arbitrate claims regarding which he has not agreed to arbitrate, compelling arbitration in this case is improper.

      **B.**     **While at this stage both Georgia law and California law will yield the same results, this Court should apply Georgia law to this case.**

Georgia law governs this case.  Georgia applies the *lex loci contractus* rule when determining choice of law.  <u>Convergys Corp. v. Keener</u>, 276 Ga. 808, 582 S.E.2d 84 (2003). "Under this approach, '(contracts) are to be governed as to their nature, validity, and interpretation by the law of the place where they were made,

15

Exhibit 10
Page 128

except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case the laws of that Sister state will be applied." General Tel. Co. v. Trimm, 252 Ga. 95, 311 S.E.2d 460 (1984), *cited by* Convergys Corp., 276 Ga. at 811, fn. 1. The Credit Application and Personal Guaranty, however, were never accepted by Defendant thus the last act in the alleged formation of the agreements was the faxing of the offer to Defendant. Kayne Art Galleries faxed the Credit Application and Personal Guaranty from its offices *in Georgia*. (Kayne Aff. ¶ 22). Thus, it is proper for this Court to apply Georgia law.

Even if, as Defendant argues, Defendant accepted the Credit Application and Personal Guaranty by performance, Georgia law still applies. Pursuant to the Dealer Agreements, Defendant shipped paintings to Kayne Art Galleries via Federal Express. Defendant retained the risk of loss to the goods until delivery in Georgia. (Dealer Agreements, Standard Terms and Conditions § 8). Federal Express billed Defendant directly for such shipments, and Defendant paid Federal Express for the shipping. Defendant later billed Kayne Art Galleries simply for reimbursement. Because Defendant was responsible for the payment of shipping charges and was subject to the risk of loss in transit, Defendant was required to

Exhibit 10
Page 129

deliver the goods directly to Kayne Art Galleries.  O.C.G.A. § 11-2-401(2)(b); Cal. Com. Code § 2401.

In a case almost identical to the one at bar, the seller paid the freight charges for goods it was shipping to the buyer.  Clark et al. v. Messer Industries, Inc., 222 Ga. App. 606, 607, 475 S.E.2d 653 (1996).  Although the invoice specifically stated F.O.B. place of shipment, the court found that "[u]nder such circumstances, title passes to the buyer on tender at destination 'unless otherwise explicitly agreed.'"  Id.  The court found that notwithstanding the language in the invoice indicating F.O.B. shipment, because the seller paid the freight charges and "bore the risk of transporting the goods to the place of destination," it truly was an F.O.B. destination agreement.  Id.  There is no express agreement to the contrary between Kayne Art Galleries and Defendant, thus, even if Defendant did accept the Credit Application and Personal Guaranty by selling paintings to Kayne Art Galleries on some sort of newly established credit, which Kayne vehemently denies, the acceptance occurred in Georgia when Kayne Art Galleries received the paintings. Georgia law, therefore, applies.

17

Exhibit 10
Page 130

C. **This Court is the proper tribunal to decide whether a party is bound to arbitrate, including the subject matter of the arbitration.**

Kayne cannot be forced to arbitrate issues which he has not agreed to arbitrate. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech., 475 U.S. at 648; See also First Options of Chicago v. Kaplan, 514 U.S. 938, 945 (1995). There are two separate alleged agreements at issue in this case, although they are only two agreements amongst the many agreements addressing the relationship between Kayne Art Galleries and Defendant. The first alleged agreement is the Credit Application submitted by Kayne Art Galleries and signed by Kayne only in his capacity as president of Kayne Art Galleries. The purpose of the Credit Application was to enable Kayne Art Galleries to purchase additional artwork from Defendant on a new and increased line of credit. (Kayne Aff. ¶ 17). This Credit Application contains a provision which provides that "[a]ny dispute or controversy *arising from this agreement*" will be arbitrated. [*emphasis added*]

The second alleged agreement is the Personal Guaranty, which was signed by Kayne in his individual capacity and provides that Kayne will be "bound by the above arbitration clause." "[T]he above arbitration clause" refers to the arbitration clause in the Credit Application, in which Kayne Art Galleries and Defendant

Exhibit 10
Page 131

agreed to arbitrate issues arising from the Credit Application. The Personal Guaranty binds Kayne to the arbitration provision in the Credit Application, however the arbitration provision itself is limited in scope and does not cover issues between Kayne and Defendant arising under the Personal Guaranty.

The Credit Application and Personal Guaranty are legally separate agreements. Jones v. Fox Film Corp., 68 F.2d 116, 117 (5th Cir. 1934) (finding guaranty separate and apart from underlying agreement). "A guaranty is a collateral agreement for performance of an undertaking of another. It imports two different obligations, that of principal debtor and that of guarantor." RTC Mortgage Trust v. Haith, 133 F.3d 574 (8th Cir. 1998); See also Coombs v. Heers, 366 F. Supp. 851 (D. Nev. 1973) (finding "a guaranty imports the existence of two different obligations – one being that of the principal debtor, and the other that of the guarantor; the undertaking of the former is independent of the promise of the latter . . ."); William Goldberg & Co. v. Cohen, 219 Ga. App. 628, 466 S.E.2d 872 (1996) (finding "a guaranty is a contract separate and distinct from the obligation it guarantees"); Palm Springs S.& S. Inc. v. Bering, 213 Cal. App. 2d 177, 28 Cal. Rptr. 526 (1963) (finding "it is the general rule that a contract of guaranty gives rise to a separate and independent obligation from that which binds the principal debtor . . .").

Exhibit 10
Page 132

Moreover, the language contained in the Credit Application and the Personal Guaranty indicate that they are indeed separate and distinct agreements. The signatories to the Credit Application and Personal Guaranty are different, and the parties to each are different. The Credit Application is between Kayne Art Galleries and Defendant, and is signed by Kayne in his corporate capacity only. The Personal Guaranty, on the other hand, is signed by Plaintiff in his individual capacity, and is between Kayne individually and Defendant.

The mere fact that the Personal Guaranty makes mention of the "above arbitration clause" indicates that Kayne would not otherwise be bound by that provision. In other words, if both the Credit Application and Personal Guaranty were part of the same agreement, there would be no need to bind Kayne to any of the "above" provisions, because all provisions would all be applicable as part of the same agreement.

The only subject matter agreed to be arbitrated between Kayne and Defendant is "any dispute or controversy arising from *this agreement*," i.e. the Credit Application in which the arbitration provision sits. Interpreting the Credit Application and Personal Guaranty in favor of Kayne, the nondrafter, <u>Associated Services of Accountable Professionals, Ltd., Inc. v. Workman</u>, 265 Ga. App. 348, 351, 593 S.E.2d 882 (2004), Cal. Civ. Code § 1654, when two separate agreements

Exhibit 10
Page 133

exist, the plain meaning of "the" or "its" as a descriptor is distinguishable from the plain meaning of "any." Sanford v. H.A.S., Inc., 136 F. Supp. 2d 1215, 1222 (M.D. Ala. 2001) (finding there were two separate sales agreements between the parties and the agreement which contained the arbitration provision referenced "the sale" and "its sale," not "any sale," thus the arbitration provision did not apply to the other sales agreement) The arbitration provision in the Credit Application applies to disputes arising from "this agreement," not "any agreement." Kayne therefore, agreed to arbitrate issues that arise only from the Credit Application, and not from the Personal Guaranty.

Defendant, however, has filed this demand for arbitration regarding *Kayne's liability* for the alleged debts of Kayne Art Galleries. According to Defendant, "[a] dispute has arisen regarding payment by Mr. Kayne of certain debts of Kayne Galleries." (Def.'s Mot. to Compel Arb Pursuant to 9 USC § 4 and to Dismiss all Claims of David Kayne Pursaunt to FRCP 12(b)(1) and 12(b)(6), pg. 2). The arbitrator is requested to decide specifically whether Kayne "is personally responsible for the debts of Kayne Art Galleries." (Def.'s Demand for Arbitration, Verified Complaint Exhibit "B"). While Kayne may have agreed to arbitrate whether Kayne Art Galleries owes money to the Defendant and the amount, the subject of Kayne's alleged liability does *not* arise from the Credit Application, but

21

Exhibit 10
Page 134

arises from the Personal Guaranty, a completely separate agreement. There is no agreement between the parties to arbitrate issues arising from the Personal Guaranty. Thus compelling arbitration in this case, and dismissing Kayne's complaint would be improper.

**D.    This Court is the proper tribunal to determine whether the Credit Application and Personal Guaranty were concluded.**

Prior to sending a case to arbitration, it is the role of the court to determine whether a valid agreement exists, including whether there has been an offer, acceptance of that offer, and consideration for that agreement. Buckeye, 126 S.Ct. 1204; Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367 (N.D. Ga. 2004). For example, when the party resisting arbitration raised the issue of assent, the court, rather than an arbitrator, resolved the issue of whether the mode of the acceptance of the offer was invalid. Adams v. Suozzi, 340 F. Supp. 2d 279 (E.D.N.Y. 2004). In addition, a claim of missing consideration will be heard by a court and, if the agreement is not supported by consideration, the dispute will not be sent to arbitration. Gibson v. Neighborhood Health Clinics, 121 F.3d 1126 (7th Cir. 1997). As Kayne challenges the acceptance of both the Credit Application and the Personal Guaranty, and the consideration provided for the Credit Application and the Personal Guaranty, this Court is the proper tribunal to address and resolve the issues.

Exhibit 10
Page 135

**1. Neither the Credit Application nor the Personal Guaranty was ever concluded due to lack of acceptance.**

Defendant never accepted the Credit Application or the Personal Guaranty, and consequently there was never assent by both parties to either alleged agreement. Thus, no contract was ever concluded, and no agreement to arbitrate exists between Kayne Art Galleries and Defendant to which Kayne is bound.

Georgia law provides that "the consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." O.C.G.A. § 13-3-2; See Cal. Civ. Code §§ 1550, 1565. Assent may be demonstrated by a specific acceptance of the contract, or performance of duties under the contract. Federal Paper Bd. Co., Inc. v. Harbert-Yeargin, Inc., 92 F.Supp. 2d 1342 (N.D. Ga. 1998). "...[Y]et where an express acceptance by the opposite party is required by the offer in order to establish a contract, the fact of such subsequent acceptance must be communicated to the offeror by the opposite party or competent agent of such party; and a mere private uncommunicated assent would not effect an agreement." City of Calhoun v. North Georgia Elec. Membership Corp., 264 Ga. 205, 208. 443 S.E.2d 469 (1994) citing Federal Farm Mortgage Corp. v. Dixon, 185 Ga. 466, 469, 195 S.E.2d 414 (1938). "'The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an

23

Exhibit 10
Page 136

act, it can be accepted only by the doing of the act.'" Carterosa, Ltd. V. General Star Indem. Co., 227 Ga. App. 246, 489 S.E.2d 83 (1997) (acceptance only upon receipt of signed financing agreement); See Johnson v. Banta, 87 Cal. App. 2d 907, 909 (1948) (finding whether method of acceptance proper required examination of terms of offer, surrounding circumstances that may indicate a need or intent for a specific method of communicating the acceptance). There being no assent, acceptance or even partial performance in this case, no contract was ever concluded, and neither the Credit Application nor the Personal Guaranty are documents on which an arbitration may be based.

Analogous to a credit application is an application for insurance. "An application for insurance is a mere offer, and the [insurance] company is free to accept or reject it. Unless the offer is accepted by the company no contract ever comes into existence and no liability can arise. So long as the application is not acted upon by the company, no contract of insurance is consummated...'" Robertson v. Life Insurance Co. of America, 196 Ga. App. 294, 396 S.E.2d 35 (1990) citing Whitmire v. Colonial Life & Casualty Ins. Co., 172 Ga. App. 651, 651-52, 323 S.E.2d 843 (1984); See, e.g., Ahern v. Dillenback, 1 Cal. App. 4th 36 (1991) (finding that an application for insurance standing alone does not constitute

Exhibit 10
Page 137

an insurance policy because an insurance contract, like other contracts, requires mutual assent in the form of an offer and acceptance).

The Credit Application specifically states "terms are net 60 days *upon credit approval*." This is a provision *mandating* an acceptance, in the form of an approval. As such, in order to conclude a contract, Defendant was required to communicate acceptance of the Credit Application in the form of approval. While there is no specification in the Credit Application as to what constitutes proper "approval," the Application does contain a line for the District Manager's signature indicating "approval." Without any approval, written or oral, the terms of the Credit Application have never been accepted or become effective, including the arbitration provision. As such, there is no agreement to arbitrate.

There is further no evidence that Defendant accepted either the Personal Guaranty or the Credit Application by performance. After October 2001 Defendant simply continued selling Kayne Art Galleries artwork under the same line of credit and the same seven dealership agreements it had prior to October 2001. Defendant was already contractually bound under the seven Dealer Agreements to give Kayne Art Galleries credit and 60 days to pay their invoices. Defendant incorrectly states that Kayne Art Galleries initially had only 20 days to pay invoices and that the financing terms therefore changed after October 2001.

25

Exhibit 10
Page 138

(Defendant's Memorandum, p. 17). This is completely contrary to the language in the Dealer Agreements and the findings of the United States District Court for the Northern District of California that it was the Dealer Agreements pursuant to which Kayne Art Galleries was making payments to Defendant. (District Court Order p. 2; Dealer Agreement 1, § 3(h), <u>Dealer Obligations</u>, Dealer Agreements 2-7, § 2(h), <u>Dealer Opportunities</u>.). There were no changes made to the benefit received by Kayne Art Galleries, nor in the detriment to Defendant.

No Additional Credit was granted to Kayne Art Galleries. This mere continuation of a previous relationship to which both parties were already contractually bound to continue, according to the same terms does not constitute acceptance by action, as Defendant would like for this Court to believe. Had Defendant accepted Kayne Art Galleries' Credit Application of October 2001, Kayne Art Galleries would have been granted a new, increased line of credit and been sold paintings pursuant to the new increased line of credit.

It is also significant that Defendant initiated a prior arbitration against Kayne Art Galleries and Kayne pursuant to the Dealer Agreements and not pursuant to the Credit Application or Personal Guaranty. (Kayne Aff. ¶¶ 31, 32). Had Defendant actually accepted the Credit Application or Personal Guaranty, it would have made much more sense for Defendant to seek an award against Kayne and Kayne Art

Exhibit 10
Page 139

Galleries pursuant to the Credit Application and the Personal Guaranty. Without such acceptance, however, Defendant was relegated to seeking arbitration pursuant to the Dealer Agreements, which had no binding effect on Kayne.

By failing to accept the Credit Application and Personal Guaranty, neither was ever concluded. Without a concluded agreement, there is no arbitration agreement between Kayne Art Galleries and Defendant, and consequently no agreement to arbitrate to which Kayne has agreed to be bound. As such, compelling arbitration and dismissing Kayne's complaint are improper in this case.

### 2. Neither the Credit Application nor the Personal Guaranty was ever concluded due to lack of consideration.

Neither the Personal Guaranty nor the Credit Application are supported by consideration. Thus, no contracts were ever concluded, and no agreement to arbitrate exists between Kayne Art Galleries and Defendant to which Kayne is bound, and arbitration, therefore, is improper in this case.

Kayne Art Galleries did not receive any consideration when it signed the Credit Application, and Kayne did not receive any consideration when he signed the Personal Guaranty. O.C.G.A. § 10-7-1 provides as follows:

> The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal, the principal in either instance

27

Exhibit 10
Page 140

> remaining bound therefore. Sureties, including those
> formerly called guarantors, are jointly and severally
> liable with their principal unless the contract provides
> otherwise. There shall be no distinction between
> contracts of suretyship and guaranty.

See Cal. Civ. Code § 2792. In other words, consideration may be for the benefit of

the guarantor *or* the principal debtor. "A past consideration-one which has already

served its purpose in a former transaction-is not sufficient to support a contract of

guaranty; and although such a contract had been executed subsequent to the main

contract, it must be supported by new consideration." R.A. Friedland v. Citizens &

Southern South DeKalb Bank, 135 Ga. App. 591, 592, 218 S.E.2d 302 (1975); See

Oakland Bank of Commerce v. Washington, 6 Cal. App. 3d 793 (1970) (a contract

of guaranty requires new consideration). Moreover, a party's existing obligation to

perform under a contract does not constitute consideration for a new agreement.

Heriot v. Connerat, 12 Ga. App. 203, 76 S.E. 1066 (1912); See also Burns v. Dees,

252 Ga. App. 598, 604, 557 S.E.2d 32 (2001). There being no consideration to

either Kayne Art Galleries or Kayne, neither the Credit Application nor the

Personal Guaranty were concluded and are not binding agreements upon the

parties.

The submission of the Credit Application was an offer by Kayne Art

Galleries to Defendant for an increased credit limit. Because Kayne Art Galleries

28

Exhibit 10
Page 141

already had credit which Defendant was contractually bound to provide pursuant to the Dealer Agreements, and already had 60 days to pay invoices pursuant to the Dealer Agreements, the customary and expected consideration upon acceptance of the offer would have been an increase in credit limit for Kayne Art Galleries. (Kayne Aff. ¶ 17).   However, no increase in credit limit was granted.  It was $899,000.00 before October 2, 2001 and $899,000.00 after October 2, 2001. (Kayne Aff. ¶ 27).   There was no other consideration provided for the Credit Application, and the relationship between the parties remained exactly the same before and after the offer was transmitted.  (Kayne Aff. ¶ 28).

In addition, no Additional Credit was provided to Kayne Art Galleries by Defendant as consideration for signing the Personal Guaranty.   Defendant just continued doing what it was already contractually bound to do under the Dealer Agreements.   There being no consideration provided for either the Credit Application or the Personal Guaranty, no contracts were ever concluded.  For this reason, this Court compelling arbitration and dismissing Kayne's complaint would be entirely improper in this case.

Exhibit 10
Page 142

E.    **Kayne has successfully stated claims that the Credit Application and Personal Guaranty lack acceptance and consideration and that the Personal Guaranty violates the statute of frauds, thus Kayne's Complaint should not be dismissed.**

Kayne has filed its complaint seeking declaratory judgments that the Credit Application and Personal Guaranty lack both the acceptance and consideration necessary to form concluded agreements between the parties. Additionally, Kayne seeks a declaratory judgment that the Personal Guaranty violates the statute of frauds. If all of the facts averred in Kayne's complaint and affidavit are indeed true, which is the legal presumption at this time, Kayne has stated proper claims for declaratory judgment. See Cooper, 378 U.S. at 546.

Kayne has presented evidence, in addition to the contentions in his complaint, that Defendant did not accept or provide consideration for the Credit Application and Personal Guaranty. Whether there was acceptance or consideration will require at the very least some discovery, therefore, final adjudication on the declaratory judgments is simply not ripe at this time.

The Personal Guaranty violates the statute of frauds, and thus is not an enforceable agreement. O.C.G.A. § 13-5-30(2) requires that in order for a promise to answer for another's debt to be binding on the promisor, the promise "must be in writing and signed by the party to be charged therewith." The California Civil

Exhibit 10
Page 143

code imposes this same requirement.[4]  "This requirement has been interpreted to mandate further that a guaranty identify the debt, the principal debtor, the promisor, and the promise." John Deere Co. v. Haralson, 278 Ga. 192, 193, 599 S.E.2d 164 (2004).  "Where a guaranty omits the name of the principal debtor, it is unenforceable as a matter of law." Builder's Supply Corp. v. Taylor, 164 Ga. App. 127, 128, 296 S.E.2d 417 (1982) (finding failure of a document to state the identity of the entity whom [the] guarantor agreed to indemnify is fatal).  This holds true "even where the intent of the parties is manifestly obvious..." Sysco Food Svcs. v. Coleman, 227 Ga. App. 460, 461, 489 S.E.2d 568 (1997).  "The court is not authorized to determine the identity of the principal debtor by inference as this would entail consideration of parol evidence...[and] parol evidence is inadmissible to describe what is totally omitted." McDonald v. Ferguson Enterprises, Inc., 274 Ga. App. 526, 527, 618 S.E.2d 45 (2005).

Roden Electrical Supply v. Faulkner, 240 Ga. App. 556, 524 S.E.2d 247 (1999), a case almost identical to the case at bar, also involved interpretation of a multi-page credit application and personal guaranty.  In Roden, the personal guaranty failed to identify the principal debtor beyond the "above business." Id. at

---

[4] Cal. Civ. Code § 1624.  There does not appear to be any California case law directly addressing how to interpret a credit application and personal guaranty. Georgia case law, however, directly addresses the very specific issue of how the statute of frauds may affect the enforceability of a personal guaranty.

31

Exhibit 10
Page 144

556. The entity alleged by the creditor to be the principal debtor was identified previously in the actual credit application only as the "billable party." Id. As no entity was identified as the "business" in the credit application, the court found the personal guaranty unenforceable. Id.

In the Credit Application, Kayne Art Galleries is identified as the "Dealer Name" on page one. The Personal Guaranty, however, refers to the "above business" as being the principal debtor. *Nowhere* in the Credit Application or the Personal Guaranty is the word "business" or the phrase "above business" defined, and in fact, there are multiple businesses discussed in the Credit Application (i.e., Media Arts Group is referenced in the Conditions of the Application). As the name of the principal debtor has been omitted from both the Credit Application and the Personal Guaranty, the Personal Guaranty signed by Kayne violates the statute of frauds and is thus not enforceable as a matter of law.

## IV.    CONCLUSION

WHEREFORE Kayne respectfully requests this Court deny Defendant's Motion to Compel Arbitration and Motion to Dismiss the claims of Kayne and continue to hear the merits of this case.

32

Exhibit 10
Page 145

Respectfully submitted,

/s/ Lawrence S. Burnat
Lawrence S. Burnat*
Georgia Bar No. 096150
Michelle Roback Kraynak
Georgia Bar No. 429353
Attorneys for Plaintiff

Schreeder, Wheeler & Flint, LLP
1600 Candler Building
127 Peachtree Street, N.E.
Atlanta, Georgia 30303-1845
Telephone: (404) 681-3450
Facsimile: (404) 681-1046
K:\6450\1\Pleadings & Discovery\Response Brief to Motion to Compel and Dismiss.doc

## *CERTIFICATION OF COMPLIANCE

Pursuant to N.D. Ga. LR 7.1D, this certifies that *Plaintiff's Response to*

*Defendant's Motion to Compel Arbitration and Motion to Dismiss* has been

prepared using Times New Roman (14 point), as required by N.D. Ga. LR 5.1B.

33

Exhibit 10
Page 146

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served counsel for Defendant with the foregoing by electronic means to the following:

Jill Basinger, Esq.
Charles E. Weir, Esq.
McDermott, Will & Emery
2049 Century Park East
34th Floor
Los Angeles, CA  90067

Eric C. Lang, Esq..
The Lang Legal Group, LLC
1800 Century Place
Suite 570
Atlanta, GA 30345

This the 3rd day of November, 2006.

/s/ Lawrence S. Burnat
Lawrence S. Burnat
Attorney for Plaintiff

Exhibit 10
Page 147

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID KAYNE,

    Plaintiff,

  v.

THE THOMAS KINKADE COMPANY
f/k/a MEDIA ARTS GROUP, INC.,

    Defendant.

CIVIL ACTION

NO. 1:06-CV-2168-CAP

### O R D E R

  This matter is before the court on the following motions: the defendant's motion to compel arbitration [Doc. No. 14], (2) the plaintiff's motion for leave to file an amended complaint [Doc. No. 17], (3) the plaintiff's motion for leave to exceed the page limits [Doc. No. 19], (4) the plaintiff's motion for oral argument [Doc. No. 22], (5) the plaintiff's motion to strike [Doc. No. 23], (6) the plaintiff's second motion to strike [Doc. No. 28], (7) the plaintiff's motion for leave to file a surreply [Doc. No. 29], and (8) the plaintiff's third motion to strike [Doc. No. 34].

### Factual Background

  Thomas Kinkade is a world renowned artist. The defendant, Thomas Kinkade Company ("TKC"), manufactures and distributes artwork created by Thomas Kinkade. One of the distribution channels used by TKC is known as the "Thomas Kinkade Signature

Exhibit 11
Page 148

Gallery Program." Signature Galleries exclusively sell Thomas Kinkade art.

The plaintiff, David Kayne ("Kayne"), is the owner and President of Kayne Art Galleries. Beginning in 1998, Kayne Art Galleries entered into a series of Signature Dealer Agreements ("Dealer Agreements") with TKC to own and operate various Signature Galleries throughout the Atlanta area. Kayne signed the Dealer Agreements as an officer and agent of Kayne Art Galleries.

On April 16, 1998, in connection with Kayne's preparations to open his first Signature Gallery, Kayne executed an application for credit with TKC. At the time, Kayne Art Galleries had not yet been formed. Thus, Kayne executed the application in his individual capacity ("Initial Credit Application").

In October 2001, Kayne signed and submitted a second application for credit (the "Credit Application"). The Credit Application asked TKC to extend credit to Kayne Art Galleries, as opposed to Kayne individually. Among other things, the Credit Application contained the following arbitration clause:

> DISPUTES: ANY DISPUTES OR CONTROVERSY ARISING FROM THIS AGREEMENT WILL BE RESOLVED BY ARBITRATION BY THE AMERICAN ARBITRATION ASSOCIATION AT SANTA CLARA COUNTY, CALIFORNIA . . . .

2

Exhibit 11
Page 149

In addition to the arbitration clause, the Credit Application contained a personal guaranty, which was signed by Kayne. The personal guaranty states:

> THE UNDERSIGNED, FOR CONSIDERATION, DO HEREBY INDIVIDUALLY AND PERSONALLY GUARANTY THE FULL AND PROMPT PAYMENT OF ALL INDEBTEDNESS HERETOFORE OR HEREAFTER INCURRED BY THE ABOVE BUSINESS . . . NOTICE OF THE ACCEPTANCE OF THIS GUARANTY, EXTENSION OF CREDIT, MODIFICATION OF THE TERMS OF PAYMENT, and ANY RIGHT OR DEMAND TO PROCEED AGAINST THE PRINCIPAL DEBTOR IS HEREBY WAIVED . . . AS GUARANTOR, I AM ALSO BOUND BY THE ABOVE ARBITRATION CLAUSE.

(the "Personal Guaranty"). As noted above, the last sentence of the Personal Guaranty contained an arbitration clause stating, "As Guarantor, I am also bound by the above arbitration clause (the "Arbitration Clause").

The Credit Application, which contains the Personal Guaranty, was never signed by TKC. It is undisputed, however, that TKC extended credit to Kayne Art Galleries after receiving a faxed and signed copy of the Credit Application from Kayne.

In late 2002, Kayne Art Galleries became significantly delinquent in its obligations to TKC. TKC, therefore, terminated its relationship with Kayne and Kayne Galleries.

In early 2003, TKC initiated an arbitration proceeding against Kayne and Kayne Art Galleries (the "San Francisco Arbitration"). On August 27, 2004, a three-arbitrator panel awarded TKC $588,555 for art that was ordered by Kayne Art Galleries and delivered by

3

Exhibit 11
Page 150

TKC but never paid for.  The San Francisco arbitrators specifically stated that Kayne was personally liable for the award against Kayne Art Galleries.

After securing the arbitration award, TKC moved to confirm the award in the Northern District of California.  Kayne moved to vacate the award against him as an individual on the grounds that he was not a party to the Dealer Agreements that contained the arbitration clause that governed the San Francisco Arbitration.  In particular, Kayne argued that since the arbitration provision in the Credit Application was not complied with in the San Francisco Arbitration then the San Francisco arbitration panel lacked authority to make a ruling against him individually.  The Northern District of California confirmed the award against Kayne Art Galleries, but agreed with Kayne regarding his personal liability. TKC has appealed the Northern District of California's ruling to the Ninth Circuit Court of Appeals claiming that Kayne arbitrated the issue of his personal liability in the San Francisco Arbitration.

Following the Northern District of California's order vacating the award against Kayne, TKC initiated arbitration proceedings against Kayne in his individual capacity as the guarantor of Kayne Art Galleries' debts in Santa Clara County before the American Arbitration Association (the "Santa Clara Arbitration").  Kayne

4

Exhibit 11
Page 151

refused to submit to the Santa Clara Arbitration claiming that no agreement to arbitrate existed. He thus filed this action seeking to enjoin the Santa Clara Arbitration. In response, TKC filed this motion to compel arbitration. Pursuant to a stipulation by the parties, TKC has agreed to stay the Santa Clara Arbitration pending the court's determination of this motion.

Legal Analysis

A.    Kayne's Motion to Amend

Kayne first asks the court for leave to amend his complaint to clarify the arguments that he is making regarding the enforceability of the Personal Guaranty and the Credit Application. For example, Kayne argues that the Arbitration Clause in the Personal Guaranty merely obligates him to arbitrate disputes regarding the Credit Application between TKC and Kayne Art Galleries. According to Kayne, the Arbitration Clause in the Personal Guaranty says nothing regarding disputes arising out of the Personal Guaranty.

TKC objects to Kayne's motion arguing that Kayne's interpretation of the Arbitration Clause in the Personal Guaranty is irrational. Thus, TKC asks the court to deny Kayne leave to amend because amendment would be futile.

Rule 15(a) of the Federal Rules of Civil Procedure provides that once the time period for amending a pleading as of right has

5

Exhibit 11
Page 152

expired a party may amend "only by leave of court or by written consent of the adverse party." The decision whether to grant leave to amend a complaint is within the discretion of the district court. Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266, 1274 (11th Cir. 2001). However, the trial judge's discretion is limited in denying a motion to amend as Rule 15(a) mandates that "leave shall be freely given when justice so requires." Thus, Rule 15 contemplates the granting of a motion to amend, unless there exists a substantial reason to deny the motion. Halliburton & Associates v. Henderson, Few & Co., 774 F.2d 441, 443 (11th Cir. 1985). Substantial reasons for denial may include "undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). Ultimately, the general purpose of Rule 15 is to ensure that cases are decided on their merits rather than on the technical niceties of the parties' pleadings. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (11th Cir. 1981).

After much consideration, the court will allow Kayne leave to amend his complaint. Kayne has not unduly delayed filing his motion to amend and there is no prejudice to TKC. The arguments Kayne seeks to clarify in his amended complaint are the same arguments Kayne has presented in opposition to TKC's motion to

6

Exhibit 11
Page 153

compel arbitration.  The court will address the legal viability of these arguments later in this order.

B.   Kayne's Motions to Strike

1.   The Original and Amended Declarations of Robert Murray

TKC, in support of its motion to compel arbitration, submitted the declaration of Robert Murray.  Murray is the Vice President, General Counsel, and Secretary of TKC.  He has held these positions since January 2002.  Murray states that as part of his job, he is required to be familiar with important legal documents, including the Dealer Agreements and the Credit Application.  Murray also states that he attended the hearings for the San Francisco Arbitration.  Among other things, Murray's declaration attaches a copy of the Credit Application, the Initial Credit Application, testimony given during the San Francisco Arbitration, and a copy of the Award issued by the San Francisco Arbitration Panel.  Murray's declaration also describes Kayne's delinquencies and the procedural history surrounding the San Francisco Arbitration Award.

Kayne moves to strike Murray's declaration claiming that Murray's declaration is incorrect.  For example, Paragraph 3 of Murray's declaration states that Kayne is the owner and president of Kayne Art Galleries and that Kayne and Kayne Art Galleries owned and operated as many as seven Signature Galleries throughout the Atlanta area.  Kayne claims that Kayne Art Galleries (and

7

Exhibit 11
Page 154

presumably not Kayne as an individual) owned and operated these galleries. Similarly, Paragraph 10 of Murray's declaration states that Kayne and Kayne Art Galleries asserted counterclaims in the San Francisco Arbitration. Kayne, however, claims that only Kayne Art Galleries asserted a counterclaim in the San Francisco Arbitration.

The court will not strike Murray's declaration because of these alleged inconsistencies. The court does not view Murray's statement in Paragraph 3 as necessarily inconsistent with Kayne's claim that Kayne Art Galleries owned and operated the Signature Galleries. Kayne does not dispute that Kayne was the president and the owner of Kayne Art Galleries. Similarly, Kayne's complaints about the wording of Paragraph 10 of Murray's declaration illustrates an ongoing dispute between the parties that is allegedly on appeal to the Ninth Circuit Court of Appeals. TKC asserts that Kayne litigated his personal liability in the San Francisco Arbitration; Kayne contends that he did not.

Kayne also complains that Murray lacks personal knowledge necessary to testify regarding the information in the remaining paragraphs of Murray's declaration. For example, Kayne argues that the fact that Murray attended the San Francisco Arbitration does not give Murray personal knowledge of the claims asserted in the arbitration. Kayne further claims that Murray's position as Vice

8

Exhibit 11
Page 155

President does not give him knowledge of the legal agreements between Kayne and TKC.

In response to Kayne's objections, TKC amended Murray's declaration to specifically state that Murray has "personal and firsthand knowledge of the facts" stated in his declaration. Murray's amended declaration prompted Kayne to file a motion to strike Murray's amended declaration on the grounds that the amended declaration is untimely. Kayne reiterates his claim that Murray does not have personal knowledge regarding the facts in his declaration.

The court will not strike the remaining paragraphs of Murray's original or amended declaration on the grounds that the Murray lacks personal knowledge or that the amended declaration is untimely.[1] Although the amended declaration was not filed with TKC's motion to compel arbitration, the amended declaration simply clarifies that Murray has personal knowledge of the statements in his declaration; an issue contested by Kayne.

The court also finds that Murray has personal knowledge sufficient to support the statements in his declaration. Murray's position as General Counsel of TKC and his attendance at the San Francisco Arbitration give Murray personal knowledge sufficient to

---

[1] The court notes that aside from Paragraphs 3 and 10, Kayne does not dispute the facts set out in Murray's declaration.

9

Exhibit 11
Page 156

support his statements regarding the San Francisco Arbitration. Similarly, Murray's position as General Counsel and his statement that he has become familiar with the legal agreements between TKC and Kayne/Kayne Art Galleries gives him sufficient personal knowledge to attach the Initial Credit Application and the Credit Application/Personal Guaranty. Assuming arguendo that Murray did not have sufficient knowledge to attach the Initial Credit Application and the Credit Application/Personal Guaranty, Kayne's motion to strike is moot with respect to these paragraphs because TKC has supplemented Murray's declaration with the declaration of Tori Amarillas, TKC's Director of Credit and Collections. Accordingly, because Murray has personal knowledge of the facts set out in his declarations, the court will not strike Murray's original or amended declarations.

2.    The Original and Amended Declarations of Tori Amarillas

As noted above, in response to Kayne's motion to strike Murray's declaration, TKC submitted the declaration of Tori Amarillas. Amarillas is the Director of Credit and Collections at TKC and has held that position for ten years. As the head of the Credit and Collections Department, Amarillas states that she is responsible for managing and maintaining the accounts for all of TKC's customers. She further states that she is familiar with the records and accounts of Kayne and Kayne Art Galleries. Paragraph

10

Exhibit 11
Page 157

2 of Amarillas's declaration attaches the Initial Credit Application and states that credit was extended to Kayne pursuant to the Initial Credit Application. Paragraph 3 of Amarillas's declaration attaches the Credit Application/Personal Guaranty and states that credit was extended to Kayne Art Galleries pursuant to the Credit Application/Personal Guaranty. Paragraph 4 states that Kayne Art Galleries and Kayne were significantly delinquent in their obligations to TKC in late 2002 and that TKC terminated its dealership relationship with Kayne and Kayne Art Galleries due to these delinquencies.

Upon receipt of Amarillas's original declaration, Kayne filed a motion to strike Amarillas's declaration claiming that the declaration was untimely, that Amarillas lacked personal knowledge regarding the extension of credit to Kayne and Kayne Art Galleries, and that Amarillas's statements were hearsay.

In response to Kayne's motion to strike, TKC filed an amended version of Amarillas's declaration which specifically states that Amarillas has personal and first-hand knowledge of the information in her declaration. This statement, however, did not satisfy Kayne. He argued in reply that Amarillas never states that she personally worked on Kayne Art Galleries' account and that the declaration does not explain how Amarillas became knowledgeable regarding Kayne Art Galleries' account. Kayne also argued that

11

Exhibit 11
Page 158

Amarillas's statements that TKC extended credit to Kayne and Kayne Art Galleries pursuant to the Initial Credit Application and the Credit Application/Personal Guaranty were hearsay. Kayne further claimed that these statements regarding the extension of credit were questionable because Amarillas had not attached any documents supporting her statements to her declaration.

The court will not strike Amarillas's original or amended declaration. Although Amarillas's declarations were not submitted with TKC's motion to compel arbitration, they do not contain any new facts. The substance of the declarations are nearly identical to various paragraphs in Murray's declaration, which was challenged by Kayne. Kayne, therefore, has not been prejudiced by the late filing of Amarillas's declaration. Amarillas, moreover, has stated that she does have personal knowledge of TKC's credit arrangements with Kayne and Kayne Art Galleries.[2] The court has no reason to believe that Amarillas could not have acquired this knowledge in her position as the Director of Credit and Collections at TKC. Furthermore, Kayne's hearsay complaint is not well-taken. The extension of credit to Kayne and/or Kayne Art Galleries is an act, not an out-of-court statement.

---

[2] The court also points out that Kayne relies on Amarillas's testimony in his response to TKC's motion to compel arbitration.

12

Exhibit 11
Page 159

C.   TKC's Motion to Compel Arbitration

Before addressing the substance of TKC's motion to compel arbitration, the court will address the procedural motions filed by Kayne. First, the court GRANTS Kayne's unopposed motion for leave to file a surreply [Doc. No. 29]. The court also GRANTS Kayne's unopposed motion for leave to exceed the page limits [Doc. No. 19]. The court, however, DENIES Kayne's unopposed motion for oral argument [Doc. No. 22]. The court now turns to the substance of TKC's motion to compel arbitration.

Relying on the Arbitration Clause in the Personal Guaranty, TKC asks the court to compel Kayne to submit to the Santa Clara Arbitration. Kayne, however, makes several arguments against arbitration. First, he argues that no agreement was ever concluded between Kayne and TKC. Assuming there is an agreement to arbitrate, Kayne next argues that there is no agreement to arbitrate his personal liability. He claims, instead, that the Personal Guaranty merely obligated him to arbitrate Kayne Art Galleries' liability to TKC.

The Federal Arbitration Act governs the question of who must decide issues of arbitrability. Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 853 (11th Cir. 1992). Under the Act, a district court must compel arbitration if the parties have agreed to arbitrate their dispute. 9 U.S.C. §§ 2, 3 (1988). "However, if

13

Exhibit 11
Page 160

the validity of the agreement to arbitrate is in issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties." <u>Chastain</u>, 957 F.2d at 854. Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." <u>Id.</u>

    1.   <u>Whether An Agreement to Arbitrate Was Concluded Between Kayne and TKC</u>

As noted above, Kayne argues that no agreement was concluded between Kayne and TKC. In particular, Kayne contends that TKC never accepted the Credit Application and that there was no consideration for the Credit Application/Personal Guaranty.

In response, TKC claims that these issues are for the arbitrators to decide. TKC also argues that even if the court were to decide these issues, TKC accepted the Credit Application by extending credit to Kayne Art Galleries and that consideration for the Credit Application/Personal Guaranty was the extension of credit to Kayne Art Galleries, instead of Kayne individually.

    a.   <u>Whether the Court or the Arbitrators Should Decide if a Contract Exists Between Kayne and TKC</u>

The first question that the court must decide is whether the court or the arbitrators should decide Kayne's claims that TKC never accepted the Credit Application and that there was no consideration for the Credit Application/Personal Guaranty. The

14

Exhibit 11
Page 161

United States Supreme Court addressed a related issue in <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 445 (2006). In <u>Buckeye</u>, the respondent borrowers entered into an agreement with Buckeye containing provisions that required them to arbitrate disputes arising out of the agreement. The borrowers sued Buckeye alleging that Buckeye charged usurious interest rates and that the agreement violated various state lending and consumer-protection laws rendering the agreement criminal on its face. Buckeye moved to compel arbitration. The Supreme Court held that the borrowers' claims that the agreement was illegal and void ab initio had to be resolved by an arbitrator, not the court. <u>Id.</u> In reaching this conclusion, the Supreme Court noted that an arbitration clause is severable from the remainder of the contract. <u>Id.</u> Because the borrowers' challenged the agreement as a whole (including the arbitration clause), and not specifically its arbitration provisions, the Court held that the arbitration clause was enforceable apart from the remainder of the contract, and the borrowers' challenge should be considered by the arbitrator. <u>Id.</u>

As the Supreme Court noted, however, the issue of a "contract's validity is different from the issue of whether any agreement between the alleged obligor and the obligee was ever concluded." <u>Id.</u> at 444, n.1. While the Supreme Court has held that a claim that a contract containing an arbitration clause was

15

Exhibit 11
Page 162

void for illegality should be determined by an arbitrator, the Court did not address the issue of whether a claim that a contract was never concluded should be addressed by an arbitrator or a court. Id. ("The issue of a contract's validity is different from the issue of whether any agreement between the alleged obligor and the obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issues decided in the cases cited by the respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract . . . [and] whether the signor lacked authority to commit the alleged principal . . . ."). Because the Supreme Court's decision in Buckeye does not address the issue of whether an arbitrator should decide if a contract was ever formed, the court must turn to the Eleventh Circuit for guidance.

In Chastain, 957 F.2d at 853, the plaintiff filed a securities fraud suit against the defendant. The defendant moved to compel arbitration relying on two customer agreements containing arbitration clauses. The plaintiff opposed the motion to compel arbitration arguing that she never agreed to either of the customer agreements because her signature on one agreement was forged and because she never signed the second agreement. The defendant later admitted that the plaintiff did not sign either customer agreement. After expressing doubt about the existence of a valid and

16

Exhibit 11
Page 163

enforceable contract mandating arbitration, the district court denied the defendant's motion to compel arbitration. Although the district court did not express a view on the merits of the arbitrability question, the court did hold that it, and not the arbitrators, must decide whether the plaintiff had a duty to arbitrate. The Eleventh Circuit affirmed the district court's decision concluding that because the plaintiff challenged the existence of an agreement to arbitrate, the district court must first decide whether or not the party contesting the existence of the contract can be bound by the contractual language. Id. at 854.

The court reads Chastain as requiring the court, and not the arbitrators, to determine whether an agreement to arbitrate exists. Requiring the court to determine whether a contract containing an arbitration clause exists comports with contract law principles. Arbitration is a matter of contract, and no arbitration may be compelled in the absence of an agreement to arbitrate. See Klay v. PacifiCare Health Systems, Inc., 389 F.3d 1191, 1200 (11th Cir. 2004) ("[A]rbitration is a matter of contract . . . In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum."). Thus, the court must consider Kayne's arguments that TKC did not accept the Credit Application and that there was no consideration for the Credit Application because these are essential elements to the formation

17

Exhibit 11
Page 164

of a contract, and absent the existence of a contract, there can be no agreement to arbitrate.[3]

Before addressing the substance of Kayne's consideration and acceptance defenses, the court notes that Kayne claims that final adjudication of these defenses is not ripe at this time because discovery is needed. Kayne does not, however, describe what discovery is necessary or how discovery will aid the court in making a determination.

The court concludes that discovery is not necessary. The terms of the various agreements are clear and Kayne admits that he or Kayne Art Galleries agreed to the terms. The facts in this case are largely undisputed. For example, it is undisputed that TKC and Kayne Art Galleries entered into a series of Dealer Agreements, that Kayne faxed two credit applications to TKC, and that TKC extended credit to Kayne Art Galleries after receiving the Credit

---

[3] On the other hand, the court does not need to address Kayne's arguments that the Credit Application violates the Statute of Frauds because that issue challenges the validity of the Credit Application and not whether the Credit Application was ever entered into. Cf. Rintin Corp. v. Domar, Ltd., 476 F.3d 1254, 1259 (11th Cir. 2007) ("The Supreme Court in Buckeye Check Cashing distinguished between challenges to the validity of a contract with an arbitration clause and arguments that a party never consented to such a contract. Rintin argues that the Shareholder's Agreement was void, not that Rintin never effectively consented to the Agreement . . . .").

18

Exhibit 11
Page 165

Application.  There are only two facts in dispute.[4]  First, Kayne

states that neither he, nor Kayne Art Galleries purchased artwork

from TKC pursuant to the Initial Credit Application.  He also

states that he, in his individual capacity, never purchased artwork

from TKC.  It appears clear, however, that artwork was purchased by

Kayne Art Galleries and its predecessor after Kayne executed the

Initial Credit Application.  The court, therefore, reads Kayne's

affidavit as arguing that Kayne Art Galleries purchased artwork

using credit from TKC extended pursuant to the Dealer Agreements

and not the Initial Credit Application.  TKC, on the other hand,

argues that it extended credit to Kayne as an individual pursuant

to the Initial Credit Application.

    The court finds it significant that Kayne does not disagree

that Kayne Art Galleries was not formed at the time the Initial

Credit Application was sent to TKC.  The court also finds it

significant that Kayne does not explicitly dispute TKC's claim that

credit to purchase artwork on behalf of Kayne Art Galleries was

initially extended to Kayne as an individual.

    Second, Kayne claims that he sent the Credit Application to

TKC because he wanted an increase in credit.  TKC, on the other

---

    [4]  Kayne also argues that TKC had an obligation to extend him
credit under the Dealer Agreements.  This is not, however, a
factual dispute, but a legal dispute regarding TKC's obligations
under the Dealer Agreements.

Exhibit 11
Page 166

hand, claims that the purpose of the Credit Application was to extend credit to Kayne Art Galleries instead of Kayne as an individual. It is undisputed, however, that after receiving the Credit Application, TKC extended credit to Kayne Art Galleries. There is also nothing in the Credit Application that indicates that it is for the purpose of receiving an increase in credit. The court also notes that Kayne's statement that he executed the Credit Application for the purpose of receiving an increase in credit is somewhat inconsistent with his testimony in the San Francisco Arbitration wherein Kayne stated that he "had no idea" why he was sending in the Credit Application and that he "did not recall" that the purpose of the Credit Application was to receive an increase in credit.

Because Kayne does not explicitly dispute the fact that TKC extended credit to Kayne as an individual for him to purchase artwork on behalf of Kayne Art Galleries or that TKC extended credit to Kayne Art Galleries after receiving the Credit Application, the court concludes that Kayne has not met his burden in identifying a triable issue of fact concerning the existence of an agreement to arbitrate. Thus, further discovery is unnecessary and a jury trial on the existence of an agreement to arbitrate is not warranted.

20

Exhibit 11
Page 167

b.    Whether TKC Accepted the Credit Application

Kayne first argues that the Credit Application was not accepted by TKC because TKC did not orally or in writing communicate its acceptance of the Credit Application. Kayne points out that the Credit Application states that "terms are net 60 days upon credit approval." While Kayne admits that there is no specification in the Credit Application as to what constitutes proper "approval," Kayne notes that the Credit Application contains a line for the district manager's signature. Since TKC's district manager did not sign the Credit Application, Kayne argues that TKC did not accept the Credit Application.

Under both Georgia and California law,[5] one of the essential elements of a binding contract is the assent of the parties to all of the terms of the contract. Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002) (Georgia law); Fair v. Bakhtiari, 147 P.3d 653 (Cal. 2006) (California law). An offer may be accepted by a promise to do the thing contemplated in the offer or by actually doing the thing. Moreno, 567 S.E.2d at 93; Russell v. Union Oil Co., 86 Cal. Rptr. 424, 427 (Cal. Ct. App. 1970) (California law). If the offer, however, specifies a manner in which it must be

_____

[5]   The parties disagree as to whether Georgia or California law applies to the Credit Application/Personal Guaranty. As Kayne admits, however, both Georgia and California law yield the same results.

21

Exhibit 11
Page 168

accepted, then the offer must be accepted in that manner.  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1374 (11th Cir. 2005) (Georgia law); see Beck v. American Health Group International, Inc., 260 Cal. Rptr. 237, 241 (Cal. Ct. App. 1989) (California law).

The Credit Application does not specifically state that the Application can only be accepted by a district manager signing the Credit Application.  In fact, the portion of the Credit Application containing a signature for the district manager states that it is "For Office Use Only."  The court, therefore, concludes that performance was an acceptable means of indicating TKC's assent to the Credit Application.

It is undisputed that TKC extended credit to Kayne Art Galleries after Kayne faxed the Credit Application/Personal Guaranty to TKC.  Kayne, however, argues that TKC's decision to extend credit to Kayne Art Galleries did not constitute acceptance of the Credit Application/Personal Guaranty by performance.  In particular, Kayne claims that TKC was bound under the Dealer Agreements to give Kayne Art Galleries credit and 60 days to pay TKC's invoices.  Because no additional credit was given to Kayne Art Galleries and TKC was bound to give Kayne Art Galleries credit under the Dealer Agreements, Kayne argues that the extension of credit to Kayne Art Galleries after Kayne faxed TKC the Credit

22

Exhibit 11
Page 169

Application did not constitute acceptance of the Credit Application by performance.

The court has reviewed the Dealer Agreements and concludes that the Agreements did not bind TKC to give Kayne Art Galleries credit in the amount of $899,000 or to continue to extend credit to Kayne Art Galleries.   The only mention of credit in the Dealer Agreements appears in two paragraphs.   Paragraph 3(h) states that "Dealer is approved for extended, net 60 days (from date of invoice), credit terms on all purchases."[6]  It does not, however, state the terms of the credit or the amount of the credit.   The only other mention of credit is in Paragraph 2(f), which states that the "Dealer must have credit which is, and remains, in good standing."[7]  This paragraph implies that ongoing determinations of credit worthiness will be required and that TKC did not have an obligation to extend credit to a dealer with poor credit.   Because the Dealer Agreements simply state that there is credit approval for the dealer at the time of the Dealer Agreement, the court concludes that the Dealer Agreements did not contain a continuing obligation to provide credit to Kayne Art Galleries such that TKC

---

[6]  In later Dealer Agreements, this same language appears in Paragraph 2(h), instead of Paragraph 3(h).

[7]  In later Dealer Agreements, this same language appears in Paragraph 3(f), instead of Paragraph 2(f).

Exhibit 11
Page 170

could not have accepted the Credit Application/Personal Guaranty by extending Kayne Art Galleries credit after receiving the Credit Application.

      c.   <u>Whether Consideration Existed</u>

     Characterizing the Credit Application as an offer by Kayne Art Galleries for an increase in credit, Kayne next argues that there was no consideration for the Credit Application/Personal Guaranty. He again claims that the Dealer Agreements obligated TKC to extend credit to Kayne Art Galleries. Because TKC was allegedly obligated to extend credit to Kayne Art Galleries under the Dealer Agreements, Kayne argues that the mere continued extension of credit, without an increase in credit, could not act as consideration for the Credit Application/Personal Guaranty.

     The court disagrees. As noted above, nothing in the Dealer Agreements obligated TKC to extend credit to Kayne Art Galleries in the amount of $899,000 or for an unlimited period of time. Before the first Dealer Agreement was signed by Kayne, Kayne submitted the Initial Credit Application seeking credit from TKC in his individual capacity. In 2001, Kayne submitted the Credit Application seeking credit for Kayne Art Galleries. The extension of credit to Kayne Art Galleries, and not Kayne, was the

24

Exhibit 11
Page 171

consideration for the Credit Application/Personal Guaranty.  The fact that TKC did not increase the credit limit is immaterial.[8]

There is also consideration to support the Arbitration Clause. Under Georgia and California law, mutual promises are sufficient consideration to support a contract.  <u>See</u>, <u>e.g.</u>, <u>Caley</u>, 428 F.3d at 1376 (Georgia law).  Here, Kayne received a promise from TKC to arbitrate and be bound by arbitration.  This promise constitutes bargained-for consideration for the Arbitration Clause.

2.     <u>Whether the Agreement to Arbitrate Applies to This Dispute</u>

In addition to arguing that no agreement to arbitrate existed between the parties, Kayne argues that the Arbitration Clause does not obligate him to arbitrate the issue of his individual liability under the Personal Guaranty.  Kayne notes that the Personal Guaranty states, "As a guarantor, I am bound by the above arbitration clause."  The "above arbitration clause" (i.e. the arbitration clause in the Credit Application) states that "Any dispute or controversy arising from this agreement will be resolved by arbitration . . . ."  Kayne claims that the phrase "this agreement" refers to TKC's agreement to extend credit to Kayne Art

_____

[8]     Although Kayne states that he submitted the Credit Application for the purpose of receiving an increase in credit, nothing in the Credit Application states that he is requesting an increase in credit.  The Personal Guaranty, moreover, states that it "shall not be affected by the amount of credit extended."

Exhibit 11
Page 172

Galleries.  Relying on the "this agreement" language, Kayne argues that the Arbitration Clause in the Personal Guaranty merely obligated him to arbitrate any disputes arising out of "this agreement," i.e. Kayne Art Galleries' obligation under the Credit Application to TKC, and did not obligate him to arbitrate the issue of his liability under the Personal Guaranty.

The problem with Kayne's reading of the Arbitration Clause in the Personal Guaranty is that it renders the Arbitration Clause meaningless.  The arbitration clause in the Credit Application required Kayne Art Galleries to arbitrate any disputes arising out of the Credit Application.  There was no need for Kayne to personally agree to arbitrate Kayne Art Galleries' liability and there is no reason to include Kayne as an individual in a arbitration proceeding between Kayne Art Galleries and TKC.

A contract should be interpreted in a manner that gives effect to each of its provisions.  VATACS Group, Inc. v. HomeSide Lending, Inc., 623 S.E.2d 534, 538 (Ga. Ct. App. 2005) (Georgia law); Committee for Responsible School Expansion v. Hermosa Beach City School District, 48 Cal. Rptr. 3d 705, 713 (Cal. Ct. App. 2006) (California law).  Arbitration provisions, moreover, should be construed in favor of arbitration.  Blinco v. Green Tree Servicing, LLC, 400 F.3d 1308, 1311 (11th Cir. 2005) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of

26

Exhibit 11
Page 173

arbitration."). The rule in favor of arbitration provisions trumps the contract rule requiring construction against the drafter. See Collins v. International Dairy Queen, Inc., 2 F. Supp.2d 1472, 1478 (M.D. Ga. 1998) ("Plaintiffs have cited authority for the standard rule of contract construction which dictates that contracts are to be construed against the drafter. However, this general principle relating to contracts is superceded by the federal policy which requires that construction of contract language is to be resolved in favor of arbitration where there are doubts as to the parties' intentions."). The only interpretation that does not render the Arbitration Clause in the Personal Guaranty meaningless is to construe the Arbitration Clause as requiring Kayne to arbitrate disputes arising out of the Personal Guaranty, which he executed in connection with the Credit Application. Accordingly, because Kayne's interpretation of the Arbitration Clause would render the Arbitration Clause meaningless, the court concludes that the Arbitration Clause required Kayne to arbitrate disputes regarding his individual liability under the Personal Guaranty.

Because the court has found that TKC accepted the Credit Application/Personal Guaranty, that consideration existed for the Credit Agreement/Personal Guaranty, and that the Arbitration Clause in the Personal Guaranty obligates Kayne to arbitrate the issue of

27

Exhibit 11
Page 174

his individual liability under the Personal Guaranty, the court will GRANT TKC's motion to compel arbitration.

<u>Conclusion</u>

For the reasons discussed above, the court hereby:

(1)    GRANTS the plaintiff's motion for leave to file an amended complaint [Doc. No. 17];

(2)    GRANTS the plaintiff's motion for leave to exceed the page limits [Doc. No. 19];

(3)    DENIES the plaintiff's motion for oral argument [Doc. No. 22];

(4)    DENIES the plaintiff's motion to strike the original declaration of Robert Murray [Doc. No. 23];

(5)    DENIES the plaintiff's motion to strike the original declaration of Tori Amarillas [Doc. No. 28];

(6)    GRANTS the plaintiff's motion for leave to file a surreply [Doc. No. 29];

(7)    DENIES the plaintiff's motion to strike the amended declarations of Tori Amarillas and Robert Murray [Doc. No. 34]; and

(8)    Because all of the issues remaining in the case at hand are referable to arbitration and the arbitration will take place in California, it would serve no purpose for the court to retain jurisdiction and stay the action pending the arbitration.  <u>See</u> <u>Dale v. Comcast Corp.</u>, 453 F. Supp.2d 1367,

28

Exhibit 11
Page 175

1378 (N.D. Ga. 2006).  The court, therefore, GRANTS the defendant's motion to compel arbitration [Doc. No. 14] to the extent it seeks dismissal of the action and an order compelling arbitration.  The Clerk is DIRECTED to close the file.

SO ORDERED, this <u>29th</u> day of March, 2007.

<u>/s/ Charles A. Pannell, Jr.</u><br>
CHARLES A. PANNELL, JR.<br>
United States District Judge

29

Exhibit 11
Page 176