1  DANA N. LEVITT, PC (Bar No. 77180)
   CHARLES E. WEIR (Bar No. 211091)
2  JASON D. STRABO (Bar No. 246426)
   McDERMOTT WILL & EMERY LLP
3  2049 Century Park East, Suite 3800
   Los Angeles, CA  90067-3218
4  Telephone:     310.277.4110
   Facsimile:     310.277.4730
5  dlevitt@mwe.com
   cweir@mwe.com
6  jstrabo@mwe.com

7  Attorneys for Defendant
   THE THOMAS KINKADE COMPANY,
8  FORMERLY KNOWN AS, MEDIA ARTS GROUP
   INC.

9

10                UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13

14  DAVID KAYNE, an individual citizen of        CASE NO.  C 07-4721 (JF) (RS)
    Georgia,
15                                               **DEFENDANT THE THOMAS KINKADE
                  Plaintiff,                     COMPANY'S NOTICE OF MOTION AND
16                                               MOTION TO DISMISS PURSUANT TO
         v.                                      F.R.C.P 12(B)(6); MEMORANDUM OF
17                                               POINTS AND AUTHORITIES IN
    THE THOMAS KINKADE COMPANY,                  SUPPORT THEREOF**
18  formerly known as MEDIA ARTS
    GROUP, INC., a Delaware Corporation,,        <u>**HEARING**</u>
19
                  Defendant.                     **DATE:      November 30, 2007**
20                                               **TIME:      9:00 A.M.**
                                                 **JUDGE:     Hon. Jeremy Fogel**
21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS                                   (No. 07-4721 (JF) (RS))

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE THAT on November 30, 2007 at 9:00 a.m., or as soon

3   thereafter as the matter may be heard, in the courtroom of the Honorable Jeremy Fogel, located at

4   280 South 1st Street, San Jose, California, Plaintiff The Thomas Kinkade Company ("TKC") will

5   and hereby does move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order

6   dismissing Plaintiff David Kayne's Complaint for Declaratory and Injunctive Relief (the

7   "Complaint").

8   This Motion is, and will be, based on the following grounds: (1) All of Kayne's claims for

9   relief are barred by res judicata; (2) Kayne's claims for violations of Cal. Bus. & Prof. Code §

10   17200 also fail for multiple other reasons, including that: they are barred by collateral estoppel;

11   they are based on purported violations of laws that were not in effect when the relevant conduct

12   occurred; there is no causal connection between the alleged unlawful business practice and the

13   alleged loss; Kayne lacks standing under the Proposition 64 guidelines; and the statute of

14   limitations has expired; and (3) Kayne's claim that the parties' arbitration agreement is

15   unconscionable also fails for multiple reasons, including that: (a) the arbitration mutually applies

16   to both parties and thus cannot be unconscionable and (b) the claim is barred by judicial estoppel

17   because Kayne used the arbitration clause to which he now objects to his benefit in prior

18   proceedings.

19   This Motion is based on this Notice of Motion, the accompanying Memorandum of Points

20   and Authorities, TKC's Request for Judicial Notice, the Declaration of Charles E. Weir, the

21   pleadings and record on file in this action, and such oral argument as may be presented at the

22   hearing on this Motion.

23   Dated: October 4, 2007        McDERMOTT WILL & EMERY LLP
                                    DANA N. LEVITT, PC
24                                  CHARLES E. WEIR
                                    JASON D. STRABO
25

26                                  By:_____/s/_____
                                        Charles E. Weir
27                                      Attorneys for Defendant
                                        THE THOMAS KINKADE COMPANY
28

DEFENDANT'S MOTION TO DISMISS                              (No. 07-4721 (JF) (RS))

1

# TABLE OF CONTENTS

2

**Page**

3    I.      INTRODUCTION ......................................................................................................... 1

4    II.     STATEMENT OF FACTS ........................................................................................... 2

5            A.    Background of the Parties ................................................................................ 2
             B.    The Parties' Contractual Relationship ............................................................ 3

6                  1.      The Dealer Agreements ......................................................................... 3
                   2.      The Credit Agreements .......................................................................... 3

7            C.    Kayne and Kayne Galleries Default on Their Obligations to TKC ................... 4
             D.    History of Disputes Between Kayne and TKC ................................................. 4

8                  1.      The San Francisco Arbitration ............................................................... 4
                   2.      The Arbitration Award Against Kayne Galleries is Confirmed .............. 6

9                  3.      Kayne Seeks to Enjoin the Arbitration Under the Credit Agreement ...... 6
                   4.      Pursuant to the Georgia Court's Order TKC Proceeds with the

10                         Arbitration ............................................................................................. 7
             E.    Kayne's Allegations in this Action .................................................................. 7

11   III.    KAYNE'S CLAIMS MUST BE DISMISSED ............................................................ 8

12           A.    All of Kayne's Claims Are Plainly Barred by Res Judicata ............................ 9
                   1.      Kayne's Attempt to Distinguish the Subject Matter of His Georgia

13                         Action and This Action is Absurd ........................................................ 11
                   2.      The Timing of Nagrampa Does Not Help Kayne ................................. 13

14           B.    Kayne's Section 17200 Claims Fail for Multiple Reasons ............................. 15
                   1.      Kayne's Section 17200 Claims are Barred by Collateral Estoppel ....... 16

15                 2.      Based on Kayne's Own Allegations He Cannot Possibly State a
                           Violation of Section 17200 .................................................................. 17

16                 3.      Kayne Lacks Standing Under the UCL .................................................. 19
                   4.      The Transactions at Issue Were Not Governed By the Federal

17                         Regulations Upon Which Kayne Relies ............................................... 19
                   5.      The Statute of Limitations Has Expired on Kayne's Section 17200

18                         Claim .................................................................................................... 20
             C.    Kayne's Unconscionability Claims Fail For Multiple Reasons ...................... 20

19                 1.      The Arbitration Clause is Not Procedurally Unconscionable ................. 21
                   2.      The Arbitration Clause is Not Substantively Unconscionable ............... 22

20                 3.      Kayne's Claim of Unconscionability is Barred by the Doctrine of
                           Judicial Estoppel .................................................................................. 23

21   IV.     CONCLUSION .......................................................................................................... 25

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4

*Animals v. Lujan,*
   962 F.2d 1391 (9th Cir. 1992) ...................................................................... 16

5

*Baker v. Gold Seal Liquors, Inc.,*
   417 U.S. 467 (1974).......................................................................................... 9

6

7

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007) ................................................................................. 1, 8

8

*Brown v. Felsen,*
   442 U.S. 127 (1979).............................................................................9, 12, 13

9

10

*Buckeye Check Cashing, Inc. v. Cardegna,*
   546 U.S. 440 (2006)................................................................................. 13, 19

11

*C.D. Anderson & Co. v. Lemos,*
   832 F.2d 1097 (9th Cir. 1987) ........................................................................ 9

12

13

*Clark v. Bear Sterns & Co., Inc.,*
   966 F.2d 1318 (9th Cir. 1992) ...................................................................... 16

14

*Clifton v. Attorney General of State of California,*
   997 F.2d 660 (9th Cir. 1993) ........................................................................ 13

15

16

*Doctor's Associates, Inc. v. Casarotto,*
   517 U.S. 681 (1996) ....................................................................................... 14

17

*Dura Pharmaceuticals, Inc. v. Broudo,*
   544 U.S. 336 (2005) ......................................................................................... 8

18

19

*Federated Department Stores, Inc. v. Moitie,*
   452 U.S. 394 (1981)....................................................................................... 13

20

*Feliciano v. Rhode Island,*
   160 F.3d 780 (1st Cir. 1998)........................................................................... 8

21

22

*G&R Moojestic Treats Inc. v. MaggieMoo's International, LLC,*
   2004 U.S. Dist. LEXIS 8806 (S.D.N.Y. May 19, 2004)................................ 15

23

*In re International Nutronics, Inc.,*
   28 F.3d 965 (9th Cir. 1994) ...................................................................... 9, 12

24

25

*International Union of Operating Eng'rs, v. Karr,*
   994 F.2d 1426 (9th Cir. 1993) ........................................................................ 9

26

*Luben Industries, Inc. v. United States,*
   707 F.2d 1037 (9th Cir. 1983) ...................................................................... 16

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

Page

*Nagrampa v. Mailcoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ...............................................................en passim

*New Hampshire v. Maine*,
532 U.S. 742 (2001) .................................................................................. 23, 24

*Northern Ind. Gun & Outdoor Shows v. City of S. Bend*,
163 F.3d 449 (7th Cir. 1998) .................................................................8, 21, 23

*Offshore Sportswear, Inc. v. Vuarnet International, B.V.*,
114 F.3d 848 (9th Cir. 1997) ............................................................................ 16

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ............................................................................ 8

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
388 U.S. 395 (1967) .......................................................................................... 13

*Rissetto v. Plumbers and Steamfitters Local 343*,
343, 94 F.3d 597 (9th Cir. 1996) ...................................................................... 23

*Yniguez v. Arizona*,
939 F.2d 727 (9th Cir. 1991) ............................................................................ 23

**STATE CASES**

*24 Hour Fitness v. Superior Court*,
66 Cal. App. 4th 1199 (1998) .......................................................................... 22

*A & M Produce Co. v. FMC Corp.*,
135 Cal. App. 3d 473 (1982) ............................................................................ 14

*Abramson v. Juniper Networks, Inc.*,
115 Cal. App. 4th 638 (2004) .......................................................................... 22

*Aron v. U-Haul Company of California*,
143 Cal. App. 4th 796 (2006) .................................................................... 20, 21

*Boyce v. Fisk*,
110 Cal. 107 (1895).......................................................................................... 14

*Buckland v. Threshold Enterprises, Ltd.*,
2007 Cal. App. LEXIS 1598 (September 25, 2007) .................................. 17, 19

*McManus v. CIBC World Markets Corp.*,
109 Cal. App. 4th 76 (2003) ............................................................................ 22

*Rubin v. Green*,
4 Cal. 4th 1187 (1993)...................................................................................... 17

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Snapp & Associates Insurance Services, Inc. v. Malcolm Bruce Burlingame Robertson*,
96 Cal. App. 4th 884 (2002) .................................................................................... 20

## FEDERAL STATUTES

72 F.R. 15444 ................................................................................................................... 20

72 F.R. 15495 ................................................................................................................... 20

16 C.F.R. 436 ................................................................................................................... 15

16 C.F.R. 436.1 ................................................................................................................ 20

16 C.F.R. § 436.5 ............................................................................................................. 20

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ........................................................................... en passim

Cal. Bus. & Prof. Code § 17204 .............................................................................. 17, 19

Cal. Bus. & Prof. Code § 17208 ................................................................................... 20

Cal. Civ. Code § 47(b) ................................................................................................... 17

Cal. Corp. Code § 31106 ............................................................................................... 16

Cal. Corp. Code § 31300 .......................................................................................... 15, 16

Cal. Corp. Code § 31303 .......................................................................................... 15, 16

## MISCELLANEOUS

2 Moore's Federal Practice Guide § 12.38 (3rd Ed. 2005) ............................................. 8

1    Defendant The Thomas Kinkade Company ("TKC") hereby moves, pursuant to Fed. R.

2    Civ. P. 12(b)(6), to dismiss the complaint filed by plaintiff David Kayne ("Kayne").

3    **I.    <u>INTRODUCTION</u>**

4        Earlier this year the United States Supreme Court spoke out against frivolous and

5    implausible claims for relief in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

6    Complaints do not come more frivolous or implausible than David Kayne's latest complaint

7    against TKC.

8        In this action, Kayne seeks to enjoin an AAA arbitration currently pending before

9    Pepperdine University Law School Professor Jay McCauley (the "McCauley Arbitration") and

10   seeks a declaration that the arbitration clause upon which the McCauley Arbitration is based is

11   invalid and unenforceable. However, he has already litigated and lost the same issues before a

12   United States District Court in Georgia. He sued TKC in Georgia on August 24, 2006 (the

13   "Georgia Action") and sought a declaratory judgment that the same arbitration clause at issue in

14   the McCauley Arbitration is invalid and unenforceable. He further sought to enjoin the

15   McCauley Arbitration. On March 29, 2007, Judge Charles Pannell rejected Kayne's contentions

16   in the Georgia Action and ordered the parties to arbitration. Nevertheless, Kayne brings this

17   current action seeking the same relief he sought in Georgia. Kayne cannot be allowed to pursue

18   the same relief in court after court until he finally secures a favorable ruling. Kayne's suit is

19   plainly barred by the principles of res judicata.

20       Not only are Kayne's claims procedurally barred but they are without merit and certainly

21   do not rise to the level of "plausibility" demanded by *Twombly*. Kayne's four causes of action are

22   based on only two legal theories – the parties' arbitration agreement is invalid and unenforceable

23   because (1) it is unconscionable and (2) it violates California Business and Professions Code

24   Section 17200 (referred to herein as, "UCL" or "Section 17200").

25       Each theory fails for multiple reasons. The Section 17200 claim suffers from at least five

26   different infirmities. First, the alleged "unlawful" predicate to Kayne's claim (i.e., that TKC

27   violated the franchise laws) is barred by collateral estoppel. Kayne has already litigated with

28   TKC and lost the claim that TKC violated franchise laws in a twelve day arbitration held in San

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Francisco (the "San Francisco Arbitration") in 2004. Second, the claim is simply absurd. Kayne's claim is predicated on the notion that he was unable to understand the arbitration provisions in the two page Credit Application and Personal Guaranty dated October 2, 2001 (the "Credit Agreement and Personal Guaranty"), but he would have understood the same language if it was contained in an "offering circular." Third, the Section 17200 claim also fails because Kayne has not suffered the requisite "loss of money or property" as a result of the arbitration provision. Accordingly, he lacks standing under the UCL. Fourth, the federal franchise provisions that Kayne relies upon did not require disclosure of dispute resolution provisions until July 2007, almost six years after Kayne signed the agreement at issue. Fifth, the claim is barred by the statute of limitations.

Similarly, the unconscionability claim fails for numerous reasons. First, on its face the agreement is simply not unconscionable. It is not one sided, nor does it "shock the conscience." Rather, the arbitration clause applies equally to both parties and selects rules promulgated by the American Arbitration Association ("AAA"). Under California law, mutual arbitration clauses, such as this one, are not unconscionable. Second, Kayne is judicially estopped from attacking the validity of the arbitration clause. During the proceeding to confirm the award issued in the San Francisco Arbitration, Kayne asserted that he could not be individually liable because the arbitration provisions in the Credit Agreement and Personal Guaranty were not followed in the San Francisco Arbitration. He cannot now reverse course and assert that the provisions are invalid after TKC initiates the very proceedings he claimed were required. Having used the provision as a shield, he cannot be heard to complain when it is invoked against him.

Kayne's Complaint is barred by the principals of res judicata and lacks merit even if it was not barred. It should be dismissed without leave to amend.

## II.    STATEMENT OF FACTS

### A.    Background of the Parties

Thomas Kinkade is a world renowned artist. TKC produces, markets and distributes Mr. Kinkade's artwork through various distribution channels. One of these distribution channels is known as the "Thomas Kinkade Signature Gallery Program." Complaint ¶ 11.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Kayne is the owner and President of Kayne Galleries.  Kayne and Kayne Galleries owned

2    and operated a number of Signature Galleries in the Atlanta area.  Kayne opened his first

3    Signature Gallery in 1998 and his last in 2001.  *Id.* ¶ 9.  While no longer affiliated with TKC,

4    Kayne continues to operate at least one gallery in the Atlanta area.  The gallery sells the works of

5    various artists.

6    **B.    The Parties' Contractual Relationship**

7         **1.    The Dealer Agreements**

8    TKC, Kayne and Kayne Galleries entered into numerous agreements.  Included in these

9    various agreements were a number of different Signature Gallery Dealer Agreements which

10   authorized Kayne Galleries to open and operate the Kinkade galleries (the "Dealer Agreements").

11   *Id.* ¶ 13.

12        **2.    The Credit Agreements**

13   TKC, Kayne and Kayne Galleries entered into two credit agreements.  The first was

14   between Kayne personally and TKC and is dated April 17, 1998.  The second credit agreement is

15   the October 2, 2001 Credit Agreement that is the subject of this case.  In October 2001, Kayne

16   signed and returned an application for credit for Kayne Galleries and the Personal Guaranty.  *Id.* ¶

17   31.  The Personal Guaranty made Kayne personally liable for the debts of Kayne Galleries.

18   Thereafter, TKC extended some $600,000 in credit to Kayne Galleries.  Kayne has maintained in

19   the Georgia Action (unsuccessfully) and again pleads in this case, that while he agreed to the

20   terms of the Credit Agreement and Personal Guaranty, TKC (despite granting Kayne Galleries

21   $600,000 in credit) never agreed to the terms.  Complaint ¶ 32; Request for Judicial Notice and

22   Declaration of Charles E. Weir in Support of this motion (hereinafter, "Weir Decl.") Ex. 12, p.

23   182-183.  Accordingly, Kayne claims that he does not have to pay TKC.  As discussed below, this

24   contention was rejected by Judge Pannell in the Georgia Action.  Judge Pannell found that the

25   Credit Agreement and Personal Guaranty is a fully formed contract and that the arbitration

26   provision is valid and binding.  Weir Decl. Ex. 11, p. 174-175.  This ruling was affirmed on

27   appeal on October 3, 2007.  Weir Decl. Ex. 17.

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

### C.    Kayne and Kayne Galleries Default on Their Obligations to TKC

2

In late 2002, Kayne Galleries and Kayne were delinquent in their payments to TKC.

3

Because of these delinquencies, TKC terminated the contracts with Kayne and Kayne Galleries

4

and initiated the San Francisco Arbitration.  Complaint ¶¶ 34-35.

5

### D.    History of Disputes Between Kayne and TKC

6

#### 1.    The San Francisco Arbitration

7

In late 2002, TKC initiated the San Francisco Arbitration against Kayne and Kayne

8

Galleries to recover approximately $600,000.  *Id.* ¶ 35.  Kayne Galleries counterclaimed in the

9

arbitration, seeking millions of dollars in damages based on multiple causes of action, including

10

alleged breaches of contract, fraud and violations of franchise law.  Weir Decl. Ex. 1, 2, p. 11-12,

11

19-44.  The franchise law claims are particularly relevant here as Kayne bases the current Section

12

17200 claim on alleged violations of franchise law.  The counterclaim in the San Francisco

13

Arbitration alleged that "Media Arts[1] violated the California Franchise Investment law in entering

14

the franchise agreement with [Kayne Galleries]."  Weir Decl. Ex. 1, p. 12, ¶ 39.  Further, TKC

15

was specifically alleged to have violated the Federal Trade Commission Act and the Code of

16

Federal Regulations.  *Id.* at ¶¶ 29, 34.  Kayne argued that the dealer agreements were actually

17

franchise agreements.  Kayne's opening brief contains the following statements:

18

19

> "Media Arts is likely to vigorously contest its status as a franchisor, however if it
> walks like a duck, quacks like a duck, swims like a duck, and meets the legal
> definition of a duck, it's a duck.

20

>                     *          *          *

21

22

> The dealer agreements at issue here are actually franchise agreements, and the
> Kayne galleries are indeed franchises under those agreements."

23

24

Weir Decl. Ex. 2, p. 26-27.

25

Kayne went on to argue in the San Francisco arbitration that "it is undisputed that [TKC]

26

did not register as a franchise and that [TKC] did not provide franchise disclosures to Counter-

27

claimants.  Therefore, [TKC] is liable to Counter-claimants for damages in connection with the

28

---

[1]  TKC was formerly known as Media Arts.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

1   failure to disclose as well as in connection with the misrepresentation made to Counter-claimants

2   in the course of selling the franchise to counterclaimants." *Id.* at p. 29. In this case, Kayne seeks

3   injunctive relief based upon the identical "failure to disclose" and "failure to register" theories.

4         On August 27, 2004 the majority of the Panel in the San Francisco Arbitration rejected all

5   of Kayne's counterclaims. The Panel's award provided as follows:

6         7.  Respondent's 39 paragraph counterclaim contains some 16 major factual

7         conclusions, all of which were vigorously contested in this arbitration, and it

8         contains at least as many separate causes of action, including breach of the

9         covenant of good faith and fair dealing, unfair competition, anti-trust, RICO,

10        Federal Trade Commission Rules & Regulations, illegal termination, tortuous [sic]

11        interference with business relations, 'tortuous interference with business

          expectancy-inspective economic advantage (sic)' fraudulent disclosure, price

          discrimination, etc.

12        8.  By the close of evidence Respondent's causes of action had been pared to six:

13        (1) the dealer agreement is unconscionable (so its provisions barring consequential

14        and punitive damages is void); (2) Sherman Anti-Trust Act & Clayton Act; (3)

          Unfair Trade Practices Act; (4) Interference with Prospective Economic

15        Advantage; (5) Fraud; and (6) California franchise [sic] Act.

16        9.  **Respondent has not proven by a preponderance of evidence the elements of**

17        **even one of these causes of action.**

18   (emphasis added) Weir Decl. Ex. 3; p. 50.

19        In addition to rejecting all of Kayne's counterclaims, the three-judge arbitration panel

20   awarded TKC $588,555 for art that was ordered by Kayne Galleries and delivered by TKC, but

21   never paid for. The arbitration panel further found that the Personal Guaranty contained in the

22   Credit Agreement was binding and enforceable and that Kayne was personally liable for the debts

23   of Kayne Galleries. Indeed, the Panel specifically noted in its "Reasons for Award" that Kayne

24   testified that he signed the personal guarantee provisions and that he "now understands his

25   obligation under those provisions." Weir Decl. Ex. 3; p. 50.

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

### 2.     The Arbitration Award Against Kayne Galleries is Confirmed

2  After securing its arbitration award in the San Francisco Arbitration against Kayne and

3  Kayne Galleries, TKC moved to confirm the award in the Northern District of California.

4  Complaint ¶ 37.  In response, Kayne moved to vacate the award against him as an individual on

5  the ground that he was not a party to the Dealer Agreements that contained the arbitration clauses

6  pursuant to which the San Francisco Arbitration was initiated.  *Id.*  Specifically, Kayne argued

7  that disputes under the Credit Agreement and Personal Guaranty had to be arbitrated under the

8  AAA expedited rules, before a single arbitrator, in Santa Clara County.  Weir Decl. Ex. 6, pp. 66,

9  68.  The San Francisco Arbitration initiated under the Dealer Agreements, on the other hand, was

10 a lengthy and full evidentiary hearing before a three-judge panel.  The District Court confirmed

11 the award against Kayne Galleries, but vacated the award against Kayne personally.  Weir Decl.

12 Ex. 8; 87-90.  The District Court found that because the arbitration procedures called for in the

13 Credit Agreement and Personal Guaranty were not followed, and that the San Francisco

14 Arbitration Panel did not have the authority to hold Kayne individually liable.  *Id.* at 88.

15

### 3.     Kayne Seeks to Enjoin the Arbitration Under the Credit Agreement

16 Following the District Court's order vacating the award against Kayne, on July 10, 2006

17 TKC initiated arbitration proceedings pursuant to the terms of the Credit Agreement and Personal

18 Guaranty.  Complaint ¶ 42; Weir Decl. Ex. 12, p. 185.  Kayne refused to arbitrate and ultimately

19 filed the Georgia Action and sought to enjoin the McCauley Arbitration.  He also asked for a

20 declaration that there was no valid and binding agreement to arbitrate.  Weir Decl. Ex. 12; pp.

21 186-190.  TKC filed a motion in the Georgia Action to compel arbitration on the grounds that the

22 Credit Agreement and Personal Guaranty (a document which Kayne admits he executed)

23 contained a valid and enforceable arbitration clause.  In response, Kayne asserted that the Credit

24 Agreement and Personal Guaranty and the arbitration provision were invalid and void.  Kayne

25 argued that the Credit Agreement and Personal Guaranty were: (1) not supported by

26 consideration, (2) were never accepted by TKC, and (3) were in violation of the Georgia Statute

27 of Frauds.  Kayne also argued that the arbitration clause did not cover disputes relating to the

28 Personal Guaranty.  Complaint ¶ 43.

1    In support of his petition for injunctive and declaratory relief Kayne argued that the

2    Georgia court must act quickly to enjoin the proceeding because of the AAA's expedited rules.

3    Specifically, Kayne alleged that "The American Arbitration Association's expedited rules allow

4    for only one arbitrator and do not allow for any hearing requiring witness production….As a

5    decision may be reached by the arbitrator at anytime, Kayne will suffer irreparable and immediate

6    harm if Defendant is allowed to proceed with this arbitration prior to this Court's determination of

7    the arbitrability of this case."  Weir Decl. Ex. 12, pp. 193-194.

8    On March 29, 2007 Judge Charles Pannell of the Northern District of Georgia rejected

9    each of Kayne's defenses to the enforcement of the arbitration clause and compelled the parties to

10    arbitration.  Kayne appealed Judge Pannell's ruling to the Eleventh Circuit.  Weir Decl. Ex. 13.

11    Judge Pannell's order was affirmed by the Eleventh Circuit on October 3, 2007.  Weir Decl. Ex.

12    17.

13            4.    Pursuant to the Georgia Court's Order TKC Proceeds with the Arbitration

14    No stay of Judge Pannell's order was requested or entered.  Kayne urged the AAA and the

15    arbitrator to stay the arbitration in contravention of Judge Pannell's Order.  Fortunately, Professor

16    McCauley[2], properly concluded that he was required to comply with Judge Pannell's Order and

17    he set the matter for hearing consistent with the parties' arbitration agreement.  Weir Decl. Ex.

18    15.  This action followed.

19    **E.    Kayne's Allegations in this Action**

20    While Kayne purports to bring "new" claims unrelated to the allegations he brought in

21    prior proceedings, he, in fact, seeks the same relief he sought in the Georgia Action.  Specifically,

22    he now seeks (as he did in the Georgia Action) a declaratory judgment that the arbitration clause

23    in the Credit Agreement and Personal Guaranty is not enforceable and that the arbitration initiated

24    by TKC on July 10, 2006 should be enjoined.  Complaint ¶¶ 54-71.

25    Kayne's Complaint contains a litany of irrelevant allegations almost all of which have

26    been found to be untrue in prior litigation between the parties.  When the false and irrelevant

27    allegations are stripped away, Kayne's actual claims for relief are based on two very thin theories.

28    [2]  Mr. McCauley was jointly selected by the parties to act as the arbitrator in the matter.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1    The first is that the arbitration clause is unconscionable because it incorporates the AAA's

2    expedited procedures and requires that evidence be submitted to the arbitrator in written form as

3    opposed to live witnesses.  The second theory is that TKC violated California Business &

4    Professions Code § 17200 because it violated California and Federal franchise law by not

5    registering as a franchisor and not making required disclosures.  *Id.* ¶¶ 65-69.  Kayne claims that

6    if TKC had not have violated the franchise laws, it would have been required to disclose to Kayne

7    in an "offering circular" that the AAA's expedited rules apply and that, armed with the disclosure,

8    he never would have entered into the contract.  *Id.* ¶¶ 22, 29.

9    **III.    KAYNE'S CLAIMS MUST BE DISMISSED**

10          A party must state sufficient facts to state a claim for relief that is plausible on its face at

11   the outset of the lawsuit.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007)

12   ("[b]ecause the plaintiffs…have not nudged their claims across the line from conceivable to

13   plausible, their claims must be dismissed").  This pleading standard is designed to prevent "taking

14   up the time of a number of other people, with the right to do so representing an *in terrorem*

15   increment of the settlement value."  *Id.* at 1966, *citing Dura Pharmaceuticals, Inc. v. Broudo*, 544

16   U.S. 336 (2005).  Thus, claims that cannot meet the correct pleading standard should be exposed

17   at the point of minimum expenditure of time and money by the parties and by the court.  *Id.*

18          In deciding a motion to dismiss on pleadings the court may consider any of the pleadings,

19   including the complaint, answer and any written instruments attached to them.  2 Moore's Federal

20   Practice Guide § 12.38 (3rd Ed. 2005).  The Court may also consider matters that are properly the

21   subject of judicial notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).  Documents

22   referenced in the complaint and upon which the complaint relies where there is no dispute as to

23   authenticity may also be considered.  *Parrino,* 146 F.3d at 706.  The court accepts well-pleaded

24   factual averments.  *Feliciano v. Rhode Island,* 160 F.3d 780, 788 (1st Cir. 1998).  However, the

25   court is not required to ignore facts set forth in the complaint that undermine the plaintiff's claim,

26   nor is the court bound by assertions in the complaint that are merely unsupported conclusions of

27   law.  *Northern Ind. Gun & Outdoor Shows v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998).

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

### A.    All of Kayne's Claims Are Plainly Barred by Res Judicata

2    The doctrine of res judicata is well-established.  It bars a party from bringing a claim if a

3    court has rendered final judgment on the merits of the claim in a previous action involving the

4    same parties or their privies.  *In re International Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994)

5    (doctrine of claim preclusion barred bankruptcy trustee from asserting antitrust claim where the

6    trustee could have raised antitrust issues at prior hearings).  "Res judicata bars all grounds for

7    recovery that could have been asserted, whether they were or not, in a prior suit between the same

8    parties on the same cause of action."  (internal citations omitted) *Id.*;  *Brown v. Felsen*, 442 U.S.

9    127, 131 (1979) ("[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that

10   were previously available to the parties, regardless of whether they were asserted or determined in

11   the prior action"); *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) (compulsory

12   counterclaim that was not asserted was barred in future actions); *International Union of*

13   *Operating Eng'rs, v. Karr*, 994 F. 2d 1426, 1430-1431 (9th Cir. 1993) (claim for underpayment

14   of pension funds was barred by prior action which sought to collect delinquent payments to

15   funds); *C.D. Anderson & Co. v. Lemos*, 832 F. 2d 1097, 1099-1100 (9th Cir. 1987) (where parties

16   had a contract requiring "any dispute…between the parties to be arbitrated," an arbitral award

17   granted in customer's claim for return of deposits and forgiveness of debt for certain stock

18   transactions precluded broker from subsequently asserting securities fraud and RICO claims

19   arising from same transaction).

20    The Ninth Circuit applies a four part test to determine whether successive suits involve the

21   same cause of action: (1) whether rights or interests established in the prior judgment would be

22   destroyed or impaired by prosecution of the second action; (2) whether substantially the same

23   evidence is presented in the two actions; (3) whether the two suits involve infringement of the

24   same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.  *In*

25   *re International Nutronics, Inc.*, 28 F.3d at 969.  Of these factors, the fourth factor, i.e., whether

26   the two suits arise out of the same transactional nucleus of facts it the most important.  *Id.*; *C.D.*

27   *Anderson & Co. v. Lemos*, 832 F. 2d at 1099-1100 (9th Cir. 1987).

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Kayne's newest Complaint clearly meets each element of this test.  In the Georgia Action,

2    Kayne sought an order declaring that the arbitration provision contained in the Credit Agreement

3    and Personal Guaranty was invalid and unenforceable.  Weir Decl. Exs. 10, 12, pp. 124, 186-191.

4    Kayne also asked the Georgia court to enjoin the arbitration commenced by TKC on July 10,

5    2006 on the grounds that there was no valid agreement to arbitrate.  Weir Decl. Ex. 12, pp. 193-

6    194.  In this action, Kayne asks the Court to declare that the same arbitration provision is invalid

7    and unenforceable – the precise relief that was denied in the Georgia Action.  Complaint ¶ 60.

8    Kayne also asks this Court to enjoin the same arbitration commenced by TKC on July 10, 2006 –

9    again, the same relief that was denied in the Georgia Action.

10    Turning specifically to the elements, there is no doubt that each element is met and that

11    Kayne's current Complaint is patently frivolous.  First, it is clear this second action would

12    "destroy the prior judgment."  Kayne is simply asking this Court for the same relief that was

13    denied by the Georgia court when it compelled arbitration.  Second, not only will "substantially

14    the same evidence" be presented, but the identical evidence will be presented.  Both cases are and

15    were about the enforceability of the exact same agreement.  Third, the same rights are at issue,

16    namely whether Kayne must arbitrate with TKC pursuant to the arbitration provisions of the

17    Personal Guaranty.  Finally, and again obviously, the two suits arise out of the same transactional

18    nucleus of facts.  Each suit involves the same agreement and seeks exactly the same relief.

19    Ironically, while the doctrine of res judicata obviously bars Kayne's current claims, there

20    are numerous instances in this case where Kayne asserts the exact opposite of what he asserted in

21    Georgia.  Thus, not only does Kayne seek to undermine the policies associated with res judicata,

22    he would have this Court impose the unfair burden on TKC of having to defend two separate

23    actions in which Kayne takes diametrically opposite positions.  Indeed, as the table below

24    illustrates, Kayne made a series of tactical decisions in the Georgia Action that are now

25    inconvenient to his current goals (inconvenient because he was unsuccessful in the Georgia

26    Action) and which he now simply disavows.  Thus, because of this bad faith and gamesmanship,

27    the application of res judicata is particularly just.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

| California Action | Georgia Action |
|---|---|
| Asserts that California law applies to the interpretation of the contract because Kayne apparently prefers California's unconscionability rules. Complaint, *en passim.*[3] | Asserted that California law does not apply, but that Georgia law applies because Kayne concluded that the Georgia Statute of Frauds worked to his advantage. Weir Decl. Ex. 10, pp. 128-130. |
| Asserts that the AAA's Expedited Rules do not prevent a hearing with witnesses because Kayne believes that it helps his unconscionability arguments. Complaint ¶ 6. | Asserted that the AAA's Expedited Rules prevent witnesses from testifying because Kayne sought to establish the existence of exigent circumstances to support his request for a TRO. Weir Decl. Ex. 12, pp. 193-194.[4] |
| Asserts that the Dealer Agreements provide him as an individual with protections under the Franchise laws. Complaint ¶ 16. | Asserted that he individually was not a party to the Dealer Agreements because it supported his effort to show failure of consideration. Weir Decl. Ex. 10, pp. 116-118, 122-123. |

1.  Kayne's Attempt to Distinguish the Subject Matter of His Georgia Action and This Action is Absurd

Kayne draws a totally meaningless distinction between the two actions and falsely claims he does not seek to relitigate the same issues. Specifically, Kayne asserts:

> The Georgia district court and Eleventh Circuit proceedings involve the question whether there was or was not an agreement to arbitrate between TKC and David Kayne. The issues Mr. Kayne is presenting to this Court are different, and did not properly arise until it was first determined that there was, in fact, an agreement between TKC and Mr. Kayne to arbitrate. The issue now presented to this Court is whether, assuming there was an agreement to arbitrate under the provisions of Exhibit "A", such an agreement is unconscionable and therefore unenforceable

[3]  While Kayne is correct that California law applies to this case, it cannot be overlooked that he made the tactical decision to disavow California law in favor of Georgia law when he believed it worked to his advantage.

[4]  Kayne was correct in Georgia. The Expedited Rules do not permit witnesses. *See* Section III.C.1.a, infra.

1    under the standards first clearly articulated by the Ninth Circuit's *en banc* decision

2    in *Nagrampa v. Mailcoups, Inc.*, 469 F. 3d 1257 (9th Cir. 2006).

Complaint ¶ 46.

3

4         This purported "distinction" is fanciful and absurd, both from a legal and factual

5    standpoint.  Essentially, Kayne is arguing that he can maintain two actions in two different district

6    courts regarding the enforceability of the exact same agreement, if the first action purportedly

7    deals only with the existence of the agreement while the second action purportedly deals with

8    whether the same agreement is legally valid.  This is plainly wrong.  *Brown*, 442 U.S. at 131; *In*

9    *re International Nutronics, Inc.,* 28 F.3d at 969 (barring "all grounds for recovery that could have

10   been asserted, whether they were or not").  When Kayne sought an injunction and a declaration

11   from the Georgia court that he did not have to arbitrate with TKC, he was obligated to bring all of

12   his claims regarding the enforceability of the arbitration agreement.  Further, when TKC moved

13   to compel arbitration, Kayne was obligated to raise all of his defenses to the enforcement of the

14   arbitration agreement.  *Id.*  This plainly includes the claims brought here, i.e. that the arbitration

15   provisions are unenforceable because they are unconscionable and violate the California Business

16   and Professions Code.  Having asserted and lost in the Georgia Action that the arbitration

17   agreement is unenforceable, the law is clear Kayne cannot then run to another district court

18   seeking the same relief regarding the same contract.

19        Moreover, not only is Kayne's attempted distinction legally wrong, it is factually wrong as

20   well.  Kayne did, in fact, challenge the enforceability of the parties' contract in the Georgia

21   Action.  Kayne argued that the Personal Guaranty violated the Georgia Statute of Frauds, and thus

22   even if an agreement had been formed, Kayne argued, it was not enforceable.  Weir Decl. Ex. 12,

23   pp. 191-192.  Thus, Kayne is in fact arguing that he can bring successive challenges to the

24   validity of an arbitration agreement in a series of different courts so long as he bases the challenge

25   on a different theory.  In Georgia, he challenged the agreement's validity on Statute of Frauds

26   grounds; now, in California, he challenges the agreement's validity on unconscionability grounds.

27   What is next?  A challenge in Texas that the arbitration agreement is invalid because it was

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    procured by duress?  Clearly this is not how the judicial system works.  Kayne's claims are

2    barred.  *Brown*, 442 U.S. at 131.

3                    2.      The Timing of *Nagrampa* Does Not Help Kayne

4            Kayne's argues that he can maintain his current claims despite seeking the identical relief

5    in Georgia, because *Nagrampa v. Mailcoups, Inc.*, 469 F. 3d 1257 (9th Cir. 2006) was decided

6    after he presented his arguments in the Georgia Action.  This argument is empty and without merit

7    for numerous reasons.  First, there is no exception to the application of res judicata in this

8    circumstance.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (plaintiff in prior

9    action was barred from pursuing subsequent action for same claim even though his co-plaintiffs in

10    the prior action had successfully appealed the judgment); *Clifton v. Attorney General of State of*

11    *California*, 997 F. 2d 660, 663 (9th Cir. 1993) (new statute permitting parole hearing every two

12    years was not a sufficient change in circumstance to avoid claim preclusion effect of prior

13    judgment).  A party is not allowed to relitigate his case in a new forum because the law changes

14    after a judgment was issued.  *Id.*

15            Second, *Nagrampa* plainly did not make "new law" at all.  It applied California

16    unconscionability rules to an arbitration clause pursuant to a Supreme Court precedent that is

17    forty years old.  Indeed, even a superficial analysis of *Nagrampa* makes clear that there are no

18    "new" legal principals.  *Nagrampa* simply applies the rule set out in *Prima Paint Corp. v. Flood*

19    *& Conklin Mfg. Co.*, 388 U.S. 395 (1967).  Specifically, if a party challenges the arbitration

20    provisions in a contract it is a matter for the courts to decide; if, however, the challenge is to the

21    validity of the agreement as a whole it is a matter for the arbitrator.  *Prima Paint Corp.*, 388 U.S.

22    at 403-404.  This rule was reinforced recently by the Supreme Court in *Buckeye Check Cashing,*

23    *Inc. v. Cardegna*, 546 U.S. 440 (2006).  Kayne was fully aware of these decisions as he cited both

24    of them to the District Court in Georgia in support of his challenge to the arbitration clause in the

25    Credit Agreement and Personal Guaranty.  Moreover, as the *Nagrampa* court's own survey of the

26    case law reveals, jurisdictions have dealt with this precise issue in the context of an

27    unconscionability challenge and have determined that if the challenge is to the arbitration clause

28    itself, it is a matter for the courts.  *Nagrampa*, 469 F.3d at 1271-1277.  Indeed, *Nagrampa* cites to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Supreme Court precedent that is over ten years old stating "[i]t is well-established that

2    unconscionability is a generally applicable contract defense, which may render an arbitration

3    provision unenforceable. *Nagrampa*, 469 F.3d at 1280, citing *Doctor's Assocs., Inc. v. Casarotto*,

4    517 U.S. 681, 686-687 (1996). Accordingly, to the extent that Kayne is claiming that it is only

5    with the *Nagrampa* case that he had the right to challenge an arbitration clause on

6    unconscionability grounds, Kayne's claim is false.

7        In addition, California courts have recognized the principal that contracts can be void

8    because they are "unconscionable" for over one hundred years. *Boyce v. Fisk*, 110 Cal. 107, 114

9    (1895) (discussing unconscionability as a defense to contract enforcement.) Again, even a

10   cursory review of *Nagrampa* would have revealed to Kayne and his counsel that the *Nagrampa*

11   court was applying long established California law regarding unconscionability. *Nagrampa*, 469

12   F.3d at 1280, citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).

13   *Nagrampa* did not create new law.

14       Third, in an effort to make it appear that he could not have raised the unconscionability

15   issue in the Georgia Action, Kayne misrepresents the timing of the *Nagrampa* decision in relation

16   to the Georgia Action. Complaint ¶ 47. The *Nagrampa* decision was filed December 4, 2006.

17   Judge Pannell issued his order in the Georgia Action on March 29, 2007. Kayne had nearly four

18   months to bring the "new law" to Judge Pannell's attention and he chose not to. Thus, even if

19   there was a "new law" exception to the res judicata rules (which there is not) and even if

20   *Nagrampa* actually set out "new law" (which it does not), Kayne had ample opportunity to raise

21   the "unconscionability argument" in the Northern District of Georgia. Kayne's "new law"

22   argument is frivolous.[5]

23

24   [5] The fact of the matter is that Kayne specifically selected Georgia as a forum for his claims and
     made the tactical decision to assert that Georgia law governed the Credit Agreement and Personal
25   Guaranty. Kayne took this position because he believed that the Georgia Statute of Frauds gave
     him a strong argument that the Personal Guaranty was unenforceable. Accordingly, because he
26   concluded that Georgia law was favorable on the Statute of Frauds issue, he could not assert that
     California law applied and that the Georgia court should follow California's unconscionability
27   rules. Thus, *Nagrampa* was not raised in Georgia by Kayne simply because he could not have
     *Nagrampa* and the Georgia Statute of Frauds at the same time, in other words, a purely tactical
28   decision.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANT'S MOTION TO DISMISS          - 14 -          (No. 07-4721 (JF) (RS))

1

### B.    Kayne's Section 17200 Claims Fail for Multiple Reasons

2      Kayne's Section 17200 is nothing more than an end run around alleged  franchise law

3   claims that Kayne cannot otherwise bring.[6]  Indeed, since strict liability is imposed for violations

4   of the California Franchise Investment Law ("CFIL") Kayne most certainly would have brought

5   such claims if he could.  Cal. Corp. Code § 31300 ("[a]ny person who offers or sells a franchise

6   in violation of Section…31110…shall be liable to the franchisee or franchisor[.]).  Instead he tries

7   to shoehorn his franchise law claims into a Section 17200 claim.  Unfortunately, for Kayne, this

8   effort fails for many reasons.

9      First, the purported basis of the Section 17200 claim is barred by the doctrine of collateral

10  estoppel.  It has already been determined that TKC did not violate franchise laws in a prior

11  arbitration between the parties and Kayne cannot relitigate that issue here.  Second, the claim is

12  nonsensical on its face and fails as a matter of law.  The expedited arbitration provisions are

13  contained in the Credit Agreement signed by Kayne, thus his claim that TKC did not disclose the

14  terms must fail.  Third, Kayne lacks standing under the UCL because he does not (and cannot)

15  allege that he lost money or property as a result of the unlawful business practice.  Instead he

16  merely alleges that he agreed to certain arbitration procedures that he would not have accepted if

17  the unlawful business practice did not occur.  Fourth, the federal regulations upon which Kayne

18  relies did not come into effect until July 1, 2007, long after TKC's relationship with Kayne and

19  Kayne Galleries ended.  Fifth, the statute of limitations has expired on Kayne's 17200 claim.

20

21

22

23

---

24  [6]  Kayne has no franchise claims for numerous reasons.  First, the four year statute of limitations
    has run on any claims under the CFIL and Federal Trade Regulations do not have a private right
25  of action.  Cal. Corp. Code § 31303; *G&R Moojestic Treats Inc. v. MaggieMoo's International,*
    *LLC*, 2004 U.S. Dist. LEXIS 8806, *28 (S.D.N.Y. May 19, 2004) (holding that "there is no
26  private right of action to enforce the Disclosure Requirements of [16 C.F.R. § 436], or any other
    regulation promulgated under the Federal Trade Commission Act").  Second, it has been
27  determined that Kayne Galleries, not Kayne, was the "franchisee" so a cause of action under the
    franchise laws was never Kayne's to bring in the first place.  Third, as discussed in more detail
28  herein, his company did in fact bring the claim and lost.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

1.    Kayne's Section 17200 Claims are Barred by Collateral Estoppel

Kayne premises his Section 17200 claim on franchise law theories that are plainly barred by the doctrine of collateral estoppel. Kayne has already argued and lost his claim that TKC violated the franchise laws. He cannot maintain a new claim based on the same failed theory.

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Offshore Sportswear, Inc. v. Vuarnet International, B.V.,* 114 F.3d 848, 850 (9th Cir. 1997) (quoting *Clark v. Bear Sterns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir. 1992)). "Collateral estoppel, . . . , generally applies when an issue finally decided in an earlier action is involved in a second action, and the parties involved in the second action are bound by the first decision." *Luben Industries, Inc. v. United States,* 707 F.2d 1037, 1039 (9th Cir. 1983). In order to have issue preclusive effect, the following elements must be met: (1) the two proceedings must involve the same issue; (2) that issue must have been "actually litigated" and determined in the prior proceeding; (3) the determination of that issue must have been necessary to the prior ruling; and (4) the two proceedings must involve the same parties or their privies. *Animals v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992).

Each of these elements is present in this case. In the San Francisco Arbitration Kayne Galleries claimed that the signature dealers were actually franchisees and because TKC failed to register and file the requisite "offering circular," TKC had violated the California Franchise Act. Weir Decl. Ex. 2, pp. 26-29. The California Franchise Act provides for strict liability for failing to register as required. Cal. Corp. Code § 31300. Accordingly, Kayne claimed that the failure to register made TKC and its officers liable to Kayne. The arbitration panel rejected the franchise law claim. Weir Decl., Ex. 3, p. 50. The award was confirmed by Judge Illston of this district. Weir. Decl., Ex. 8. Kayne asserts the same violation of the California Franchise Act in this case. Specifically, he asserts that the signature dealers were franchises and that TKC failed to register and file the appropriate "offering circular." Complaint ¶¶ 15-21. It has already been decided that TKC did not violate the California Franchise Act in the manner alleged and Kayne is estopped from relitigating this issue. Accordingly, such allegations cannot form the predicate to a violation of Section 17200.

2.   <u>Based on Kayne's Own Allegations He Cannot Possibly State a Violation of Section 17200</u>

To bring a claim under Section 17200 a party must establish that:  (1) the defendant is engaging in a business practice that is unlawful, unfair or fraudulent; and that (2) the party suffered actual injury and the loss of money or property *as a result of* the business practice.  Cal. Bus. Prof. Code §§ 17200, 17204; *Buckland v. Threshold Enterprises, Ltd.,* 2007 Cal. App. LEXIS 1598, *19-*22  (September 25, 2007).

As a preliminary matter, it is necessary to identify what the alleged faulty "business practice" at issue actually is and Kayne's claimed "injury in fact and loss of money or property" as a result of the alleged faulty practice.  Fundamentally, Kayne attacks the legality of the arbitration provisions in the Credit Agreement and Personal Guaranty on the premise that TKC violated disclosure obligations contained in franchise laws, and but for such unlawful business practice, Kayne asserts that he would not have signed the Personal Guaranty.  Complaint ¶¶ 22, 29.  Thus, the unlawful business practice at issue is the failure to make certain disclosures regarding the arbitration provisions as allegedly required by franchise laws. [7]  The resulting "loss" apparently is Kayne's agreement to arbitration provisions that he otherwise would not have accepted, had he been aware of such provisions.[8]

---

[7]  Kayne's pleading suggests an alternative act that allegedly constitutes the faulty business practice.  Specifically, at points Kayne appears to allege that the unlawful business practice is actually "TKC's attempt to enforce the "expedited" arbitration provisions in Exhibit 'A'…"  If that is the act Kayne seeks to rely upon, his complaint fails for additional reasons and almost all of the language in the complaint becomes irrelevant.  Aside from the insufficient and conclusory allegations in paragraph 66 of the complaint, there are no allegations that the enforcement of the parties contract is unlawful, fraudulent or unfair.  Indeed, the "unlawfulness" element – which appears to be the sole basis for the UCL claim – relates to the alleged failure to make disclosures at the time the dealer agreement was signed.  Further, if merely initiating the arbitration is the basis for the UCL claim, the claim is also barred because the initiation of litigation is a privileged act.  Cal. Civ. Code § 47(b); *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993) (holding that the litigation privilege applies in UCL actions because "[u]ndergirding the immunity conferred by 47(b) is the broadly applicable policy of assuring litigants 'the utmost freedom of access to the courts to secure and defend their rights'" (citations omitted)).  TKC was merely initiating litigation pursuant to its contractual rights and Judge Illston's order.  For these reasons, TKC assumes that the "business practice" of which Kayne complains is this the alleged violations of the franchise laws.

[8]  As discussed in more detail below, this alleged loss is not of "money or property" and, Kayne therefore lacks standing to bring a claim under the UCL.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Unfortunately for Kayne, his causal link between the alleged franchise law disclosure violations and his execution of the Credit Agreement and Personal Guaranty disintegrates when one actually looks at the language in the Credit Agreement and Personal Guaranty. It is a two page document and the second page contains the relevant text. The Personal Guaranty is only eight lines. The dispute resolution provisions are contained in second paragraph on a page that only has five total paragraphs and states:

> DISPUTES:  ANY DISPUTE OR CONTROVERSY ARISING FROM THIS AGREEMENT WILL BE RESOLVED BY ARBITRATION BY THE AMERICAN ARBITRATION ASSOCIATION AT SANTA CLARA COUNTY, CALIFORNIA.  THE LANGUAGE OF THE ARBITRATION SHALL BE ENGLISH.  THE NUMBER OF THE ARBITRATORS SHALL BE ONE.  THE PARTIES AGREE THAT AMERICAN ARBITRATION ASSOCIATIONS EXPEDITED RULES SHALL APPLY AND THEY WAIVE ALL RIGHT TO ANY HEARING REQUIRING WITNESS PRODUCTION.  THE ARBITRATORS SHALL ISSUE AN AWARD BASED UPON THE WRITTEN DOCUMENTARY EVIDENCE SUPPLIED BY THE PARTIES.  THE ARBITRATOR'S AWARD SHALL BE BINDING AND FINAL.  THE LOSING PARTY SHALL PAY ALL ARBITRATION EXPENSES, INCLUDING ATTORNEY'S FEES.

Complaint Ex. A. David Kayne signed his name six lines after this provision. The arbitration provision is again referenced in the eighth line of the Personal Guaranty paragraph and Kayne signed his name two lines below that provision.

Nevertheless, Kayne makes the completely implausible assertion that he was not informed of the arbitration provisions and if he had received an "offering circular," he would have noticed the arbitration provisions and not signed the Credit Agreement and Personal Guaranty. Thus, Kayne would have the Court believe that he could not understand a two page agreement that he singed in two places just below the offending arbitration clause, but that if the same language had appeared in a different (and most likely in a significantly longer and more obscure document), he would have been on notice. This is nonsense. The simple facts are that Kayne was informed of the arbitration provisions in the contract that he signed, and thus the alleged violation of franchise laws could not of had anything to do with his agreement to be bound by such provisions. According, his claims must fail.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

### 3.    Kayne Lacks Standing Under the UCL

2

Kayne lacks standing under the UCL.  To curb abuses of the UCL, California voters

3

approved Proposition 64 which creates stringent standing requirements.  Specifically, to have

4

standing to bring a UCL claim, a party must have "suffered injury in fact and [have] lost money

5

or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  Kayne does

6

not allege that he has lost any "money or property as a result of the unfair competition."

7

California courts have interpreted the "money or property" requirement to be essentially a claim

8

for restitution.  *Buckland*, 2007 Cal. App. LEXIS 1598.  Here, Kayne attacks the validity and

9

enforceability of arbitration provisions.[9]  He asserts that his loss is being forced to arbitrate a

10

claim pursuant to terms he would not otherwise have accepted absent the unlawful business

11

practice.  Complaint ¶¶ 22, 29.  Indeed, Kayne pleads no loss of money or property as a result of

12

the challenged arbitration clause in his Complaint.  Obviously, restitution is not appropriate in

13

such a situation.  Accordingly, Kayne has no standing to raise an UCL claim.[10]

14

### 4.    The Transactions at Issue Were Not Governed By the Federal Regulations Upon Which Kayne Relies

15

As if further evidence of the frivolous nature of Kayne's claims was needed, Kayne relies

16

on disclosure obligations that were not effective until July 1, 2007, long after the transactions

17

between the parties were concluded and even after the McCauley Arbitration was initiated.

18

Specifically, Kayne alleges "[o]f particular relevance here, 'item 17.u and 17.v' of the 'Disclosure

19

Items' required under 16 C.F.R. § 436.5 called for explicit disclosures by TKC of the dispute

20

resolution and forum provisions of any agreements it entered into with franchisees and their

21

principals."  Complaint ¶ 27.

22

23

24

25

26

[9]   In this forum Kayne can only attack the validity of the arbitration provisions and not the Credit Agreement and Personal Guaranty as a whole.  *Buckeye Check Cashing,* 546 U.S. at 1044.  To the extent he would argue that his "loss of money or property" for 17200 purposes arises from being personally liable for the debts of Kayne Galleries, such a claim is an attack on the validity of the Credit Agreement and Personal Guaranty as a whole.

27

28

[10]   To the extent Kayne intends to argue that his "losses" are derived from legal fees and costs, that issue was resolved in *Buckland* as well.  Legal fees and costs associated with the suit do not confer standing.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    As the Federal Trade Commission makes clear in its final rule making publication, the

2    obligation to disclose dispute resolution terms did not exist in the regulations prior to the July 1,

3    2007 amendments.  72 F.R. 15444, 15495 ("Item 17 expands on the original Rule by requiring

4    disclosures pertaining to dispute resolution, including any arbitration or mediation requirements,

5    as well as forum-selection and choice of law provision disclosures."); *see also* 16 C.F.R. 436.1

6    (precursor to 16 C.F.R. 436.5 requiring disclosure of 14 items, but not dispute resolution terms).

7    Accordingly, even if TKC was required to make disclosures under federal regulations (which it is

8    not), the federal regulations that would have governed the transactions did not require the

9    disclosure of dispute resolution terms.  Kayne's reliance on federal regulations is obviously

10   misplaced.

11           5.       The Statute of Limitations Has Expired on Kayne's Section 17200 Claim

12           Claims under Section 17200 have a four year statute of limitations.  Cal. Bus. & Prof.

13   Code § 17208; *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*,

14   96 Cal. App. 4th 884, 891 (2002) (holding that the "discovery rule" does not apply to UCL

15   claims).  The alleged unfair business practice at issue here, TKC's failure to comply with

16   franchise laws occurred no later than October 2, 2001 and Kayne's claims are barred by the

17   statute of limitations.

18   **C.    Kayne's Unconscionability Claims Fail For Multiple Reasons**

19           Under California law, a contract provision can be unconscionable only if it is

20   "procedurally" unconscionable and "substantively" unconscionable.  *Aron v. U-Haul Company of*

21   *California*, 143 Cal. App. 4th 796, 808 (2006).  "The procedural element focuses on two factors:

22   oppression and surprise." *Id.*  "Oppression arises from an inequality of bargaining power that

23   results in no real negotiation and an absence of meaningful choice.  Surprise involves the extent

24   to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form

25   drafted by the party seeking to enforce the disputed terms." *Id.* (internal quotations and citations

26   omitted).  The substantive element looks at the contract terms themselves and analyzes whether

27   they are "overly harsh" or "shock the conscience." *Id.*  "Shock the conscience" is not to been

28   confused with unreasonable.  "[I]t is important that courts not be thrust in the parternalistic role of

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  intervening to change contractual terms that the parties have agreed to merely because the court

2  believes the terms are unreasonable." *Id.*  The Complaint fails to allege facts that support either

3  of these elements.

4    1.    The Arbitration Clause is Not Procedurally Unconscionable

5    While Kayne's complaint contains pages of irrelevant discussion of the Dealer

6  Agreements, arguments that are not even at issue, as well as claims that the Dealer Agreements

7  were fraudulently induced and unconscionable,[11] Kayne alleges no actual facts that would

8  substantiate his argument that the arbitration provisions in the Credit Agreement and Personal

9  Guaranty are unconscionable.  Indeed, the only mention of the unconscionability of the provisions

10 actually at issue is in a few paragraphs at the end of the Complaint.  These paragraphs merely

11 assert the legal conclusion that the arbitration provisions at issue are procedurally and

12 substantively unconscionable.  The Court is not required to accept legal conclusions in ruling on a

13 motion to dismiss. *Northern Ind. Gun & Outdoor Shows,* 163 F.3d at 452 (holding that the court

14 is not bound by unsupported conclusions of law when ruling on a motion to dismiss).

15   While the Complaint is devoid of specific factual allegations, it appears that Kayne is

16 attempting to manufacture the "oppression" and "surprise" elements of procedural

17 unconscionability by relying  on TKC's alleged failure to comply with California and Federal

18 franchise disclosure rules.  Kayne's reliance is misplaced for three reasons.

19   First, as discussed in Section III.B.1, supra, Kayne is estopped from relitigating his

20 already rejected franchise claims.  Since it has been determined that TKC did not violate the

21 franchise laws, that allegation cannot possibly form the basis of Kayne's unconscionability

22 theories.  Second, as also discussed in Section III.B.4, supra, the Federal Regulations that he

23 relies upon were not effective until July 1, 2007, long after the transactions between the parties

24 were concluded and even after the San Francisco Arbitration was commenced.  Accordingly, the

25 Federal regulations cannot support Kayne's unconscionability claims.  Third, Kayne's assertion

26 that the arbitration provisions were not disclosed is simply not true.  To believe Kayne's

---

27 [11]  Kayne raised these same arguments regarding the Dealer Agreements in the parties prior

28 arbitration and they were all rejected.  The Dealer Agreements were not found to be fraudulently
   induced and they were not found to be unconscionable.  Weir Decl., Exs. 3, 5.

1 | argument, one must believe that Kayne was capable of understanding the identical arbitration

2 | clause in a lengthy "offering circular," but was somehow incapable of understanding it in a

3 | simple two page document.  There is no surprise here.

4 | 2.      The Arbitration Clause is Not Substantively Unconscionable

5 | The arbitration provisions on their face are not "one sided" as the expedited rules apply

6 | equally to both parties.  Complaint Ex. A.  "The paramount consideration in assessing

7 | unconscionability is mutuality."  *Abramson v. Juniper Networks, Inc.,* 115 Cal. App. 4th 638, 657

8 | (2004).  Courts have routinely rejected unconscionability attacks when there is mutuality as there

9 | is here. *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 100 -101 (2003) (holding

10 | that clause requiring that all disputes be submitted to arbitration was mutual and not

11 | unconscionable); *24 Hour Fitness v. Superior Court*, 66 Cal. App. 4th 1199, 1215 (1998)

12 | (rejecting unconscionability claim because the arbitration clause applied equally to both parties).

13 | The existence of mutuality is only one of the facts that distinguishes this case from *Nagrampa,*

14 | 469 F.3d at 1285.  In *Nagrampa* there was no mutuality.  Unlike this case, Mailcoups, Inc. did not

15 | have to arbitrate all of its claims against Nagrampa, while Nagrampa was obligated to arbitrate all

16 | of her claims against Mailcoups, Inc.  Moreover, using rules promulgated by a nationally

17 | recognized third party, the AAA rules simply cannot be deemed to "shock the conscience."

18 | Indeed, the AAA specifically designs its rules to be fair to both arbitrating parties.

19 | Kayne attempts to manufacture substantive unconscionability by characterizing the

20 | arbitration provisions in the Credit Agreement and Personal Guaranty as modifying the AAA's

21 | expedited rules fail.  Complaint ¶ 6.  The arbitration provisions do not allow witnesses; but none

22 | are allowed under the expedited rules either.  Kayne's construction of Rule E-6 is simply wrong.

23 | While the expedited rules do permit oral arguments, they do not permit witnesses.  This

24 | conclusion is clear when one compares the expedited rules with the regular commercial

25 | arbitration rules.  The regular arbitration rules specifically discuss the exchange of documents and

26 | witness lists.  Weir Decl. Ex. 16, R-21.  In fact the regular arbitration rules require "oaths" (Rule

27 | 25), discuss how witnesses will be examined (Rule 30), provide for the subpoenaing of witnesses

28 | to the hearing (Rule 31) and contain various other provisions regarding the presentation of

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1    witnesses. Weir Decl. Ex. 16. In contrast, the expedited rules contain no discussion of witnesses.

2    In fact, Rule E – 5 requires the parties only to "exchange copies of all exhibits they intend to

3    submit at the hearing." *Id.* The Rule says nothing about witness disclosures. Kayne's

4    construction of the rules would mean that the parties could call unlimited, undisclosed witnesses.

5    When read in conjunction with the procedures in the Commercial Arbitration Rules that do allow

6    witnesses, it is obvious that Kayne's construction is wrong. Accordingly, far from trying to hide

7    the nature of the proceeding, TKC simply repeated what was already in the expedited rules,

8    namely that no witnesses can be called. Thus, the "no witnesses" language actually hurts, rather

9    than, helps Kayne's claim of surprise.

10        Finally, Kayne does not plead sufficient facts regarding his alleged defenses and why

11   those defenses cannot be presented in an expedited proceeding.[12] Again, he merely pleads in a

12   conclusory fashion that some vague defense will be lost. What defenses? What discovery does

13   he need? Who does he need to "cross-examine"? Kayne's claims cannot survive on conclusory

14   assertions. *Northern Ind. Gun & Outdoor Shows*, 163 F.3d at 452.

15            3.    Kayne's Claim of Unconscionability is Barred by the Doctrine of Judicial
                   Estoppel

16        The doctrine of judicial estoppel precludes a party from taking one position and then

17   subsequently taking an inconsistent position. *Rissetto v. Plumbers and Steamfitters Local 343*, 94

18   F. 3d 597, 600 (9th Cir. 1996); *Yniguez v. Arizona*, 939 F. 2d 727, 738 (9th Cir. 1991) (applying

19   doctrine of judicial estoppel to bar assertion of inconsistent legal opinions). Judicial estoppel is

20   an equitable doctrine, designed to protect the integrity of the courts by preventing a party from

21   "playing fast and loose" with the courts. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)

22   (holding that judicial estoppel barred the state of New Hampshire from asserting that the

23   Piscataqua River boundary runs along the main shore because it had asserted in prior litigation

24   that the boundary was at the middle of the main channel of navigation).

---

[12] TKC believes that Kayne is intentionally vague with respect to his "defenses," because these "defenses" were already litigated and rejected in the prior arbitration. Kayne pleads that fraud in the formation of the Dealer Agreements is part of his defense to the enforcement of the Credit Agreement and Personal Guaranty. However, it has been judicially determined that there was no fraud in the formation of the Dealer Agreements. Thus, how can this same failed claim for the basis of a defense to this action. The answer is it cannot.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1  The Supreme Court has recognized that there is no single formulation of the

2  circumstances under which judicial estoppel may be invoked. *Id.* However, courts typically

3  consider several factors in evaluating whether to apply judicial estoppel, including: (1) whether

4  the party's later position is clearly inconsistent with its earlier position; (2) whether the party has

5  succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance

6  of an inconsistent position in a later proceeding would create "the perception that either the first

7  or the second court was misled"; and (3) whether the party seeking to assert an inconsistent

8  position would derive an unfair advantage or impose an unfair detriment on the opposing party if

9  not estopped. *Id.* at 750-751.

10  All three elements are present in this case. Kayne has previously used the expedited

11  procedures to his advantage. Now, that TKC wishes to conduct an arbitration pursuant to the

12  same expedited procedures, Kayne seeks to invalidate them. In the proceedings to confirm the

13  award in the San Francisco Arbitration, Kayne argued that the panel in the San Francisco

14  Arbitration lacked the power to reach the validity of the Personal Guaranty because the San

15  Francisco Arbitration was not initiated pursuant to the arbitration clause in the Personal Guaranty.

16  Specifically, Kayne argued:

17  [T]he credit application provided that arbitrations concerning the personal
18  guaranty would proceed before a single arbitrator in Santa Clara County in
accordance with the Expedited Arbitration Rules, would not involve a hearing,
19  and would be decided based solely upon written documentary evidence supplied
by the parties. [citations omitted]. Thus, the arbitration provision contained in
20  the Credit Application (and referenced in the personal guaranty) clearly
contemplated an arbitration process that was different from the arbitration process
21  specified in the Dealer Agreement. The separate arbitration procedures of the
Credit Application and accompanying Personal Guaranty – if indeed they were
22  ever triggered by the Kinkade Company's acceptance of the application and
extension of additional credit (which they were not) – have never been invoked.[13]
23

24  Weir Decl. Ex. 6; pp. 75-76. Kayne was successful in his argument and Judge Illston vacated the

25  arbitration award against Kayne personally because the expedited arbitration procedures in the

26  Personal Guaranty were not followed. Weir Decl. Ex. 8, pp. 88-89. Now, after TKC has

27  [13] Judge Illston never reached the issue of whether or not the Credit Agreement and Personal
Guaranty was accepted by TKC. However, Judge Pannell did reach that issue and found that
28  there was in fact acceptance.

invoked the expedited rules just as Kayne claimed was required, Kayne reverses course and argues that the rules are unlawful.  Indeed, if Kayne is allowed to proceed with his unconscionability argument, the parties will have gone full circle.  Kayne could not be held personally liable in the San Francisco Arbitration because that arbitration was a full evidentiary hearing and not one pursuant to the expedited procedures contemplated in the Personal Guaranty. Now, Kayne claims that he cannot be held personally liable under the Personal Guaranty because the expedited procedures do not allow him to have a full evidentiary hearing.  After successfully using the expedited rules as a defense in the prior arbitration, Kayne cannot be heard to complain about their application now.  He is estopped from asserting their alleged invalidity.

## IV.  **CONCLUSION**

For the reasons set forth above, the Court should grant TKC 's motion to dismiss Kayne's claims without leave to amend.

Dated: October 4, 2007                   McDERMOTT WILL & EMERY LLP
                                          DANA N. LEVITT, PC
                                          CHARLES E. WEIR
                                          JASON D. STRABO

                                          By:_____/s/_____
                                             Charles E. Weir
                                             Attorneys for Defendant
                                             THE THOMAS KINKADE COMPANY

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES