IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID KAYNE,                          )
                                      )
        Plaintiff,                    )        CIVIL ACTION
                                      )        NO. 1:06-CV-2168-CAP
v.                                    )
                                      )
THE THOMAS KINKADE COMPANY,           )
f/k/a MEDIA ARTS GROUP, INC.          )
                                      )
        Defendant.                    )
                                      )

## SECOND AMENDED PETITION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

COMES NOW David Kayne and amends his Complaint against The

Thomas Kinkade Company, f/k/a Media Arts Group, Inc. ("TKC") as follows:

## JURISDICTION AND VENUE

1.

Plaintiff is the owner and president of Kayne Art Galleries of Georgia, Inc.

("Kayne Art Galleries") a Georgia corporation.

2.

Defendant is a foreign corporation organized under the laws of the state of

California, upon information and belief is successor to a Delaware corporation of

the same name, and is subject to jurisdiction and venue in this Court by virtue of its

Exhibit 12
Page 176

having transacted business within this state within the meaning of the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

3.

The Defendant may be served with summons and complaint by second original service upon its registered agent for service and process, Robert C. Murray, 900 Lightpost Way, Morgan Hill, California, 95037.

4.

Venue is proper in this Court pursuant to O.C.G.A. § 9-10-93 because a substantial portion of the conduct giving rise to the jurisdiction over Defendant occurred in Fulton County.

5.

Defendant has demanded arbitration and initiated proceedings with the American Arbitration Association. Defendant has no agreement to arbitrate with Plaintiff, and the American Arbitration Association has no jurisdiction to hear the issue of arbitrability.

6.

Plaintiff files this action on the grounds that it is not bound by the purported arbitration provision and purported Personal Guaranty.

2

Exhibit 12
Page 177

## <u>FACTUAL ALLEGATIONS</u>

### 7.

Defendant is a manufacturer/distributor of artwork.

### 8.

Kayne Art Galleries was a dealer of Defendant's artwork, and entered into a series of Signature Dealer Agreements ("Dealer Agreements") with Defendant beginning in November, 1998.

### 9.

David Kayne ("Kayne") signed the Dealer Agreements as an officer and agent of Kayne Art Galleries. Kayne has not individually, in his personal capacity, ever entered into a dealer agreement with Defendant.

### 10.

Pursuant to the Dealer Agreements, Kayne Art Galleries began operating its galleries in 1998, purchased Defendant's artwork on credit, and sold the artwork in its stores in Georgia.

### 11.

As President of Kayne Art Galleries, Kayne signed an "Application for Credit" ("Credit Application") on October 2, 2001.

Exhibit 12
Page 178

12.

Individually, Kayne signed a purported Personal Guaranty on October 2, 2001. A true and correct copy of the Credit Application and purported Personal Guaranty is attached as **Exhibit "A"**.

13.

Defendant is currently seeking arbitration against Kayne pursuant to the **purported** Personal Guaranty.

14.

The purported "Personal Guaranty" provides as follows:

> The undersigned, for consideration do hereby individually and personally guaranty the full and prompt payment of all indebtedness heretofore or hereafter incurred *by the above business*. This guaranty shall not be affected by the amount of credit extended or any change in the form of said indebtedness. Notice of the acceptance of this guaranty, extension of credit, modification in the terms of payment, and any right or demand to proceed against the principal debtor is hereby waived. This guaranty may be revoked by written consent of the creditor. Any revocation does not revoke the obligation of the guarantors to provide payment for indebtedness incurred prior to the revocation. I authorize the creditor and their assigns to obtain a consumer credit report and to contact my references as necessary. *As guarantor, I am also bound by the above arbitration clause.* [*emphasis added*]

Exhibit 12
Page 179

15.

Nowhere in the purported Personal Guaranty or separate Credit Application is the word "business" or "above business" defined.

16.

The Credit Application contains an "arbitration clause" which provides as follows:

> Disputes: Any dispute or controversy *arising from this agreement* will be resolved by arbitration by the American Arbitration Association at Santa Clara County, California. The language of the arbitration shall be English. The number of the arbitrators shall be one. The parties agree the American Arbitration Association's expedited rules shall apply and they waive all right to any hearing requiring witness production. The Arbitrator shall issue an award based upon the written documentary evidence supplied by the parties. The Arbitrator's award shall be binding and final. The losing party shall pay all arbitration expenses, including all attorney's fees. *[emphasis added]*

17.

The purported Personal Guaranty does not contain an arbitration clause. The purported Personal Guaranty does refer to (without incorporating same) the arbitration clause contained in the Credit Application.

5

Exhibit 12
Page 180

18.

The Credit Application and purported Personal Guaranty are two distinct alleged agreements.

19.

The Credit Application is between Kayne Art Galleries and TKC.

20.

The purported Personal Guaranty is between Kayne and TKC.

21.

The arbitration provision in the Credit Application applies to "any dispute or controversy arising from this agreement."

22.

As the Credit Application contains the arbitration provision, "this agreement" refers only to the Credit Application.

23.

TKC has filed a Demand for Arbitration and has requested an arbitrator determine whether Kayne is personally liable for the alleged debts of Kayne Art Galleries.

Exhibit 12
Page 181

24.

TKC has requested an arbitrator determine issues arising from the purported Personal Guaranty.

25.

There is no agreement between Kayne and TKC to arbitrate issues arising from the purported Personal Guaranty.

26.

Kayne Art Galleries transmitted via fax a copy of the signed Credit Application and purported Personal Guaranty to Defendant.

27.

Defendant never notified Kayne or Kayne Art Galleries that it had received, approved, or otherwise acted upon the Credit Application or purported Personal Guaranty.

28.

Defendant never approved the Credit Application.

29.

Defendant never approved the purported Personal Guaranty.

7

Exhibit 12
Page 182

30.

Defendant never accepted or otherwise acted upon the Credit Application.

31.

Defendant never accepted or otherwise acted upon the purported Personal Guaranty.

32.

The submissions of the Credit Application and purported Personal Guaranty were in effect separate offers by Kayne Art Galleries and Kayne to Defendant.

33.

If Defendant accepted the offer of the Credit Application, Defendant would have signed the Application where indicated. The customary and expected consideration upon acceptance of the offers would have been an increase in credit limit for Kayne Art Galleries.

34.

No increase in credit limit was granted. There was no other consideration for the Credit Application or purported Personal Guaranty, and the relation between the parties and their course of dealing remained exactly the same before and after the offers were transmitted.

8

Exhibit 12
Page 183

35.

Although it was not required that a dealership's owner sign the purported "Personal Guaranty," at a previous arbitration between Defendant and Kayne Art Galleries an employee of Defendant testified as follows:

Q:    Would there be any benefit to the dealer to sign the personal guarantee?

A:    Sure.  I mean I would give more credit to someone who signed a personal guarantee than someone who did not sign it.

36.

This "more credit" ("Additional Credit") was to be the consideration for the dealership's owner signing the purported Personal Guaranty.

37.

Although Kayne Art Galleries had not come close to exhausting its existing credit limit, Defendant presented it with the Credit Application.

38.

The Application was signed on October 2, 2001.

39.

No increase in credit or credit limit was granted to Kayne Art Galleries after October 2, 2001, and in fact Kayne Art Galleries' credit limit was reduced during the first half of 2002.

Exhibit 12
Page 184

40.

No Additional Credit or increased credit limit was granted to Kayne Art Galleries after October 2, 2001 resulting from the signed purported Personal Guaranty.

## ARBITRATION

41.

On July 10, 2006, Defendant filed a "Demand for Arbitration" with the American Arbitration Association in Santa Clara County, California against Kayne personally, pursuant to the purported Personal Guaranty. A true and correct copy of the "Demand for Arbitration" is attached as **Exhibit "B"**.

42.

Pursuant to the purported Personal Guaranty, Defendants are seeking from Kayne payment of a $554,605.00 debt allegedly incurred by Kayne Art Galleries.

43.

Defendant has no agreement to arbitrate with Kayne issues arising from the purported Personal Guaranty, and the American Arbitration Association has no jurisdiction to hear the issue of arbitrability.

Exhibit 12
Page 185

## COUNT I – DECLARATORY JUDGMENT: THE PARTIES DID NOT AGREE TO ARBITRATE ISSUES ARISING FROM THE PURPORTED PERSONAL GUARANTY

### 44.

Kayne restates and incorporates each and every allegation contained in paragraphs 1-43 of this Complaint as if set forth herein verbatim.

### 45.

Pursuant to the provisions of the purported Personal Guaranty, Kayne agreed to be bound by the arbitration provision in the Credit Agreement.

### 46.

In the Credit Agreement, Kayne Art Galleries and TKC agreed to arbitrate issues "arising from this agreement."

### 47.

"[T]his agreement" refers only to the Credit Agreement in which the arbitration provision sits, and not the separate purported Personal Guaranty.

### 48.

TKC is seeking arbitration against Kayne individually for issues that do not arise from the Credit Agreement, but arise from the purported Personal Guaranty.

11

Exhibit 12
Page 186

49.

There is no agreement between Kayne and TKC to arbitrate issues arising from the purported Personal Guaranty.

WHEREFORE, Kayne respectfully requests that this Court enter a declaratory judgment that there is no agreement between Kayne and TKC to arbitrate issues arising from the purported Personal Guaranty.

## COUNT II – DECLARATORY JUDGMENT: THERE IS NO AGREEMENT TO ARBITRATE DUE TO LACK OF ACCEPTANCE

50.

Kayne restates and incorporates each and every allegation contained in paragraphs 1-49 of this Complaint as if set forth herein verbatim.

51.

Offer, acceptance and consideration are required to conclude a contract in Georgia.

52.

Defendant did not accept the Credit Application, and neither Kayne nor Kayne Art Galleries was ever notified of the acceptance of the Credit Application by Defendant.

12

Exhibit 12
Page 187

53.

The Credit Application never rose to a mutual agreement between the parties and is unenforceable due to such lack of acceptance.

54.

Defendant did not accept the purported Personal Guaranty, and neither Kayne nor Kayne Art Galleries was ever notified of the acceptance of the purported Personal Guaranty by Defendant.

55.

The purported Personal Guaranty never rose to a mutual agreement between the parties and is unenforceable due to such lack of acceptance.

56.

Because the Credit Application and purported Personal Guaranty never rose to mutual agreements, the Credit Application and purported Personal Guaranty were never concluded and there is no agreement to arbitrate or agreement of guaranty to enforce.

57.

Pursuant to O.C.G.A. § 9-4-2, there is an actual justiciable controversy between the plaintiff and defendant as to whether the Credit Application and purported Personal Guaranty were accepted or otherwise acted upon by Defendant

13

Exhibit 12
Page 188

and thus whether the Credit Application and purported Personal Guaranty were ever concluded.

WHEREFORE, Kayne respectfully requests that this Court enter a declaratory judgment that Defendant never accepted and never notified Kayne of acceptance of the purported Personal Guaranty, or Kayne Art Galleries of acceptance of the Credit Application, thus prohibiting them from being concluded and hence rendering unenforceable both the arbitration provision and the purported Personal Guaranty.

## COUNT III – DECLARATORY JUDGMENT: THERE IS NO AGREEMENT TO ARBITRATE DUE TO LACK OF CONSIDERATION

58.

Kayne restates and incorporates each and every allegation contained in paragraphs 1-57 of this Complaint as if set forth herein verbatim.

59.

Defendant did not provide any consideration to Kayne Art Galleries or Kayne in return for Kayne Art Galleries' signature on the Credit Application.

60.

The Credit Application never rose to a mutual agreement between the parties supported by consideration and is unenforceable due to such lack of consideration.

14

Exhibit 12
Page 189

61.

Defendant did not provide any consideration to Kayne or Kayne Art Galleries in return for Kayne's signature on the purported Personal Guaranty.

62.

The purported Personal Guaranty never rose to a mutual agreement between the parties supported by consideration and is unenforceable due to such lack of consideration.

63.

Because the Credit Application and purported Personal Guaranty never rose to mutual agreements between the parties supported by consideration, the Credit Application and purported Personal Guaranty were not concluded.

64.

Pursuant to O.C.G.A. § 9-4-2, there is an actual justiciable controversy between the plaintiff and defendant as to whether consideration was provided for the Credit Application and for the purported Personal Guaranty.

WHEREFORE, Kayne respectfully requests that this Court enter a declaratory judgment that Defendant did not provide consideration for the Credit Application or the purported Personal Guaranty, thus prohibiting the Credit

15

Exhibit 12
Page 190

Application and purported Personal Guaranty from being concluded and rendering them unenforceable.

## COUNT IV – DECLARATORY JUDGMENT: THE PURPORTED PERSONAL GUARANTY IS UNENFORCEABLE BY REASON OF THE STATUTE OF FRAUDS

65.

Kayne restates and incorporates each and every allegation contained in paragraphs 1-64 of this Complaint as if set forth herein verbatim.

66.

The Statute of Frauds mandates that in order for a promise to answer for another's debt to be binding on the promisor, the promise must be in writing and signed by the party to be charged therewith.

67.

The Statute of Frauds further mandates that where the purported promise omits the identity of the principal debtor, it is unenforceable as a matter of law.

68.

The purported Personal Guaranty is for "indebtedness heretofore or hereafter incurred by the above business."

16

Exhibit 12
Page 191

69.

Neither the purported Personal Guaranty nor the Credit Application contain a definition for the "above business" or "business."

70.

The Personal Guaranty violates the Statute of Frauds and is thus unenforceable.

71.

Further, the statute of frauds contains, in effect, the minimum terms and definitions that must be included in a contract of suretyship/guaranty. Failure to include such terms prevents an agreement from being concluded.

72.

Pursuant to O.C.G.A. § 9-4-2, there is an actual justiciable controversy between the plaintiff and defendant as to whether the purported Personal Guaranty violates the Statute of Frauds.

WHEREFORE, Kayne respectfully requests that this Court enter a declaratory judgment that the purported Personal Guaranty violates the Statue of Frauds rendering the purported Personal Guaranty unenforceable.

17

Exhibit 12
Page 192

## COUNT V – INJUNCTIVE RELIEF

### 73.

Kayne restates and incorporates each and every allegation contained in paragraphs 1-72 of this Complaint as if set forth herein verbatim.

### 74.

O.C.G.A.§9-11-65(b) provides that a temporary restraining order may be granted without written or oral notice to the adverse party or his attorney if it clearly appears that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition.

### 75.

There is no presumptively valid arbitration agreement between Kayne and Defendant.

### 76.

The American Arbitration Association's expedited rules allow for only one arbitrator and do not allow for any hearing requiring witness production.

### 77.

The one arbitrator will issue an award based solely on written documents presented to the arbitrator.

18

Exhibit 12
Page 193

78.

As there is no hearing, and there will be no hearing, the arbitrator is able to make his or her decision at anytime.

79.

As a decision may be reached by the arbitrator at anytime, Kayne will suffer irreparable and immediate harm if Defendant is allowed to proceed with this arbitration prior to this Court's determination of the arbitrability of this case.

80.

Kayne has no other adequate remedy at law other than an injunction enjoining Defendant from proceeding with the arbitration demanded in Santa Clara County before the American Arbitration Association.

WHEREFORE Kayne respectfully requests that this Court enjoin Defendant, temporarily and permanently, from pursuing the arbitration demanded in Santa Clara County before the American Arbitration Association.

Exhibit 12
Page 194

Respectfully submitted,

/s/ Lawrence S. Burnat
Lawrence S. Burnat
Georgia Bar No. 096150
Michelle Roback Kraynak
Georgia Bar No. 429353
Attorneys for Plaintiff

Schreeder, Wheeler & Flint, LLP
1600 Candler Building
127 Peachtree Street, N.E.
Atlanta, Georgia  30303-1845
Telephone: (404) 681-3450
Facsimile: (404) 681-1046
K:\6450\1\Pleadings & Discovery\Second Amended Complaint.doc

20

Exhibit 12
Page 195

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served counsel for Defendant with the foregoing *Second Amended Petition for Declaratory Judgment and Injunctive Relief* by electronic means to the following:

Jill Basinger, Esq.
Charles E. Weir, Esq.
McDermott, Will & Emery
2049 Century Park East
34th Floor
Los Angeles, CA 90067

Eric C. Lang, Esq..
The Lang Legal Group, LLC
1800 Century Place
Suite 570
Atlanta, GA 30345

This the 27th day of April, 2007.

/s/ Lawrence S. Burnat
Lawrence S. Burnat
Attorney for Plaintiff

Exhibit 12
Page 196

USCA CASE NO. 07-11983-H

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### DAVID KAYNE,

Appellant,

v.

### THE THOMAS KINKADE COMPANY, f/k/a MEDIA ARTS GROUP, INC.,

Appellee.

---

Appeal from the United States District Court for the Northern District of
Georgia, Civil Action No. 1:06-cv-2168-CAP

---

### BRIEF OF APPELLANT

---

LAWRENCE S. BURNAT
Georgia Bar Number 096150
MICHELLE ROBACK KRAYNAK
Georgia Bar Number 429353

**SCHREEDER, WHEELER & FLINT, LLP**
1100 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309
(404) 681-3450

Attorneys for Appellant
David Kayne

Exhibit 13
Page 197

USCA CASE NO. 07-11983-H

## AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th. Cir. R. 26.1, counsel for Appellant hereby certifies the name of the trial judge and the names of all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock and other identifiable legal entities related to a party as follows:

American Arbitration Association

Basinger, Jill, Esq.

Britt, Gary, Esq.

Burnat, Larry S., Esq.

General Counsel Group, LLC

Kayne Art Galleries of GA, Inc.

Kayne, David

Kayne, Tracy

Kraynak, Michelle Roback, Esq.

Lang, Eric C., Esq.

Levitt, Dana, Esq.

McDermott Will & Emery, LLP

C-1 of 2

Exhibit 13
Page 198

**USCA CASE NO. 07-11983-H**

Media Arts Group, Inc.

Pannell, Jr., The Honorable Charles A.

Schreeder, Wheeler & Flint, LLP

The Lang Legal Group, LLC

The Thomas Kinkade Co.

Weir, Charles E., Esq.

Exhibit 13
Page 199

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant requests oral argument pursuant to 11th Cir. R. 28-1(c). It would benefit the Court to hear oral argument on the questions presented due to the complexity of the facts and documents in this case.

i

Exhibit 13
Page 200

# TABLE OF CONTENTS

|  | Page No. |
|---|---|
| Statement of Jurisdiction | vi |
| Statement of the Issues | 1 |
| Statement of the Case | 2 |
| A. Course of Proceedings and Disposition Below | 2 |
| B. Statement of Facts | 3 |
| C. Standard and Scope of Review | 10 |
| Summary of the Argument | 11 |
| Argument and Citations of Authority | 14 |
| A. There was no consideration for the Credit Application and Guaranty, and therefore no contract to arbitrate. (Issues 1-4) | 14 |
| 1. Since TKC had a continuing contractual obligation to provide credit to Kayne Art Galleries under the Dealer Agreements, the Credit Agreement and Guaranty were not supported by consideration. | 15 |
| 2. TKC had a pre-existing contractual obligation to provide credit to Kayne Art Galleries. | 16 |
| 3. Kayne Art Galleries did not purchase artwork from TKC on credit borrowed from Mr. Kayne. | 19 |
| 4. The district court's finding that TKC provided consideration for the Credit Application and Guaranty is erroneous and should be reversed. | 22 |

ii

Exhibit 13
Page 201

B.    TKC never performed the contemplated promises for Kayne Art Galleries' offers contained in the Credit Application and Guaranty, and thus did not accept by performance the offers. (Issues 5-7)     23

C.    The district court erred in finding the parties agreed to arbitrate issues arising from the Guaranty.  (Issue 8)     26

D.    The district court erred in finding that there was no triable issue of fact regarding the existence of an agreement to arbitrate between the parties.  (Issue 9)     28

Conclusion     30

Exhibit 13
Page 202

# TABLE OF CITATIONS

Page No.

## United States Supreme Court Decisions

AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643 (1986)    26

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006)    15, 23

First Options of Chicago v. Kaplan, 514 U.S. 938 (1995)    26

## United States Court of Appeal Decisions

Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2002)    29

Bonner v. City of Pritchard, 661 F.2d 1206 (11th Cir. 1981)    11

Gibson v. Neighborhood Health Clinics, 121 F.3d 1126 (7th Cir. 1997)    15

Green v. Russell County, 603 F.2d 571 (5th Cir. 1979)    11

Mercer v. C. A. Roberts Co., 570 F.2d 1232 (5th Cir. 1978)    11

Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir.1980)    29

Walton Motor Sales, Inc. v. Ross, 736 F.2d 1449 (11th Cir. 1984)

## United States District Court Decisions

Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367 (N.D. Ga. 2004)    15

Doctor's Associates v. Distajo, 944 F.Supp. 1010 (D.Conn.1996), aff'd, 107 F.3d 126 (2d Cir.1997)    29

## California Court of Appeals Decisions

Committee for Responsible School Expansion v. Hermosa Beach City    28

iv

Exhibit 13
Page 203

School District, 48 Cal. Rptr. 3d 705 (Cal. Ct. App. 2006)

Oakland Bank of Commerce v. Washington, 86 Cal. Rptr. 276 (Cal. Ct. App. 1970)     16

Russell v. Union Oil Co., 86 Cal. Rptr. 424 (Cal. Ct. App. 1970)     23

### Georgia Court of Appeals Decisions

Burns v. Dees, 252 Ga. App. 598, 557 S.E.2d 32 (Ga. Ct. App. 2001)     15

Heriot v. Connerat, 12 Ga. App. 203, 76 S.E. 1066 (1912)     15, 25

Moreno v. Strickland, 255 Ga. App. 850, 853, 567 S.E.2d 90 (2002)     23

R.A. Friedland v. Citizens & Southern South DeKalb Bank, 135 Ga. App. 591, 218 S.E.2d 302 (Ga. Ct. App. 1975)     15

VATACS Group, Inc. v. HomeSide Lending, Inc., 276 Ga. App. 386, 623 S.E.2d (2005)     27

### Federal Statutes

9 U.S.C. § 4 (2007)     29

### Treatises

Laurence P. Simpson, Handbook of the Law of Contracts (West Publishing Co. 1965 (1954).     15

Exhibit 13
Page 204

## **STATEMENT OF JURISDICTION**

Mr. Kayne appeals a final order and judgment of the United States District Court for the Northern District of Georgia entered on March 29, 2007 compelling him to arbitration and dismissing his Petition for Injunctive Relief and Declaratory Judgment.  Mr. Kayne filed his Notice of Appeal on April 27, 2007, thus the appeal is timely.  This Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291 and the Federal Arbitration Act, 9 U.S.C. § 16(a)(3).

Exhibit 13
Page 205

## STATEMENT OF THE ISSUES

The questions presented are (1) whether the district court erred in finding the Dealer Agreements did not provide TKC with a continuing obligation to provide credit to Kayne Art Galleries; (2) whether the district court erred in finding Kayne Art Galleries did not have its own credit pursuant to the Dealer Agreements; (3) whether the district court erred in finding that accepting the Credit Application from Kayne Art Galleries served as new consideration for the Credit Application and Guaranty; (4) whether the district court erred in finding that there was consideration for the Credit Application and Guaranty; (5) whether the district court erred in failing to find that the contemplated promise for the Credit Application was increased credit for Kayne Art Galleries, as held by the Northern District of California and since affirmed by the Ninth Circuit Court of Appeals; (6) whether the district court erred in finding that the contemplated promise for the Guaranty was simply to provide credit to Kayne Art Galleries rather than an increase in credit; (7) whether the district court erred in finding that TKC accepted the Credit Application and Guaranty; (8) whether the district court erred in finding the agreement to arbitrate encompassed issues arising from the Guaranty; and (9) whether the district court erred in finding that Mr. Kayne did not explicitly dispute that he did not purchase artwork on behalf of Kayne Art Galleries on credit extended to him personally.

1

Exhibit 13
Page 206

## STATEMENT OF THE CASE

### A.    Course of Proceedings and Disposition Below

Appellant David Kayne ("Mr. Kayne") initiated a Petition for Injunctive Relief and Declaratory Judgment in this case immediately following Appellee The Thomas Kinkade Company f/k/a Media Arts Group, Inc.'s ("TKC") filing of a demand for arbitration with the American Arbitration Association. (R1-1 Verified Compl.). TKC demanded arbitration pursuant to an arbitration provision contained in a credit application of Mr. Kayne's company, Kayne Art Galleries of GA, Inc., and referenced in a purported personal guaranty signed by Mr. Kayne in October 2001. (R1-1 Verified Compl. Ex. B). Mr. Kayne sought from the Superior Court of Fulton County, Georgia an injunction prohibiting TKC from proceeding with the arbitration and a declaratory judgment that indeed no such agreement to arbitrate exists. (R1-1 Verified Compl.). TKC removed the case to the Northern District of Georgia, and subsequently filed a Motion to Compel Arbitration Pursuant to 9 USC § 4 and Motion to Dismiss all Claims of David Kayne Pursuant to FRCP 12(b)(1) and 12(b)(6). (R1-1 Notice of Removal). On March 29, 2007, this Court issued an order granting TKC's motion to compel arbitration ("Order") (R2-35), and on April 27, 2007 Mr. Kayne filed his Notice of Appeal (R2-37).

2

Exhibit 13
Page 207

## B.    Statement of Facts

The Thomas Kinkade Company ("TKC") is a manufacturer/distributor of artwork. (R2-36-2, ¶ 7). Mr. Kayne is the president of Kayne Art Galleries of GA, Inc., a Georgia corporation ("Kayne Art Galleries"), and Mr. Kayne and Kayne Art Galleries are separate and distinct legal entities. (R1-20-1, ¶ 1; R2-36-3, ¶¶ 8, 9). In April 1998, Mr. Kayne entered into discussions with TKC about investing in a Thomas Kinkade Signature Gallery dealership. (R1-20-2, ¶ 3). At that time Mr. Kayne filled out an application for credit as part of TKC's pre-qualification process to determine whether potential investors were financially viable and capable of financing the start-up of one of TKC's galleries. (R1-20-2, ¶¶ 3, 4).

Thereafter, Kayne Art Galleries became a dealer of TKC's artwork by entering into a series of Signature Dealer Agreements ("Dealer Agreements") with TKC beginning in November, 1998.[1] (R1-20-2 ¶¶ 6, 7; R2-36-3, ¶ 8). The Dealer Agreements governed the relationship, including rights and obligations, between Kayne Art Galleries and TKC. (R1-20-3, ¶10). Mr. Kayne signed all of the Dealer Agreements as a corporate officer of Kayne Art Galleries. (R1-20-3, ¶ 8). Kayne Art Galleries began operating its galleries in 1998, purchased TKC's artwork on credit pursuant to the Dealer Agreements, and sold the artwork in its stores in

---

[1] While the Personal Guaranty and Credit Application are specifically at issue in this case, these Dealer Agreements govern the relationship between Defendant and Kayne Art Galleries.

Exhibit 13
Page 208

Georgia. (R1-20-3, ¶11). No statements were ever sent to Mr. Kayne individually, and no artwork was ever sold to or invoiced to Mr. Kayne individually. (R1-20, Ex. G). The purchase orders expressly reflect orders from Kayne Art Galleries (R1-20, Ex. H) and the exemplar Statements of Account are specifically addressed to Kayne Art Galleries and reflect the amount of credit extended to Kayne Art Galleries. (R1-20, Ex. H; R1-20-7, ¶ 27).

All seven Dealer Agreements (from 1998 to 2001) contain the same provision which provides as follows:

> DEALER is approved for extended, net 60 day (from date of invoice), credit terms on all purchases. Should DEALER fail to keep account current in credit status (e.g. if DEALER is on credit hold), MEDIA ARTS reserves the right to cease any and all shipments until the account is returned to current credit status. Subject to DEALERS right to cure default, should the account become more than 90 days past due, MEDIA ARTS reserves the right to terminate this agreement or move DEALER to a lower strata (i.e. Authorized, Premier or Showcase Premier).

(R1-20 Ex. A-8; R1-20 Ex. B-3; R1-20 Ex. C-3; R1-20 Ex. D-3; R1-20 Ex. E-3; R1-20 Ex. F-3). The "DEALER" is defined as Kayne Art Galleries. (R1-20 Ex. A-9; R1-20 Ex. B-6; R1-20 Ex. C-6; R1-20 Ex. D-6; R1-20 Ex. E-6; R1-20 Ex. F-6). As all sales were pursuant to the Dealer Agreements, therefore, Kayne Art Galleries was approved for credit, net 60 days from the date of invoice, for each gallery it operated. The fact that Kayne Art Galleries had credit with TKC from

Exhibit 13
Page 209

the outset for net 60 days is further confirmed by the Statements of Account from TKC to Kayne Art Galleries, where both the invoice date and the due date are listed as 60 days apart. (R1-20-6, ¶ 27; R1-20 Ex. G).

The term of the Dealer Agreements were as follows:

> This AGREEMENT shall be effective from the date signed below for a period of one(1) year ("Term"). This AGREEMENT shall automatically renew for successive one year Terms thereafter, unless either DEALER or MEDIA ARTS provides the other with written notice at least thirty (30) days prior to the end of the then-current Term otherwise stating that such party wishes to prevent such automatic renewal.

(R1-20 Ex. A-5; R1-20 Ex. B-2; R1-20 Ex. C-2; R1-20 Ex. D-2; R1-20 Ex. E-2; R1-20 Ex. F-2).    The Standard Terms and Conditions portion of the Dealer Agreements, Section 4(b) provides that:

> Unless specified otherwise, payments by DEALER for PRODUCTS shall be made by DEALER within thirty (30) days from the date of each invoice.    A finance charge of 1.5% per month shall be charged to all past due balances...

Section 4(d) further provides that

> MEDIA ARTS reserves the right to restrict or suspend shipment(s) if DEALER maintains an unpaid balance beyond a 30-day term (or if a longer term granted, e.g. 90 days, that longer term).    In addition, DEALER shall be liable for all costs and expenses of collection, including attorneys fees.

Finally, section 4(f) provides that

5

Exhibit 13
Page 210

> MEDIA ARTS shall have the right, in the exercise of its sole discretion, to cancel any purchase orders accepted by MEDIA ARTS or to delay the shipment of PRODUCTS covered thereby, if DEALER fails to make any payment when due or satisfy any other credit or financial requirements established by MEDIA ARTS.

(R1-20 Ex. A-11; R1-20 Ex. B-11; R1-20 Ex. C-11; R1-20 Ex. D-11; R1-20 Ex. E-11; R1-20 Ex. F-11).  As demonstrated by the exemplar Statements of Account which show the credit available to Kayne Art Galleries (R1-20 Ex. G), before the execution of the Credit Application and Guaranty in October 2001 Kayne Art Galleries' credit was in good standing.  Kayne Art Galleries' credit remained in good standing after execution of the Credit Application and Guaranty, also as evidenced by the credit available to Kayne Art Galleries, which remained at $899,000.00 both before and after October 2001.  (R1-20 Ex. G).

The Credit Application

Several years after Kayne Art Galleries and TKC established their relationship, TKC presented it with an "Application for Credit" ("Credit Application").  (R1-20-3, ¶11; R2-36-7, ¶ 26).  As a corporate officer of Kayne Art Galleries, Mr. Kayne signed the Credit Application on October 2, 2001.  (R1-20-5 ¶ 16).

The Credit Application contains an arbitration clause, which provides in relevant part as follows:

6

Exhibit 13
Page 211

> Disputes: Any dispute or controversy *arising from this agreement* will be resolved by arbitration by the American Arbitration Association at Santa Clara County, California. . . *[emphasis added]*

(R1-1, Verified Compl. Ex. A). The arbitration provision in the Credit Application limits its applicability to disputes arising from "this agreement," thus referring only to disputes arising from the Credit Application submitted by Kayne Art Galleries. (R1-1, Verified Compl. Ex. A). The customary consideration for the Credit Application was an increase in credit limit. (R1-20-5, ¶17).

### The Personal Guaranty

In October 2001, TKC also presented Mr. Kayne, individually, with a Personal Guaranty for his signature (the "Guaranty"). (R1-20-5, ¶18). The consideration for the Guaranty was to be an increased credit limit for Kayne Art Galleries. (R1-20-5, ¶8; R1-20 Ex. I) Mr. Kayne signed the Guaranty which provides as follows:

> The undersigned, for consideration do hereby individually and personally guaranty the full and prompt payment of all indebtedness heretofore or hereafter incurred by the above business. This guaranty shall not be affected by the amount of credit extended or any change in the form of said indebtedness. Notice of the acceptance of this guaranty, extension of credit, modification in the terms of payment, and any right or demand to proceed against the principal debtor is hereby waived. This guaranty may be revoked by written consent of the creditor. Any revocation does not revoke the obligation of the guarantors to provide payment for indebtedness incurred prior to the revocation. I authorize

Exhibit 13
Page 212

the creditor and their assigns to obtain a consumer credit report and to contact my references as necessary. *As guarantor, I am also bound by the above arbitration clause.* [*emphasis added*]

(R1-20-5, ¶5; R1-1, Verified Compl. Ex. A).

The Guaranty, the only alleged agreement between Mr. Kayne and TKC, does not contain an arbitration clause. (R1-1, Verified Compl. Ex. A). The Guaranty simply refers to, without incorporating, the arbitration clause contained in the Credit Application between Kayne Art Galleries and TKC. (R1-1, Verified Compl. Ex. A). Thus Mr. Kayne agreed to arbitrate issues "arising from *this agreement*" (i.e. Kayne Art Galleries' Credit Application), like the amount of money Kayne Art Galleries might owe to TKC. (R1-1, Verified Compl. Ex. A). Significantly, not included in the arbitration clause of the Credit Application is any agreement to arbitrate issues arising from the Guaranty or amounts which might possibly be owed by Mr. Kayne individually. (R1-1, Verified Compl. Ex. A).

Kayne Art Galleries and Mr. Kayne transmitted via fax a copy of the signed Credit Application and Guaranty to Defendant on October 2, 2001 from Kayne Art Galleries' offices in Georgia. (R1-20-6, ¶ 22). Defendant never notified Mr. Kayne or Kayne Art Galleries that it had received, approved, or otherwise acted upon the Credit Application or Personal Guaranty. (R1-20-6, ¶ 23). While the submissions of the Credit Application and Personal Guaranty were separate offers by Kayne Art Galleries and Mr. Kayne to TKC, TKC never responded and never

8

Exhibit 13
Page 213

accepted them. (R1-20-6, ¶ 24). The Dealer Agreements at all times remained in full force and effect governing the relationship between TKC and Kayne Art Galleries. (R1-20-3, ¶ 10).

No increase in credit or credit limit was ever granted to Kayne Art Galleries on or after October 2, 2001. (R1-20-6, ¶ 27). Prior to October 2, 2001 Kayne Art Galleries' credit limit was $899,000.00, and after October 2, 2001 Kayne Art Galleries' credit limit was $899,000.00. (R1-20-6 ¶ 27, Ex. G). There was no other consideration for the Credit Application or Personal Guaranty, and the relationship between the parties remained exactly the same before and after the offers were transmitted. (R1-20-7, ¶ 28).

<u>2002 Arbitration</u>

TKC initiated arbitration proceedings against Kayne Art Galleries and Mr. Kayne and his wife Tracy Kayne individually in 2002. (R1-14, Ex. F-1; R1-20-7, ¶ 29). TKC contended that Kayne Art Galleries had ordered artwork from TKC and that TKC had delivered the artwork to Kayne Art Galleries, but that Kayne Art Galleries never paid TKC for the artwork. (R1-20-8, ¶ 30). Although the arbitrators found in favor of TKC against Kayne Art Galleries and Mr. Kayne, the United States District Court for the Northern District of California reversed the award of the arbitrators and refused to enter judgment against Mr. Kayne, holding that the Dealer Agreements did not obligate Mr. Kayne to arbitrate issues under the

9

Exhibit 13
Page 214

Guaranty, and that the arbitration provision in the Credit Application, if applicable, had not been complied with by TKC. (R1-14, Ex. F-4). The District Court Order was affirmed by the Ninth Circuit Court of Appeals. The Thomas Kinkade Co. v. David Kayne, Tracy Kayne and Kayne Art Galleries of GA, Inc., Slip Copy, 2007 WL 1544430 (C.A.9 (Cal.)).

### Demand for Arbitration

TKC now again seeks private arbitration to determine whether Mr. Kayne "is personally liable for the debts of Kayne Art Galleries." (R1-1, Verified Compl. Ex. B). There is, however, no agreement between Kayne and Defendant to arbitrate issues arising from the Guaranty. (R1-1, Verified Compl. Ex. A). Mr. Kayne only agreed to be bound by the arbitration between TKC and Kayne Art Galleries, not to arbitrate disputes between TKC and Mr. Kayne. (R1-1, Verified Compl. Ex. A).

## C.    Standard and Scope of Review

This Court reviews de novo the district court's order compelling arbitration, including the district court's interpretation of the Credit Application, Guaranty and Dealer Agreements. Multi-Financial Securities Corp. v. King, 386 F.3d 1364 (11th Cir. 2004). The district court's findings of fact, however, are reviewed under a clearly erroneous standard. Fed. R. Civ. P. 52(a). A finding of fact is clearly erroneous "when the reviewing court, after examining the entire record, is left with

10

Exhibit 13
Page 215

a 'definite and firm conviction that a mistake has been committed by the district court'." <u>Mercer v. C. A. Roberts Co.</u>, 570 F.2d 1232, 1236 n.5 (5th Cir. 1978).[2] "When. . . the district court reaches its determinations solely on the basis of depositions, affidavits, and documents, the burden of establishing clear error is not so heavy, and the clearly erroneous rule is somewhat ameliorated. . ." <u>Seaboard Coast Line Railroad Co. v. Trailer Train Co.</u>, 690 F.2d 1343 (11th Cir. 1982). However, when the district court's findings may be "reasonably inferred from the record, such conclusions should not be disturbed on appeal. . ." <u>Green v. Russell County</u>, 603 F.2d 571, 573-74 (5th Cir. 1979).

## SUMMARY OF THE ARGUMENT

This is an appeal of an order and judgment compelling arbitration and dismissing Plaintiff's Petition for Declaratory Judgment and Injunctive Relief. The district court's determination that the parties had an agreement to arbitrate and that the agreement encompassed arbitrating issues arising from the Guaranty should be reversed. In the alternative, there are issues of triable fact entitling Mr. Kayne to a trial on the existence of an agreement to arbitrate.

The district court's finding that TKC provided consideration for the Credit Application and Guaranty is erroneous. TKC had a pre-existing contractual

---

[2] In <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206 (11th Cir. 1981), this court held that the decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, are binding precedent on all courts within the Eleventh Circuit.

Exhibit 13
Page 216

obligation under the Dealer Agreements to provide credit to Kayne Art Galleries. Therefore, the act of extending credit to Kayne Art Galleries without some additional consideration for the Credit Application and Guaranty cannot constitute consideration to support these documents as binding contracts. Without consideration for the Credit Application and Guaranty, there exists no binding arbitration agreement between the parties. The district court's order compelling arbitration and dismissing the case, therefore, should be reversed.

Furthermore, TKC never accepted, by performance or otherwise, the Credit Application and Guaranty, for it did not perform the promise contemplated in the offers. According to the evidence and the opinion of the Ninth Circuit (The Thomas Kinkade Co. v. David Kayne, Tracy Kayne and Kayne Art Galleries of GA, Inc., Slip Copy, 2007 WL 1544430 (C.A.9 (Cal.)), the promise contemplated by the Credit Application was an increase in credit for Kayne Art Galleries. This finding is binding upon parties in this Court. The promise contemplated by the Guaranty was an even greater increase in credit than by the Credit Application alone. The district court's determination of acceptance of those documents by performance was in error, and led to the erroneous conclusion that TKC accepted the Credit Application and Guaranty by granting Kayne Art Galleries credit. With no acceptance of the Credit Application or Guaranty, there is no binding agreement between the parties to arbitrate, and the district court's order should be reversed.

12

Exhibit 13
Page 217

The arbitration provision in the Credit Application, to which Mr. Kayne agreed to be bound, does not encompass arbitrating issues arising from the Guaranty. The Guaranty provides that Mr. Kayne agrees to be bound by the arbitration provision contained in the Credit Application, which encompasses disputes arising from the Credit Application. Thus, Mr. Kayne is unable to challenge the outcome of the arbitration between Kayne Art Galleries and TKC pursuant to the Credit Application. Mr. Kayne is, however, able to subsequently raise any defenses he may have to his personal liability for the arbitration award. Contrary to the district court's analysis, Mr. Kayne's interpretation of the arbitration provision does not render the arbitration provision "meaningless." Rather, the interpretation is based on the plain language used in the documents, giving meaning to all words therein. The district court erred in its interpretation of the Guaranty and the arbitration provision and improperly held that the parties agreed to arbitrate issues arising from the Guaranty and should be reversed.

The evidence in this case clearly establishes that there was no binding agreement to arbitrate issues involving the Guaranty between the parties. The district court, however, ruled that Mr. Kayne failed to dispute that TKC granted credit to Mr. Kayne to purchase artwork on behalf of Kayne Art Galleries and that based on that failure there were no triable issues of fact. Mr. Kayne, however, explicitly testified that neither he nor Kayne Art Galleries ever purchased artwork

13

Exhibit 13
Page 218

from TKC pursuant to the April 1998 credit application, and the Statements of Account evidence that credit was only granted by TKC to Kayne Art Galleries, not Mr. Kayne. Mr. Kayne further testified that the purpose of the April 1998 credit application was for TKC to determine whether Mr. Kayne was financially viable and capable of financing the start-up of one of TKC's galleries, not for extending credit to him. At the very least, therefore, Mr. Kayne is entitled to a trial on whether an agreement to arbitrate exists between the parties.

## ARGUMENT AND CITATIONS OF AUTHORITY

### A.    There was no consideration for the Credit Application and Guaranty, and therefore no contract to arbitrate. (Issues 1-4)

The district court's finding that TKC provided consideration for the Credit Application and Guaranty is erroneous and should be reversed. TKC had a pre-existing obligation to extend credit to Kayne Art Galleries which nullifies the district court's finding that extending credit to Kayne Art Galleries served as consideration for the Credit Application and Guaranty. Without consideration for the Credit Application and Guaranty, there exists no arbitration agreement between the parties. Contract formation is a question of law, and thus this Court conducts a de novo review of the district court's findings. Hopkins v. BP Oil, Inc., 81 F.3d 1070, 1074 (11th Cir. 1996).

Exhibit 13
Page 219

1.    Since TKC had a pre-existing continuing contractual obligation to provide credit to Kayne Art Galleries under the Dealer Agreements, the Credit Agreement and Guaranty were not supported by consideration.

Prior to sending a case to arbitration, it is the role of the court to determine whether a valid agreement exists, including whether there has been an offer, acceptance of that offer, and consideration for that agreement. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 1208 (2006); Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367 (N.D. Ga. 2004). If the purported agreement is not supported by consideration, the dispute will not be sent to arbitration. Gibson v. Neighborhood Health Clinics, 121 F.3d 1126 (7th Cir. 1997). "Neither doing nor promising to do that which one is already legally bound to the promisor to do can furnish consideration for a promise. In such case neither benefit to the promisor nor detriment to the promise exists." Laurence P. Simpson, Handbook of the Law of Contracts 99 (West Publishing Co. 1965 (1954). A party's existing obligation to perform under a contract cannot constitute consideration for a new agreement. Heriot v. Connerat, 12 Ga. App. 203, 76 S.E. 1066 (1912); See also Burns v. Dees, 252 Ga. App. 598, 604, 557 S.E.2d 32 (2001). Specifically relevant to this case, "[a] past consideration-one which has already served its purpose in a former transaction-is not sufficient to support a contract of guaranty; and although such a contract had been executed subsequent to the main contract, it must be supported by new consideration." R.A. Friedland v.

15

Exhibit 13
Page 220

<u>Citizens & Southern South DeKalb Bank</u>, 135 Ga. App. 591, 592, 218 S.E.2d 302 (1975); <u>See</u> <u>Oakland Bank of Commerce v. Washington</u>, 6 Cal. App. 3d 793 (1970) (a contract of guaranty requires new consideration).

    2.    <u>TKC had a pre-existing continuing contractual obligation to provide credit to Kayne Art Galleries.</u>

The Dealer Agreements contractually obligated TKC to grant Kayne Art Galleries "extended, net 60 day (from the date of invoice) credit on all purchases." (R1-20 Ex. A-8; R1-20 Ex. B-3; R1-20 Ex. C-3; R1-20 Ex. D-3; R1-20 Ex. E-3; R1-20 Ex. F-3). This contractual obligation was automatically renewed on a yearly basis barring written notice by one of the parties to terminate the Dealer Agreement or a default by Kayne Art Galleries. (R1-20 Ex. A-5; R1-20 Ex. B-2; R1-20 Ex. C-2; R1-20 Ex. D-2; R1-20 Ex. E-2; R1-20 Ex. F-2). The district court agreed that the Dealer Agreements ("Dealer" being Kayne Art Galleries) specifically state that "Dealer is approved for extended, net 60 days (from date of invoice) credit terms on all purchases." (R2-35-23). The district court further agreed that the Dealer Agreements provided that "Dealer must have credit which *is*, and remains, in good standing" (emphasis added). (R2-35-23). According to the language in the Dealer Agreements, Kayne Art Galleries was approved for credit, and had credit which was in good standing. There is absolutely nothing in the record to suggest that the credit of Kayne Art Galleries under the Dealer Agreements was not "in good standing" at the time the Credit Application and

Exhibit 13
Page 221

Guaranty were executed.  Despite this evidence, the district court erroneously concluded that

> [b]ecause the Dealer Agreements simply state that there is credit approval for the dealer at the time of the Dealer Agreement, the court concludes that the Dealer Agreements did not contain a continuing obligation to provide credit to Kayne Art Galleries such that TKC could not have accepted the Credit Application/Personal Guaranty by extending Kayne Art Galleries credit after receiving the Credit Application. (R2-35-23, 24).

The Dealer Agreements, however, provide as follows:

> This AGREEMENT shall be effective from the date signed below for a period of one(1) year ("Term").  This AGREEMENT shall automatically renew for successive one year Terms thereafter, unless either DEALER or MEDIA ARTS provides the other with written notice at least thirty (30) days prior to the end of the then-current Term otherwise stating that such party wishes to prevent such automatic renewal.

(R1-20 Ex. A-5; R1-20 Ex. B-2; R1-20 Ex. C-2; R1-20 Ex. D-2; R1-20 Ex. E-2; R1-20 Ex. F-2).  Every year, unless otherwise noticed, the Dealer Agreement is automatically renewed and the Dealer receives another year of credit on *all purchases*, net 60 days that TKC confirms "is" in good standing by the terms of the Dealer Agreement.  Thus, barring notice of termination or default by Kayne Art Galleries in the terms provided, TKC was contractually bound to continue to grant credit under the Dealer Agreements.

17

Exhibit 13
Page 222

As demonstrated by the exemplar Statements of Account which show the credit available to Kayne Art Galleries (R1-20 Ex. G), before the execution of the Credit Application and Guaranty in October 2001 Kayne Art Galleries' credit was in good standing. Kayne Art Galleries' credit remained in good standing after execution of the Credit Application and Guaranty, also as evidenced by the credit available to Kayne Art Galleries, which was at $899,000.00 both before and after October 2001. There is no evidence that either party provided written notice of termination. Thus, at the time of the Credit Application and Guaranty, TKC was contractually bound to continue to grant credit to Kayne Art Galleries pursuant to the Dealer Agreements, good for one year and automatically renewable.

The district court further erroneously held that "the only mention of credit in the Dealer Agreements appears in two paragraphs" and that these two paragraphs do not "state the terms of the credit or the amount of the credit" or afford a "continuing obligation to provide credit to Kayne Art Galleries..." (R2-35-23, 24). These statements by the district court were wrong. There are more than two mentions of credit in the Dealer Agreements, five to be exact, and the express language contained in each Dealer Agreement demonstrates that there *is* an obligation to grant credit on the terms stated throughout the year, and from year to year unless terminated in accordance with the terms. (R1-20 Ex. A-8,5; R1-20 Ex. B-2, 3; R1-20 Ex. C-2, 3; R1-20 Ex. D-2, 3; R1-20 Ex. E-2, 3; R1-20 Ex. F-2, 3).

Exhibit 13
Page 223

TKC, therefore, had a continuing duty arising from the Dealer Agreements to continue to provide credit to Kayne Art Galleries at the time of the Credit Application and Guaranty. TKC was already obligated to continue to grant credit pursuant to the Dealer Agreements and thus granting credit to Kayne Art Galleries could not constitute consideration to support the Credit Application or Guaranty.

3. <u>Kayne Art Galleries did not purchase artwork from TKC on credit borrowed from Mr. Kayne.</u>

The district court wrongly found that prior to October 2001 Kayne Art Galleries subsisted on credit extended to Mr. Kayne. (R2-35). However, neither the Dealer Agreements nor the April 1998 credit application contain language regarding "borrowed" credit, or credit granted to one entity (in this case Mr. Kayne) for a separate entity (in this case Kayne Art Galleries) to use to purchase artwork. (R1-20 Ex. A-F; R1-14 Ex. A-1). The only agreements in place between TKC and Kayne Art Galleries prior to October 2, 2001 were the Dealer Agreements. (R1-20-2, ¶ 6). Further, it is undisputed that no artwork was ever sold or invoiced to Mr. Kayne. All of the monthly statements of account and purchase orders themselves reflect a credit line in favor of Kayne Art Galleries, not Mr. Kayne. (R1-20 Ex. G, H). The only agreements from which Kayne Art Galleries' credit could have come, therefore, is the Dealer Agreements. There is no document or other evidence in the record which states that credit was ever *granted* to Mr. Kayne.

19

Exhibit 13
Page 224

The district court erroneously found that Mr. Kayne did not explicitly dispute that TKC extended credit to Mr. Kayne in order for Mr. Kayne to purchase artwork on behalf of Kayne Art Galleries.  (R2-35-20).  (See Section D below). This finding is completely erroneous and unsupported.  Mr. Kayne explicitly testified that neither he nor Kayne Art Galleries ever purchased artwork from TKC pursuant to the April 1998 application for credit.  (R1-20-2 ¶ 5).  Mr. Kayne further testified that the purpose of the April 1998 application for credit was for TKC to determine whether Mr. Kayne was financially viable and capable of financing the start-up of one of TKC's galleries, not for extending credit to him. (R1-20-2 ¶ 4).  The district court overlooked Mr. Kayne's clear objections to TKC's factual contention.  Furthermore, all the documentation shows that credit was granted to Kayne Art Galleries, not Mr. Kayne.  (R1-20 Ex. G, H).  The evidence includes the exemplar monthly Statements of Account which show that credit was granted to Kayne Art Galleries in the amount of $899,000.00.  (R1-20 Ex. G).  There is not one document in the record evidencing the *grant* of credit to Mr. Kayne.

In addition to the district court's Order not corresponding with the evidence, it defies logic that TKC would allow an entity to purchase artwork on another entity's credit without some type of guaranty.  The April 1998 credit application provides TKC absolutely no recourse against Kayne Art Galleries should

Exhibit 13
Page 225

mismanagement of Mr. Kayne's purported credit occur. (R1-14 Ex. A). The

Dealer Agreements, on the other hand, do provide TKC with recourse.

Section 4(b) of the Standard Terms and Conditions portion of the Dealer

Agreements provides as follows:

> Unless specified otherwise, payments by DEALER for PRODUCTS shall be made by DEALER within thirty (30) days from the date of each invoice. A finance charge of 1.5% per month shall be charged to all past due balances...

Section 4(d) further provides that

> MEDIA ARTS reserves the right to restrict or suspend shipment(s) if DEALER maintains an unpaid balance beyond a 30-day term (or if a longer term granted, e.g. 90 days, that longer term). In addition, DEALER shall be liable for all costs and expenses of collection, including attorneys fees.

Finally, section 4(f) provides that

> MEDIA ARTS shall have the right, in the exercise of its sole discretion, to cancel any purchase orders accepted by MEDIA ARTS or to delay the shipment of PRODUCTS covered thereby, if DEALER fails to make any payment when due or satisfy any other credit or financial requirements established by MEDIA ARTS.

(R1-20 Ex. A-11; R1-20 Ex. B-11; R1-20 Ex. C-11; R1-20 Ex. D-11; R1-20 Ex. E-

11; R1-20 Ex. F-11). Pursuant to the Dealer Agreements, the only means by which

TKC could restrict or suspend the credit was if Kayne Art Galleries failed to timely

pay an invoice; not for any other reason. There is no evidence in the record that

Exhibit 13
Page 226

Kayne Art Galleries failed to timely pay an invoice such that TKC restricted or suspended its credit in 2001.

Finally, the only evidence in the record concerning the *amount* of credit granted and to whom it was granted to is the Statements of Account. (R1-20 Ex. G). The Credit Application provides absolutely no information about the amount of credit afforded Kayne Art Galleries. (R1-1, Verified Compl. Ex. A). All of the Statements of Account were addressed to Kayne Art Galleries and none to Mr. Kayne. (R1-20 Ex. G).

Kayne Art Galleries was granted credit by TKC pursuant to the Dealer Agreements. The Dealer Agreements provided a one year, automatically renewable obligation to provide credit to Kayne Art Galleries as long as it was not in default or the Dealer Agreement was otherwise terminated. TKC granted Kayne Art Galleries $899,000.00 of credit under the Dealer Agreements to purchase artwork. The district court erred in its holding that Kayne Art Galleries borrowed Mr. Kayne's credit. The only correct interpretation of the Dealer Agreements is that TKC extended credit to Kayne Art Galleries pursuant to the Dealer Agreements.

4.    The district court's finding that TKC provided consideration for the Credit Application and Guaranty is erroneous and should be reversed.

The district court therefore erred in holding that TKC did not have a continuing obligation to provide credit to Kayne Art Galleries pursuant to the

Exhibit 13
Page 227

Dealer Agreements, and that providing credit to Kayne Art Galleries served as new consideration for the Credit Application and Guaranty. (R2-35-25). Without any consideration, there is no binding agreement between the parties to arbitrate and the case should be remanded to the district court for further proceedings.

> **B.    TKC never performed the contemplated promises for Kayne Art Galleries' offers contained in the Credit Application and Guaranty, and thus did not accept by performance the offers. (Issues 5-7)**

The district court's finding that TKC accepted the offer of the Credit Application and Guaranty by performance is erroneous and should be reversed. Contract formation is a question of law, and thus this Court conducts a de novo review of the district court's findings. Hopkins v. BP Oil, Inc., 81 F.3d 1070, 1074 (11th Cir. 1996).

Prior to compelling arbitration the trial court must determine whether a valid agreement exists, including whether has been an offer and acceptance. Buckeye, 126 S.Ct. 1204; Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367 (N.D. Ga. 2004). As the district court wrote in its opinion, "[a]n offer may be accepted by a promise to do the thing contemplated in the offer or by actually doing the thing." Moreno v. Strickland, 255 Ga. App. 850, 853, 567 S.E.2d 90 (2002); Russell v. Union Oil Co., 86 Cal. Rptr. 424, 427 (Cal. App. 1970).

Neither the Credit Application nor the Guaranty were accepted in writing as contemplated by the documents. (R1-1, Verified Compl. Ex. A). The promise

Exhibit 13
Page 228

contemplated in the offer of the Credit Application was that TKC would grant Kayne Art Galleries an increased amount of credit, a fact which has been *litigated* and *confirmed* by the Northern District of California and now the Ninth Circuit Court of Appeals. (R1-14 Ex. F-1, 2; The Thomas Kinkade Co. v. David Kayne, Tracy Kayne and Kayne Art Galleries of GA, Inc., Slip Copy, 2007 WL 1544430 (C.A.9 (Cal.))). This finding is binding upon parties in this Court. Walton Motor Sales, Inc. v. Ross, 736 F.2d 1449, 1456 (11th Cir. 1984). The promise contemplated in the offer of the Guaranty was that TKC would grant Kayne Art Galleries a greater amount of credit than with the Credit Application alone. (R1-1, Verified Compl. Ex. A). Acceptance by performance of the Credit Application, therefore, would be for TKC actually to grant Kayne Art Galleries an increased amount of credit. Acceptance by performance of the Guaranty, therefore, would be for TKC actually to grant Kayne Art Galleries an even greater amount of credit.

The credit limit for Kayne Art Galleries, however, did not change with the October 2001 Credit Application. (R1-20-6 ¶ 27). The credit extended to Kayne Art Galleries was $899,000 both before and after October 2, 2001 when the Credit Application and Guaranty were signed. (R1-20-6 ¶ 27). TKC, therefore, did not perform the contemplated promises under the Credit Application and Guaranty. Without performing the contemplated promises, there can be no acceptance.

Exhibit 13
Page 229

Performing an obligation under a prior agreement cannot serve as acceptance of a new agreement. See Heriot, 12 Ga. App. 203. The district court erroneously found, however, that TKC accepted the Credit Application and Guaranty by performance by extending credit to Kayne Art Galleries after having received the signed offers. (R2-35-22). There is no evidence that the contemplated promises for the Credit Application and Guaranty were to extend credit to Kayne Art Galleries. Rather, the evidence in this case is that the contemplated promises for the Credit Application and Guaranty were to increase the credit of Kayne Art Galleries from $899,000.00. TKC did not increase Kayne Art Galleries' credit, and thus did not perform under the agreements.

The district court, therefore, erred in finding that TKC accepted the Credit Application and Guaranty. The district court's determination of the promise contemplated in the offer was in error, and led to the erroneous conclusion that TKC accepted the Credit Application and Guaranty by granting Kayne Art Galleries credit, something TKC had already promised in the Dealer Agreements. Mr. Kayne respectfully requests that this Court reverse the district court and find that TKC did not accept by performance the Credit Application or Guaranty. Without acceptance, there is no binding agreement between the parties to arbitrate and the case should be remanded to the district court for further proceedings.

Exhibit 13
Page 230

**C.** **The district court erred in finding the parties agreed to arbitrate issues arising from the Guaranty. (Issue 8)**

The district court erred in its interpretation of the arbitration provision contained in the Credit Application and referenced in the Guaranty and should thus be reversed. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. at 648; See also First Options of Chicago v. Kaplan, 514 U.S. 938, 945 (1995). Even if the arbitration provision at issue in this case is found to be binding, the provision does not encompass arbitrating issues arising from the Guaranty. Thus compelling arbitration in this case is improper.

The Guaranty provides that the guarantor will be "bound" by the arbitration clause contained in the Credit Application. (R1-1 Verified Compl. Ex. A). However, that arbitration provision is limited in scope and does not cover issues between Mr. Kayne and TKC arising under the Guaranty. The arbitration provision in the Credit Application reads in relevant part as follows: "Any dispute or controversy *arising from this agreement* will be resolved by arbitration by the American Arbitration Association at Santa Clara County, California. . ." (emphasis added). (R1-1 Verified Compl. Ex. A). As guarantor, therefore, Mr. Kayne is bound by the result of the arbitration between Kayne Art Galleries and

Exhibit 13
Page 231

TKC. Once a decision in the arbitration between Kayne Art Galleries and TKC is reached, Mr. Kayne is bound by that decision.

Whether Mr. Kayne actually owes TKC the amount of Kayne Art Galleries' debt, however, is not subject to the agreement to arbitrate issues arising from the Credit Application. In accordance with the exact language contained in the Credit Application and Guaranty, in any action between Mr. Kayne and TKC, Mr. Kayne would be bound by the result of the arbitration between Kayne Art Galleries and TKC. Thus, if the current dispute between Mr. Kayne and TKC were to go to trial, Mr. Kayne would be bound by the decision of the arbitration panel, affirmed by the Ninth Circuit, that Kayne Art Galleries owed $631,634.86 to TKC[3]. Mr. Kayne would be free, however, to raise any defenses he might have to his personal liability for that amount because he only agreed to be bound by the provision which stated that Kayne Art Galleries and TKC would arbitrate disputes under the Credit Application. No document states that the parties agreed to arbitrate disputes arising out of the Guaranty.

Contrary to the district court's analysis, Mr. Kayne's interpretation of the arbitration provision does not render the arbitration provision "meaningless." Rather, the interpretation is based on the plain language used in the documents, giving meaning to all words therein, particularly the word "this." VATACS

---

[3] TKC's demand for arbitration references credits afforded Kayne Art Galleries that lower the amount owed to $554,605.00.

Exhibit 13
Page 232

Group, Inc. v. HomeSide Lending, Inc., 276 Ga. App. 386, 389-90, 623 S.E.2d 534 (2005); Committee for Responsible School Expansion v. Hermosa Beach City School District, 48 Cal. Rptr. 3d 705, 713 (Cal. Ct. App. 2006). The district court, therefore, erred in finding that Mr. Kayne's interpretation of the Guaranty and the purported arbitration obligations contained therein rendered the arbitration provision "meaningless." (R2-35-26). Mr. Kayne respectfully requests this Court reverse the district court's ruling and find that Mr. Kayne, while bound by the decision rendered in the arbitration against Kayne Art Galleries pursuant to the Credit Application, did not agree to arbitrate his personal liability for such debt. As such, arbitration in this case, which concerns only the Guaranty, is improper.

> D.    **The district court erred in finding that there was no triable issue of fact regarding the existence of an agreement to arbitrate between the parties. (Issue 9)**

As demonstrated in Sections A through C above, the evidence in this case clearly establishes that there was no binding agreement to arbitrate issues involving the Guaranty between the parties. The district court, however, before embarking on its decision finding in favor of arbitration, ruled that Mr. Kayne failed to dispute two factual contentions made by TKC, and that based on that failure there were no triable issues of fact. (R2-35-20). Should this Court disagree with Sections A through C above, at the very least Mr. Kayne is entitled to a trial on whether an agreement to arbitrate exists between the parties.

28

Exhibit 13
Page 233

"In the context of motions to compel arbitration brought under the Federal Arbitration Act (" FAA" ), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment." <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2002); *citing* <u>Par-Knit Mills v. Stockbridge Fabrics Co.</u>, 636 F.2d 51, 54 n. 9 (3d Cir.1980); <u>Doctor's Associates v. Distajo</u>, 944 F.Supp. 1010, 1014 (D.Conn.1996), <u>aff'd</u>, 107 F.3d 126 (2d Cir.1997).  "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." <u>Bensadoun</u>, 316 F.3d at 175 *citing* 9 U.S.C. § 4.  There is clearly an issue of fact as to the existence of an agreement to arbitrate, thus compelling arbitration without a proper trial to resolve the factual disputes is improper.

The district reduced its finding that a trial on the existence of a binding arbitration agreement between the parties was unfounded as to the following:

> Because Kayne does not explicitly dispute the fact that TKC extended credit to Kayne as an individual for him to purchase artwork on behalf of Kayne Art Galleries or that TKC extended credit to Kayne Art Galleries after receiving the Credit Application, the court concludes that Kayne has not met his burden in identifying a triable issue of fact concerning the existence of an agreement to arbitrate. (R2-35-20).

This conclusion was completely erroneous.  Mr. Kayne explicitly testified that neither he nor Kayne Art Galleries ever purchased artwork from TKC pursuant to the April 1998 application for credit.  (R1-20-2 ¶ 5)  Mr. Kayne further testified that the purpose of the April 1998 application for credit was for TKC to determine

29

Exhibit 13
Page 234

whether Mr. Kayne was financially viable and capable of financing the start-up of one of TKC's galleries, not for extending credit to him. (R1-20-2, ¶ 4). Mr. Kayne could not have been more explicit with his contention that he did not purchase artwork on behalf of Kayne Art Galleries pursuant to credit allegedly extended to him. The district court clearly erred in finding that Mr. Kayne did not explicitly dispute this factual contention.

There is a triable issue of fact, therefore, as to whether TKC extended credit to Mr. Kayne as an individual for him to purchase artwork on behalf of Kayne Art Galleries. This triable issue of fact affects whether a binding arbitration agreement was formed between the parties. Mr. Kayne explicitly denied TKC's contention as to such before the district court. Consequently, there are disputed facts concerning the existence of an agreement to arbitrate. Pursuant to 9 U.S.C. §4, therefore, Mr. Kayne is at least entitled to a trial on the issue of whether an agreement to arbitrate exists between the parties.

## CONCLUSION

The district court erred in finding that a binding agreement between the parties to arbitrate exists. In arriving at this conclusion the district court first misinterpreted the Dealer Agreements and erroneously determined that that Kayne Art Galleries did not have credit pursuant to the Dealer Agreements. This error infected the remaining portions of the district court opinion, and led the district

Exhibit 13
Page 235

court to erroneously conclude that TKC provided consideration for and accepted the Credit Application and the Guaranty. The district court further erred in holding that the arbitration provision referenced in the Guaranty mandated that Mr. Kayne arbitrate issues arising from the Guaranty. In the alternative, a final error by the district court was committed when it determined that Mr. Kayne had not explicitly challenged TKC's factual contention that Kayne Art Galleries had purchased artwork pursuant to credit extended to Mr. Kayne. Mr. Kayne respectfully requests that this Court reverse the district court's legal and factual errors, and find that there is no binding agreement to arbitrate between the parties. In the alternative, Mr. Kayne respectfully requests that this Court remand the case for a trial on the issue of whether an agreement to arbitrate exists in this case.

This 18th day of June, 2007.

                               _____
                               Lawrence S. Burnat
                               Georgia Bar No. 096150
                               Michelle Roback Kraynak
                               Georgia Bar No. 429353
                               Attorneys for Appellant David Kayne

Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Telephone: (404) 681-3450
Fax: (404-681-1046

31

Exhibit 13
Page 236

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7351 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This 18th day of June, 2007.

_____

Lawrence S. Burnat
Georgia Bar No. 096150
Michelle Roback Kraynak
Georgia Bar No. 429353
Attorneys for Appellant David Kayne

Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Telephone: (404) 681-3450
Fax: (404-681-1046

K:\6450\1\Appeal\Final Kayne Appellant Brief.doc

Exhibit 13
Page 237

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served counsel for Appellee with the foregoing Brief of Appellant by depositing a copy in the United States mail to the following:

Dana Levitt, Esq.
Charles E. Weir, Esq.
McDermott, Will & Emery
2049 Century Park East
34th Floor
Los Angeles, CA 90067

Eric C. Lang, Esq..
The Lang Legal Group, LLC
1800 Century Place
Suite 570
Atlanta, GA 30345

This the 18th day of June, 2007.

_____
Lawrence S. Burnat
Attorney for Appellant David Kayne

Exhibit 13
Page 238