USCA CASE NO. 07-11983-H

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## DAVID KAYNE,

**Appellant,**

**v.**

## THE THOMAS KINKADE COMPANY, f/k/a MEDIA ARTS GROUP, INC.,

**Appellee.**

---

Appeal from the United States District Court for the Northern District of
Georgia, Civil Action No. 1:06-cv-2168-CAP

---

## REPLY BRIEF OF APPELLANT

---

LAWRENCE S. BURNAT
Georgia Bar Number 096150
MICHELLE ROBACK KRAYNAK
Georgia Bar Number 429353

**SCHREEDER, WHEELER & FLINT, LLP**
1100 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309
(404) 681-3450

Attorneys for Appellant
David Kayne

Exhibit 14
Page 239

# TABLE OF CONTENTS

**Page No.**

Introduction ......................................................................................... 1

Argument and Citations of Authority .................................................. 1

    A.    Mr. Kayne and Kayne Art Galleries are separate and distinct legal entities. ........................................................ 2

    B.    There was no consideration for the Credit Application and Guaranty, and therefore no contract to arbitrate. ...... 3

    C.    It has been conclusively established by the Northern District of California, affirmed by the Ninth Circuit, that the October 2001 Credit Agreement and Personal Guaranty were executed to increase the credit limit for Kayne Art Galleries, that final judgment is binding, and under the doctrine of collateral estoppel relitigation of that finding is not permitted. .......................................... 10

    D.    The district court erred in finding the parties agreed to arbitrate issues arising from the Personal Guaranty. ........ 14

    E.    The district court erred in finding that there was no triable issue of fact regarding the existence of an agreement to arbitrate between the parties. .......................... 19

Conclusion ........................................................................................... 21

Exhibit 14
Page 240

# TABLE OF CITATIONS

**Page No.**

## United States Supreme Court Decisions

AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643 (1986)    18

First Options of Chicago v. Kaplan, 514 U.S. 938 (1995)    18

Montana v. U.S., 440 U.S. 147 (1979)    11

## United States Court of Appeal Decisions

Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2002)    1

Burton v. City of Belle Glade, 178 F.3d 1175, 1186-87 (11th Cir. 1999).    1

Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352 (11th Cir. 1985)    12, 13

Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir.1980)    1, 19

The Thomas Kinkade Co. v. David Kayne, Tracy Kayne and Kayne Art Galleries of GA, Inc., Slip Copy, 2007 WL 1544430 (C.A.9 (Cal.))    11

## United States District Court Decisions

Doctor's Associates v. Distajo, 944 F.Supp. 1010 (D.Conn.1996), aff'd, 107 F.3d 126 (2d Cir.1997)    1

Nobles v. Rural Community Ins. Srvcs., 303 F.Supp.2d 1292 (M.D. Ala. 2004)    13

The Thomas Kinkade Co. v. David Kayne, Tracy Kayne and Kayne Art Galleries of GA, Inc., D.C. No. 04-0186-SI (N. D. Ca. 2005)    11

## California Court of Appeals Decisions

Oakland Bank of Commerce v. Washington, 86 Cal. Rptr. 276 (Cal. Ct. App. 1970)    9

Exhibit 14
Page 241

Russell v. Union Oil Co., 86 Cal. Rptr. 424 (Cal. Ct. App. 1970)                    14

### Georgia Court of Appeals Decisions

Associated Services of Accountable Professionals, Ltd., Inc. v.                    3, 14
Workman, 265 Ga. App. 348, 593 S.E.2d 882 (2004)

Burns v. Dees, 252 Ga. App. 598, 557 S.E.2d 32 (2001)                    9

Heriot v. Connerat, 12 Ga. App. 203, 76 S.E. 1066 (1912)                    9

Moreno v. Strickland, 255 Ga. App. 850, 853, 567 S.E.2d 90 (2002)                    13

R.A. Friedland v. Citizens & Southern South DeKalb Bank, 135 Ga. App.                    9
591, 218 S.E.2d 302 (1975)

                                                                                       27

### Federal Statutes

9 U.S.C. § 4 (2007)                    1

### California Statutes

Cal. Civ. Code § 1654.                    3, 14

### Treatises

James Wm. Moore et al., Moore's Federal Practice (3d ed. 1997)                    11

Laurence P. Simpson, Handbook of the Law of Contracts (West                    9
Publishing Co. 1965 (1954)

Restatement (Second) Contracts § 73 (1979)                    9

Restatement (Second) of Judgments § 84(3) and comment c (1982)                    12

Exhibit 14
Page 242

## INTRODUCTION

Pursuant to Fed. R. App. P. 31, Appellant David Kayne ("Mr. Kayne") submits his Reply Brief in response to Appellee The Thomas Kinkade Company's ("TKC") Brief of Appellee.

## ARGUMENT AND CITATION OF AUTHORITY

This Court should review the district court's order in this case under a *de novo* standard. "In the context of motions to compel arbitration brought under the Federal Arbitration Act (" FAA" ), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2002); *citing* Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3d Cir.1980); Doctor's Associates v. Distajo, 944 F.Supp. 1010, 1014 (D.Conn.1996), aff'd, 107 F.3d 126 (2d Cir.1997). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun, 316 F.3d at 175 *citing* 9 U.S.C. § 4. An award of summary judgment, which is the equivalent of an award compelling arbitration is reviewed *de novo*, "'view[ing] the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." Burton v. City of Belle Glade, 178 F.3d 1175, 1186-87 (11th Cir. 1999).

Exhibit 14
Page 243

A.    **Mr. Kayne and Kayne Art Galleries are separate and distinct legal entities.**

It is important first to clarify and emphasize that Mr. Kayne and Kayne Art Galleries of GA, Inc. ("Kayne Art Galleries") are separate and distinct legal entities, and are not interchangeable despite TKC's continued misleading suggestions to the contrary. (R1-20-1, ¶ 1; R2-36-3, ¶¶ 8, 9.) The district court recognized this distinction, but throughout TKC's brief before this Court (as it did in its briefs before the district court) TKC portrays alleged "facts" in this case as involving both Mr. Kayne and Kayne Art Galleries, when indeed only one of the legal entities is at issue.

One of the only instances in which TKC appears to acknowledge the separateness of these legal entities is in their completely unsupported contention that Mr. Kayne is "a successful businessman with significant assets" and that Kayne Art Galleries is "a small corporation with few assets." (Appellee's Br. P. 26.) TKC's baseless statement, with no record support whatsoever, could be for no other purpose but to attempt to prejudice the parties before this Court. Mr. Kayne respectfully requests that this Court acknowledge in its review of the briefs and the record that Mr. Kayne and Kayne Art Galleries are separate legal entities.

Exhibit 14
Page 244

**B.      There was no consideration for the Credit Application and Guaranty and therefore no contract to arbitrate.**

TKC tries many ways to discount the importance of the Dealer Agreements. Under the Dealer Agreements TKC had a pre-existing contractual obligation to continue to provide credit to Kayne Art Galleries.  Firing multiple shots in the dark, hoping that one bullet will hit the target, TKC offers six reasons why the Dealer Agreements did not obligate TKC to extend credit to Kayne Art Galleries. The Dealer Agreements were form documents drafted by TKC, and should be interpreted accordingly in favor of the nondrafter, Mr. Kayne.  Associated Services of Accountable Professionals, Ltd., Inc. v. Workman, 265 Ga. App. 348, 351, 593 S.E.2d 882 (2004), Cal. Civ. Code § 1654.

TKC first downplays the importance of the language in the Dealer Agreements that the dealer "is approved for extended, net 60 day (from date of invoice), credit terms *on all purchases*." (emphasis added)  (R1-20 Ex. A-8; R1-20 Ex. B-3; R1-20 Ex. C-3; R1-20 Ex. D-3; R1-20 Ex. E-3; R1-20 Ex. F-3.)  TKC concedes that this language "is a statement that at the time the Dealer Agreement was executed Kayne [Art] Galleries '*is* approved for extended, net 60 day (from date of invoice) credit terms on all purchases.'"  (Appellee's br. P. 18.)  What this language unequivocally establishes is that beginning November 23, 1998 *Kayne Art Galleries*, not Mr. Kayne, had credit with TKC.

Exhibit 14
Page 245

Kayne Art Galleries had its own credit with TKC at the time the Dealer Agreements were executed, which were all prior to October 2001. (R1-20 Ex. A-8; R1-20 Ex. B-3; R1-20 Ex. C-3; R1-20 Ex. D-3; R1-20 Ex. E-3; R1-20 Ex. F-3.) The continuing obligation to grant credit to Kayne Art Galleries pre-October 2001 arises from the strict language in the Dealer Agreements that the only means by which TKC can "cancel any purchase orders" or "delay shipment of products already ordered" (i.e. suspend or reduce credit) is if Kayne Art Galleries "fails to make any payment when due or satisfy any other credit or financial requirements *established* by [TKC]." (emphasis added) (R1-20 Ex. A-11; R1-20 Ex. B-11; R1-20 Ex. C-11; R1-20 Ex. D-11; R1-20 Ex. E-11; R1-20 Ex. F-11.) The renewal clause renews the terms of the Dealer Agreements every year. (R1-20 Ex. A-5; R1-20 Ex. B-2; R1-20 Ex. C-2; R1-20 Ex. D-2; R1-20 Ex. E-2; R1-20 Ex. F-2.) If Kayne Art Galleries complied with the terms of the Dealer Agreements, TKC was contractually bound to extend credit "*on all purchases.*"

TKC concedes that Kayne Art Galleries did not begin to fall behind on its payments to TKC until 2002. (Appellee's Br. pp. 16-17.) However, TKC argues that had Mr. Kayne not signed the personal guaranty, TKC would have been within its rights to reduce the $899,000 of credit on which Kayne Art Galleries was making its purchases. (Appellee's Br. p. 19.) There is no evidence that the October 2001 Credit Application is a "*credit or financial requirement*

4

Exhibit 14
Page 246

*established*" by TKC as contemplated by the Dealer Agreements. There is not a scintilla of evidence that TKC even *required* the October 2001 Credit Application, or that the October 2001 Credit Application was a "credit or financial requirement" of the Dealer Agreements. As such, there is no evidence that the amount of credit extended to Kayne Art Galleries could have been decreased in October 2001 without TKC breaching the Dealer Agreements. TKC was obligated to grant credit to Kayne Art Galleries on "all purchases" as long as Kayne Art Galleries was not in default. (R1-20 Ex. A-11; R1-20 Ex. B-11; R1-20 Ex. C-11; R1-20 Ex. D-11; R1-20 Ex. E-11; R1-20 Ex. F-11.)

TKC next argues that because the Dealer Agreements do not contain language that is customarily found in credit applications that credit could not have been extended pursuant to the Dealer Agreements. (Appellee's Br. pp. 18-19.) This argument is absurd since each form Dealer Agreement states that Kayne Art Galleries "is approved for extended, net 60 day (from date of invoice) credit terms on all purchases." (R1-20 Ex. A-8; R1-20 Ex. B-3; R1-20 Ex. C-3; R1-20 Ex. D-3; R1-20 Ex. E-3; R1-20 Ex. F-3.) How can TKC now be heard to say that it didn't mean exactly what it wrote into the Dealer Agreements about extending credit to Kayne Art Galleries? It is clear and unambiguous.

TKC next asserts that Mr. Kayne's interpretation of the Dealer Agreements "would mean that TKC extended credit of almost a million dollars to Kayne [Art]

Exhibit 14
Page 247

Galleries without the ability to check its credit or financial references." (Appellee's Br. p. 19.) Indeed it appears TKC did just that. Such an oversight by TKC has absolutely no bearing on whether TKC was obligated contractually to grant 60 days credit on purchases to Kayne Art Galleries prior to October 2001.

TKC further argues that because the Dealer Agreements do not mention $899,000 that there is nothing in the Dealer Agreements to obligate TKC to extend $899,000 in credit to Kayne Art Galleries. (Appellee's Br. p. 19.) This attempt to discount the importance of the Dealer Agreements also fails, because neither the 1998 nor the October 2001 Credit Application mentions the $899,000. (R1-20-2, ¶¶ 3, 4; R1-20-3, ¶11; R2-36-7, ¶ 26.) The only documents in the record in this case that verify the $899,000 of credit extended to Kayne Art Galleries are the exemplar Statement of Accounts. (R1-20-6, Ex. G.) The exemplar Statements of Account verify that Kayne Art Galleries had $899,000 of credit prior to October 2001 and after October 2001. (R1-20-6, Ex. G.) Furthermore, the $899,000 figure is irrelevant since under the Dealer Agreements TKC was obligated to finance *all* of Kayne Art Galleries' purchases.

Perhaps recognizing this weakness in its argument, TKC states that the name on the Statements of Account is not "Kayne Art Galleries," but "Thomas Kinkade at Phipps Gallery." (Appellee's Br. p. 24.) This issue was dealt with in the lower court, with absolutely no argument by TKC. Statements of Account for all of the

Exhibit 14
Page 248

galleries owned and operated by Kayne Art Galleries were referred to on the Statements of Account as "Thomas Kinkade at Phipps Gallery," or "Thomas Kinkade at Phipps." (R1-20-6 ¶ 27, Ex. G.) All of the Dealer Agreements show Kayne Art Galleries as the Dealer. (R1-20 Ex. A-4[1]; R1-20 Ex. B-6; R1-20 Ex. C-6; R1-20 Ex. D-6; R1-20 Ex. E-6; R1-20 Ex. F-6.) All of the purchase orders show Kayne Art Galleries as the purchaser. (R1-20-6 ¶ 27, Ex. H.) A misnomer by TKC which has been explained with evidentiary support in the lower court without argument and which is not at issue in this appeal is irrelevant.

Finally, the "underlying debtor" throughout the relationship between TKC and Kayne Art Galleries began as, and remained throughout, Kayne Art Galleries. (R1-20-6 ¶ 27, Exs. G, H.) The Dealer Agreements, as TKC learned at its first arbitration and subsequent attempts to affirm the arbitrators' award, reflect only Kayne Art Galleries. (R1-20 Ex. A-4; R1-20 Ex. B-6; R1-20 Ex. C-6; R1-20 Ex. D-6; R1-20 Ex. E-6; R1-20 Ex. F-6.) The purchase orders reflect only Kayne Art Galleries. The Statements of Account reflect only Kayne Art Galleries. (R1-20-6 ¶ 27, Ex. H.) Mr. Kayne has never been the "underlying debtor." For all of the merchandise purchased by Kayne Art Galleries prior to October 2001 there was no possible party responsible for the payments to TKC other than Kayne Art

---

[1] The first Dealer Agreement is signed by "Thomas Kinkade at Phipps" with Mr. Kayne as President. No such company as Thomas Kinkade at Phipps exists, and the evidence shows that "Thomas Kinkade at Phipps" is Kayne Art Galleries.

Exhibit 14
Page 249

Galleries. (R1-20-6, Exs. G, H.) Had Kayne Art Galleries incurred any debts prior to October 2001, Mr. Kayne was not liable.[2]  With or without the purported personal guaranty of Mr. Kayne, the amount of credit extended to Kayne Art Galleries remained at $899,000, and TKC's contention that without Mr. Kayne's personal guaranty in October 2001 the amount of credit extended to Kayne Art Galleries never would have been as high as $899,000 is completely without support in the record. (R1-20-6 ¶ 27, Ex. G.)

Examination of the record shows that Kayne Art Galleries had a contractual right to 60 days credit on all purchases from TKC through the Dealer Agreements. (R1-20 Ex. A-8; R1-20 Ex. B-3; R1-20 Ex. C-3; R1-20 Ex. D-3; R1-20 Ex. E-3; R1-20 Ex. F-3.)  TKC is obligated every year to renew its credit approval for Kayne Art Galleries if the latter is not in default. (R1-20 Ex. A-5; R1-20 Ex. B-2; R1-20 Ex. C-2; R1-20 Ex. D-2; R1-20 Ex. E-2; R1-20 Ex. F-2.)  The only way by which the credit of Kayne Art Galleries could have been affected was if it failed to timely pay invoices, which it did not do, or if it failed to satisfy any other credit or financial requirements of the Dealer Agreements, established by TKC, which it did not do. (R1-20 Ex. A-11; R1-20 Ex. B-11; R1-20 Ex. C-11; R1-20 Ex. D-11; R1-20 Ex. E-11; R1-20 Ex. F-11.)  There is no evidence that the October 2001 Credit Application was a financial requirement established by TKC under the Dealer

---

[2] It is yet to be determined whether Mr. Kayne is liable as guarantor for the debts of Kayne Art Galleries.

8

Exhibit 14
Page 250

Agreements. The actual *amount* of credit that TKC has extended to Kayne Art Galleries, $899,000 is confirmed only in the Statements of Account. (R1-20-6, Ex. G.) What is not proven, however, is any consideration for the October 2001 credit application.

"Neither doing nor promising to do that which one is already legally bound to the promisor to do can furnish consideration for a promise. In such case neither benefit to the promisor nor detriment to the promise exists." Laurence P. Simpson, Handbook of the Law of Contracts 99 (West Publishing Co. 1965 (1954); See Restatement (Second) Contracts § 73 (1979). A party's existing obligation to perform under a contract cannot constitute consideration for a new agreement. Heriot v. Connerat, 12 Ga. App. 203, 76 S.E. 1066 (1912); See also Burns v. Dees, 252 Ga. App. 598, 604, 557 S.E.2d 32 (2001). Specifically relevant to this case, "[a] past consideration-one which has already served its purpose in a former transaction-is not sufficient to support a contract of guaranty; and although such a contract had been executed subsequent to the main contract, it must be supported by new consideration." R.A. Friedland v. Citizens & Southern South DeKalb Bank, 135 Ga. App. 591, 592, 218 S.E.2d 302 (1975); See Oakland Bank of Commerce v. Washington, 6 Cal. App. 3d 793 (1970) (a contract of guaranty requires new consideration).

Exhibit 14
Page 251

The facts in this case show that TKC had an obligation to extend credit to Kayne Art Galleries that pre-existed the October 2001 Credit Application. With no consideration to support it, the 2001 Credit Application and Personal Guaranty are not binding agreements, and there is no other document or agreement requiring Mr. Kayne to arbitrate with TKC. The district court erred and the case should be remanded to the district court for further proceedings.

C.    **It has been conclusively established by the Northern District of California, affirmed by the Ninth Circuit, that the October 2001 Credit Agreement and Personal Guaranty were executed to increase the credit limit for Kayne Art Galleries, that final judgment is binding, and under the doctrine of collateral estoppel relitigation of that finding is not permitted.**

TKC was collaterally estopped from asserting a set of facts contrary to the facts determined by the Northern District of California, and the Northern District of Georgia should not have accepted TKC's precluded version of the facts. The 2002 arbitration panel found Mr. Kayne personally liable for the debts of Kayne Art Galleries, basing its opinion on the fact that "[Mr.] Kayne signed a personal guarantee on October 2, 2001 in applying for a greater amount of credit..." (R1-14, Ex. D-3.) The Northern District of California, affirmed by the Ninth Circuit, reversed the Arbitrators' finding of personal liability, but did agree with the factual

Exhibit 14
Page 252

finding that "[i]n October 2001, [Mr.] Kayne submitted a credit application to TKC, in order to increase [Kayne Art Galleries'] credit limit with TKC." (R1-14, Ex. F-2, The Thomas Kinkade Co. v. David Kayne, Tracy Kayne and Kayne Art Galleries of GA, Inc., D.C. No. 04-0186-SI (N.D. Cal. 2005); The Thomas Kinkade Co. v. David Kayne, Tracy Kayne and Kayne Art Galleries of GA, Inc., Slip Copy, 2007 WL 1544430 (C.A.9 (Cal.)) The issue, the purpose of the October 2001 Credit Application and Personal Guaranty, therefore, has already been determined by a court of competent jurisdiction, and such determination is conclusive and binding. Relitigation of this issue is prohibited. Montana v. U.S., 440 U.S. 147, 153, 99 S. Ct. 970, 59 L.Ed.2d 210 (1979). The Northern District of Georgia never should have considered TKC's contrary position.

"Under the doctrine of issue preclusion, or collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party (or privy) to the prior litigation." James Wm. Moore et al., Moore's Federal Practice 3D § 132.01[1] (3d ed. 1997). The four elements necessary to establish issue preclusion are that "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that

11

Exhibit 14
Page 253

earlier action." <u>Greenblatt v. Drexel Burnham Lambert, Inc.</u>, 763 F.2d 1352, 1360 (11th Cir. 1985). "In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." <u>Id.</u> "When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated." <u>Id.</u> *citing* <u>Restatement (Second) of Judgments</u> § 84(3) and comment c (1982). These four elements are satisfied, thus the district court, and this Court, are bound by the Northern District of California's factual finding, and the Ninth Circuit's affirmation, that the October 2001 Credit Application and Personal Guaranty were executed in order to increase Kayne Art Gallery's credit.

Satisfying the first element, the issues at the 2002 arbitration, as framed by TKC, were the amount of debt Kayne Art Galleries was liable for and whether Mr. Kayne and his wife were personally liable for such debt. (R1-14, Exs. D, E.) Satisfying both the second and fourth elements, TKC, the party against whom the earlier decision is asserted, has conceded that it had the opportunity to litigate the issue before the arbitration panel. (Appellee's Br. p. 32 fn 10.) Even without such

Exhibit 14
Page 254

a concession[3], the evidence regarding the procedure in the 2002 arbitration is that it followed the American Arbitration Association rules and that the parties to the arbitration presented evidence before the arbitration panel.  (R1-14, Exs. D, E.) This presentation of evidence included the direct and cross-examination of witnesses.  (R1-14, Exs. D, E.)  This is sufficient adjudication to satisfy the litigation requirement.  Greenblatt, 763 F.2d at 1360; Nobles v. Rural Community Ins. Srvcs., 303 F.Supp.2d 1292, 1299 (M.D. Ala. 2004).  Finally, the purpose of the 2001 Credit Application was critical and necessary in the prior arbitration and the case before the Northern District of California because whether Mr. Kayne was personally liable pursuant to the Dealer Agreements and the arbitration procedure outlined therein determined whether Mr. Kayne was liable for the amount of debt awarded by the arbitration panel to TKC.  It is a finding of fact by the arbitration panel, the Northern District of California and the Ninth Circuit Court of Appeals that the purpose of the October 2001 Credit Application and Personal Guaranty was to increase the credit of Kayne Art Galleries and this finding of fact is binding upon the district court in this case.

The import of this final finding of fact is that it establishes the "promise contemplated for" in submitting the Credit Application and Personal Guaranty, and thus dictates what qualifies as acceptance by performance.  Moreno v. Strickland,

---

[3] TKC's sentence admitting the issue has been litigated in arbitration is somewhat confusing with the continued use of the term "this issue."

13

Exhibit 14
Page 255

255 Ga. App. 850, 853, 567 S.E.2d (2002); <u>Russell v. Union Oil Co.</u>, 86 Cal. Rptr. 424, 427 (Cal. App. 1970). The only manner in which TKC could have accepted the Credit Application and Personal Guaranty by performance would have been to increase the credit limit of Kayne Art Galleries. Although TKC argues that it accepted the 2001 Credit Application and Personal Guaranty by performance, the credit limit for Kayne Art Galleries remained $899,000 both before and after the October 2001 Credit Application. (R1-20-6 ¶ 27, Ex. G.) Thus, there was no acceptance by performance. Without any acceptance, the Credit Application and Personal Guaranty are not binding agreements. Without a binding agreement to arbitrate the issues in this case, this Court must reverse the district court's order compelling arbitration.

**D.     The district court erred in finding the parties agreed to arbitrate issues arising from the Personal Guaranty.**

TKC maintains that Mr. Kayne's interpretation of the Personal Guaranty's reference to the arbitration provision renders the reference meaningless. (Appellee's Br. p. 34.) This is erroneous and it appears a simple explanation of the proper interpretation of the personal guaranty is necessary. The personal guaranty is not an arbitration provision and should be interpreted in favor of the non-drafter, Mr. Kayne. (R1-20-6 ¶ 19); <u>Associated Services of Accountable Professionals, Ltd., Inc.</u>, 265 Ga. App. at 351; Cal. Civ. Code § 1654.

Exhibit 14
Page 256

If Mr. Kayne, as an individual, is obligated by any agreement, it is <u>only</u> the personal guaranty.  <u>The personal guaranty does not contain an arbitration clause.</u> The only reference to arbitration in the personal guaranty is the following line:

As Guarantor I am also bound by the above arbitration clause.

(R1-1, Verified Compl. Ex. A.)  The above arbitration clause referred to by this sentence in the Personal Guaranty is the arbitration clause in the corporation's October 2001 Credit Application.  Mr. Kayne, the individual, did not agree to any arbitration whatsoever unless the words "bound by" in the Personal Guaranty are interpreted to mean a full incorporation by reference into the personal guaranty of the entire arbitration clause contained in the corporate debtor's 2001 credit application.  **If the words "bound by" in the Personal Guaranty are given any other meaning (i.e. if it has any meaning other than "incorporation of the arbitration clause in its entirety for all purposes, as if set forth verbatim herein"), then Mr. Kayne did not agree to arbitrate anything with TKC.  If Mr. Kayne did not agree to arbitrate under the Personal Guaranty then he cannot lawfully be compelled to arbitrate a claim pursuant to that Personal Guaranty.**

It stretches credulity to believe that the undefined term "bound by" has any meaning other than the obvious which is "I agree to be bound by the result of the above arbitration clause as to the amount owed by the corporate debtor", or "I

Exhibit 14
Page 257

agree not to relitigate the amount owed by the corporate debtor once that amount is determined in an arbitration between the corporate creditor and the corporate debtor."

This interpretation of "bound by" in the personal guaranty makes perfect sense when the entire corporate credit application, the parties involved, and the type of arbitration required in the corporate credit application are considered. The agreement that contains the arbitration clause is the corporate credit application (an agreement to which Mr. Kayne, the individual is not a party). The corporate credit application is putatively an agreement between two corporate merchants for the purchase of goods on credit. The arbitration agreement between these two corporate merchants provides:

> Any dispute or controversy arising from this Agreement[4] will be resolved by arbitration. …. the arbitrators shall be one. The parties agree the American Arbitration Association's expedited rules shall apply and <u>they waive all right to any hearing requiring witness production</u>. <u>The arbitrator shall issue an award based upon the written documentary evidence supplied by the parties.</u> (Emphasis Added).

(R1-1, Verified Compl. Ex. A.)

---

[4] Mr. Kayne contends "this Agreement" refers only to the corporate credit application in which this wording is contained and does not refer to both the corporate credit application agreement and the separate personal guaranty agreement.

16

Exhibit 14
Page 258

As seen from the above quotations, the corporate credit application provides for a paperwork arbitration without witnesses, no or very limited discovery, no trial before the arbitrator, no argument before the arbitrator, and a decision to be issued by the arbitrator based solely upon documents supplied by the parties. This kind of arbitration is perfectly suited for a quick determination of an amount owed for goods shipped on credit between two merchants, because merchants typically keep the kind of shipping and receiving records, purchase orders, payment records, deposit records, etc. necessary to easily determine from such paperwork what goods were ordered, what goods were shipped, did the goods shipped conform to the order, were the goods received by the buying merchant, and how much if any did the buying merchant pay for the goods received.

Just as obviously, the above type of arbitration is wholly unsuited for adjudication of a dispute between a corporate merchant and an individual over whether that individual has meritorious defenses to being compelled to make payment under a personal guarantee <u>when those defenses are for matters other than the amount owed by the corporate debtor.</u>

This is exactly why the personal guaranty does not incorporate the arbitration agreement into the personal guaranty and this is exactly why the personal guaranty uses the term "bound by" to refer to the corporation's arbitration agreement as opposed to using the words "incorporate by reference" which would

17

Exhibit 14
Page 259

be understood by all to mean full incorporation of the arbitration agreement including its expedited procedures.

In making a claim against a guarantor of another's debts, the creditor must first show the amount owed by the debtor. The creditor, TKC, did not want to have to litigate the amount owed twice in order to seek relief under the guaranty, so TKC (the drafter of these documents) made the guarantor promise not to relitigate the determination of the amount owed by the corporate debtor, and the language of that promise not to relitigate chosen by TKC was "As Guarantor, I am also bound by the above arbitration clause."

Mr. Kayne did not agree to arbitrate anything by signing the personal guaranty. Mr. Kayne as an individual would have had no reason to believe that the undefined phrase "bound by" meant anything other than its common meaning of **"bound by the result as to the amount owed by the corporate debtor"** instead of some much less than obvious meaning (as claimed by TKC) "incorporated in its entirety for all purposes as if set forth verbatim herein."

Notwithstanding the federal policy favoring arbitration, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech., 475 U.S. at 648; See also First Options of Chicago v. Kaplan, 514 U.S. 938, 945 (1995). Mr. Kayne did not agree to submit his alleged liability pursuant to the Personal Guaranty to a lone

Exhibit 14
Page 260

arbitrator, and Mr. Kayne is entitled to present his legal defenses to a judge.  Mr. Kayne respectfully requests this Court reverse the district court's ruling and find that Mr. Kayne, while bound by the decision rendered in the arbitration against Kayne Art Galleries as to the amount of debt owed by Kayne Art Galleries, is not required to arbitrate his personal liability for such debt.  As such, arbitration in this case, which concerns only the liability of Mr. Kayne for the debts of Kayne Art Galleries, is improper.

**E.    The district court erred in finding that there was no triable issue of fact regarding the existence of an agreement to arbitrate between the parties.**

Mr. Kayne is not simply seeking discovery, as TKC seems to suggest in its brief, but rather is seeking to enforce his entitlement to a trial on the issues of fact involving formation of the alleged arbitration agreement in this case.  "If there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."  Par-Knit, 636 F.2d 51, 54 (3rd Cir. 1980).  The district court based its opinion that there were *no* genuine issues of material fact on a complete falsity,

19

Exhibit 14
Page 261

and thus Mr. Kayne is entitled to a trial on the existence of an agreement to arbitrate.

Mr. Kayne explicitly testified that neither he nor Kayne Art Galleries ever purchased artwork from TKC pursuant to the April 1998 application for credit. (R1-20-2 ¶ 5) This means that Mr. Kayne never purchased artwork on behalf of Kayne Art Galleries and for Kayne Art Galleries, with the credit allegedly extended to him pursuant to the 1998 Credit Application. This testimony was not simply a denial, as TKC contends, but instead created a genuine issue of material fact in this case as to whether Kayne Art Galleries instead had credit prior to October 2001 and purchased its own artwork. The import of this factual dispute is that if Kayne Art Galleries had credit prior to October 2001, then TKC's contention that the granting of credit to Kayne Art Galleries served as consideration, and as acceptance, of the October 2001 Credit Application and Personal Guaranty is in dispute. The formation of the agreement to arbitrate, therefore, is in dispute.

The district court clearly erred in finding that Mr. Kayne did not explicitly dispute this factual contention and Mr. Kayne is entitled to a trial on whether a binding agreement to arbitrate was created.

Exhibit 14
Page 262

## **CONCLUSION**

The district court erred in finding that a binding agreement between the parties to arbitrate exists. In arriving at this conclusion the district court first misinterpreted the Dealer Agreements and erroneously determined that Kayne Art Galleries did not have credit pursuant to the Dealer Agreements. This error infected the remaining portions of the district court opinion, and led the district court to erroneously conclude that TKC provided consideration for the Credit Application and the Guaranty. Moreover, the district court did not abide by the binding factual determination of the Northern District of California that the Credit Application and Personal Guaranty were executed to increase the credit limit of Kayne Art Galleries. Thus, the district court erroneously found that the Credit Application and Personal Guaranty were accepted by performance. The district court further erred in holding that the arbitration provision referenced in the Guaranty mandated that Mr. Kayne arbitrate issues arising from the Guaranty. In the alternative, a final error by the district court was committed when it determined that Mr. Kayne had not explicitly challenged TKC's factual contention that Kayne Art Galleries had purchased artwork pursuant to credit extended to Mr. Kayne. Mr. Kayne respectfully requests that this Court reverse the district court's legal and factual errors, and find that there is no binding agreement to arbitrate between the parties. In the alternative, Mr. Kayne respectfully requests that this Court remand

Exhibit 14
Page 263

the case for a trial on the issue of whether an agreement to arbitrate exists in this case.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 4935 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This 20th day of August, 2007.

<div style="margin-left:50%">

_____
Lawrence S. Burnat
Georgia Bar No. 096150
Michelle Roback Kraynak
Georgia Bar No. 429353
Attorneys for Appellant David Kayne

</div>

Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Telephone: (404) 681-3450
Fax: (404-681-1046

22

Exhibit 14
Page 264

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served counsel for Appellee with the foregoing Brief of Appellant by depositing a copy in the United States mail to the following:

Dana Levitt, Esq.
Charles E. Weir, Esq.
McDermott, Will & Emery
2049 Century Park East
34th Floor
Los Angeles, CA  90067

Eric C. Lang, Esq.
The Lang Legal Group, LLC
1800 Century Place
Suite 570
Atlanta, GA 30345

This the 20th day of August, 2007.

_____
Lawrence S. Burnat
Attorney for Appellant David Kayne

Exhibit 14
Page 265

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL

| | | |
|---|---|---|
| The Thomas Kinkade Company | ) | No. 74-181-E-000733-06 |
| Claimant, | ) | |
| and | ) | Scheduling Order |
| David Kayne | ) | |
| Respondent | ) | |

A telephonic hearing regarding the issue of setting a hearing in the above-captioned matter came on in the regular course on September 4, 2007. Counsel for both parties appeared, with counsel for Kayne making a special appearance only, expressly (1) reserving all rights he may have to seek *from a court* either relief from the obligation to arbitrate the matter or a stay of arbitration *pendente lite, and* (2) refraining from requesting of the arbitrator such relief or stay.

Accordingly, the only cognizable facts before the arbitrator were the following: an order to compel arbitration in this matter has been issued by the Federal District Court for the District of Georgia; that Court is a court of competent jurisdiction over this matter; its order has been appealed; but no stay of that order pending appeal has been issued.

The law is clear that, absent a stay, a District Court order remains in effect pending appeal. In particular, the mere existence of the appeal does not alter the obligation of the parties to comply fully and immediately with the order.

On this basis, the arbitrator has determined that the arbitration must proceed forthwith. The arbitrator expressly refrains from reaching that conclusion on any other basis.

The hearing in this matter shall take place on October 16, 2007, commencing at 9:00 am Pacific Time. Counsel for Mr. Kayne has indicated that it is not Mr. Kayne's current intention to participate in the hearing, either directly or through counsel, in which case the hearing shall be in the nature of a prove-up hearing. Mr. Kayne is directed to provide reasonable notice in the event that there is any change of that intention. Absent good cause shown, any notice provided after October 2, 2007, shall be deemed unreasonable.

The location of the hearing is currently set for an indeterminate location in Santa Clara County, California. The final determination of the location, including the final determination whether it takes place in Santa Clara County at all, shall be postponed pending the final determination of whether Mr. Kayne will be attending the hearing.

A final telephonic status conference in this matter shall be set for October 3, 2007 at 9:00 am Pacific Time. Counsel for both parties are directed to contact the Case Manager immediately in the event that this specified time period is incompatible with a significant prior commitment they may have.

SO ORDERED.

Date: September 12, 2007

_____
John J. McCauley
Arbitrator