1  CHARLES L. COLEMAN, III (CA. Bar No. 65496)
   ANDREW T. CAULFIELD (CA. Bar No. 238300)
2  HOLLAND & KNIGHT LLP
   50 California Street, 28th Floor
3  San Francisco, California  94111
   Telephone: (415) 743-6900
4  Facsimile: (415) 743-6910
   charles.coleman@hklaw.com
5  andrew.caulfield@hklaw.com

6  Attorneys for Plaintiff
   DAVID KAYNE
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10           SAN FRANCISCO DIVISION  **E-Filing**

11

12  DAVID KAYNE, an individual citizen      )  Case No.        C 07-4721 SI
    of Georgia,                             )  Related Case:   C 04-00186 SI
13                                          )
                                            )
14                        Plaintiff,        )  **PLAINTIFF'S MEMORANDUM IN**
                                            )  **OPPOSITION TO DEFENDANT'S**
                    vs.                     )  **MOTION TO DISMISS**
15                                          )  **(Fed.R.Civ.P. 12(b)(6))**
                                            )
16  THE THOMAS KINKADE COMPANY,             )
    formerly known as MEDIA ARTS            )  Hearing Date: December 7, 2007
17  GROUP, INC., a Delaware Corporation,    )  Hearing Time: 9:00 a.m.
                                            )  Before:        Hon. Susan Illston
18                        Defendant.        )
                                            )
19

20

21

22

23

24

25

26

27

28
────────────────────────────────────────────────────────────
PLAINTIFF'S MEMORMANDUM IN OPPOSITION TO               Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT IN
OPPOSITION TO TKC'S MOTION TO DISMISS ................................ 1

     A.     Procedural Background ................................................. 1

           1.     Mr. Kayne's Original Complaint and First
Amended Complaint............................................... 1

           2.     TKC's Motions Apply to the First Amended Complaint .... 2

     B.     Summary of Argument in Opposition to Motion to Dismiss ......... 2

II.     COUNTER-STATEMENT OF THE FACTS............................................. 5

     A.     The "Final Award" Served on November 15, 2007 ........................ 5

     B.     TKC's Mischaracterizations of Mr. Kayne's Positions
In Prior Proceedings........................................................................ 6

III.     THIS ACTION IS NOT BARRED BY *RES JUDICATA*. ......................... 8

     A.     *Res Judicata* Attaches Only to Claims Available at
The Time of Filing the Original Complaint .................................. 8

     B.     Under the Ninth Circuit's Four-Part Test, the Matters
Raised in the Present Action Are Not the Same as Those
Presented to Judge Pannell ......................................................... 10

           1.     The Limited Rights and Interests Established in the
Georgia Litigation Will Not Be Impaired by Examining
the Unconscionability of the "Expedited" Arbitration
Clause. ................................................................... 11

           2.     Different Evidence Is at Issue Here ................................... 13

           3.     The Two Actions Do Not Involve "Infringement of the
Same Right". ........................................................... 13

## TABLE OF CONTENTS (Continued)

Page(s)

4.  The Georgia Action Did Not Arise Out of the Same "Nucleus of Facts". ............................................................. 14

C.  *Res Judicata* Does Not Apply Where a Change in the Law Creates a "New" or "Altered" Situation Not Addressed by the First Judgment. ...................................................... 14

D.  *Nagramapa* Altered Unconscionability Analysis Applicable to Arbitration Clauses in Contracts of Adhesion. ........................ 15

E.  *Nagrampa* Expanded the Role of Courts in Determining Whether an Arbitration Clause Is Unconscionable. .................... 17

IV.  PLAINTIFFS' CLAIMS UNDER THE CALIFORNIA UNFAIR COMPETITION LAW ARE VIABLE ....................................................... 20

V.  MR. KAYNE'S CLAIM THAT TKC'S ARBITRATION CLAUSE IS UNCONSCIONABLE CLEARLY IS VIABLE UNDER *NAGRAMPA* ................................................................................. 22

VI.  SAME ARGUMENTS WILL BE PRESENTED IN ENFORCEMENT ACTION ................................................................. 23

VII.  CONCLUSION ......................................................................... 24

# 4946773_v1

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Case No. C 07-4721 SI

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Blair v. Commissioner of Internal Revenue,*
    300 U.S. 5 (1937) ................................................................................................ 14

*Brown v. Felsen,*
    442 U.S. 127 (1979) ........................................................................................... 10

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006) ("*Buckeye*") ................................................................. 17, 18, 19

*Chao v. A-One Medical Services, Inc.,*
    346 F.3d 908 (9th Cir. 2003) ........................................................................ 10, 11

*Clark v. Bear Stearns & Co.,*
    966 F.2d 1318 (9th Cir. 1992) ............................................................................ 10

*Davis v. O'Melveney & Meyers,*
    485 F.3d 1066 ................................................................................................ 16, 17

*First Options of Chicago v. Kaplan,*
    514 U.S. 938 (1995) ........................................................................................... 13

*FMC Corp. v. Up-Right, Inc.,*
    816 F. Supp. 1445 (N. D. Cal. 1993) ................................................................ 8, 9

*In re International Neutronics, Inc.,*
    28 F.3d 965 (9th Cir. 1994) ............................................................................... 11

*Intermedics, Inc. v. Ventritex,*
    775 F. Supp. 1258 (N.D. Cal. 1991) .................................................................. 15

*Los Angeles Branch NAACP v. L.A. Unified School District,*
    750 F.2d 731 (9th Cir. 1984) ............................................................................... 8

*Nagrampa v. Mailcoups, Inc.,*
    2007 WL 2221028 (N.D. Cal., July 30, 2007) ...................................................... 4

*Nagrampa v. Mailcoups, Inc.,*
    469 F.3d 1257 (9th Cir. 2006) (*en banc*) ("*Nagrampa*") ................................. *passim*

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967) ...................................................................................... 18, 19

iii

# TABLE OF AUTHORITIES (Continued)

**Page(s)**

*Ralph Andrews Production, Inc. v. Writers Guild,*
   938 F.2d 128 (9th Cir. 1991) .................................................................. 13

*State Farm Mut. Automobile Ins. Co. v. Duel,*
   324 U.S. 154 (1945) ............................................................................. 14

*The Thomas Kinkade Co. v. Kayne,*
   233 Fed.Appx. 684, 2007 WL 1544430 (9th Cir. 2007) ......................... 20

*United States v. Lasky,*
   600 F.2d 765 (9th Cir.), *cert. denied,* 444 U.S. 979 . . . (1979) .............. 10

*West Coast Life Ins. Co. v. Merced Irr. Dist.,*
   114 F.2d 654 (9th Cir. 1940) ........................................................... 14, 15

**STATE CASES**

*Armendariz v. Foundation Health Services, Inc.*
   24 Cal. 4th 83 (2000) ......................................................................... 16

*Dowis v. Mud Slingers, Inc.,*
   279 Ga. 808 (Ga. Supreme Court, 2005)................................................. 7

**STATE STATUTES**

California Unfair Competition Law
   (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)......................................... 4, 7, 20

Cal. Civil Code § 1670.5......................................................................... 7

**RULES**

Rule 12(b)(6)................................................................................... 4, 5

Federal Rule of Evidence 201.................................................................... 1

*///*

*///*

1

<u>**TABLE OF AUTHORITIES (Continued)**</u>

2

**Page(s)**

3

**OTHER AUTHORITIES**

4

The National Law Journal, Vol. 29, No. 35, *Franchisors May Have tougher*

5

    *Time Arbitrating* ..................................................................................................... 17

6

Willis L.M. Reese, *Depecage: A Common Phenomenon in Choice of Law* ................... 7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO                         Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

I.   **INTRODUCTION AND SUMMARY OF ARGUMENT IN OPPOSITION TO TKC'S MOTION TO DISMISS**

Plaintiff David Kayne ("Plaintiff" or "Mr. Kayne") respectfully submits this memorandum in opposition to the motion of defendant, The Thomas Kinkade Company ("TKC"), to dismiss his complaint.   This memorandum is supported by the accompanying Declarations of  Charles L. Coleman ("Coleman Dec.") and Gary L. Britt ("Britt Dec."), and exhibits thereto,  in opposition to TKC's motion to dismiss.  Pursuant to Federal Rule of Evidence 201, Plaintiff requests judicial notice of the court documents attached to the Coleman Dec. and the Britt Dec.

A.   **Procedural Background**

1.   **Mr. Kayne's Original Complaint and First Amended Complaint**

Plaintiff's original complaint was filed on September 13, 2007, and assigned to Judge Fogel (Document 1).  The original complaint sought declaratory and injunctive relief to prevent TKC from proceeding with an "expedited" (no witness) arbitration hearing set to occur on October 16, 2007 or, in the alternative, from enforcing any award resulting from such a procedure.

Mr. Kayne's First Amended Complaint ("FAC") is substantially similar to his original complaint, the main differences being that: (a) The FAC (filed after the October 16 arbitration went forward)[1] does not seek to enjoin TKC's participation in

---

[1]   On October 2, 2007, Plaintiff filed motion papers before Judge Fogel seeking a temporary restraining order and injunctive relief to prevent TKC from proceeding with the October 16 hearing.  (Documents 5-13).  TKC filed its opposition papers on October 3, 2007 (Documents 16-23), and on October 4, Mr. Kayne filed reply papers in support of his request for a temporary restraining order and injunctive relief (Documents 34-35), after which the matter was deemed submitted without hearing. No ruling was made by the Court before the October 16 hearing, so the parties stipulated on October 26 that the request to enjoin the October 16 hearing was moot. (Document 39).  The parties also stipulated that the FAC could be filed in lieu of the original complaint, so that the issues could be re-focused on Mr. Kayne's alternative request for relief from any award resulting from the October 16 hearing.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO          Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

1  the now-concluded "no witnesses" arbitration proceeding but instead seeks only to

2  prevent enforcement of the Award resulting from that proceeding; and (b) The FAC

3  changes, corrects and updates certain factual averments but does not render moot

4  the issues raised in TKC's motion to dismiss or its separate motion to strike.[2]

5              **2.    TKC's Motions Apply to the First Amended Complaint.**

6        In order to obtain a prompt ruling on TKC's motions (and on Mr. Kayne's

7  oppositions to those motions), the parties stipulated (and the Court on October 29

8  ordered) that TKC's motions filed on October 4 would be deemed to apply to

9  Plaintiff's First Amended Complaint, which was filed on November 2, 2007.

10  (Documents 40, 42, 43).  Accordingly, all further references in this opposition will be

11  to the First Amended Complaint and not to the original complaint, which has been

12  superseded.

13        **B.    Summary of Argument in Opposition to Motion To Dismiss.**

14        Mr. Kayne's complaint (the FAC) is based on the Ninth Circuit's recent

15  decision in *Nagrampa v. Mailcoups, Inc.,* 469 F.3d 1257 (9th Cir. 2006) (*en banc*)

16  ("*Nagrampa*") finding (contrary to the earlier Ninth Circuit panel decision reported

17  at 401 F.3d  1024 (9th Cir. 2005) ("*Nagrampa I*")) that: (1) An arbitration clause in a

18  contract of adhesion that imposes unequal or unfair burdens on the weaker party is

19  unconscionable and unenforceable under California law; and (2) The issue of

20  unconscionability of the arbitration clause will be decided by a court rather than the

21  arbitrator, even where the procedural unconscionability of the contract applies to

22  the entire agreement.   The issues presented in the FAC have not been presented to,

23  considered by, or ruled on by any other court, and it is ludicrous to assert (as TKC

24  does) that Mr. Kayne "could have" challenged the unconscionability of the

25

26  [2]    Documents 24-33. Plaintiff is filing, concurrently with this opposition, a
separate memorandum of points and authorities in opposition to TKC's motion to
27  strike.

28
PLAINTIFF'S MEMORANDUM IN OPPOSITION TO                    Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

1    arbitration procedure incorporated in TKC's Personal Guaranty in other

2    proceedings before *Nagrampa* had even been decided.

3        Nevertheless, TKC's central contention (at pages 9-14 of its motion) is that

4    proceedings in Georgia before Judge Pannell (involving the separate questions of

5    whether the Personal Guaranty incorporated the arbitration procedure, had been

6    accepted by TKC, or was supported by consideration) somehow also reached an

7    issue never presented to him – the unconscionability of the arbitration clause under

8    the standard articulated by the Ninth Circuit in *Nagrampa*.[3]  Prior to *Nagrampa*,

9    Mr. Kayne was obliged to present his unconscionability argument to the arbitrator

10    in the California arbitration proceedings found to be incorporated in TKC's Personal

11    Guaranty; after *Nagrampa,* the ground was shifted and the unconscionability

12    argument became one to be presented to a court.

13        Understandably, TKC is desperate to forestall any judicial scrutiny of the

14    draconian "no witnesses" arbitration rules it embedded in its "Personal Guaranty"

15    agreements, so it is arguing that Judge Pannell's decision was somehow *res judicata*

16    with respect to this issue.  If TKC's argument were correct (and it is not), then Mr.

17    Kayne will have been deprived of his right to challenge TKC's clearly

18    unconscionable arbitration clause in any forum.   As will be shown below, the

19    applicable case law simply does not support such a contention.

20        Throughout its pleadings, TKC argues, in effect, that Mr. Kayne should not

21    complain about having been denied basic due process rights in the no-witness

22

23    [3]    TKC's arbitration clause is invalid under *Nagrampa* because it is part of a
       contract of adhesion that is procedurally unconscionable in view of TKC's superior
24    bargaining power and resources, as well as the manner in which it was presented as
       part of a deceptive marketing campaign. The arbitration clause is substantively
25    unconscionable because the inability to call witnesses, and the requirement to
       defend an arbitration in California (thousands of miles from Mr. Kayne's home), are
26    burdens that fall disproportionately on Mr. Kayne.  Because TKC's claim is based
       only on TKC's paper invoices while Mr. Kayne's defenses are based on surrounding
27    factual circumstances that can only be developed through the examination of
       witnesses, it is no accident that TKC's "no witness" procedure unfairly favors TKC.

28                                                      - 3 -

1  California arbitration "hearing" because (in TKC's view) Mr. Kayne does not really

2  have very good arguments anyway.  This argument is fundamentally misconceived:

3  The narrow question before this Court is whether the arbitration procedure in

4  TKC's agreement is unconscionable under *Nagrampa*; it is not whether or to what

5  extent Mr. Kayne will ultimately prevail in his arguments against TKC's "Personal

6  Guaranty" once he is afforded a proper hearing.

7       In addition to being both misconceived and premature, TKC's assertion that

8  Mr. Kayne does not have (or is collaterally estopped from asserting) arguments

9  against TKC's collection effort under the Personal Guaranty is simply wrong.  TKC

10  continues to assert, despite rulings from this Court and the Ninth Circuit to the

11  contrary, that Mr. Kayne was personally bound by the arbitration between TKC

12  and Kayne Art Galleries of Georgia, Inc. ("KAG") with respect to the Personal

13  Guaranty, even though that arbitration pertained only to the Dealer Agreements

14  between TKC and KAG and not to the Personal Guaranty.

15       TKC's arguments concerning the legal adequacy of Mr. Kayne's claims under

16  the California Unfair Competition Law, Cal. Bus. & Prof. Code sections 17200, *et*

17  *seq.* (the "UCL") also are without merit, for the reasons clearly articulated by Judge

18  Jenkins in denying (after remand from the Ninth Circuit's *Nagrampa* decision) the

19  defendants' very similar Rule 12(b)(6) motion to dismiss plaintiff Nagrampa's UCL

20  claim. *Nagrampa v. Mailcoups, Inc.,* 2007 WL 2221028 at p. *3 (N.D. Cal., July 30,

21  2007) (finding that a claim of unconscionability meets the "unfair" prong of the

22  UCL) .

23       TKC's arguments to the effect that Mr. Kayne has not stated a claim based

24  on the  unconscionability of TKC's arbitration procedure are similarly without

25  merit.  Mr. Kayne's claim is patterned on the claim upheld in *Nagrampa*. TKC's

26  efforts to distinguish its clause or otherwise side-step the facial unconscionability of

27

28

- 4 -

1    an arbitration provision that would subject the weaker party to a "no witness"

2    hearing far from his home state on a claim of over $1 million must fail.

3        Finally, it is clear that TKC will seek to enforce the "Final Award" that has

4    recently resulted from the October 16 proceedings under its "no witnesses"

5    arbitration clause, so the issues of unconscionability and procedural due process

6    presented by the FAC will also be presented in any proceeding to enter a judgment

7    based on the award.  For this reason, TKC's exertions in seeking a dismissal of the

8    claims in the FAC (which are in essence *defenses* against the enforcement of TKC's

9    "Final Award") are pointless.

10   **II.    COUNTER-STATEMENT OF THE FACTS**

11       **A.    The "Final Award" Served on November 15, 2007**

12       The facts relevant to this matter are set out in the FAC, and it is axiomatic

13   that the allegations of the FAC must be taken to be true for the purposes of ruling

14   on TKC's motion to dismiss under Rule 12(b)(6).   Ironically, TKC has submitted a

15   large volume of background pleadings in support of its purported Rule 12(b)(6)

16   motion (*see* Documents 26-32) at the same time that TKC is seeking (in a separate

17   motion) to strike certain basic background information from the FAC.

18       The only significant factual development since the November 2 filing of the

19   FAC is the "Final Award" resulting from the October 16 "no witnesses" arbitration,

20   which was served on the afternoon of November 15, 2007.  A copy of this "Final

21   Award" is attached as Exhibit 1 to the Coleman Dec.

22       The "Final Award" is a five-page document that recites that it came on for a

23   "prove-up hearing" that was not attended by Mr. Kayne.  The "Final Award",

24   predictably, gives TKC everything that it requested (including its legal fees for

25   preparing the motions presently pending before this Court), other than a

26   declaration of TKC's right to receive prospective attorneys' fees for its further

27   activities in proceedings before this Court.  Thus, the "Final Award" has already

28

- 5 -

1  purported to decide that TKC has prevailed in its motions before this Court since

2  TKC has been awarded its fees for preparing these motions.[4]  The total amount

3  awarded to TKC (based on an initial alleged debt of $554,605 as of 2004, but adding

4  interest and various costs including attorneys' fees) is "$1,230,141.88".   The Final

5  Award does not purport to address the fairness or unconscionability of an

6  arbitration procedure in which a $1.2 million was required to be adjudicated

7  without a right to call and cross-examine witnesses, nor does it purport to address

8  any of Mr. Kayne's defenses including those based on misrepresentations made to

9  him by or on behalf of TKC that induced him to sign the Personal Guaranty.

10      Inevitably, TKC will shortly seek to obtain the imprimatur of this Court on

11  the "Final Award" that it has now procured through the use of its "expedited" (no

12  witnesses) arbitration procedure, in which Mr. Kayne refused to participate both

13  because of the futility of such a procedure and to avoid waiving the

14  unconscionability objections which, under *Nagrampa*, he presents to this Court.

15      **B.    TKC's Mischaracterizations of Mr. Kayne's Positions in**
            **Prior Proceedings.**

16

17      In its motion, TKC seeks to portray Mr. Kayne as having "flip-flopped" on

18  various issues.  This effort depends on mischaracterizing Mr. Kayne's positions.

19      For example, at pages 10-11 of its motion, TKC asserts that Mr. Kayne has

20  taken inconsistent positions on the applicability of California law to the Personal

21  Guaranty.  Specifically, TKC asserts that since Mr. Kayne argued in the Georgia

22  proceedings that Georgia law should apply to the contractual issues surrounding

23  the *formation* of the contract, while he is now arguing that California law should

24  apply in determining whether an arbitration clause calling for a "no witness"

25  [4]  *See* Coleman Dec., Exhibit 2 (copy of the Declaration of TKC's counsel Dana

26  Levitt submitted to the arbitrator, describing at paragraph 6 the exertions of TKC's
    counsel in preparing the motions before this Court, for which TKC has sought and

27  already obtained a "Final Award" from the arbitrator).

28  - 6 -

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO          Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

1    arbitration to be conducted within the State of California is unconscionable under

2    the public policy of California as articulated in Cal. Civil Code section 1670.5

3    (unconscionability), the California Unfair Competition Law (Cal. Bus. & Prof. Code

4    §§ 17200, *et seq.*) and *Nagrampa*. This argument overlooks a number of factors,

5    such as the different choice of law rules applicable in Georgia and California,[5] and

6    the doctrine of depecage under which different laws can appropriately be applied to

7    different aspects of a dispute.[6] Moreover, it is pointless because TKC agrees that

8    California law applies here. (TKC motion at 11, footnote 3).

9        Similarly, at page 11 of its motion, TKC seeks to obfuscate the point (made at

10   ¶ 6 of the FAC) that while the AAA "expedited rules" *do* provide for disputes to be

11   resolved "by the submission of documents" where there is less than $10,000 at

12   stake, they allow for exceptions not allowed under TKC's arbitration clause, and

13   they do not contemplate that million-dollar claims should be decided under the

14   "expedited rules".   Further, at page 11, TKC mischaracterizes paragraph 16 of the

15   FAC by suggesting that Mr. Kayne asserts that "the Dealer Agreements provide

16   him as an individual with protections under the Franchise laws".   Instead, Mr.

17   Kayne asserts that he was personally misled by TKC's failure to comply with the

18   franchise laws when TKC promoted the "Application for Credit" and "Personal

19   Guaranty" in conjunction with the Dealer Agreements, and that this gave rise to

20   both procedural unconscionability under *Nagrampa* and a violation of the UCL as

21   an "unfair" business practice under California law.   The bottom line is that TKC is

22

23   ------

[5]    Unlike California (which uses an "interests" analysis under the Second
24   Restatement of Conflict of Laws), Georgia continues to adhere to the "lex loci" choice
     of law rules articulated in the First Restatement. *See Dowis v. Mud Slingers, Inc.*,
25   279 Ga. 808 (Ga. Supreme Court, 2005).

26   [6]    TKC's quarrel with Mr. Kayne's contention that Georgia law applied to certain
     aspects of the Personal Guaranty raises issues of depecage that are beyond the
27   scope of this case. *See generally*, Willis L.M. Reese, *Depecage: A Common
     Phenomenon in Choice of Law*, 73 Columbia L. Rev. 58 (1973).

28                                                                            - 7 -
     PLAINTIFF'S MEMORANDUM IN OPPOSITION TO                Case No. C 07-4721 SI
     DEFENDANT'S MOTION TO DISMISS

1    seeking to divert attention from the merits of Mr. Kayne's claims in this case by

2    asserting (incorrectly) that he has taken inconsistent positions in the past.

3    **III.    THIS ACTION IS NOT BARRED BY *RES JUDICATA*.**

4    **A.    *Res Judicata* Attaches Only to Claims Available at the Time of**

5    **Filing the Original Complaint.**

6        It is well established in this circuit that "[r]es judicata attaches only to claims

7    available at the time of filing the original complaint". *FMC Corp. v. Up-Right, Inc.*,

8    816 F. Supp. 1445, 1461 (N. D. Cal. 1993).  In other words, the scope of litigation is

9    framed by the complaint at the time it is filed.  *Id.*  The rule that a judgment is

10   conclusive as to every matter that might have been litigated "does not apply to new

11   rights acquired pending the action which might have been, but which were not,

12   required to be litigated." *Id.* (citing *Los Angeles Branch NAACP v. L.A. Unified*

13   *School District*, 750 F.2d 731, 739 (9th Cir. 1984) (*en banc*)).

14       Plaintiffs may bring events occurring after the filing of the complaint into the

15   scope of the litigation by filing a supplemental complaint with leave of court, but

16   there is no requirement that plaintiffs do so.  *Id.*  As stated in *Los Angeles Branch*

17   *NAACP*, "[w]e decline to impose a potentially unworkable requirement that every

18   claim arising prior to the entry of a final decree must be brought into the pending

19   litigation or lost." 750 F.2d at 739, n. 9.

20       Mr. Kayne filed his original Complaint in Georgia state court.  His complaint

21   was thereafter removed to the Northern District of Georgia on September 12, 2006.

22   Britt Dec., ¶ 1 (N.D. Ga. Civil Docket).  As TKC concedes, the Ninth Circuit's *en*

23   *banc* decision in *Nagrampa* was not filed until December 4, 2006.  TKC Motion to

24   Dismiss, p. 14.  Under *FMC Corp.*, *supra*, the original complaint controls for

25   purposes of determining "claims which might have been, but which were not,

26   required to be litigated." *FMC Corp.*, 816 F. Supp. at 1462.

27

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO            Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

1    Whether or not Mr. Kayne had "ample opportunity" to raise an entirely new

2    claim or argument based on judicially-reviewable unconscionability of the

3    arbitration provisions at any time after September 12, 2006 is irrelevant.  Under

4    *FMC Corp.*, Mr. Kayne was only obligated to bring *available* new claims by

5    September 12, 2006, at the very latest.  As set forth in detail below, a claim for

6    judicial rejection of TKC's arbitration clause based on its unconscionability was not

7    available to Mr. Kayne until after the *Nagrampa* decision was handed down on

8    December 4, 2006.

9        In addition to not being required to amend his Georgia complaint after

10   December 4, 2006 to add a new claim based on *Nagrampa*, Mr. Kayne was, as a

11   practical matter, not in a position to do so.  The parties had already submitted their

12   motion papers to Judge Pannell based on the existing pleadings, and Mr. Kayne's

13   Second Amended Complaint filed in late October, 2007 was allowed to be filed only

14   based on the express understanding that it would not add any new claims or issues.

15   This is evident from Judge Pannell's Order (Document 29 in the Georgia district

16   court proceedings, a copy of which is attached as Exhibit 11, pages 153-54 to TKC's

17   Request for Judicial Notice), where it is stated that:

18       *After much consideration*, the court will allow Kayne leave to amend his
         complaint.  Kayne has *not unduly delayed* filing his motion to amend and
19       there is *no prejudice* to TKC.  The arguments Kayne seeks to clarify in his
         amended complaint are the *same arguments* Kayne has presented in
20       opposition to TKC's motion to compel arbitration.  [Italics added.]

21   The clear indication from the foregoing language is that the district court in Georgia

22   would have taken a dim view of (and very likely denied) any attempt, after the

23   motions had been briefed, to add an entirely new and different claim raising new

24   arguments based on *Nagrampa*.  In any event, a claim under *Nagrampa* was clearly

25   not available to Mr. Kayne until the decision was filed on December 4, 2006, nearly

26   three months after the most generous cut-off date for *res judicata* purposes.

27

28

- 9 -

1      The U.S. Supreme Court has stated that: "Because res judicata may govern

2  grounds and defenses not previously litigated, however, it blockades unexplored

3  paths that may lead to truth.  For the sake of repose, res judicata shields the fraud

4  and the cheat as well as the honest person.  It therefore is to be invoked only after

5  careful inquiry." *Brown v. Felsen*, 442 U.S. 127, 132 (1979).   As noted by the Ninth

6  Circuit in *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992):

> The party asserting preclusion bears the burden of showing with clarity and
> certainty what was determined by the prior judgment. *United States v.
> Lasky,* 600 F.2d 765, 769 (9th Cir.), *cert. denied,* 444 U.S. 979 . . . (1979). "It is
> not enough that the party introduce the decision of the prior court; rather,
> the party must introduce a sufficient record of the prior proceeding to enable
> the trial court to pinpoint the exact issues previously litigated." *Id.*
>
> . . . .
>
> By definition, res judicata bars only those grounds for recovery which could
> have been asserted in the prior litigation. . . . If a claim could not have been
> asserted in prior litigation, no interests are served by precluding that claim
> in later litigation.

15      TKC's response to Mr. Kayne's challenge to its unconscionable "expedited"

16  arbitration procedure is long on explanations as to why Mr. Kayne should now be

17  precluded from making this argument and very short on explanations of why TKC's

18  effort to apply its "no witness" procedure is not unconscionable. TKC seeks to side-

19  step the truth by pretending that the issue of unconscionability was or "should have

20  been" raised before Judge Pannell, even though the argument did not exist until the

21  Ninth Circuit's decision in *Nagrampa*.

**B.**    <u>**Under the Ninth Circuit's Four-Part Test, the Matters**</u>
        <u>**Raised in the Present Action Are Not the Same as Those**</u>
        <u>**Presented to Judge Pannell.**</u>

25      It is well-established that "[b]ecause res judicata is a defense, [the courts]

26  view all facts in the light most favorable to the plaintiff." *Chao v. A-One Medical*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
                      Case No. C 07-4721 SI

*Services, Inc.*, 346 F.3d 908, 921 (9th Cir. 2003).  This necessarily affects the view of the facts to be taken in this matter.

One of the few areas of agreement between Mr. Kayne and TKC is that the Ninth Circuit has recognized a four-part test in determining whether successive actions involve the same cause of action: "(1) whether the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *In re International Neutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994), *citing Clark v. Bear Stearns & Co., supra*, 966 F.2d at 1320.   These factors must be examined subject to the *caveat* that, by definition, res judicata "bars only those grounds for recovery which could have been asserted in the prior litigation"; here, such grounds could not have been asserted because they did not exist.

> **1.**    **The Limited Rights and Interests Established in the Georgia Litigation Will Not Be Impaired by Examining the Unconscionability of the "Expedited" Arbitration Clause.**

At issue in the Georgia litigation was the question whether the "Personal Guaranty" accompanying the "Application for Credit" were the following issues: (1) Whether the "Personal Guaranty" was supported by consideration; (2) Whether the "Personal Guaranty" had been accepted by TKC; and (3) Whether the reference in the "Personal Guaranty" to "the above arbitration clause" (in the "Application for Credit") constituted an agreement by Mr. Kayne to arbitrate issues of his personal liability under the Guaranty.  Mr. Kayne acknowledges that Judge Pannell ruled against him on these issues and that the Eleventh Circuit has affirmed those rulings.  As the Eleventh Circuit's decision confirms, however, the issues presented

- 11 -

1   in the Georgia litigation involved only the foregoing issues as to whether an

2   agreement was formed between Mr. Kayne and TKC, and not the entirely separate

3   question – presented for the first time by the Ninth Circuit's decision in *Nagrampa*

4   well after the Georgia case had been submitted to Judge Pannell – as to whether

5   such an agreement, if formed, is *unconscionable*.

6       The Georgia litigation established that TKC had a contract with Mr. Kayne,

7   in the form of a "Personal Guaranty", calling for arbitration of disputes arising

8   under the "Personal Guaranty". This finding, as such, would not be affected by the

9   limited relief that Mr. Kayne seeks here, which is a determination that the

10  arbitration clause in the agreement is unconscionable.

11      <u>More importantly, Judge Pannell expressly limited his rulings to the issues</u>

12  <u>presented to him, and directed that:</u>

13      *"Because all of the issues remaining in the case at hand are referable to
        arbitration and the arbitration will take place in California,* it would serve no
14      purpose for the court to retain jurisdiction and stay the action pending
        arbitration. . . . The court, therefore, GRANTS the defendant's motion to
15      compel arbitration (Doc. No. 14) *to the extent it seeks dismissal of the action
        and an order compelling arbitration."* [7] [Italics added.]
16

17  Clearly, Judge Pannell did not rule on the issue of unconscionability of the

18  arbitration clause or procedure but to the contrary expressly contemplated –

19  consistent with the law before *Nagrampa* – that any such issues would be "referable

20  to arbitration . . . in California". Because *Nagrampa* is now the law of this Circuit,

21  however, it is no longer appropriate to present the issue of unconscionability of the

22  arbitration clause to the arbitrator, and is instead appropriate to present the issue

23  to this Court. TKC's "res judicata" argument is merely a smoke screen intended to

24  divert this Court from applying the law of this circuit to TKC's California

25  arbitration and arbitral award.

26  _____
    [7]     Order in N.D. Ga. No. 1:06-CV-2168-CAP (Document 29), at p. 28, a copy of
27  which is attached to TKC's Request for Judicial Notice as Exhibit 11, at Exhibit
    pages 175-176.
28                                              - 12 -

### 2.    Different Evidence Is at Issue Here

In the Georgia action, the evidence necessarily focused on whether TKC had given consideration in exchange for the Personal Guaranty signed by Mr. Kayne, and in particular whether it had extended credit to Mr. Kayne personally as a suitable form of acceptance. *See* the Eleventh Circuit's decision (Exhibit 17 to TKC's Request for Judicial Notice). Also at issue in the Georgia proceedings was whether the arbitration clause applied, by its terms, to Mr. Kayne personally. None of those issues is present in the instant action, which involves entirely separate issues that *assume* the existence of an agreement between Mr. Kayne and TKC to arbitrate, but present distinct issues not addressed in the Georgia decision, such as: (1) The procedural unconscionability that attended Mr. Kayne's entering into the agreement for "expedited" arbitration; and (2) The substantive unconscionability of the "expedited" arbitration procedures as TKC seeks to apply them here. In short, it is axiomatic that the evidence relevant to contract formation (consideration, acceptance by TKC's action, *etc.*) are not "substantially the same" as the evidence of substantive and procedural unconscionability presented here.

### 3.    The Two Actions Do Not Involve "Infringement of the Same Right".

As noted, these matters involve defenses being raised by Mr. Kayne to an arbitration that had yet to occur. In the Georgia proceedings, Mr. Kayne sought to vindicate his right not to be subject to an arbitration clause when he did not, so he asserted, actually have a binding agreement to arbitrate. *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 943-44 (1995) and *Ralph Andrews Production, Inc. v. Writers Guild*, 938 F.2d 128 (9th Cir. 1991). Here, the right (or defense) that Mr. Kayne seeks to vindicate is the one recognized for the first time in *Nagrampa* — to be free from an arbitration clause that is unconscionable under California law. As

- 13 -

1  noted above, Judge Pannell did not rule on that issue but instead contemplated that

2  it would have to be addressed in the California arbitration proceedings.  Because

3  *Nagrampa* was decided before those proceedings commenced, it is appropriate to

4  apply (rather than to ignore) *Nagrampa* in determining the unconscionability issue.

**4.      The Georgia Action Did Not Arise Out of the Same**
**"Nucleus of Facts".**

7  While it is undeniable that the Georgia action involved the same agreements

8  (the "Personal Guaranty" and "Application for Credit") implicated here, the relevant

9  facts in determining unconscionability are different.  The issue of unconscionability

10  simply was not presented to Judge Pannell in the Georgia proceedings, and for a

11  very good reason—the issue in Mr. Kayne's case was not subject to judicial

12  determination until *Nagrampa* was decided by the Ninth Circuit.

**C.      *Res Judicata* Does Not Apply Where a Change in the Law**
**Creates a "New" or "Altered" Situation Not Addressed by**
**the First Judgment.**

16  It has been broadly held that "res judicata is no defense where between the

17  time of the first judgment and the second there has been an intervening decision or

18  a change in the law creating an altered situation." *State Farm Mut. Automobile Ins.*

19  *Co. v. Duel*, 324 U.S. 154, 162 (1945); *see also, Blair v. Commissioner of Internal*

20  *Revenue*, 300 U.S. 5, 8-9 (1937) (holding that initial Seventh Circuit decision finding

21  certain assignments invalid under state law was not *res judicata* where a "new

22  situation" was created by an intervening state court decision contrary to the

23  Seventh Circuit's that declared the assignments valid).

24  The Ninth Circuit adopted this "altered" or "new" situation analysis in *West*

25  *Coast Life Ins. Co. v. Merced Irr. Dist.*, 114 F.2d 654, 662 (9th Cir. 1940).  In *West*

26  *Coast Life*, an initial proceeding resulted in a judgment of dismissal for lack of

27  jurisdiction based on a statute deemed unconstitutional.  *Id.* at 658.  However,

28

- 14 -

1  subsequently, a new statute was enacted, which was declared valid by the Supreme

2  Court, that gave the District Court jurisdiction to hear such matters. *Id.* at 660.

3  The Ninth Circuit held: "[t]his [prior] holding cannot be tortured into a decree that

4  forever bars the petitioner from enjoying with all others this completely changed

5  situation." *Id.* at 660. The Ninth Circuit ultimately concluded that the enactment

6  of a new and different statute and a decision by the Supreme Court declaring the

7  statute constitutional, created a "new situation" sufficient to justify the denial of the

8  res judicata plea. *Id.* at 662 (citing *Blair v. Commissioner, supra*).

9       It also is well-settled that "res judicata cannot extinguish claims that did not

10  even exist and which could not possibly have been sued upon in the previous case."

11  *Intermedics, Inc. v. Ventritex*, 775 F. Supp. 1258, 1263 (N.D. Cal. 1991). TKC's *res*

12  *judicata* argument fails because the *Nagrampa* decision created a new and/or

13  altered situation for Mr. Kayne. Therefore, he could not have reasonably asserted

14  his unconscionability claim during the Georgia action. Only after the *Nagrampa*

15  decision, which overturned the Ninth Circuit's March 21, 2005 *Nagrampa I* ruling

16  in effect during the Georgia action, could Mr. Kayne have been on notice that such a

17  claim of unconscionability was not only possible to bring, but was indeed now the

18  only proper means of challenging an unconscionable arbitration proceeding about to

19  unfold within the State of California. A decision that the current action is barred by

20  *res judicata*, however, would render Mr. Kayne forever precluded "from enjoying

21  with all others this completely changed situation." *West Coast Life, supra*, 114 F.2d

22  at 660. In fact, Mr. Kayne would be uniquely and unfairly deprived of the

23  opportunity to raise the unconscionability issue in *any* forum.

**D.**     ***Nagrampa* Altered Unconscionability Analysis Applicable**

       **to Arbitration Clauses in Contracts of Adhesion.**

26       The Ninth Circuit in *Nagrampa* utilized California's traditional "sliding

27  scale" unconscionability test, including an analysis of both procedural and

28

- 15 -

1   substantive unconscionability. *Nagrampa* , 469 F.3d at 1280-82; *Armendariz v.*

2   *Foundation Health Services, Inc.* 24 Cal. 4th 83, 114 (2000). The decision altered

3   the landscape, however, by rendering it virtually impossible for a franchisor (or a

4   large company operating a franchise-like system involving small businesses in

5   distant locations) to defend against a procedural unconscionability challenge. By

6   establishing the existence of a relationship where one large corporate party (the

7   drafter of a contract of adhesion) has superior bargaining power and presented the

8   contract on a take-it-or-leave-it basis, the disadvantaged party (Mr. Kayne, in this

9   case) can tip the scale so that a court will consider substantive unconscionability of

10   the arbitration clause – which exists in abundance in this case. This simply was not

11   the law before *Nagrampa* and its progeny.

12       The court found that Nagrampa was in a substantially weaker bargaining

13   position than MailCoups because MailCoups' parent company was a large

14   corporation with $208,553,000 in assets and $1,016,492,000 in revenues.

15   Nagrampa, on the other hand, had a yearly salary of $100,000 and never owned her

16   own business. Furthermore, MailCoups drafted the contract and presented the

17   contract on a take-it-or-leave it basis. *Id*. at 1282-84. Those same factors apply to

18   Mr. Kayne's dealings with TKC.

19       Even a cursory review of the *Nagrampa* opinion reveals the far reaching

20   implications of such a holding—the decision all but removed this first procedural

21   unconscionability hurdle for a franchisee challenging an arbitration provision in a

22   standard form contract. Moreover, the Ninth Circuit has not limited this new

23   procedural unconscionability analysis to arbitration provisions found in franchise

24   agreements, but has also begun to apply this analysis to other agreements and

25   relationships as well. For example, the Ninth Circuit recently applied the analysis

26   to an employer-employee arbitration agreement. In *Davis v. O'Melveney & Meyers*,

27

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO         Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

485 F.3d 1066, 1075 the Ninth Circuit made a finding of procedural

unconscionability after stating:

> "In contrast, where—as is the case with Davis as a paralegal in an international law firm—the employee is facing an employer with 'overwhelming bargaining power' that 'drafted the contract, and presented it to [Davis] on a take-it-or-leave-it basis,' the clause is procedurally unconscionable." (citing *Nagrampa* , 469 F.3d at 1284).

Accordingly, it is the overall factual framework of unequal bargaining power coupled with disadvantageous arbitration terms that render arbitration clauses unenforceable under *Nagrampa* and *Davis*. As demonstrated by *Davis*, the reasoning of *Nagrampa* is not limited to franchise agreements. Mr. Kayne's challenge to TKC's arbitration clause therefore does not depend upon whether TKC violated the California or federal franchise laws. The overall nature of the relationship between TKC and Mr. Kayne was sufficient to trigger judicial scrutiny of the procedural and substantive unconscionability of TKC's "expedited" arbitration procedures.

### E.     *Nagrampa* Expanded the Role of Courts in Determining Whether an Arbitration Clause Is Unconscionable.

The Supreme Court's decision in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ("*Buckeye*") decision was initially viewed as setting a "strong presumption that arbitrators will be deciding many of the issues regarding the enforceability of contracts." As a result, the 9th Circuit's *Nagrampa* ruling was "striking to many people."[8]  Indeed, a simple Google search of "Nagrampa" reveals that this is an understatement. *See* Coleman Dec. at Exhibit 4 (DLA Piper online article dated January 2007 stating at p. 1 that the *Nagrampa* decision "has caused substantial concern among franchisors that include arbitration clauses in their

---

[8]     The National Law Journal, Vol. 29, No. 35, *Franchisors May Have tougher Time Arbitrating,* May 7, 2007 (citing Eric Tuchmann, general counsel and corporate secretary for the American Arbitration Association).  A copy of this article is attached as Exhibit 3 to the Coleman Dec.

- 17 -

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO            Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

1  franchise agreements", and at p. 6 that *Nagrampa* "may have a tremendous impact

2  on many standard arbitration provisions in franchise agreements governed by

3  California law", and that "there may be no practical way to avoid a finding of

4  procedural unconscionability if the standard set forth by the court in *Nagrampa* is

5  applied".)  *See id.* at Exhibit 5 (Faegre & Benson web article as published in

6  *Franchise Times* – March 2007, stating at p. 3 that the decision "is obviously

7  significant to franchisors doing business in California.");  and at Exhibit 6

8  (Raymond T. Nimmer, Contemporary Intellectual Property, Licensing and

9  Information Law posted September 29, 2007, opining that "the Ninth Circuit has

10  embarked on a new path", and excoriating both *Nagrampa* and subsequent Ninth

11  Circuit authority based on it).  Thus, the available scholarly, industry and popular

12  press uniformly confirms what is evident from *Nagrampa* itself – that it is a

13  significant new development and departure from prior law in the area of

14  unconscionable arbitration clauses.  This clearly belies TKC's assertion (at page

15  13:16-18) that "even a superficial analysis of *Nagrampa*  makes clear that there are

16  no 'new' legal principals. [*sic*]"

17      In *Buckeye*, the Supreme Court held: "Regardless of whether it is brought in

18  federal or state court, a challenge to the validity of a contract as a whole, and not

19  specifically to the arbitration clause within it, must go to the arbitrator, not the

20  court." *Id.* at 441 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S.

21  395, 400 (1967)).  The *Buckeye* Court also set forth the proposition that unless the

22  challenge is to the arbitration clause itself, the issue of the contract's validity is

23  considered by the arbitrator in the first instance.  *Id.*

24      Importantly, the *Buckeye* Court identified two types of challenges to the

25  validity of arbitration agreements: "One type challenges specifically the validity of

26  the agreement to arbitrate….The other challenges the contract as a whole, either on

27  a ground that *directly affects the entire agreement* (e.g., the agreement was

28

- 18 -

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Case No. C 07-4721 SI

1   fraudulently induced), or on the ground that the illegality of one of the contract's

2   provisions renders the whole contract invalid." *Id.* at 444 (italics added).  The Court

3   ultimately held that the crux of plaintiff's complaint was that the contract as a

4   whole (including its arbitration provision) was rendered invalid by a usurious

5   finance charge.  *Id.*

6          TKC argues that *Nagrampa* simply applied the rule set out in *Prima Paint,*

7   reinforced under the Supreme Court in *Buckeye.*  Motion to Dismiss, p. 13.

8   "Specifically, if a party challenges the arbitration provisions in a contract it is a

9   matter for the courts to decide; if, however, the challenge is to the validity of the

10  agreement as a whole it is a matter for the arbitrator."  *Id.*  Mr. Kayne agrees with

11  TKC that *Nagrampa* acknowledged this general proposition.  However, *Nagrampa*

12  put a significant and new gloss on the *Buckeye* holding because, for the first time, it

13  placed the issue of whether an arbitration clause is unconscionable squarely within

14  the hands of the court, *even if substantive state law required an examination of the*

15  *making of the entire contract as part of that analysis.*  *Nagrampa* , 469 F.3d at

16  1270.[9]  The result is that, instead of being required to argue the unconscionability

17  of the TKC "expedited" arbitration procedure to the arbitrator in California (as

18  ─────────────────────────────────────────────
    [9]    The divided *en banc* decision in *Nagrampa* certainly effected a dramatic
19  change from the pre-existing law as articulated by the panel in *Nagrampa I*: In
    *Nagrampa I*, the panel dismissed plaintiff's evidence as insufficient to demonstrate
20  a procedural unconscionability.  The panel held that MailCoups was not required to
    apprise Nagrampa of the existence of the arbitration clause or the costs associated
21  with arbitration.  *Id.* at 1029-30 (citing *Brookwood v. Bank of America*, 45 Cal. App.
    4th 1667 (1996)) ("Reasonable diligence requires the reading of a contract before
22  signing it.  A party cannot use his own lack of diligence to avoid an arbitration
    agreement.")).  Moreover, the panel stated that Nagrampa was an experienced
23  businessperson who had worked for more than seven years in the direct marketing
    field.  *Id.* at 1030.  She had ample opportunity to read the arbitration clause and to
24  consider its implications.  *Id.*  The panel in *Nagrampa I* also distinguished
    Nagrampa's situation from one in which an inexperienced consumer was pressured
25  to sign an agreement without being afforded an opportunity to read or comprehend
    the fine print.  Finally, the panel stated: "Nagrampa's failure to read the arbitration
26  clause—or to consult a lawyer about its ramifications—does not excuse her from
    complying with its terms."  *Id.*    The *en banc* decision in *Nagrampa* rejected that
27  approach and found the agreement to arbitrate unconscionable as alleged.

28                                              - 19 -
    PLAINTIFF'S MEMORANDUM IN OPPOSITION TO                        Case No. C 07-4721 SI
    DEFENDANT'S MOTION TO DISMISS

1    Judge Pannell's decision had contemplated), it is now necessary and appropriate for

2    this Court to evaluate that issue.

3    IV.    **PLAINTIFFS' CLAIMS UNDER THE CALIFORNIA UNFAIR**

4           **COMPETITION LAW ARE VIABLE.**

5           At pages 15-20 of its motion, TKC argues that Plaintiff's UCL claims are not

6    viable.  The short answer to most or all of TKC's arguments is provided by Judge

7    Jenkins' decision on remand in *Nagrampa v. Mailcoups, Inc.,* 2007 WL 2221028

8    (N.D. Cal. July 30, 2007) at p. *2-*3:

9           Here, the Ninth Circuit's ruling that the arbitration provision as alleged
            violates California's public policy against unconscionable contracts – which is
10          the law of the case – is tethered to a specific statutory provision under
            California law.  Although unconscionability was originally a judicially-
11          created doctrine under California law, it was codified into California Civil
            Code Section 1670.5 by the Legislature in 1979. . . . Accordingly, the Court
12          finds it inappropriate to dismiss Plaintiff's sixth claim.

13          TKC's "collateral estoppel" argument based on the arbitration between TKC

14   and Kayne Art Galleries of Georgia, Inc. ("KAG") fails because Mr. Kayne was not

15   personally bound by that arbitration, as this Court has determined,[10] and because

16   the KAG Arbitration dealt with a different set of agreements (the Dealer

17   Agreement), and not the separate Application for Credit and Personal Guaranty

18   that are at issue here.  Similarly, TKC's "judicial estoppel" argument (TKC's memo.

19   at 23-25) grossly mischaracterizes Mr. Kayne's position and this Court's ruling

20   regarding the KAG arbitration.  Mr. Kayne argued (and this Court found) that he

21   was not personally a party to the KAG-TKC Dealer Agreements. In making that

22   argument, Mr. Kayne did point out (and the Court agreed) that *one* way of

23   confirming that the Personal Guaranty was not covered by the TKC-KAG Dealer

24   Agreements was to note that the Personal Guaranty had a different arbitration

25   _____

26   [10]    *See* Order Denying Plaintiff's Motion To Confirm Arbitration (Document 28
     in this Court's related case no. C 04-0186 SI, a copy of which is attached as Exhibit
27   8 to TKC's request for judicial notice) and the Ninth Circuit's decision affirming
     that order, available at 2007 WL 1544430, 233 Fed.Appx. 684 (9th Cir. 2007).

                                              - 20 -

28   PLAINTIFF'S MEMORANDUM IN OPPOSITION TO                    Case No. C 07-4721 SI
     DEFENDANT'S MOTION TO DISMISS

1    clause.  At the same time, Mr. Kayne made it clear that he had objections to the

2    Personal Guaranty, and the Court in its Order recognized this in its statement that:

3    "*If* Kayne was bound to *any* arbitration, it was the arbitration proceedings under

4    the Credit Application."[11]  It is therefore a gross misstatement to assert, as TKC

5    does (in his motion at p. 24, lines 10-11), that "Kayne as previously used the

6    expedited procedures to his advantage."  Mr. Kayne has done no such thing and

7    there is no basis for "judicial estoppel" in connection with his claims.

8         TKC also mischaracterizes Mr. Kayne's claim under the UCL.  Mr. Kayne is

9    suing for relief from TKC's arbitration provisions in his own right, not on behalf of

10   KAG.  Mr. Kayne was (and in the absence of the requested declaratory and

11   injunctive relief will be) harmed as a result of TKC's failure to make disclosures

12   regarding the Personal Guaranty and the factors surrounding it.   Had TKC

13   complied with the franchise laws, Mr. Kayne would have received material

14   information (not limited to information about the arbitration clause itself) that

15   would have significantly reduced the procedural unconscionability surrounding the

16   Personal Guaranty.  Further, under the UCL, there is a direct link between TKC's

17   failure to make reasonable disclosures and its misleading statements (under the

18   franchise laws as well as the doctrine of unconscionability) sufficient to give rise to

19   a claim, as recognized by Judge Jenkins in his July, 2007 decision on remand in the

20   *Nagrampa* case, *supra*.  In view if the liberal pleading requirements and the

21   standards applicable to Rule 12(b)(6) motions, Mr. Kayne should not be required to

22   allege more at this stage of the proceedings.

23   //

24   //

25   //

26

27   [11]    *Id.* (Exhibit 8 to TKC request for judicial notice) at page 4 (Exhibit page
         0126), at lines 9-10. (Italics added).

28                                          - 21 -

1  **V.    MR. KAYNE'S CLAIM THAT TKC'S ARBITRATION CLAUSE IS**

2  **UNCONSCIONABLE CLEARLY IS VIABLE UNDER *NAGRAMPA***

3         Because it has a vested interest in enforcing one-sided arbitration clauses in

4  contracts of adhesion that have been drafted by its lawyers and imposed on

5  individual art dealers and owners, TKC apparently is in a state of denial about the

6  meaning of the *Nagrampa* decision.  TKC argues (at pages 21-23) that its "no

7  witnesses" arbitration clause is not unconscionable.  Contrary to TKC's assertion,

8  Mr. Kayne does allege procedural unconscionability in the FAC, both in the form of

9  failure to comply with franchise disclosure laws (paragraphs 15-29) and in the form

10  of averments involving economic coercion and deception that do not depend on TKC

11  being a franchisor  (paragraphs 11-14, 30-32).

12         Notably, TKC's argument essentially ignores the reasoning of *Nagrampa* and

13  instead tries to distinguish it on the purported basis that "[i]n *Nagrampa* there was

14  no mutuality", whereas here TKC would have the Court believe that the inability to

15  call and cross-examine witnesses to address TKC's accounting invoices submitted in

16  support of a claim of over $1 million is "mutual".  This is reminiscent of the

17  observation attributed to Anatole France, that "[t]he law, in its majestic equality,

18  forbids the rich as well as the poor to sleep under bridges. . . ."[12]  It is obvious that

19  such a prohibition, which prevents basic due process at the hearing for a substantial

20  amount, operates to the benefit of TKC as purported creditor which can simply

21  submit invoices and await an award in its favor, which (in the form of the Final

22  Award served November 15, 2007) has been forthcoming.  If the standards of

23  *Nagrampa* are applied, however, this unconscionable machinery of no-witness

24  "hearings" for million-dollar claims will be stopped by the Court.  Further, TKC

25  overlooks that Mr. Kayne, a small business owner from Georgia, is being forced by

26  TKC's clause to defend himself in California and to face claims for attorneys' fees.

27  _____
[12]     *Le Lys Rouge* (The Red Lily), ch. 7 (1894).

28
- 22 -

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO          Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

1    Further, TKC argues (at p. 22:16-17) that "using rules promulgated by a

2    nationally recognized third party, the AAA rules simply cannot be deemed to 'shock

3    the conscience'". TKC's argument is wide of the mark, for two reasons noted in the

4    FAC itself, at ¶ 6 and n. 2. First, by their terms, the AAA rules that TKC purports

5    to adopt are designed for small disputes (under $10,000) of a size that the cost of

6    witnesses would likely exceed the amount in controversy. They manifestly were not

7    intended by the AAA for use in million-dollar disputes in which one party (the

8    debtor) has substantial objections to the other side's neat stack of invoices. Second,

9    even the AAA's expedited procedures for small disputes contemplate that witnesses

10   may be requested. By contrast, TKC's custom-made arbitration clause requires that

11   witnesses be called in no circumstance, regardless of the amount in controversy or

12   the needs of the other party to present evidence. TKC's "no witnesses" clause

13   thereby tied the arbitrator's hands and made the outcome a foregone conclusion.

14   **VI.    JUDICIAL ECONOMY MILITATES AGAINST DISMISSAL.**

15   Finally, TKC's motion overlooks the fact that the FAC presents the same

16   issues that will inevitably be raised in opposition to TKC's anticipated request for

17   judicial enforcement of the November 15 "Final Award". It makes sense to resolve

18   these issues sooner rather than later, and it makes no sense for TKC to seek

19   dismissal of the FAC for failure to state a claim if the merits of the claims (or

20   elements of those claims) are likely to resurface in the form of defenses to TKC's

21   enforcement of the Final Award.

22   //

23   //

24   //

25   //

26   //

27

28
PLAINTIFF'S MEMORANDUM IN OPPOSITION TO          Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS

1

## VII.   CONCLUSION

2       For the foregoing reasons, plaintiff David Kayne respectfully urges the Court

3   to DENY TKC's motion to dismiss in its entirety.

4   Dated: November 26, 2007

5                               Respectfully submitted,

6                               HOLLAND & KNIGHT LLP

7

8                               _____

9                               Charles L. Coleman, III

10

11                              Attorneys for Plaintiff
                                DAVID KAYNE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO          Case No. C 07-4721 SI
DEFENDANT'S MOTION TO DISMISS