CHARLES L. COLEMAN, III (CA. Bar No. 65496)
ANDREW T. CAULFIELD (CA. Bar No. 238300)
HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
San Francisco, California  94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910
charles.coleman@hklaw.com
andrew.caulfield@hklaw.com

Attorneys for Plaintiff
DAVID KAYNE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION – **E-FILING**

| | |
|---|---|
| DAVID KAYNE, an individual citizen of Georgia,<br><br>Plaintiff,<br><br>vs.<br><br>THE THOMAS KINKADE COMPANY, formerly known as MEDIA ARTS GROUP, INC., a Delaware Corporation,<br><br>Defendant. | Case No.  C 07-4721 SI<br><br>**DECLARATION OF CHARLES L. COLEMAN, III IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**Hearing Date: December 7, 2007**<br>**Hearing Time: 9:00 a.m.**<br>**Before:         Hon. Susan Illston** |

I, Charles L. Coleman, III, hereby declare that:

1.      I am a member of the firm of Holland & Knight LLP and am admitted to practice before this Court.  I am lead counsel for plaintiff David Kayne ("Mr. Kayne") in this matter.  I submit this declaration in support of Mr. Kayne's Opposition to The Thomas Kinkade Company's Motion to Dismiss Pursuant to FRCP Rule 12(b)(6).  Except as otherwise indicated below, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify to such facts without waiver of any applicable privilege.

2.      On November 15, 2007, I received by e-mail from the American Arbitration Association a copy of arbitrator John J. McCauley's final arbitration award ("Final Award"), dated November 14, 2007, in which TKC was awarded a

1  total amount of $1,230,141.88 against Mr. Kayne. A copy of the Final Award is

2  attached as Exhibit 1 to this declaration.

3       3.     I received from TKC's counsel a copy of the Declaration of Dana N.

4  Levitt in Support of Plaintiff's Arbitration Brief, which is attached hereto as Exhibit

5  2. Paragraph 6 (at page 2:15-25) of Mr. Levitt's Declaration sets forth TKC's

6  enumeration of legal services performed by Mr. Levitt's firm in representing TKC

7  before this Court, including performing legal research, drafting TKC's motion to

8  dismiss and motion to strike, preparing various declarations "in support of the

9  above filings" and other tasks. TKC apparently sought, and was awarded, these

10  fees and expenses in the Final Award (Exhibit 1). Hence, it appears that the

11  arbitrator has awarded TKC its fees incurred in making the motions on which this

12  Court has not yet ruled.

13       4.     I conducted a simple Google search for articles discussing the Ninth

14  Circuit's *en banc* decision in *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir.

15  2006), which yielded numerous articles describing the significance and impact of

16  that decision. Among the documents I retrieved were the following: Attached as

17  Exhibit 3 to this Declaration is an article from <u>The National Law Journal</u> entitled

18  "Franchisors May Have Tougher Time Arbitrating". Attached as Exhibit 4 is an

19  article from the DLA Piper law firm entitled "Will Your Arbitration Provision Be

20  Enforceable?". Attached as Exhibit 5 is an article from the Franchise Times

21  entitled "Is your commitment to arbitrate enforceable?". Finally, attached as

22  Exhibit 6 is an article by Raymond T. Nimmer in Contemporary Intellectual

23  //

24  //

25  //

26  //

27  //

28  //

- 2 -

DECLARATION OF CHARLES L. COLEMAN, III           CASE NO. C 07-4721 SI
IN OPPOSITION TO DEF.'S MOTION TO DISMISS

1    Property, Licensing & Information Law entitled "Ninth Circuit abandons modern

2    law and attacks standard forms".

3         I declare under penalty of perjury, under the laws of the United States and of

4    the State of California, that the foregoing is true and correct, and that I have

5    executed this declaration this 16th day of November, 2007, at San Francisco,

6    California.

7

8

9                                        CHARLES L. COLEMAN, III

10

11

12

13   # 4946331_v1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CHARLES L. COLEMAN, III                    CASE NO. C 07-4721 SI
IN OPPOSITION TO DEF.'S MOTION TO DISMISS

# EXHIBIT  1

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL

THE THOMAS KINKADE                    )
COMPANY, a Delaware Corporation )
                                      )
          Claimant,                   )        No. 74 181 E 00733 06 DEAR
                                      )
    v.                                )        FINAL AWARD
                                      )
DAVID KAYNE, an individual,.          )
                                      )
          Respondent                  )
                                      )
_____  )

I, THE UNDERSIGNED ARBITRATOR, having been duly designated in accordance with an executed Arbitration Agreement entered into by the above-named parties, and based upon the evidence presented at the evidentiary hearing in the above-entitled matter, and having been duly sworn, find that a FINAL AWARD IN FAVOR OF CLAIMANT is warranted, in accordance with the following analysis:

**Introduction**

This matter came on regularly for a scheduled prove-up hearing, with Charles Weir appearing on behalf of the Claimant, The Thomas Kinkade Company ("TKC"). Counsel for Respondent, David Kayne, elected not to attend the hearing, and provided prior notice of his intent to refrain from participating. The Arbitrator did not deem Mr. Kayne's non-attendance to be a concession of liability. Rather, the hearing proceeded on the premise that TKC bore the burden of producing evidence to substantiate each element of its claim. In support of its claim, TKC proffered declaration testimony of Charles

1                                              FINAL AWARD
                                               No. 74 181 E 00733 06 DEAR

Weir and Dana Levitt, along with exhibits, some of which were admissible on the basis

of judicial notice, others of which were admissible on the basis of foundations laid in the

declarations.  The Arbitrator reviewed and admitted all of the declaration testimony and

each of the exhibits proffered for admission.

### 1. Mr. Kayne's Guarantor Obligation in connection with the San Francisco Arbitration Award against Kayne Galleries

The evidence supported the conclusions that Mr. Kayne executed a Credit

Application and Personal Guaranty dated October 2, 2001 (the "Agreement"), that Mr.

Kayne's guaranty was a requirement for TKC to sell artwork to Mr. Kayne's corporation,

Kayne Art Galleries of Georgia, Inc. ("Kayne Galleries"), and that TKC in fact thereafter

sold artwork to Kayne Galleries.  In a decision binding on Kayne Galleries only, a duly

convened arbitration tribunal, sitting in San Francisco (the "San Francisco Arbitration"),

decided that Kayne Galleries ordered and received $535,340.35 of art that it did not pay

for, and that the amount owed as of December 31, 2003 (after adding interest at the

contractually stated rate of 18% and subtracting credits) was $554,605.00 .  That decision

is not *directly* binding upon Kayne -- he was neither a proper party to the proceeding nor

an agent of Kayne Galleries.   But that decision did conclusively establish that Kayne

Galleries incurred a debt to TKC in the amount of $554,605.00.  Moreover, the

Agreement expressly provided that Mr. Kayne would be obligated to make full and

prompt payment of all indebtedness incurred by Kayne Galleries.  The *validity* of that

debt is not relevant to the issue of Mr. Kayne's obligation as guarantor.  For purposes of

determining Mr. Kayne's guarantor obligation, it is sufficient that the debt exists.  (For

this reason, this Arbitrator neither reaches, nor needs to reach, the independent issue of

2                                          FINAL AWARD
                                           No. 74 181 E 00733 06 DEAR

whether Mr. Kayne is collaterally estopped from denying the validity of the debt.)
Accordingly, the component of damages consisting of a $554,605.00 guarantor obligation
covering the San Francisco Arbitration award against Kayne Galleries is awarded against
Mr. Kayne.

### 2. Mr. Kayne's Guarantor Obligations in Connection with Late Charges Kayne Galleries has Incurred on the Debt Pursuant to the Agreement.

In addition to an award against Mr. Kayne covering the stated amount of the San
Francisco Arbitration award against Kayne Galleries ($554,605.00), Claimant TKC also
seeks late charges on the principal amount of that award ($535,340.35) calculated at the
contractually specified rate of 18% (simple interest) since January 1, 2004. This
Arbitrator finds in favor of TKC with respect to this component of an Award, based upon
the clear language of the Agreement, and the absence of any legal barrier to the
enforcement of that language. Specifically, the 18% charge is not usurious because it is a
late charge on money owed in connection with a sale, not an interest charge arising in
connection with a loan or forbearance. This Arbitrator has also determined that the
amount of interest accrued through November 14, 2007 (the date of this Award) is
**$373,036.88,** calculated as follows: 3 x $96,316.26 for the period January 1, 2004 to
December 31, 2006, plus $83,953.10 for the period January 1, 2007 to date.

### 3. Mr. Kayne's Obligation to Pay for TKC Expenses, including Attorney's Fees

Claimant TKC also seeks reimbursement of its costs of recovery, including
reasonable attorney fees. This Arbitrator finds in favor of TKC with respect to this

3                                          FINAL AWARD
                                           No. 74 181 E 00733 06 DEAR

component of damages, based upon the clear language of the Agreement that the "losing party shall pay all arbitration expenses, including attorney's fees." TKC has appropriately included in the category "arbitration expenses" the expenses not only of conducting this Arbitration, but also the expense of defending against attempts to enjoin this Arbitration, both in the state and federal trial and appellate courts in Georgia, and in the state court in California. This Arbitrator finds that the expenses of resisting an attempt to enjoin the Arbitration were indispensably tied to Claimant's ability to have the Arbitration at all, and are therefore well within the meaning of phrase "arbitration expenses" as used in the Agreement.

This Arbitrator further finds that Claimant's contention that the amount of the expenses were reasonable is supported by the evidence, including the evidence that the rate charged by all attorneys, paralegals and legal staff were equal to the amount regularly charged to other clients on other matters, from which it is reasonable to conclude that the rates charged in this case were market rates. The evidence is that the total attorneys fees and costs, *excluding all amounts incurred to AAA in connection with this Arbitration*, is $279,712.50, consisting of two increments of fees to McDermott, Will & Emory ($257,383.75 + $12,681.25) and fees to Lang Legal Group in the amount of $9,647.50. Claimant is entitled to an amount equal to $279,712.50, *plus* all costs it has incurred to AAA in connection with this Arbitration.

The administrative filing and case service fees of the AAA, totaling $8,500.00 and the fees of the arbitrator totaling $14,287.50, shall be borne entirely by David Kayne.

4                                        FINAL AWARD
                                         No. 74 181 E 00733 06 DEAR

Therefore, David Kayne shall reimburse Claimant the sum of $22,787.50, representing that portion of said fees in excess of the apportioned costs previously incurred by Claimant.

### 4. Declaratory Relief Regarding Right to Reimbursement for Fees and Expenses Incurred in Further Litigation.

Finally, TKC seeks a declaration that it is entitled to further costs and fees in connection with anticipated further efforts confirming this award or responding to "appeals." This Arbitrator denies that request. He does so *not* on the basis of a finding that Claimant would not be entitled to such costs and fees, but on the grounds that, in the view of the Arbitrator, the request exceeds the scope of dispute before him.

### Award

Based on the analysis set forth above, the Arbitrator awards Claimant $1,230,141.88, consisting of the following components:

1. $554,605 adjudicated debt through December 31, 2004

2. $373,036.88 late charges through November 14, 2007.

3. $279,712.50 attorney fees and expenses.

4. $22,787.50, costs incurred to the American Arbitration Association.

This Award is in full resolution of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Date:  November 14, 2007

John J. McCauley
Arbitrator

5

FINAL AWARD
No. 74 181 E 00733 06 DEAR

**EXHIBIT 2**

DANA N. LEVITT, PC
CHARLES E. WEIR
McDERMOTT WILL & EMERY LLP
2049 Century Park East
Suite 3800
Los Angeles, CA 90067-3218
Telephone:    310.277.4110
Facsimile:    310.277.4730

Attorneys for Plaintiff
THE THOMAS KINKADE COMPANY

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| THE THOMAS KINKADE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAVID KAYNE, an individual,<br><br>Defendant. | CASE NO. 74-181-E-00733-06 02 DEAR-C<br><br>**DECLARATION OF DANA N. LEVITT IN SUPPORT OF PLAINTIFF'S ARBITRATION BRIEF** |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## DECLARATION OF DANA N. LEVITT

I, Dana N. Levitt, declare as follows:

1.     I am an attorney licensed to practice law in the State of California. Through my professional corporation, I am a partner in the law firm of McDermott Will & Emery LLP ("MWE"). My firm's offices are located at 2049 Century Park East, 38th Floor, Los Angeles California. My law firm currently represents The Thomas Kinkade Company ("TKC") in its legal disputes with Defendant David Kayne ("Kayne"). I have personal and first hand knowledge of the facts stated herein, and if called upon, I could and would testify competently thereto.

2.     This arbitration has required an extensive amount of legal work in multiple jurisdictions over a period of 16 months. As of October 11, 2007, TKC has incurred attorney's fees and costs of $257,383.75 in connection with this arbitration.

3.     MWE performed the following services for TKC in connection with commencing this arbitration:

   a.     Participating in initial telephone conferences and e-mail correspondence regarding a possible arbitration;

   b.     Researching and drafting a demand for arbitration; and

   c.     Participating in telephonic and e-mail conferences regarding the selection of an arbitrator.

4.     Since the initial demand for arbitration in this matter was filed in July 2006, MWE has performed a number of other, related services in connection with three federal court matters that Kayne filed in an attempt to avoid this arbitration. After TKC filed its initial demand for arbitration, Kayne responded by filing a lawsuit in Georgia State Court seeking injunctive and declaratory relief. TKC subsequently removed this case to federal court (the Georgia state court action and Georgia federal court actions are hereinafter collectively referred to as the "Georgia Action"). MWE performed extensive legal work on behalf of TKC in this Georgia Action, including but not limited to the following:

   a.     Researching and analyzing the subsequent petition that Kayne filed in Georgia state court to enjoin the arbitration from proceeding;

DECLARATION OF DANA LEVITT
LAS99 1522556-3.074203.0021

(No. 74-181-E-00733-06 02 DEAR-C)

1  b.  Removing the case from Georgia state court to federal court;

2  c.  Opposing several motions to strike that Kayne filed in the Georgia Action;

3  d.  Researching and preparing a motion to compel arbitration in the Georgia Action;

4  e.  Researching and drafting an opposition to Kayne's motion for leave to amend;

5  f.  Researching and drafting an opposition to Kayne's motion for leave to file a sur-

6  reply; and

7  g.  Drafting various declarations in support of the above filings.

8  5.  Judge Pannell of the United States District Court for the Northern District of

9 Georgia ultimately ruled against Kayne, dismissing the case and compelling the parties to

10 arbitration. Kayne unsuccessfully appealed Judge Pannell's ruling to the United States Court of

11 Appeals for the Eleventh Circuit (the "Eleventh Circuit Appeal"). MWE performed the following

12 legal services in connection with the Eleventh Circuit Appeal:

13  a.  Researching and analyzing Kayne's appellate brief;

14  b.  Researching and drafting TKC's opposition brief.

15  6.  Subsequently, Kayne filed suit in the United States District Court for the Northern

16 District of California (the "California Action"), again seeking injunctive and declaratory relief

17 that would prevent this arbitration from proceeding. To date, MWE has performed the following

18 services on behalf of TKC in the California Action:

19  a.  Researching and analyzing Kayne's complaint;

20  b.  Researching and drafting a motion to dismiss;

21  c.  Researching and drafting a motion to strike;

22  d.  Reviewing and analyzing Kayne's application for a temporary restraining order;

23  e.  Researching and drafting an opposition to Kayne's application for a temporary

24  restraining order; and

25  f.  Drafting various declarations in support of the above filings.

26  7.  I have been lead counsel for TKC throughout the matters described above. I am a

27 1977 graduate of Duke University School of Law. I was admitted to practice in the state of

28 California in 1977 and have been practicing in both state and federal courts ever since. I have

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF DANA LEVITT
LAS99 1522556-3.074203.0021

- 2 -

(No. 74-181-E-00733-06 02 DEAR-C)

1   been a partner at MWE since 2005. Prior to joining MWE, I was a partner (through my

2   professional corporation) at the law firm Alschuler Grossman Stein & Kahan LLP, where I served

3   as a member of the firm's Executive Committee and its Managing Partner. Before that, I served

4   as Litigation Director for Security National Pacific Bank. During my career, I have represented a

5   diverse group of businesses and wealthy individuals in State and Federal courts and in

6   arbitrations. I have substantial experience with bench trials, jury trials and commercial

7   arbitrations. During the period relevant to this matter, my hourly billing rate has ranged from

8   $550.00 - $660.00.

9         8.      I have primarily been assisted in this matter by Charles E. Weir, a partner in my

10  office. Mr. Weir graduated from Harvard Law School in 2000 and was admitted to practice in the

11  State of California later that year. In addition, Mr. Weir is admitted to practice in the United

12  States District Court for the Central District of California, the United States District Court for the

13  Northern District of California and the Ninth Circuit. Mr. Weir was promoted into partnership on

14  January 1, 2007. Prior to his promotion into partnership, he was an associate at MWE. Prior to

15  joining MWE in 2003, Mr. Weir was an associate at two other international law firms. Mr. Weir

16  has extensive experience litigation experience, including representing clients in state and federal

17  courts as well as in arbitration. In 2006 and 2007, Mr. Weir was named a "Rising Star" by *Los*

18  *Angeles Magazine* and *Law and Politics*. During the period relevant to this arbitration, Mr.

19  Weir's hourly billing rate ranged from $375 - $520.

20        9.      In addition, Charles and I have been assisted by Jason D. Strabo, an associate from

21  my office. Mr. Strabo graduated from the University of Southern California Law School in 2006

22  and was admitted to practice in the State of California later that year. Mr. Strabo's hourly billing

23  rate during the relevant period ranged from $260 - $315.

24        10.     In addition, I received assistance from two paralegals, Alexandra Zorina and

25  Melissa Snow, and a case assistant, Zachary Winston. Ms. Zorina's hourly billing rate during the

26  relevant period ranged from $230-$245. Ms. Snow's billing rate during the relevant period

27  ranged from $220 – 230. Mr. Winston's hourly billing rate during the same period ranged from

28  $110 - $130.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

11.    The hours worked by myself, my fellow MWE attorneys, and MWE support staff in connection with this arbitration are reasonable and necessary.  The rates that the MWE lawyers and I charged during the relevant period are reasonable, and in line with the prevailing market rates in Los Angeles for attorneys of similar skill, experience and reputation.

12.    Attached hereto as Exhibit 1 is a true and correct copy of the financial history of this matter that my firm received from the AAA.

13.    I declare under penalty of perjury under the laws of the United States and the State of California that the forgoing is true and correct and that this declaration is executed this 12th day of October 2007 in Los Angeles, California.

Dated:       October 12, 2007

Dana N. Levitt
Attorneys for Plaintiff
THE THOMAS KINKADE COMPANY

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF DANA LEVITT
LAS99 1522556-3.074203.0021                        - 4 -                        (No. 74-181-E-00733-06 02 DEAR-C)

6795 North Palm Ave, 2nd Floor
Fresno, CA 93704

#1

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

**This is Not an Invoice**

## FINANCIAL HISTORY

History of transactions thru 09/13/2007

NAME  Robert C. Murray
        Thomas Kinkade Company
        900 Lightpost Way
        Morgan Hill, CA 95037

**Administrative Fees**

| Invoice# | Date | Description | Amount |
|---|---|---|---|
| 9309394 | 07/28/2008 | Initial Administrative Fee | 6,000.00 |
| 9510945 | 08/27/2007 | Case Service Fee | 2,500.00 |
| | | **Subtotal - Administrative Fees :** | 8,500.00 |

**Neutral Fees and Expenses**

| Invoice# | Date | Description | Amount |
|---|---|---|---|
| 9481682 | 06/27/2007 | Your Share of the Neutral Compensation Deposit covering 10 hours of Preliminary Matters | 1,875.00 |
| 9481685 | 06/27/2007 | Opposing Party's Share of the Neutral Compensation Deposit covering 10 hours of Preliminary Matters | 1,875.00 |
| 9481686 | 06/27/2007 | Your share of the arbitrator expense deposit | 100.00 |
| 9481690 | 06/27/2007 | Opposing party's share of the arbitrator expense deposit | 100.00 |
| 9510929 | 08/27/2007 | Your Share of the Neutral Compensation Deposit covering 22 hours of Study | 4,125.00 |
| 9510931 | 08/27/2007 | Opposing Party's Share of the Neutral Compensation Deposit covering 22 hours of Study | 4,125.00 |
| 9510932 | 08/27/2007 | Your Share of the Neutral Compensation Deposit covering 8 hours of Hearing | 1,500.00 |
| 9510934 | 08/27/2007 | Opposing Party's Share of the Neutral Compensation Deposit covering 8 hours of Hearing | 1,500.00 |
| | | **Subtotal - Neutral Fees and Expenses :** | 15,200.00 |
| | | **Net Total of All Charges :** | 23,700.00 |

**Payments and Refunds**

| Check/Ref# | Date | Description | Amount |
|---|---|---|---|
| 30022385 | 07/31/2006 | Payment recvd from : The Thomas Kinkade Company | 6,000.00 |
| 11500570 | 07/03/2007 | Payment recvd from : THE THOMAS KINKADE COMPANY | 1,975.00 |
| 11500593 | 07/16/2007 | Payment recvd from : THE THOMAS KINKADE COMPANY | 1,975.00 |
| | | **Net Total of All Payments :** | 9,950.00 |

| CASE BALANCE | $13,750.00 |
|---|---|

# EXHIBIT  3

Westlaw.

5/7/2007 NLJ 22, (Col. 1)                                          Page 1
 5/7/2007 Nat'l L.J. 22, (Col. 1)


                    The National Law Journal
                         Vol. 29, No. 35
          Copyright 2007 by American Lawyer Media, ALM, LLC

                          May 7, 2007

                            News
                         California

        FRANCHISORS MAY HAVE TOUGHER TIME ARBITRATING

   A 9TH CIRCUIT RULING ON 'UNSCONSCIONABLE' AGREEMENTS IS CITED

                       Amanda Bronstad
                       Staff Reporter

  LOS ANGELES -- Two rulings in California could make it harder for franchisors to
enforce their arbitration agreements with franchisees, according to several law-
yers who specialize in franchise contracts.

  Both cases cite the U.S. Supreme Court's decision last year in  Buckeye Check
Cashing Inc. v. Cardegna, 546 U.S. 440 (2006). That decision found that under the
Federal Arbitration Act, contract disputes involving arbitration agreements must
take place before an arbitrator, not a judge, unless the claims specifically tar-
get the arbitration clause.

  In one California case, the 9th U.S. Circuit Court of Appeals ruled that a Cali-
fornia franchisee had the right to go to court to dispute an arbitration agreement
she found 'unconscionable,' or exceptionally unreasonable.  Nagrampa v. MailCoups
Inc., 469 F.3d 1257 (9th Cir. 2006). The ruling came down in December, but was fi-
nalized in March.

  Several cases have cited Nagrampa in recent months, most notably a Los Angeles
case involving a Cold Stone Creamery franchise. Meyers v. Conehead Investments
Inc., No. BC358836 (Los Angeles Co., Calif., Super. Ct.). In that case, decided on
April 18, a judge denied a motion to compel arbitration in finding the arbitration
agreement to be unconscionable.

  'The law is now becoming very clear in California,' said James Mulcahy of Mul-
cahyReeves in Irvine, Calif., who represents the plaintiff in the Cold Stone
Creamery case. 'Franchisors need to look at the arbitration provision in their
agreements, all of which are then subject to the possibility that they will not be
enforced and they will not be able to pursue arbitration.'

  The Supreme Court's Buckeye decision set a 'strong presumption that arbitrators
will be deciding many of the issues regarding the enforceability of contracts,'

5/7/2007 NLJ 22, (Col. 1)                                                                    Page 2
5/7/2007 Nat'l L.J. 22, (Col. 1)

said Eric Tuchmann, general counsel and corporate secretary for the American Ar-
bitration Association. As a result, the 9th Circuit's Nagrampa ruling was 'strik-
ing to many people,' he said.

   In that case, an en banc panel of the 9th Circuit found that a judge, not an ar-
bitrator, should decide a franchisee's claims. In allowing the franchisee to take
her claims to court, the 9th Circuit opinion cited Buckeye, noting that 'nowhere
in her complaint does she seek rescission or invalidation of the entire contract.'
The appellate court also found that the arbitration agreement in the case was un-
conscionable because it allowed the franchisor to go to court, but not the fran-
chisee, who was forced to arbitrate her claims thousands of miles away.

   The ruling 'gives parties a chance to fight overreaching arbitration clauses in
court,' said Michael Quirk, an associate at Philadelphia-based Williams Cuker
Berezofsky who represented the plaintiff in the Nagrampa case while working at
Trial Lawyers for Public Justice.

   Glenn Plattner, a partner in the Los Angeles office of Bryan Cave who represents
MailCoups, disagreed. 'We consider the 9th Circuit opinion to be contrary to the
Supreme Court and a lot of other circuit courts,' he said.

5/7/2007 NLJ 22, (Col. 1)

END OF DOCUMENT

Copyright © 2007 The New York Law Pub. Co.

**EXHIBIT  4**

Alert/Newsletter Template



## Francast

### Will Your Arbitration Provision Be Enforceable?

by Barry M. Heller and Charley C. Sung

An *en banc* decision handed down in December 2006 by the United States Court of Appeals for the Ninth Circuit has caused substantial concern among franchisors that include arbitration clauses in their franchise agreements.

In *Nagrampa v. MailCoups, Inc.*, the Ninth Circuit, applying California law, invalidated a specific arbitration provision in a franchise agreement on the grounds that it was procedurally and substantially unconscionable. The court held that the provision was procedurally unconscionable because the franchisor had overwhelming bargaining power, drafted the contract, and presented it to the franchisee on a take-it-or-leave-it basis.

The court further held that the provision was substantively unconscionable because, among other things, it: (1) lacked mutuality by reserving the franchisor's right to bring certain actions against the franchisee in court, while limiting the franchisee's right to bring actions against the franchisor to the arbitral forum; and (2) contained a forum selection clause designating the franchisor's home state as the situs for arbitration that was found to be oppressive to the franchisee.

### Background

On August 24, 1998, Connie Nagrampa (Nagrampa) entered into a franchise agreement with MailCoups, Inc. (MailCoups) to establish and operate a MailCoups franchise in Contra Costa, California. The franchise agreement contained a provision requiring the parties to arbitrate, in accordance with the rules of the American Arbitration Association (AAA), any dispute that arose out of, or related to, the franchise agreement. The arbitration provision further provided:

January 2007

Global Web Site »

US Offices »

US Franchise and
Distribution
Practice »

DLA Piper has been hailed as the number one firm in the world in the area of franchise law. We have been a national and international leader in franchise and distribution law since modern franchising began, helping to shape the field from its inception. Our clients come from most of the 75 business sectors that have adopted franchising as a method of distribution and cover a broad spectrum of size and experience, from entrepreneurs and start-up companies that are establishing

new programs, to the largest franchisors, manufacturers, and distributors.

For more information, please contact:

Barry M. Heller

Charley C. Sung

MailCoups initially designated Los Angeles, California as the hearing locale.

[T]his clause shall not be construed to limit MailCoups' right to obtain any provisional remedy, including, without limitation, injunctive relief from any court of competent jurisdiction, as may be necessary in MailCoups' sole subjective judgment, to protect its Service Marks and proprietary information. . . . The situs of the arbitration proceeding shall be the regional office of the American Arbitration Association which is located in Boston, Massachusetts. The costs of arbitration shall be borne equally by MailCoups and Franchisee. Each party shall be responsible for the fees and expenses of its respective attorneys and experts.

In September 2000, Nagrampa unilaterally terminated the franchise agreement. In December 2001, MailCoups initiated arbitration proceedings claiming that at the time Nagrampa terminated the agreement, she owed MailCoups in excess of $80,000 in fees.

## Nagrampa Objected to Arbitration, Venue Selection, and the Arbitration Fee Clause

Nagrampa objected to the arbitration proceeding, asserting "serious concerns about the validity of the arbitration clause." She further objected to the venue selection, requesting that the venue for the arbitration be Contra Costa, California, the county in which Nagrampa operated her MailCoups franchise. Finally, she objected to the arbitration fee clause. Based on these objections, as well as the AAA's eventual determination that the hearing would take place in Boston, Nagrampa refused to participate in the arbitration proceedings.

## Nagrampa's Suit Did Not Seek to Invalidate Franchise Agreement

Instead, Nagrampa filed suit in Superior Court of the State of California against MailCoups and the AAA, challenging the enforceability of the arbitration provision, among other things. Nowhere in her complaint did Nagrampa seek to have the franchise agreement as a whole invalidated or declared unenforceable.

On January 14, 2003, MailCoups removed the action to the United States District Court for the Northern District of California, based on diversity of citizenship. MailCoups thereafter filed a motion to compel arbitration and dismiss or stay Nagrampa's action, alternatively seeking transfer of the action to the United States District Court for the District of Massachusetts.

## District Court Only Addressed Enforceability of Arbitration Provision

The district court glossed over the question of whether the arbitration provision was procedurally unconscionable and concluded that procedural unconscionability was not a dispositive issue for a motion to compel. The district court only addressed one issue: whether the arbitration provision was substantively unconscionable and found that the provision was both valid and enforceable. Furthermore, because it found that the parties had agreed to arbitrate in Boston, Massachusetts, it dismissed the action, permitting MailCoups to move in the District Court for the District of Massachusetts to compel arbitration.

Nagrampa appealed. Initially, a three-judge panel of the Ninth Circuit affirmed the district court's holding, although on different grounds. Nagrampa then sought en banc review of the panel's decision.

## Court Holds that It, Not Arbitrator, Is the Proper Tribunal to Consider Challenges to Arbitration Provisions

As an initial matter, the Ninth Circuit confronted the question of whether a court or an arbitrator should determine the validity of an agreement to arbitrate. Unless the challenge is to the validity of a contract as a whole, the court held, the issue of the validity of an arbitration provision is for a court to decide. Finding that Nagrampa's challenge was specifically, and only, to the validity of the arbitration provision, the court concluded that it was the proper tribunal to decide that issue.

## Unconscionability Generally

The Ninth Circuit observed that, in assessing an unconscionability claim, California courts analyze the contract provisions for both procedural and substantive unconscionability. In California, the court further noted, the

prevailing view is that procedural and substantive unconscionability need not both be present to the same degree. Instead, a sliding scale is applied: the more substantively oppressive the contract term is, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable, and vice versa.

## Procedural Unconscionability

Turning first to the issue of procedural unconscionability, the Ninth Circuit observed that, under California law, the critical factor in a procedural unconscionability analysis is the manner in which the contract or the disputed clause was presented and negotiated.

Noting that California courts have long recognized that franchise agreements have some characteristics of contracts of adhesion because of the allegedly vastly superior bargaining strength of the franchisor, the court concluded that MailCoups had overwhelming bargaining power, drafted the contract, and presented it to Nagrampa on a take-it-or-leave-it-basis. While acknowledging that the evidence of procedural unconscionability appeared minimal, the court went on to analyze substantive unconscionability.

## Substantive Unconscionability

The court found that two provisions set forth in the arbitration clause exhibited a lack of mutuality supporting a finding of substantive unconscionability.

First, the court noted that the contract gave MailCoups access to a judicial forum to obtain provisional remedies to protect its intellectual property, while it restricted Nagrampa to only the arbitral forum to resolve her claims. The court observed that where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California courts have found lack of mutuality supporting a finding of substantive unconscionability.

Second, the court noted that the arbitral forum was designated as Boston, Massachusetts, a location considerably more advantageous to MailCoups since its headquarters was in the vicinity. Under California law, if the place and manner restrictions of a forum selection provision are unduly oppressive, or have the effect of shielding the stronger party from liability, the forum selection

provision is unconscionable.

The court thus concluded that the forum selection clause supported a finding of substantive unconscionability because the clause had no justification other than as a means of maximizing MailCoups' advantage over Nagrampa. The court found that the prohibitive costs and burden of pursuing arbitration in Boston effectively precluded Nagrampa from ever raising claims against MailCoups.

## Court Also Noted Other Reasons for Unenforceability of Forum Selection Clause

As an additional basis for finding the forum selection provision unenforceable, the court noted that the franchise agreement was entered into when Cal. Bus. & Prof. Code § 20040.5 was still considered good law, and out-of-state forum selection provisions in franchise agreements were not enforceable under California law. In recognition of § 20040.5, the MailCoups' offering circular contained language suggesting that the forum selection clause may be unenforceable under California law. Applying a prior decision (*Laxmi*), the court found no evidence that MailCoups ever indicated it would insist on an out-of-state forum despite contravening California law in place at the time the contract was executed. The court, therefore, concluded that Nagrampa had no reasonable expectation that the arbitration would take place in Boston.

Finally, the court found that the forum selection clause may also be unenforceable on public policy grounds because it impeded the enforcement of unwaivable statutory rights. The court concluded that because the forum selection clause could have forced Nagrampa to forgo unwaivable public rights by imposing unreasonable costs to arbitrate her claims in Massachusetts, it was contrary to California public policy and thus might be unenforceable.

## Sliding Scale Test Tipped the Balance

Applying California's sliding scale test for unconscionability, the court held that even though the evidence of procedural unconscionability was slight, the evidence of substantive unconscionability was strong enough to tip the scale and render the arbitration provision unconscionable and unenforceable.

Two judges on the *en banc* panel wrote vigorous dissents, in which a number

Alert/Newsletter Template

of other judges joined, taking strong issue with the majority's determinations of procedural and substantive unconscionability, as well as whether a court or an arbitration was the proper forum for deciding those issues.

## *Nagrampa* May Have Tremendous Impact on Franchise Agreements Governed by California Law

The Ninth Circuit's decision in *Nagrampa* may have a tremendous impact on many standard arbitration provisions in franchise agreements governed by California law. Because franchisors arguably often have superior bargaining power, draft franchise agreements, and present them to franchisees on a take-it-or-leave-it basis, there may be no practical way to avoid a finding of procedural unconscionability if the standard set forth by the court in *Nagrampa* is applied.

## Maximize the Likelihood of Enforceability by Drafting Appropriate Provisions

Franchisors, however, can maximize the likelihood of the enforceability of arbitration provisions by trying to address the factors that the *Nagrampa* court found to constitute substantive unconscionability. Namely, to avoid the impact of *Nagrampa*, franchisors whose arbitration clauses are likely to be assessed under California law should consider drafting arbitration provisions that provide for the same arbitral and judicial forum availability for both franchisor and franchisee.

Published by DLA Piper US LLP
Copyright © 2007 DLA Piper US LLP
All Rights Reserved

Circular 230 Notice. In accordance with Treasury Regulations which became applicable to all tax practitioners as of June 20, 2005, please note that any tax advice given herein (and in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This publication is intended to provide clients with information on recent legal developments. It should not be construed as legal advice or legal opinion on specific facts. Pursuant to

http://www.dlapiper.com/files/upload/Francast_Jan07.html

applicable Rules of Professional Conduct, it may constitute advertising.

You are receiving this communication because you are a valued client or friend of DLA Piper US LLP.

**To unsubscribe** from this mailing list, reply to this message with REMOVE in the subject line. Written requests may be sent to:

DLA Piper US LLP, Attention: Marketing Department
401 B Street, Suite 1700, San Diego, California 92101-4297, USA

**DLA Piper US LLP**
www.dlapiper.com

# EXHIBIT  5

# Franchise Times®

The News and Information Source for Franchising · November 15, 2007

HOME   ARCHIVES   CONFERENCES   RESOURCES   ADVERTISE   CONTACT US   SEARCH



Bank of America

Legal...

## Is your commitment to arbitrate enforceable?

**The Ninth Circuit voided the standard arbitration clause: Is this a sign of things to come or just the musings of a liberal court?**

*By Bill Killion*
*As published in: Franchise Times - March 2007*

A commitment to arbitrate is the most powerful risk-allocation tool available to a franchisor. A carefully drafted arbitration provision can (1) preclude class actions, (2) guaranty that disputes will be heard in the franchisor's own backyard, (3) allow the parties to control the qualifications of the arbitrator, (4) limit remedies, (5) control dispute-resolution procedures, (6) preserve resort to the courts for provisional relief, and (6) result in a more expeditious, and less costly, resolution of disputes.

It is not surprising therefore that arbitration provisions are common in franchisor agreements. In 1999 Professor Christopher Drahozal studied the franchise agreements of the largest franchisors and found that nearly 45 percent of the agreements contained an arbitration clause. I did my own study of the agreements of a larger group and found that 72 percent contained commitments to arbitrate. The details of the studies are published in the 2002 Franchise Law Journal.

Arbitration has not always been the darling of franchisors—or courts for that matter. Until the early 20th century, U.S. courts were reluctant to enforce commitments to arbitrator, a "judicial disposition," according to the Supreme Court in Circuit City, "inherited from then-longstanding English Practice." Congress enacted the Federal Arbitration Act (FAA) in 1925 to overcome this hostility to arbitration. Congress declared arbitration agreements "valid, irrevocable, and enforceable" on the same basis as any other contract. The Supreme Court found in Moses H. Cone that the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." In the years following enactment of the FAA, the Supreme Court has rejected repeatedly efforts by courts and state legislatures to restrict arbitration. The



Bill Killion is a partner with Faegre & Benson's

Court has held that the FAA pre-empts state anti-arbitration laws; that federal statutory claims, even antitrust and federal employment law claims, are subject to arbitration; that the FAA precludes states from singling out arbitration clauses for special treatment; that arbitration agreements limiting remedies are enforceable; and that the arbitrator decides fraud in the inducement claims, except where the fraud relates to the arbitration clause itself.

Against this backdrop comes a December 4, 2006, decision out of the Ninth Circuit Court of Appeals, Nagrampa v. MailCoups Inc. The court, in a sharply divided opinion, found that an arbitration clause in a franchise agreement was unconscionable and therefore unenforceable under California law. The problem with Nagrampa is this: If the arbitration clause in that case is unenforceable, then no arbitration commitment is safe from judicial interference. The big question is whether Nagrampa is "good law" or little more than musings of what some skeptics call the Ninth "Circus" Court of Appeals located on the "Left Coast."

Connie Nagrampa was hardly the prototypical mom-and-pop franchisee when she first considered a MailCoups franchise. She was earning over $100,000 per year as a sales manager for ValPak, a company that competed with MailCoups in the direct marketing industry. Judge Kozinski observed in his dissent that "if Nagrampa was not sophisticated enough to sign up as a direct-mail franchisee, nobody is." The majority nevertheless characterized Nagrampa as in "a substantially weaker bargaining position than MailCoups" because she was a first-time franchisee and "had no specialized training education or training in the field," something apparently not offset by her actual experience in the industry.

Nagrampa's weak bargaining position, coupled with MailCoups' take-it-or-leave-it position on the franchise agreement, was enough for the majority to declare the commitment to arbitrate "procedurally unconscionable" and get the court to the second prong of the two-part California test for declaring the entire commitment unenforceable—"substantive unconscionability." Here is where the decision gets particularly troublesome.

The arbitration clause in the MailCoups agreement was "plain vanilla." It said that "any controversy … shall be submitted to arbitration" in accordance with the American Arbitration Association rules, (2) MailCoups could seek "provisional" relief (an injunction) "to protect its Service Marks and proprietary information," (3) the "situs" of the arbitration will be Boston, MailCoups' home, and (4) the parties will share the costs of arbitration.

The majority opinion addresses a host of issues, but ultimately comes down to a few key points of particular interest to the franchise community. First, the majority rested its decision on a supposed lack of mutuality and the choice of Boston as the forum for the arbitration. According to the court, Nagrampa was duty-bound to submit all of her claims to arbitration, but MailCoups

business litigation group in the Minneapolis office.

The problem with Nagrampa is this: If the arbitration clause in that case is unenforceable, then no arbitration commitment is safe from judicial interference. The big question is whether Nagrampa is "good law" or little more than musings of what some skeptics call the Ninth "Circus" Court of Appeals located on the "Left Coast."

Is your commitment to arbitrate enforceable? (Franchise Times Magazine: March, 2007)

Page 3 of 4

http://www.franchisetimes.com/content/story.php?article=00258

could ask for provisional relief. Oddly, Nagrampa offered no evidence that she could not afford to arbitrate in Boston. The majority said that under California law MailCoups had the burden of showing that the forum selection clause did not diminish Nagrampa's rights.

The Nagrampa decision sparked a spirited debate within the franchise law bar, with some lawyers opining that the decision was a warning to all franchisors that courts will more carefully scrutinize their one-sided agreements while others passed it off as the by-product of a court out-of-step with the law. The decision is obviously significant to franchisors doing business in California, however, franchisors should be slow to do anything differently.

To begin with, the Nagrampa decision is, in many ways, a political decision. The majority decision reflects a philosophy that franchisees (just like widows, orphans, and sailors) need special protection. All seven of the judges comprising the majority are Democrat appointees (five Clinton and two Carter). Three of the four dissenters are, in turn, Republican appointees. Although the majority and minority spar over the nuances of the law, their real differences are reflected in a handful of pages. The majority proceeds on the assumption that "California courts have long recognized that franchise agreements have some characteristics of contracts of adhesion because of the 'vastly superior bargaining strength' of the franchisor." In contrast, Judge Kozinski observes that "as with most paternalistic endeavors, the majority's opinion carries the seeds of great irony. By invoking the unconscionability doctrine to protect 'the little guy' in this case, the majority has construed California franchise law in a way that will result in fewer opportunities for other 'little guys' in the future" by discouraging companies from becoming franchisors.

The MailCoups arbitration clause was far from oppressive. It did give MailCoups the limited right to seek provisional relief, but this is standard in franchise agreements. Professor Drahozal found that 76 percent of the arbitration clauses he studied contained a similar provision. The forum selection clause was also typical. In fact, Drahozal observed that 82 percent of the clauses he reviewed designated the franchisor's home state as the location of the arbitration.

One lesson from Nagrampa is that franchisors should craft arbitration clauses so that they do not appear one-sided. The Nagrampa majority opinion voided the MailCoups agreement largely because the franchisee did not have a similar right to seek provisional relief. There is little harm in franchisors extending a similar right to franchisees, and MailCoups would probably have made the exception mutual if it had any idea that a court might void the commitment altogether.

*Franchise Times - March 2007*

Home   |   Archives   |   Conferences   |   Resources   |   Advertise   |   Contact Us   |   Search



FLORIDA Restaurant & Lodging Show

Food is only half the story

September 7-9, 2007
Orange County Convention Center

Is your commitment to arbitrate enforceable? (Franchise Times Magazine: March, 2007)

Copyright © 2003-2007 Franchise Times Corporation · All rights reserved · 1-800-528-3296 · info@franchisetimes.com

Page 4 of 4

# EXHIBIT  6



Home > Licensing Law Issues > Ninth Circuit abandons modern law and attacks standard forms >

09 | 29 | 2007 Posted By

## Ninth Circuit abandons modern law and attacks standard forms

U.S. law has long held that non-negotiated, standard-form contracts are fully enforceable unless they smack of both procedural and substantive unconscionability. But the Ninth Circuit has embarked on a new path equating procedural unconscionability to mere use of standard forms without deception, and even though there is no lack of notice, no lack of choice and no other indicia of procedural unconscionability; other courts should reject this path and the Ninth Circuit should retract it.

It is as if the Ninth Circuit awoke one morning on its own planet and concluded that it should change fundamental contract law and vitiate many arbitration clauses, class action waivers, and choice of law and forum selection clauses.

In *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) the Ninth Circuit held unconscionable as to a California franchisee, a mandatory forum and arbitration clause picking Massachusetts as the venue for disputes in a franchise agreement . The alleged procedural problems were the unbalanced bargaining positions and a lack of actual bargaining. But contracts are seldom bargained as to matters other than price and quantity or scope.

The alleged substantive problems?

(1) The clause lacked mutuality because the franchisor could use judicial process in some cases (e.g., to protect its trademark rights), while the franchisee could not. But contract law has never required that each *clause* have mutuality, only that the entire contract reflect a mutuality of obligation, which this one did.

(2) "[The] contract would require a one-woman franchisee … to fly across the country to arbitrate a contract signed and performed in California…. She may not be able to maintain her claim … The forum selection provision has "no justification other than as a means of maximizing an advantage over [franchisees].'"" But the Supreme Court has held that mere cost is not enough to invalidate such clauses. Also, there was a justification for the clause – without it, the franchisor would be forced to litigate in all of the states in which it granted franchises and, thus, to charge all franchisees a premium to enable it to do so.

*Nagrampa* is bad enough, but the Ninth Circuit later continued the exegesis of its view of law in *Douglas v. U.S. District Court*, 2007 WL 2069542 (9th Cir. 2007), a mandamus action. There, after holding that an amendment of an online agreement lacked assent, the Ninth Circuit gratuitously commented that even had there been assent, the terms for class action waiver and mandatory arbitration were unconscionable. The procedural flaw: the clause was a non-bargained standard form. The court said: "The district court held that the arbitration clause [was] not procedurally unconscionable …

because Douglas had meaningful alternative choices for ... service. Under New York law [this] forecloses any procedural unconscionability claim. However, [in *Nagrampa*] we noted that California "has rejected the notion that the availability ... of substitute. ... services *alone* can defeat a claim of procedural unconscionability." [A] contract can be procedurally unconscionable if a service provider has overwhelming bargaining power and presents a "take-it-or-leave-it" contract to a customer - even if the customer has a meaningful choice as to service providers."

But– why is that true? If the other party has a valid option that would allow it to choose another provider and it does not exercise that option, why is the result procedurally unconscionable? The court did not provide any answer to this.

Then in *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007), the Ninth Circuit held that an arbitration clause proposed by a law firm and assented to by an employee was unconscionable. It was procedurally unconscionable not because of any lack of actual notice, use of misleading language or terms, or lack of options for the employee. It was procedurally unconscionable because the law firm did not offer the employee the option of rejecting the clause and continuing as an employee with an unmodified contract. The law firm "merely" offered the employee a three month period of employment in which to decide and accept the term or find a new job.

This collection of cases is bad law that transfers making and amendment of contracts to courts, rather than parties acting in a marketplace. Procedural unconscionability is properly associated with lack of notice, deception, advantage-taking, and quasi fraud. As the doctrine itself states: "The principle is one of prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."

Under the Ninth Circuit view, however, procedural unconscionability morphs into mere use of non-negotiated standard forms and sets the stage for a court hostile to the use of arbitration and class action waivers (or other terms) in consumer and employee cases to invalidate otherwise valid agreements.

The marketplace or the federal legislature should make that choice, not a court.  The strange thing is that this attack on arbitration clauses and class action waivers comes when the market is in fact adjusting to give better rights in such clauses to consumers. For example, the AT&T contract that is associated with the Apple iphone products provides that arbitration is mandatory, but that AT&T will pay attorney and other costs for non-frivolous disputes, even if the complainant loses. Markets do adjust unless courts deploy unilateral preclusive power to cut them off.