1  DANA N. LEVITT, PC (CA Bar No. 77180)
   CHARLES E. WEIR (CA Bar No. 211091)
2  JASON D. STRABO (CA Bar No. 246426)
   McDERMOTT WILL & EMERY LLP
3  2049 Century Park East, Suite 3800
   Los Angeles, CA 90067-3218
4  Telephone:    310.277.4110
   Facsimile:    310.277.4730
5  dlevitt@mwe.com
   cweir@mwe.com
6  jstrabo@mwe.com

7  Attorneys for Defendant
   THE THOMAS KINKADE COMPANY
8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12

13  DAVID KAYNE, an individual citizen of      CASE NO.  C 07-4721 (SI)
    Georgia,
14                                             **DEFENDANT THE THOMAS KINKADE
                 Plaintiff,                    COMPANY'S NOTICE OF MOTION AND
15                                             MOTION FOR SANCTIONS PURSUANT
          v.                                   TO F.R.C.P. RULE 11; MEMORANDUM OF
16                                             POINTS AND AUTHORITIES IN SUPPORT
    THE THOMAS KINKADE COMPANY,                THEREOF; AND DECLARATION OF
17  formerly known as MEDIA ARTS               CHARLES E. WEIR**
    GROUP, INC., a Delaware Corporation,,
18                                             **DATE:        March 21, 2008**
                 Defendant.                    **TIME:        9:00 a.m.**
19                                             **JUDGE:       Hon. Susan Illston**
                                               **DEPT.:       10, 19th Floor**
20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 21, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Susan Illston, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff The Thomas Kinkade Company ("TKC") will and hereby does move, pursuant to Federal Rule of Civil Procedure 11 for an order granting sanctions against Plaintiff David Kayne and his counsel.

This Motion is, and will be, based on the following grounds: Kayne's claims are all barred by res judicata. Kayne previously sought and was denied the same relief he seeks here, in a prior action he commenced against TKC in the Northern District of Georgia. Further, Kayne's claims are meritless. Kayne bases his claims for violation of Section 17200 and his unconscionability theory on allegations that TKC failed to comply with certain requirements of California Franchise Investment Law and Federal Trade Commission regulations applicable to franchisors. Kayne's claims that TKC violated the California Franchise Investment Law are barred by collateral estoppel. This issue was litigated by the parties and rejected by an arbitration panel. Kayne's attempts to bring this action on such bases are without merit and warrant the imposition of sanctions.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Charles E. Weir in Support of The Thomas Kinkade Company's Motion for Sanctions Pursuant to F.R.C.P. Rule 11, the pleadings and record on file in this action, and such oral argument as may be presented at the hearing on this Motion.

Dated: November 26, 2007

McDERMOTT WILL & EMERY LLP
DANA N. LEVITT, PC
CHARLES E. WEIR
JASON D. STRABO


By:_____/s/_____
        Charles E. Weir
        Attorneys for Defendant
        THE THOMAS KINKADE COMPANY

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS ..................................................................................... 4

    A.   Background of the Parties ............................................................................ 4

    B.   The Parties' Contractual Relationship ........................................................ 4

        1.   The Dealer Agreements ................................................................... 4

        2.   The Credit Agreements .................................................................... 4

    C.   Kayne and Kayne Galleries Default on Their Obligations to TKC .............. 5

    D.   History of Disputes Between Kayne and TKC ............................................ 5

        1.   The San Francisco Arbitration ........................................................ 5

        2.   Kayne Begins a Campaign Against TKC and its Dealers to Pressure TKC into Settlement .......................................................... 7

        3.   The Arbitration Award Against Kayne Galleries is Confirmed ................. 8

        4.   TKC Initiates Arbitration Proceedings Under the Credit Agreement ......... 9

        5.   Kayne Seeks to Enjoin the Arbitration Under the Credit Agreement ......... 9

        6.   Pursuant to the District Court's Order TKC Proceeds with the Arbitration ..................................................................................... 10

    E.   Kayne's Allegations in this Action ............................................................ 11

III. KAYNE AND HIS COUNSEL SHOULD BE SANCTIONED ............................. 12

    A.   Kayne's Claims Are Plainly Barred by Res Judicata ................................ 14

        1.   Kayne's Attempt to Distinguish the Subject Matter of His Georgia Action and This Action is Absurd .................................................. 16

        2.   The Timing of Nagrampa Does Not Help Kayne ................................. 18

    B.   Kayne's Claims Are Barred by Collateral Estoppel .................................. 20

IV.  CONCLUSION ................................................................................................... 21

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4

*Animals v. Lujan,*
    962 F.2d 1391 (9th Cir. 1992) ........................................................................ 20

5

*Baker v. Gold Seal Liquors, Inc.,*
    417 U.S. 467 (1974) .......................................................................................... 14

6

7

*Brown v. Felsen,*
    442 U.S. 127 (1979) ...................................................................................14, 17

8

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006) .......................................................................................... 18

9

10

*Buster v. Greisen,*
    104 F.3d 1186 (9th Cir. 1997) ........................................................................ 12

11

*C.D. Anderson & Co. v. Lemos,*
    832 F.2d 1097 (9th Cir. 1987) ........................................................................ 14

12

13

*Chestnutt v. Horizon Air Industrial, Inc.,*
    1990 U.S. Dist. LEXIS 15083 (E.D. Wash. May 16, 1990) ........................... 13

14

*Clark v. Bear Sterns & Co., Inc.,*
    966 F.2d 1318 (9th Cir. 1992) ........................................................................ 20

15

16

*Clifton v. Attorney General of State of California,*
    997 F.2d 660 (9th Cir. 1993) .......................................................................... 18

17

*Conn v. Borjorquez,*
    967 F.2d 1418 (9th Cir. 1992) ........................................................................ 12

18

19

*Damiani v. Adams,*
    657 F. Supp. 1409 (S.D. Cal. 1987) ............................................................... 13

20

*Doctor's Associates, Inc. v. Casarotto,*
    517 U.S. 681 (1996) .......................................................................................... 19

21

22

*Federated Department Stores, Inc. v. Moitie,*
    452 U.S. 394 (1981) .......................................................................................... 18

23

*G&R Moojestic Treats Inc. v. MaggieMoo's International, LLC,*
    2004 U.S. Dist. LEXIS 8806 (S.D.N.Y. May 19, 2004) .................................. 20

24

25

*G & T Terminal Packaging Co., Inc. v. Consolidated Rail Corp.,*
    719 F. Supp. 153 (S.D.N.Y. 1989) ................................................................... 13

26

*Grantham v. U.S., Case No. SA CV89-755 AHS(RWR),*
    1990 U.S. Dist. LEXIS 11568 (C.D. Cal. Apr. 20, 1990) ............................... 13

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

Page

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005) ................................................................ 12

*Huettig & Schromm, Inc. v. Landscape Contractors Council*,
   790 F.2d 1421 (9th Cir. 1986) .............................................................. 12

*In re International Nutronics, Inc.*,
   28 F.3d 965 (9th Cir. 1994) ..........................................................14, 17

*International Union of Operating Eng'rs, v. Karr*,
   994 F.2d 1426 (9th Cir. 1993) .............................................................. 14

*Luben Industries, Inc. v. United States*,
   707 F.2d 1037 (9th Cir. 1983) .............................................................. 20

*Nagrampa v. Mailcoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) .....................................................17, 18, 19

*Offshore Sportswear, Inc. v. Vuarnet International, B.V.*,
   114 F.3d 848 (9th Cir. 1997) .........................................................20, 21

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
   388 U.S. 395 (1967) .............................................................................. 18

*Surface v. Commerce Bank of Hutchinson*,
   1990 WL 129218 (D. Kan. Aug. 17, 1990) .......................................... 13

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) .............................................................. 12

*West Coast Theater Corp. v. City of Portland*,
   897 F.2d 1519 (9th Cir. 1990) .......................................................12, 21

**STATE CASES**

*A & M Produce Co. v. FMC Corp.*,
   135 Cal. App. 3d 473 (1982) ............................................................... 19

*Boyce v. Fisk*,
   110 Cal. 107 (1895).............................................................................. 19

**FEDERAL STATUTES**

16 C.F.R. § 436............................................................................................ 20

Fed. R. Civ. P. 12(b)(6)..........................................................................5, 6, 8

Fed .R. Civ. P. 11.................................................................................1, 4, 12

Fed. R. Civ. P. 11(b)(1)(2) ......................................................................... 12

DEFENDANT'S MOTION FOR SANCTIONS      - iii -      (No. 07-4721 (SI))

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

**STATE STATUTES**

4

Cal. Bus. & Prof. Code § 17200.............................................................................2, 11

5

Cal. Corp. Code § 31300................................................................................20, 21

6

Cal. Corp. Code § 31303..................................................................................... 20

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1    Defendant The Thomas Kinkade Company ("TKC") hereby moves, pursuant to Federal

2    Rule of Civil Procedure 11, for sanctions against plaintiff David Kayne ("Kayne") and his

3    counsel.

4    **I.    <u>INTRODUCTION</u>**

5    Kayne's current complaint is simply one more cynical move in a long campaign to game

6    the legal system and to avoid his growing debts to TKC, debts which he and his company, Kayne

7    Art Galleries ("Kayne Galleries") were ordered to pay to TKC by a three Judge AAA panel in San

8    Francisco over four years ago (the "San Francisco Arbitration"). Along the way, without regard

9    to the basic dictates of integrity, Kayne has repeatedly contradicted himself in case after case and

10   said whatever appears to be necessary to save to his skin in the circumstances. Positions

11   aggressively fought for by Kayne in one forum have been quickly set aside in favor of the exact

12   opposite argument in another forum. Since 2003, Kayne's guiding principle in litigation with

13   TKC has been raw expediency. This latest pleading, however, is beyond the pale. It lacks all

14   merit and is such an egregious abuse of the legal system that sanctions must be awarded.

15   In this action, Kayne seeks to enjoin an AAA arbitration currently pending before

16   Pepperdine University Law School Professor Jay McCauley (the "McCauley Arbitration") and

17   yet, he has already litigated and lost the same issue before a United States District Court in

18   Georgia. He sued TKC in the Northern District of Georgia in August of 2006 (the "Georgia

19   Action") and sought a declaratory judgment that the same arbitration clause at issue in the

20   McCauley Arbitration is invalid and unenforceable and to enjoin the McCauley Arbitration. On

21   March 29, 2007, Judge Charles Pannell rejected Kayne's contentions in the Georgia Action and

22   ordered the parties to arbitration. On October 3, 2007, the Eleventh Circuit confirmed Judge

23   Pannell's order. Nevertheless, Kayne brings this current action seeking the same relief he sought

24   in Georgia. This is simply manipulation of the system. Kayne cannot be allowed to pursue the

25   same relief in court after court until he finally secures a favorable ruling. Kayne's suit is plainly

26   barred by the principles of res judicata and Kayne and his counsel should be harshly sanctioned

27   for this latest and most egregious abuse of the legal system.

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANT'S MOTION FOR SANCTIONS    1    (No. 07-4721 (SI))

Moreover, not content simply to pursue again and again relief already denied by one federal court, the vast majority of the allegations contained in the current Complaint were specifically litigated and rejected in the San Francisco Arbitration. TKC initiated the San Francisco Arbitration against Kayne Galleries and Kayne personally to collect on outstanding debts of approximately $600,000. Defending against TKC's collection action, Kayne asserted a litany of counter-claims and defenses. Among other claims and defenses, Kayne argued (1) that he was fraudulently induced to enter the Dealer Agreements on behalf of Kayne Galleries; (2) that TKC breached its obligations under the Dealer Agreements with Kayne Galleries; and (3) that TKC violated Federal and California franchise laws.

These claims were rejected in the San Francisco Arbitration and that rejection was subsequently confirmed by Judge Illston of this District. Kayne nevertheless brings the same claims again in this latest Complaint. Indeed, in support of his spurious claim for violation of the California Business & Professions Code § 17200, Kayne relies on the same failed franchise theories specifically rejected in the San Francisco Arbitration, namely that TKC failed to file an offering circular and committed other disclosure violations under California and Federal law. Thus, Kayne both thumbs his nose at the ruling of a federal judge in Georgia and, at the same time, attempts to re-litigate issues that were lost in the San Francisco Arbitration and subsequently confirmed by a different federal judge in this District.

Nothing demonstrates Kayne's rank opportunism so well as the numerous assertions in the current Complaint that flatly contradict assertions made to other courts or in other AAA proceedings. As examples only, in the Georgia Action, Kayne steadfastly maintained that the arbitration clause contained in the Credit Application and Personal Guaranty (the Credit Application and the Personal Guaranty will hereafter be referred to as the "Credit Application") executed in favor of TKC by Kayne on October 2, 2001 was governed by Georgia law. Why? He asserted that it was governed by Georgia law because he believed incorrectly that the Georgia Statute of Frauds would be beneficial to his case. Now, despite vehemently claiming in the Georgia Action that Georgia law applies to all questions regarding the enforceability of the Credit Agreement, he now argues to this Court that the California Unfair Competition Statute and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

California's unconscionability laws prevent enforcement of the arbitration clause in the Credit Agreement.[1]

As another example, in prior cases, Kayne claimed he could have no personal liability under the Dealer Agreements with TKC because Kayne Galleries alone was the signatory to the Dealer Agreements containing the arbitration clauses pursuant to which the San Francisco Arbitration was initiated. Indeed, Kayne was ultimately able to convince Judge Illston that the Panel in the San Francisco Arbitration was wrong to find him personally liable for the debts of Kayne Galleries only because he argued that he was not individually a party to the Dealer Agreements. Now, in a blatant contradiction of his earlier position, he asserts that those same Dealer Agreements somehow entitle him personally to the protection of the franchise laws. Why? He is now asserting that he is a franchisee (and therefore, by implication, a party to the Dealer Agreements) because it has suddenly become expedient for him to do so.

As a final example, in the Georgia Action, Kayne urged Judge Parnell to act promptly and enjoin the McCauley Arbitration because, he argued, the McCauley Arbitration was governed by the AAA's expedited rules. Kayne claimed that because the expedited rules were in force, the McCauley Arbitration could well conclude before Judge Pannell could act in the Georgia Action in the normal course. Put another way, his request to Judge Pannell for an injunction was premised on the assumption that the expedited rules were lawful and would compel prompt commencement of the arbitration. Now, he claims the expedited rules are unlawful and that the McCauley Arbitration must, therefore, be stopped. Why? The answer is obvious. He now maintains the expedited rules are unlawful because he lost his claims in the Georgia Action. The

---

[1] Similarly, in recent correspondence to the AAA concerning the appointment of an arbitrator for the McCauley Arbitration, Kayne argued that Georgia law must be applied to the arbitration. In an e-mail dated May 11, 2007, Kayne's lawyer wrote the following: "Further as per our phone call yesterday, we reserve the right to make further objections but we find trial court judges (retired or otherwise) and practitioners objectionable. Full time law professors with substantial years of full-time professorial experience in appropriate areas of federal law, conflicts of laws, Georgia Law (which is the controlling applicable law in this matter), and contract law are the kinds of persons appropriate for this matter. Someone who does not have a bias towards California rules, laws, and procedures whether such bias is by experience and training being only in or substantially in California courts and California laws or otherwise." (emphasis added.) Declaration of Charles E. Weir in Support of TKC's Motion for Sanctions (the "Weir Rule 11 Decl.") Ex. 6, p. 15.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    list goes on and on, but enough is finally enough.  This cynical manipulation of the legal system

2    by Kayne and his counsel must be punished and punished harshly.

3    **II.     STATEMENT OF FACTS[2]**

4        **A.     Background of the Parties**

5        Thomas Kinkade is a world renowned artist.  TKC produces, markets and distributes Mr.

6    Kinkade's artwork through various distribution channels.  One of these distribution channels is

7    known as the "Thomas Kinkade Signature Gallery Program."  Complaint ¶ 11.

8        Kayne is the owner and President of Kayne Galleries.  Kayne and Kayne Galleries owned

9    and operated a number of Signature Galleries in the Atlanta area.  Kayne opened his first

10   Signature Gallery in 1998 and his last in 2001.  *Id.* ¶ 9.  While no longer affiliated with TKC,

11   Kayne continues to operate at least one gallery in the Atlanta area.  The gallery sells the works of

12   various artists.

13       **B.     The Parties' Contractual Relationship**

14           1.     The Dealer Agreements

15       TKC, Kayne and Kayne Galleries entered into numerous agreements.  Included in these

16   various agreements were seven different Signature Gallery Dealer Agreements which authorized

17   Kayne Galleries to open and operate the Kinkade galleries (the "Dealer Agreements").  *Id.* ¶ 13.

18           2.     The Credit Agreements

19       TKC, Kayne and Kayne Galleries entered into two credit agreements.  The first was

20   between Kayne personally and TKC and was dated April 17, 1998.  The second credit agreement

21   is the October 2001 Credit Agreement that is the subject of this case.  Contrary to Kayne's absurd

22   "contract of adhesion" argument, TKC would prefer not to act as a banker for its dealers.

23   However, as an accommodation, TKC permitted its dealers, including Kayne, to make purchases

24   on credit.  In order to determine the credit worthiness of its dealers TKC required them to execute

25   credit applications.  Based on the information in a given credit application, TKC would determine

---

[2]  To ensure compliance with the Rule 11 safe harbor requirements, TKC felt it necessary to include a full set of background facts.  Unfortunately, this makes the factual background largely duplicative of the factual background contained in TKC's Motion to Dismiss.  For the same reason, some arguments contained hereing are also duplicative of arguments in the Motion to Dismiss.  TKC apologizes for the repetition.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   how much credit it was willing to extend.  In October 2001, Kayne signed and returned an

2   application for credit for Kayne Galleries and the Personal Guaranty.  *Id.* ¶ 31.  The Personal

3   Guaranty made Kayne personally liable for the debts of Kayne Galleries.  Thereafter, TKC

4   extended some $600,000 in credit to Kayne Galleries.  Kayne has maintained in the Georgia

5   Action (unsuccessfully) and again pleads in this case, that while he agreed to the terms of the

6   Credit Agreement and Personal Guaranty, TKC (despite granting Kayne Galleries $600,000 in

7   credit) never agreed to the terms.  Complaint ¶ 32; Request for Judicial Notice and Declaration of

8   Charles E. Weir in Support of Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)

9   (hereinafter, "Weir Motion to Dismiss Decl.") Ex. 12, p. 182-183.  Accordingly, Kayne claims

10  that he does not have to pay TKC.  As discussed below, this contention was rejected by Judge

11  Pannell in the Georgia Action.  Judge Pannell found that the Credit Agreement and Personal

12  Guaranty was formed and that the arbitration provision was valid and binding.  This order was

13  later affirmed by the Eleventh Circuit.

**C.    Kayne and Kayne Galleries Default on Their Obligations to TKC**

15  In late 2002, Kayne Galleries and Kayne were delinquent in their payments to TKC.

16  Because of these delinquencies, TKC terminated the contracts with Kayne and Kayne Galleries

17  and initiated the San Francisco Arbitration.  Complaint ¶¶ 34-35.

**D.    History of Disputes Between Kayne and TKC**

**1.    The San Francisco Arbitration**

20  In late 2002, TKC initiated the San Francisco Arbitration against Kayne and Kayne

21  Galleries to recover approximately $600,000.  *Id.* ¶ 35.  Kayne Galleries counterclaimed in the

22  arbitration, seeking millions of dollars in damages based on multiple causes of action, including

23  alleged breaches of contract, fraud and violations of franchise law.  Weir Motion to Dismiss Decl.

24  Exs. 1, 2, p. 11-12, 19-44.  The franchise law claims are particularly relevant here as Kayne bases

25  the current Section 17200 claim and unconscionability theory on alleged violations of franchise

26  law.  The counterclaim in the San Francisco Arbitration alleged that "Media Arts[3] violated the

27  California Franchise Investment law in entering the franchise agreement with [Kayne Galleries]."

28  _____
[3]  TKC was formerly known as Media Arts.

1   Weir Motion to Dismiss Decl. Ex. 1, p. 12, ¶ 39.  Further, TKC was specifically alleged to have

2   violated the Federal Trade Commission Act and the Code of Federal Regulations.  *Id.* at ¶¶ 29, 34.

3   Kayne argued that the dealer agreements were actually franchise agreements.  Kayne's opening

4   brief contains the following statements:

5       "Media Arts is likely to vigorously contest its status as a franchisor, however if it walks

6       like a duck, quacks like a duck, swims like a duck, and meets the legal definition of a

7       duck, it's a duck.

8                       *              *              *

9       The dealer agreements at issue here are actually franchise agreements, and the Kayne

10      galleries are indeed franchises under those agreements."

11  Weir Motion to Dismiss Decl. Ex. 2, p. 26-27.

12      Kayne went on to argue in the San Francisco arbitration that "it is undisputed that [TKC]

13  did not register as a franchise and that [TKC] did not provide franchise disclosures to Counter-

14  claimants.  Therefore, [TKC] is liable to Counter-claimants for damages in connection with the

15  failure to disclose as well as in connection with the misrepresentation made to Counter-claimants

16  in the course of selling the franchise to counterclaimants."  *Id.* at p. 29.  In this case, Kayne seeks

17  injunctive relief based upon the identical "failure to disclose" and "failure to register" theories.

18  He makes the same argument here that he made in the San Francisco Arbitration

19      On August 27, 2004 the majority of the Panel in the San Francisco Arbitration rejected all

20  of Kayne's counterclaims.  The Panel's award provided as follows:

21      7.  Respondent's 39 paragraph counterclaim contains some 16 major factual conclusions,

22      all of which were vigorously contested in this arbitration, and it contains at least as many

23      separate causes of action, including breach of the covenant of good faith and fair dealing,

24      unfair competition, anti-trust, RICO, Federal Trade Commission Rules & Regulations,

25      illegal termination, tortuous [sic] interference with business relations, 'tortuous

26      interference with business expectancy-inspective economic advantage (sic)' fraudulent

27      disclosure, price discrimination, etc.

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1    8.   By the close of evidence Respondent's causes of action had been pared to six: (1) the

2    dealer agreement is unconscionable (so its provisions barring consequential and punitive

3    damages is void); (2) Sherman Anti-Trust Act & Clayton Act; (3) Unfair Trade Practices

4    Act; (4) Interference with Prospective Economic Advantage; (5) Fraud; and (6) California

5    franchise [sic] Act.

6    **9.   Respondent has not proven by a preponderance of evidence the elements of even**

7    **one of these causes of action.  For example, absolutely no evidence was introduced**

8    **concerning what disclosures Claimant failed to make in violation of the California**

9    **Franchise Act…**

10   (emphasis added) Weir Motion to Dismiss Decl. Ex. 3; p. 50.

11   In addition to rejecting all of Kayne's counterclaims, the three-judge arbitration panel

12   awarded TKC $588,555 for art that was ordered by Kayne Galleries and delivered by TKC but

13   never paid for.  The arbitration panel further found that the Personal Guaranty contained in the

14   Credit Agreement was binding and enforceable on Kayne and that he was personally liable for the

15   debts of Kayne Galleries.  Indeed, the Panel specifically noted in its "Reasons for Award" that

16   Kayne testified that he signed the personal guarantee provisions and that he "'now' understands

17   his obligation under those provisions."  Weir Motion to Dismiss Decl. Ex. 3; p. 50.

18   2.   <u>Kayne Begins a Campaign Against TKC and its Dealers to Pressure TKC into Settlement</u>[4]

19

20   Rather than pay his established debts to TKC, following the arbitration ruling, Kayne

21   launched a campaign of threats to pressure TKC into a settlement.  On October 28, 2004, Kayne

22   put his plan into action by sending a lengthy e-mail to certain TKC Signature Dealers.  The e-mail

23   threatened that if TKC did not settle with Kayne he would take various actions that would "have

24   severe adverse financial consequences for the members of SDA, other TK SIGs, and TK itself…"

---

[4]  TKC includes this section as background in response to Kayne's discussion of prior litigation between the parties referred to as "Kayne II" and "Kayne III" in the current Complaint.  While neither case has anything to do with the claims Kayne brings in this case and should be stricken, the true facts surrounding the genesis of those actions shed important light on the lengths Kayne has gone to avoid his debts.  Accordingly, TKC includes this short section to rebut Kayne's erroneous allegations regarding the timing of the two actions and his ridiculous insinuation that he is somehow being victimized by TKC.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1  Weir Rule 11 Decl. Ex. 1.  Kayne further threatened to make false and disparaging comments

2  about Mr. Kinkade and about his art.  Kayne threatened a consumer class action.[5]  He also

3  threatened to ruin special events held by Kinkade dealers.  *Id.*

4      Kayne made good on his threats and it led to what Kayne refers to as "Kayne II" and

5  "Kayne III" in his Complaint.  "Kayne II" was a case of blatant copyright infringement.  Without

6  permission, Kayne hired artists to "highlight" Kinkade paintings.  The conduct in "Kayne III" was

7  even more egregious.  Kayne misappropriated Mr. Kinkade's name and likeness on a

8  "liquidation" website.  The website contained disparaging comments about Mr. Kinkade's

9  painting techniques.  Finally, Kayne hired a billboard truck to drive in the parking lots

10  surrounding various Kinkade events.  The billboards used Kinkade trademarks and referred

11  Kinkade customers to Kayne's disparaging "liquidation" website.  Both cases settled with Kayne

12  agreeing never again to engage in the same conduct.  Weir Rule 11 Decl. ¶ 9.

### 3.    The Arbitration Award Against Kayne Galleries is Confirmed

14      After securing its arbitration award in the San Francisco Arbitration against Kayne and

15  Kayne Galleries, TKC moved to confirm the award in the Northern District of California.

16  Complaint ¶ 37.  In response, Kayne moved to vacate the award against him as an individual on

17  the ground that he was not a party to the Dealer Agreements that contained the arbitration clauses

18  pursuant to which the San Francisco Arbitration was initiated.  *Id.*  Specifically, Kayne argued that

19  disputes under the Credit Agreement and Personal Guaranty had to be arbitrated under the AAA

20  expedited rules, before a single arbitrator, in Santa Clara County.  Weir Motion to Dismiss Decl.

21  Ex. 6, pp. 75-77.  The San Francisco Arbitration initiated under the Dealer Agreements on the

22  other hand, involved a lengthy and full evidentiary hearing before a three-judge panel.  The

23  District Court confirmed the award against Kayne Galleries, but agreed with Kayne with respect

24  to the Personal Guaranty and vacated the award against him personally.  Weir Motion to Dismiss

25  _____

26  [5]  In his e-mail Kayne made the claim that TKC and its dealers were defrauding consumers and
    would eventually face liability for punitive damages for the failure to disclose that Mr. Kinkade
27  did not in fact create his own art.  Curiously, while Kayne was making this ludicrous allegation,
    he was also selling Kinkade art and still is to this day.  Obviously, Kayne never believed his own
28  lies.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Decl. Ex. 8; 87-90.  The District Court found that because the arbitration procedures called for in the Credit Agreement and Personal Guaranty were not followed, the San Francisco Arbitration Panel did not have the authority to hold him individually liable.[6]  *Id.* at 88.

### 4.    TKC Initiates Arbitration Proceedings Under the Credit Agreement

Following the District Court's order vacating the award against Kayne, on July 10, 2006 TKC initiated arbitration proceedings pursuant to the terms of the Credit Agreement and Personal Guaranty.  Complaint ¶ 42; Weir Motion to Dismiss Decl. Ex. 12, p. 185.  Unfortunately, Kayne's procedural shell game was just beginning.  Initially, Kayne responded by refusing to arbitrate, asserting in a letter to the AAA dated August 14, 2006, that there was no agreement to arbitrate and that Kayne never signed the Credit Agreement.  Weir Rule 11 Decl. Ex. 3.  When this letter to the AAA was being written, however, Kayne apparently had forgotten his testimony under oath in the San Francisco Arbitration as well as his declaration under penalty of perjury submitted to the Northern District of California.  In his testimony and in his Declaration <u>he admitted he signed the Credit Agreement</u>.  Weir Motion to Dismiss Decl. Ex. 7, p. 83.  Kayne's current counsel, Mr. Gary Britt, also made various threats against the AAA, TKC and TKC's counsel.  Specifically, he threatened to sue the AAA, TKC and TKC's counsel if they continued with the arbitration.  Weir Rule 11 Decl. Exs. 3, 4.  TKC's attorney rejected these threats and responded to the AAA that TKC would continue with the arbitration exactly on the terms set forth in the Credit Agreement and Personal Guaranty. Weir Rule 11 Decl. Ex. 5.

### 5.    Kayne Seeks to Enjoin the Arbitration Under the Credit Agreement

When his threats failed to intimidate TKC, Kayne filed the Georgia Action and sought to enjoin the McCauley Arbitration initiated pursuant to the Credit Agreement and Personal Guaranty.  TKC agreed to stay the McCauley Arbitration until the Georgia Action could be

___

[6] Once TKC initiated the arbitration at issue in this case under the expedited procedures called for in the Personal Guaranty, Kayne shifted course and now claims that he is entitled a full evidentiary hearing.  Kayne, however, had his full hearing and lost.  In an effort to avoid that loss, he argued to Judge Illston that his liability under the Personal Guaranty had to be determined pursuant to the arbitration procedures set forth in the Credit Agreement and Personal Guaranty.  TKC followed Kayne's suggestion and initiated an arbitration under the AAA's expedited rules, in Santa Clara County before a single arbitrator.  Kayne now claims that such procedures are unfair and he is entitled to a full hearing.  At some point, this procedural gamesmanship must stop.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    decided.  TKC filed a motion in the Georgia Action to compel arbitration on the grounds that the

2    Credit Agreement and Personal Guaranty (a document which Kayne admits he executed)

3    contained a valid and enforceable arbitration clause.  In response, Kayne asserted that the Credit

4    Agreement and Personal Guaranty and the arbitration provision were invalid and void.  Kayne

5    argued that the Credit Agreement and Personal Guaranty were: (1) not supported by consideration,

6    (2) were never accepted by TKC, and (3) were in violation of the Georgia Statute of Frauds.

7    Kayne also argued that the arbitration clause did not cover disputes relating to the Personal

8    Guaranty.  Complaint ¶ 43.

9         In support of his petition for injunctive relief Kayne argued that the Georgia court must act

10   quickly to enjoin the proceeding because of the AAA's expedited rules.  Specifically, Kayne

11   alleged that "The American Arbitration Association's expedited rules allow for only one arbitrator

12   and do not allow for any hearing requiring witness production….As a decision may be reached by

13   the arbitrator at anytime, Kayne will suffer irreparable and immediate harm if Defendant is

14   allowed to proceed with this arbitration prior to this Court's determination of the arbitrability of

15   this case."  Weir Motion to Dismiss Decl. Ex. 12, pp. 193-194.

16        On March 29, 2007 Judge Charles Pannell of the Northern District of Georgia rejected

17   each of Kayne's defenses to the enforcement of the arbitration clause and compelled the parties to

18   arbitration.  Kayne appealed Judge Pannell's ruling to the Eleventh Circuit.  Weir Motion to

19   Dismiss Decl. Ex. 13.

20             6.        Pursuant to the District Court's Order TKC Proceeds with the Arbitration

21        No stay of Judge Pannell's order was requested or entered.  Accordingly, on April 5, 2007,

22   TKC contacted the AAA and informed them that the arbitration should proceed.  Weir Rule 11

23   Decl. Ex. 5.  In response, Kayne again raised the same objections that were made to Judge

24   Pannell.  Kayne urged the AAA and the arbitrator to stay the arbitration in contravention of Judge

25   Pannell's Order.  Kayne's counsel also resumed his practice of threats against TKC and the AAA.

26   These included a profanity-laced tirade against TKC's counsel wrongfully accusing TKC's

27   counsel of unethical behavior.  Weir Rule 11 Decl. Ex. 7.  Fortunately, Professor McCauley[7],

28   _____
     [7]  Mr. McCauley was jointly selected by the parties to act as the arbitrator in the matter.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    properly concluded that he was required to comply with Judge Pannell's Order and he set the

2    matter for hearing consistent with the parties' arbitration agreement.  Weir Motion to Dismiss

3    Decl. Ex. 15.  This action followed.

### E.    Kayne's Allegations in this Action

5         While Kayne purports to bring "new" claims unrelated to the allegations he brought in

6    prior proceedings, he, in fact, seeks the same relief he sought in the Georgia Action.  Specifically,

7    he now seeks (as he did in the Georgia Action) a declaratory judgment that the arbitration clause

8    in the Credit Agreement and Personal Guaranty is not enforceable and that the arbitration initiated

9    by TKC on July 10, 2006 should be enjoined.  Complaint ¶¶ 54-71.

10        Kayne's Complaint contains a litany of irrelevant allegations almost all of which have

11   been found to be untrue in prior litigation between the parties.  When the false and irrelevant

12   allegations are stripped away, Kayne's actual claims for relief are based on two very thin theories.

13   The first is that the arbitration clause is unconscionable because it incorporates the AAA's

14   expedited procedures and requires that evidence be submitted to the arbitrator in written form as

15   opposed to live witnesses.  The second theory is that TKC violated California Business &

16   Professions Code § 17200 because it violated California and Federal franchise law by not

17   registering as a franchisor and not making required disclosures.  *Id.* ¶¶ 65-69.  While Kayne does

18   not actually bring a franchise law claim (because he cannot for reasons discussed herein and in

19   TKC's Motion to Dismiss), Kayne claims that TKC has committed an "unlawful" act in violation

20   of California Business & Professions Code § 17200.  Kayne claims that if TKC had not have

21   violated the franchise laws, it would have been required to disclose to Kayne in an "offering

22   circular" that the AAA's expedited rules apply to disputes and that, armed with the disclosure, he

23   never would have entered into the contract.  *Id.* ¶¶ 22, 29.  Thus, Kayne claims he is entitled to

24   declaratory relief and an injunction stopping the arbitration initiated on July 10, 2006.  While the

25   17200 claim fails for multiple reasons, it is most obviously a failure because it is premised on the

26   absurd notion that Kayne could not understand the all caps arbitration language in the two page

27   Credit Agreement and Personal Guaranty, but somehow would have understood the same

28   language if it had been placed in an "offering circular."  Fortunately, the Court will never have to

1   reach Kayne's highly contrived argument as the claims fail for many other reasons discussed in

2   this motion and in TKC's Motion to Dismiss filed on October 4, 2007.

3   **III.     KAYNE AND HIS COUNSEL SHOULD BE SANCTIONED**

4          Filing a pleading with the Court is a representation that "(1) it is not being presented for

5   any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the

6   cost of litigation and (2) the claims, defenses, and other legal contentions therein are warranted by

7   existing law or by the establishment of new law." Fed. R. Civ. P. 11(b)(1)(2). "Rule 11 requires

8   the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual

9   foundation, or is brought for an improper purpose." *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th

10  Cir. 1992). A "frivolous" filing is "both baseless and made without reasonable and competent

11  inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).  The Court

12  is required to apply an objective standard in determining if an attorney made a filing that was

13  frivolous or without a reasonable inquiry. *Id*.  When "a complaint is the primary focus of Rule 11

14  proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the

15  complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has

16  conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*,

17  425 F.3d 671, 676 (9th Cir.  2005).

18         Where, as here, a party knowingly brings claims that are precluded by the order of another

19  court, it shows both a lack of respect for the authority of the first court and a lack of respect for the

20  limited time and resources of the second court.  It is, in short, a double affront to the judicial

21  system that must be deterred by sanctions.  Indeed, courts routinely sanction parties and their

22  counsel where the claims are plainly barred by res judicata and collateral estoppel principals.

23  *Buster v. Greisen*, 104 F.3d 1186, 1189-90 (9th Cir. 1997) (affirming order of sanctions against

24  plaintiff and his attorney where they sought to "relitigate issues that were conclusively resolved in

25  the prior suit," and ordering plaintiff to pay defendants' attorneys fees expended in moving to

26  dismiss the case); *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1527 (9th Cir.

27  1990) (affirming order of sanctions, including payment of defendants' attorneys fees, where

28  plaintiff "raise[d] issues precluded from relitigation by collateral estoppel"); *Huettig & Schromm,*

1    *Inc. v. Landscape Contractors Council*, 790 F.2d 1421, 1427 (9th Cir. 1986) (affirming order of

2    sanctions against plaintiff, including "the reasonable attorneys' fees incurred for the defense of the

3    action", where plaintiff's claims were found to be barred by collateral estoppel); *Grantham v.*

4    *U.S.*, Case No. SA CV89-755 AHS(RWR), 1990 U.S. Dist. LEXIS 11568, at *9-10 (C.D. Cal.

5    Apr. 20, 1990) (ordering plaintiff to pay defendant's attorneys' fees as sanctions in light of the

6    fact that "Plaintiff has essentially attempted to relitigate [a prior] action," resulting in the "waste

7    of precious judicial resources"); *Chestnutt v. Horizon Air Indus., Inc.*, Nos. CS-90-0058-JLQ, CS-

8    90-0043-JLQ, 1990 U.S. Dist. LEXIS 15083, at *7-11 (E.D. Wash. May 16, 1990) (imposing

9    sanctions where plaintiff's claims were barred by res judicata and collateral estoppel and,

10   accordingly, ordering plaintiff and his attorneys "to pay, jointly and severally, the defendants'

11   reasonable attorneys' fees in defending this action"); *Damiani v. Adams*, 657 F. Supp. 1409, 1418

12   (S.D. Cal. 1987) (imposing sanctions where plaintiff had "presented legal arguments already

13   aired, and rejected, in numerous other lawsuits."); *See also G & T Terminal Packaging Co., Inc. v.*

14   *Consolidated Rail Corp.*, 719 F. Supp. 153, 161 (S.D.N.Y. 1989) (granting Rule 11 sanctions

15   against plaintiffs where "a reasonable inquiry should have warned them that they could not

16   relitigate this claim given the familiar doctrines of res judicata and collateral estoppel"). *Surface*

17   *v. Commerce Bank of Hutchinson*, No. 85-4092-R, 1990 WL 129218, at *3 (D. Kan. Aug. 17,

18   1990) (holding that "plaintiffs' counsel's decision to continue to litigate this [federal] case after

19   the [issuance of a preclusive] state court decision requires that attorneys' fees be awarded under §

20   1927 . . . The decision to continue with litigation in this case can only be characterized as

21   unreasonable and vexatious in light of overwhelming authority indicating that plaintiffs' claims

22   were precluded by the doctrines of res judicata and collateral estoppel. The fact that defendants

23   were required to file a motion for summary judgment based on collateral estoppel and res judicata

24   is absurd.").

25       As discussed in detail below, Kayne's "new" claims are not "new" at all and they are

26   plainly barred by prior litigation. Sanctions should be issued against Kayne and his counsel for

27   the repeated attempt to game the system.

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **A.    Kayne's Claims Are Plainly Barred by Res Judicata**

2         The doctrine of res judicata is well-established.  It bars a party from bringing a claim if a

3    court has rendered final judgment on the merits of the claim in a previous action involving the

4    same parties or their privies.  *In re International Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994)

5    (doctrine of claim preclusion barred bankruptcy trustee from asserting antitrust claim where the

6    trustee could have raised antitrust issues at prior hearings).  "Res judicata bars all grounds for

7    recovery that could have been asserted, whether they were or not, in a prior suit between the same

8    parties on the same cause of action."  (internal citations omitted) *Id.*;  *Brown v. Felsen*, 442 U.S.

9    127, 131 (1979) ("[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that

10   were previously available to the parties, regardless of whether they were asserted or determined in

11   the prior action"); *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) (compulsory

12   counterclaim that was not asserted was barred in future actions); *International Union of Operating*

13   *Eng'rs, v. Karr*, 994 F. 2d 1426, 1430-1431 (9th Cir. 1993) (claim for underpayment of pension

14   funds was barred by prior action which sought to collect delinquent payments to funds); *C.D.*

15   *Anderson & Co. v. Lemos*, 832 F. 2d 1097, 1099-1100 (9th Cir. 1987) (where parties had a

16   contract requiring "any dispute…between the parties to be arbitrated," an arbitral award granted in

17   customer's claim for return of deposits and forgiveness of debt for certain stock transactions

18   precluded broker from subsequently asserting securities fraud and RICO claims arising from same

19   transaction).

20        The Ninth Circuit applies a four part test to determine whether successive suits involve the

21   same cause of action: (1) whether rights or interests established in the prior judgment would be

22   destroyed or impaired by prosecution of the second action; (2) whether substantially the same

23   evidence is presented in the two actions; (3) whether the two suits involve infringement of the

24   same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.  *In re*

25   *International Nutronics, Inc.*, 28 F.3d at 969.  Of these factors, the fourth factor, i.e., whether the

26   two suits arise out of the same transactional nucleus of facts it the most important.  *Id.*; *C.D.*

27   *Anderson & Co. v. Lemos*, 832 F. 2d at 1099-1100 (9th Cir. 1987).

28

1    Kayne's newest Complaint clearly meets each of these elements. In the Georgia Action,

2  Kayne sought an order declaring that the arbitration provision contained in the Credit Agreement

3  and Personal Guaranty was invalid and unenforceable. Weir Motion to Dismiss Decl. Exs. 10, 12,

4  pp. 124, 186-191. Kayne also asked the Georgia court to enjoin the arbitration commenced by

5  TKC on July 10, 2006 on the grounds that there was no valid agreement to arbitrate. Weir Motion

6  to Dismiss Decl. Ex. 12, pp. 193-194. In this action, Kayne asks the Court to declare that the

7  exact same arbitration provision is invalid and unenforceable – the exact relief that was denied in

8  the Georgia Action. Complaint ¶ 60. Kayne also asks this Court to enjoin the same arbitration

9  commenced by TKC on July 10, 2006 – again, the exact relief that was denied in the Georgia

10  Action. *Id.* at ¶¶ 64, 71.

11    Turning specifically to the elements, there is no doubt that each element is met and that

12  Kayne's current Complaint is patently frivolous. First, it is clear this second action would

13  "destroy the prior judgment." Kayne is simply asking this Court for the same relief that was

14  denied by the Georgia court when it compelled arbitration. Second, not only will "substantially

15  the same evidence" be presented, but the identical evidence will be presented. Both cases are and

16  were about the enforceability of the exact same agreement. Third, exactly the same rights are at

17  issue, namely whether Kayne must arbitrate with TKC pursuant to the arbitration provisions of the

18  Personal Guaranty. Finally, and again obviously, the two suits arise out of the same transactional

19  nucleus of facts. Each suit involves exactly the same agreement and seeks exactly the same relief.

20    Ironically, while the doctrine of res judicata obviously bars Kayne's current claims, there

21  are numerous instances in this case where Kayne asserts the exact opposite of what he asserted in

22  Georgia. Thus, not only does Kayne seek to undermine the policies associated with res judicata,

23  he would have this Court impose the unfair burden on TKC of having to defend two separate

24  actions in which Kayne takes diametrically opposite positions. Indeed, as the table below

25  illustrates, Kayne made a series of tactical decisions in the Georgia Action that are now

26  inconvenient to his current goals (inconvenient because he was unsuccessful in the Georgia

27  Action) and which he now simply disavows. Thus, because of this bad faith and gamesmanship,

28  the application of res judicata is particularly just.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

| California Action | Georgia Action |
|---|---|
| Asserts that California law applies to the interpretation of the contract because Kayne apparently prefers California's unconscionability rules.  Complaint, *en passim*.[8] | Asserted that California law does not apply, but that Georgia law applies because Kayne concluded that the Georgia Statute of Frauds worked to his advantage.  Weir Motion to Dismiss Decl. Ex. 10, pp. 128-130. |
| Asserts that the AAA's Expedited Rules do not prevent a hearing with witnesses because Kayne believes that it helps his unconscionability arguments.  Complaint ¶ 6. | Asserted that the AAA's Expedited Rules prevent witnesses from testifying because Kayne sought to establish the existence of exigent circumstances to support his request for a TRO.  Weir Motion to Dismiss Decl. Ex. 12, pp. 193-194.[9] |
| Asserts that the Dealer Agreements provide him as an individual with protections under the Franchise laws.  Complaint ¶ 16. | Asserted that he individually was not a party to the Dealer Agreements because it supported his effort to show failure of consideration.  Weir Motion to Dismiss Decl. Ex. 10, pp. 116-118. |

1. <u>Kayne's Attempt to Distinguish the Subject Matter of His Georgia Action and This Action is Absurd</u>

The conduct of Kayne and counsel is made only more egregious by the fact that Kayne and his counsel are clearly aware of the principals of res judicata.  Indeed, Kayne draws a totally meaningless distinction between the two actions and falsely claims he does not seek to relitigate the same issues.  Specifically, Kayne asserts:

> The Georgia district court and Eleventh Circuit proceedings involve the question whether there was or was not an agreement to arbitrate between TKC and David Kayne.  The issues Mr. Kayne is presenting to this Court are different, and did not properly arise until it was

[8]  While Kayne is correct that California law applies to this case, it cannot be overlooked that he made the tactical decision to disavow California law in favor of Georgia law when he believed it worked to his advantage.

[9]  Kayne was correct in Georgia.  The Expedited Rules do not permit witnesses.  *See* Section III.C.1.a, infra.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

2

3

4

first determined that there was, in fact, an agreement between TKC and Mr. Kayne to arbitrate. The issue now presented to this Court is whether, assuming there was an agreement to arbitrate under the provisions of Exhibit "A", such an agreement is unconscionable and therefore unenforceable under the standards first clearly articulated by the Ninth Circuit's *en banc* decision in *Nagrampa v. Mailcoups, Inc.*, 469 F. 3d 1257 (9th Cir. 2006).

Complaint ¶ 46.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

This purported "distinction" is fanciful and absurd, both from a legal and factual standpoint. Essentially, Kayne is arguing that he can maintain two actions in two different district courts regarding the enforceability of the exact same agreement, if the first action deals only with the existence of the agreement while the second action purportedly deals with whether the same agreement is legally valid. This is plainly wrong. *Brown*, 442 U.S. at 131; *In re International Nutronics, Inc.*, 28 F.3d at 969 (barring "all grounds for recovery that could have been asserted, whether they were or not"). When Kayne sought an injunction and a declaration from the Georgia court that he did not have to arbitrate with TKC, he was obligated to bring all of his claims regarding the enforceability of the asserted arbitration agreement. Further, when TKC moved to compel arbitration Kayne was obligated to raise all of his defenses as to the enforcement of the arbitration agreement. *Id.* This plainly includes the claims brought here, i.e. that the arbitration provisions are unenforceable because they are unconscionable and violate the California Business and Professions Code. Having asserted and lost the Georgia Action that the arbitration agreement is unenforceable, the law is clear Kayne cannot then run to another district court seeking the same relief regarding the same contract.

21

22

23

24

25

26

27

Moreover, not only is Kayne's attempted distinction legally wrong, it is factually wrong as well. Kayne did, in fact, challenge the legal validity of the parties' contract in the Georgia Action. Kayne argued that the Personal Guaranty violated the Georgia Statute of Frauds, and thus even if an agreement had been formed, Kayne argued, it was not enforceable. Weir Motion to Dismiss Decl. Ex. 12, pp. 191-192. Thus, Kayne must really be arguing that he can bring successive challenges to the validity of an arbitration agreement in different courts. In Georgia, he challenged the agreement's validity on Statute of Frauds grounds; now, in California, he

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

challenges the agreement's validity on unconscionability grounds.  What is next?  A challenge in Texas that the arbitration agreement is invalid because it was procured by duress?

### 2.    The Timing of *Nagrampa* Does Not Help Kayne

Kayne's argues that he can maintain his current claims despite seeking the identical relief in Georgia, because *Nagrampa v. Mailcoups, Inc.*, 469 F. 3d 1257 (9th Cir. 2006) was decided after he presented his arguments in the Georgia Action.  This argument is empty and without merit for numerous reasons.  First, there is no exception to the application of res judicata in this circumstance.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (plaintiff in prior action was barred from pursuing subsequent action for same claim even though his co-plaintiffs in the prior action had successfully appealed the judgment); *Clifton v. Attorney General of State of California*, 997 F. 2d 660, 663 (9th Cir. 1993) (new statute permitting parole hearing every two years was not a sufficient change in circumstance to avoid claim preclusion effect of prior judgment).  A party is not allowed to relitigate his case in a new forum because the law changes after a judgment was issued.  *Id.*

Second, *Nagrampa* plainly did not make "new law" at all.  It applied California unconscionability rules to an arbitration clause pursuant to a Supreme Court precedent that is forty years old.  Indeed, even a superficial analysis of *Nagrampa* makes clear that there are no "new" legal principals.  *Nagrampa* simply applies the rule set out in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).  Specifically, if a party challenges the arbitration provisions in a contract it is a matter for the courts to decide; if, however, the challenge is to the validity of the agreement as a whole it is a matter for the arbitrator.  *Prima Paint Corp.*, 388 U.S. at 403-404.  This rule was reinforced recently by the Supreme Court in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006).  Kayne was fully aware of these decisions as he cited both of them to the District Court in Georgia in support of his challenge to the arbitration clause in the Credit Agreement and Personal Guaranty.  Moreover, as the *Nagrampa* court's own survey of the case law reveals, jurisdictions have dealt with this precise issue in the context of an unconscionability challenge and have determined that if the challenge is to the arbitration

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   clause itself, it is a matter for the courts. *Nagrampa*, 469 F.3d at 1271-1277. Indeed,

2   *Nagrampa* cites to Supreme Court precedent that is over ten years old stating "[i]t is well-

3   established that unconscionability is a generally applicable contract defense, which may

4   render an arbitration provision unenforceable. *Nagrampa*, 469 F.3d at 1280, citing

5   *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-687 (1996). Accordingly, to the

6   extent that Kayne is claiming that it is only with the *Nagrampa* case that he had the right

7   to challenge an arbitration clause on unconscionability grounds, Kayne's claim is false.

8       In addition, California courts have recognized the principal that contracts can be

9   void because they are "unconscionable" for over one hundred years. *Boyce v. Fisk*, 110

10  Cal. 107, 114 (1895) (discussing unconscionability as a defense to contract enforcement.)

11  Again, even a cursory review of *Nagrampa* would have revealed to Kayne and his

12  counsel that the *Nagrampa* court was applying long established California law regarding

13  unconscionability. *Nagrampa*, 469 F.3d at 1280, citing *A & M Produce Co. v. FMC*

14  *Corp.*, 135 Cal. App. 3d 473, 486 (1982). *Nagrampa* did not create new law.

15      Third, in an effort to make it appear that he could not have raised the

16  unconscionability issue in the Georgia Action, Kayne misrepresents the timing of the

17  *Nagrampa* decision in relation to the Georgia Action. Complaint ¶ 47. The *Nagrampa*

18  decision was filed December 4, 2006. Judge Pannell issued his order in the Georgia

19  Action on March 29, 2007. Kayne had nearly four months to bring the "new law" to

20  Judge Pannell's attention and he chose not to. Thus, even if there was a "new law"

21  exception to the res judicata rules (which there is not) and even if *Nagrampa* actually set

22  out "new law" (which it does not), Kayne had ample opportunity to raise the

23  "unconscionability argument" in the Northern District of Georgia. Kayne's "new law"

24  argument is frivolous.[10]

---

[10] The fact of the matter is that Kayne specifically selected Georgia as a forum for his claims and
made the tactical decision to assert that Georgia law governed the Credit Agreement and Personal
Guaranty. Kayne took this position because he believed that the Georgia Statute of Frauds gave
him a strong argument that the Personal Guaranty was unenforceable. Accordingly, because he
concluded that Georgia law was favorable on the Statute of Frauds issue, he could not assert that
California law applied and that the Georgia court should follow California's unconscionability
rules. Thus, *Nagrampa* was not raised in Georgia by Kayne simply because he could not have

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

### B.    Kayne's Claims Are Barred by Collateral Estoppel

As if the flaunting of Judge Pannell's order compelling arbitration was not enough, Kayne premises his Section 17200 claim and unconscionability theory on franchise law theories that are plainly barred by the doctrine of collateral estoppel.[11]  Kayne has already lost the claim that TKC violated the franchise laws.  He cannot maintain a new claim based on the same failed theory.

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Offshore Sportswear, Inc. v. Vuarnet International, B.V.,* 114 F.3d 848, 850 (9th Cir. 1997) (quoting *Clark v. Bear Sterns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir. 1992)).  "Collateral estoppel, . . . , generally applies when an issue finally decided in an earlier action is involved in a second action, and the parties involved in the second action are bound by the first decision." *Luben Industries, Inc. v. United States,* 707 F.2d 1037, 1039 (9th Cir. 1983).  In order to have issue preclusive effect, the following elements must be met: (1) the two proceedings must involve the same issue; (2) that issue must have been "actually litigated" and determined in the prior proceeding; (3) the determination of that issue must have been necessary to the prior ruling; and (4) the two proceedings must involve the same parties or their privies. *Animals v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992).

Each of these elements is present in this case.  In the San Francisco Arbitration, Kayne Galleries claimed that the Signature Dealers were actually franchisees and because TKC failed to register and file the requisite "offering circular" TKC had violated the California Franchise Act.  Weir Motion to Dismiss Decl. Ex. 2, pp. 26-29.  The California Franchise Act provides for strict liability for failing to register as required.  Cal. Corp. Code § 31300.  Accordingly, Kayne claimed

---

*Nagrampa* and the Georgia Statute of Frauds at the same time, in other words, a purely tactical decision.

[11]  Kayne has no franchise claims for numerous reasons.  First, the four year statute of limitations has run on any claims under the CFIL and Federal Trade Regulations do not have a private right of action.  Cal. Corp. Code § 31303; *G&R Moojestic Treats Inc. v. MaggieMoo's International, LLC*, 2004 U.S. Dist. LEXIS 8806, *28 (S.D.N.Y. May 19, 2004) (holding that "there is no private right of action to enforce the Disclosure Requirements of [16 C.F.R. § 436], or any other regulation promulgated under the Federal Trade Commission Act").  Second, it has been determined that Kayne Galleries, not Kayne, was the "franchisee" so a cause of action under the franchise laws was never Kayne's to bring in the first place.  Third, as discussed in more detail herein, his company did in fact bring the claim and lost.

DEFENDANT'S MOTION FOR SANCTIONS        - 20 -                    (No. 07-4721 (SI))

that the failure to register made TKC and its officers liable to Kayne. The San Francisco Arbitration panel flatly rejected the claim. Weir Motion to Dismiss Decl., Ex. 3, p. 50. The award was confirmed by Judge Illston of this district. Weir. Decl., Ex. 8. Kayne asserts exactly the same violation of the California Franchise Act in this case. Specifically, he asserts that the Signature Dealers business opportunity were franchises and that TKC failed to register and file the appropriate "offering circular." Complaint ¶¶ 15-21. It has already been decided that TKC did not violate the California Franchise Act in the manner alleged. Accordingly, such allegations cannot form the predicate to a violation of Section 17200 or unconscionability theory.

There can be no doubt that Kayne is estopped from reasserting the issue in this case as a basis for his 17200 claim and unconscionability theory. *Offshore Sportswear, Inc.*, 114 F.3d at 850. A minimal amount of inquiry into the issues decided in the First Arbitration and the law on relitigating the identical issue would have revealed to Kayne and his counsel that he was barred from basing his 17200 claim on this alleged violation of the franchise laws. Accordingly, sanctions are warranted for this additional reason. *West Coast Theater Corp.*, 897 F.2d at 1527.

## IV.    **CONCLUSION**

For the reasons stated above Kayne and his counsel should be sanctioned for filing the complaint. TKC requests that the court issue a sanction equal to the amount of attorneys fees[12] TKC was forced to expend to prepare this motion and dispose of Kayne's frivolous claims.

Dated: November 26, 2007

McDERMOTT WILL & EMERY LLP
DANA N. LEVITT, PC
CHARLES E. WEIR
JASON D. STRABO


By:_____/s/_____
    Charles E. Weir
    Attorneys for Defendant
    THE THOMAS KINKADE COMPANY

LAS99 1517579-8.074203.0021

_____
[12]  TKC will provide the Court with a memorandum of fees and costs upon request.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S MOTION FOR SANCTIONS       - 21 -                    (No. 07-4721 (SI))