IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID KAYNE, an individual citizen of Georgia,

    Plaintiff,

    v.

THE THOMAS KINKADE COMPANY, formerly known as MEDIA ART GROUP, INC., a Delaware Corporation,

    Defendant.
                                               /

Case No. C 07-4721-SI

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, AND DENYING DEFENDANT'S MOTION TO STRIKE**

Before the Court are defendant's motions to dismiss plaintiff's first amended complaint, and to strike portions thereof. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the December 18, 2007 hearing. Having considered the papers submitted, and for the reasons set forth below, the Court GRANTS defendant's motion to dismiss, and DENIES defendant's motion to strike because it is rendered moot by this order.

**BACKGROUND**

**I.     Procedural History**

This action is the latest in a history of legal maneuvers between plaintiff David Kayne, a Georgia citizen; Kayne's Georgia corporation, Kayne Art Galleries of Georgia, Inc. ("Kayne Galleries"); and defendant Thomas Kinkade Company ("TKC"), a Delaware corporation formerly known as Media Arts

Group, Inc. The dispute between the parties relates to three contracts: (1) a series of identical Dealer Agreements between TKC and Kayne Galleries executed in 1999 and 2000; (2) an Application for Credit between TKC and Kayne Galleries executed on October 2, 2001; and (3) a Personal Guaranty of the Application for Credit executed simultaneously by David Kayne in his individual capacity. Complaint ¶¶ 14 & Ex. A thereto. This action arises out of an arbitration agreement contained in the Application for Credit, and incorporated by reference into the Personal Guaranty. *See id.* This action was preceded by a history of actions that precipitated out of Kayne Galleries' failure to pay TKC according to the terms of the Dealer Agreements. Complaint ¶ 33. That history is summarized as follows:

***TKC v. Kayne I***: On December 10, 2002, TKC filed a demand for arbitration with the American Arbitration Association against Kayne Galleries, David Kayne, and Kayne's wife Tracy. Complaint ¶ 35. On August 27, 2004 the AAA panel issued an award in the amount of $631,634.86 in TKC's favor. Complaint ¶¶ 36-37. On September 29, 2004, TKC filed an action in this Court seeking to confirm the award in its entirety. Complaint ¶ 38; *see also Thomas Kinkade Co. v. Kayne et al.*, Case No. CV-04-MISC-0186-SI (N.D. Cal. April 4, 2005) (order confirming in part and vacating in part the arbitral award), *aff'd* 2007 WL 154430 (9th Cir. May 24, 2007). This Court vacated the arbitral award against David Kayne individually on the ground that he was not a party to the Dealer Agreement, and thus was not bound by the arbitration clause found therein. *See id.* This Court placed particular emphasis on Kayne's argument that "[i]f Kayne was bound to any arbitration, it was the arbitration proceedings under the Credit Application," which provided for a different arbitral procedure. No. CV-04-MISC-0186-SI at *4.[1]

***TKC v. Kayne IV***: On July 10, 2006, TKC filed a second demand for arbitration, this time against Mr. Kayne personally pursuant to the arbitration agreement referred to in the Application for

---

[1] ***TKC v. Kayne II***: On October 11, 2004, TKC filed a second action in this district for copyright infringement, which eventually settled. Complaint ¶ 40; *see also Thomas Kinkade Co. v. Kayne, et al.*, Case No. CV-04-0571 (N.D. Cal. May 15, 2006) (order dismissing pursuant to settlement agreement).
***TKC v. Kayne III***: In December of 2004, TKC filed a third action against Kayne for trademark infringement, which also settled. Complaint ¶ 41; *see also Thomas Kinkade Co. v. Kline, et al.*, Case No. C-04-10534 DDP (PJWx) (C.D. Cal. June 13, 2006) (order dismissing pursuant to settlement agreement).

Credit and Personal Guaranty executed by Mr. Kayne on October 2, 2001. Complaint ¶ 42. TKC seeks $554,605 in satisfaction of Kayne Galleries' outstanding debts to TKC. *Id.* In response, Kayne filed a lawsuit in U.S. District Court for the Northern District of Georgia seeking to invalidate the arbitration agreement on numerous grounds, all of which failed. Complaint ¶ 43; *see also Kayne v. Thomas Kinkade Co.*, Case No. 06-CV-2168-CAP (N.D. Ga. Mar. 29, 2007) (order granting defendant TKC's motion to compel arbitration), *aff'd*, Case No. 07-11983 (11th Cir. Oct. 3, 2007). After losing that case, plaintiff filed this suit in a second attempt to invalidate the arbitration agreement incorporated in his Personal Guaranty. Plaintiff originally moved for a preliminary injunction enjoining the arbitration proceeding. However, that motion was rendered moot when the parties participated in the arbitration on October 16, 2007. *See* Order Withdrawing Motion for TRO (Docket No. 41).

Now before the Court are defendant TKC's motions to dismiss plaintiff Kayne's amended complaint, and alternatively, to strike portions thereof.

## II.   The Arbitration Agreement

The Application for Credit contains the following arbitration agreement, which reads in full:

> DISPUTES: ANY DISPUTE OR CONTROVERSY ARISING FROM THIS AGREEMENT WILL BE RESOLVED BY ARBITRATION BY THE AMERICAN ARBITRATION ASSOCIATION AT SANTA CLARA COUNTY, CALIFORNIA. THE LANGUAGE OF THE ARBITRATION SHALL BE ENGLISH. THE NUMBER OF THE ARBITRATORS SHALL BE ONE.  THE PARTIES AGREE THE AMERICAN ARBITRATION ASSOCIATION'S EXPEDITED RULES SHALL APPLY AND THEY WAIVE ALL RIGHT TO ANY HEARING REQUIRING WITNESS PRODUCTION.  THE ARBITRATOR SHALL ISSUE AN AWARD BASED UPON THE WRITTEN DOCUMENTARY EVIDENCE SUPPLIED BY THE PARTIES.  THE ARBITRATOR'S AWARD SHALL BE BINDING AND FINAL. THE LOSING PARTY SHALL PAY ALL ARBITRATION EXPENSES, INCLUDING ALL ATTORNEY'S FEES.

The Personal Guaranty consists of one operative paragraph appearing on the same page as the arbitration agreement. The last sentence of that paragraph reads in full: "AS GUARANTOR, I AM ALSO BOUND BY THE ABOVE ARBITRATION CLAUSE." Plaintiff's signature appears twice on the document, once below the arbitration agreement, and once below the Personal Guaranty. The arbitration agreement and the Personal Guarantee both appear prominently on the second page of the two-page Application for Credit.

# LEGAL STANDARD

## I. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183, 104 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted).

## II. Motion to strike

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Because of the limited importance of pleadings in federal matters, motions to strike are generally disfavored. *See Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D.Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D.Cal. 2004). Where the motion involves background or historical material, it should not be granted unless the material is prejudicial to the opponent. *See LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D.Cal. 1992).

# DISCUSSION

## I. Plaintiff's claims are barred under the doctrine of res judcata

Plaintiff contends he does not seek to re-litigate any issue already presented to the courts in the Northern District of Georgia and the Eleventh Circuit. Plaintiff attempts to draw a very fine line: he contends that the issue there was whether an agreement to arbitrate *existed*, whereas here, the question is whether the agreement to arbitrate is *enforceable*. Plaintiff asserts that the issue of enforceability "did not properly arise until it was first determined that there was, in fact, an agreement between TKC and Mr. Kayne to arbitrate." Plaintiff also contends that a recent Ninth Circuit decision issued after plaintiff filed his Georgia action provided a new legal path for plaintiff to follow. Complaint ¶¶ 46-48; *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc) (holding that the district court erred by failing to analyze both procedural and substantive unconscionability on a sliding scale as required by California law where the moving party challenged the enforceability of the arbitration agreement).

As defendant correctly points out, the doctrine of res judicata "bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 939 (9th Cir. 1994); *see also Brown v. Felsen*, 442 U.S. 127, 131 (1979). Defendant argues that plaintiff's purported distinction is both factually and legally wrong. It is factually wrong because plaintiff did challenge both the existence and the enforceability of the arbitration agreement in the Georgia action. Specifically, plaintiff alleged that the arbitration agreement at issue here was unenforceable because it violated Georgia's statute of frauds. *See* Weir Decl. Ex. 12, ¶. 191-92. Defendant contends the distinction is legally incorrect as well because "[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior action." *Brown*, 442 U.S. at 131. Here, plaintiff's cause of action is the same as the one already litigated in Georgia, despite plaintiff's efforts to re-name it.

Plaintiff is simply incorrect that his defense of unconscionability did not properly arise until the arbitration agreement was deemed to exist. Plaintiff cites no authority for the proposition that a party must wait for a court to determine the existence of an agreement to arbitrate before that party may raise

5

the defense of unconscionability as to the agreement's enforceability. As the Ninth Circuit acknowledged in the case plaintiff relies on, "[i]t is well-established that unconscionability is a *generally applicable* contract defense, which may render an arbitration provision unenforceable." *Nagrampa*, 469 F.3d at 1280 (emphasis added). The unconscionabilty defense has been available under California law for more than one hundred years. *See Boyce v. Fisk*, 110 Cal. 107, 114 (1895) (discussing unconscionability as a defense to contract enforcement). Just because plaintiff chose not to raise that defense before the district court in Georgia does not mean he could not have done so.

Plaintiff is also incorrect to the extent he contends that *Nagrampa* somehow created a new legal avenue to relief in this case. Plaintiff does not clearly identify the change of law that *Nagrampa* is supposed to represent, but relies on that case for the proposition that "[w]hen the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision itself is invalid and unenforceable pursuant to 9 U.S.C. § 2 of the [Federal Arbitration Act]." *Nagrampa*, 469 F.3d at 1264. First, that has been the law for decades under *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967) (clarifying federal arbitration law regarding the doctrine of separability). The *Nagrampa* court stated it was seeking merely to "clarify" that point for the courts in the Ninth Circuit in light of a more recent U.S. Supreme Court decision, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). *See Nagrampa* at 1263-64 (citing *Buckeye* and *Prima Paint*).[2] In *Buckeye*, the Court held that where a party challenges the legality of a contract generally, "but not specifically its arbitration provisions," the challenge should be considered by an arbitrator, not a court. *Buckeye*, 546 U.S. at 446. Plaintiff relied on *Buckeye* in his briefs before the Georgia district court for that cases's corollary holding: the existence of an arbitration agreement is a question for the court, not the arbitrator, where the challenge is to the

---

[2]Moreover, *Nagrampa* was decided on December 4, 2006; the district court in Georgia did not issue its order compelling arbitration until March 29, 2007, giving plaintiff plenty of time to bring to that court's attention any potential change in Ninth Circuit law brought about by *Nagrampa*.

6

1  arbitration clause itself.[3]

2  Because *Buckeye* was the principal Supreme Court case the Ninth Circuit had in mind when it decided *Nagrampa*; because plaintiff relied heavily on *Buckeye* in its arguments before the Georgia district court; and because plaintiff admits his cause of action "challenges the legality of the arbitration provision itself," Plaintiff's Motion for a Temporary Restraining Order at 11, plaintiff clearly could have raised his unconscionability defense in the Georgia district court. Accordingly, the Court finds plaintiff's claim is barred under the doctrine of res judicata.

## II. Plaintiff's claims also fail on their merits

Plaintiff seeks declaratory and injunctive relief based on two theories: (a) the arbitration agreement is unenforceable because it is unconscionable; and (b) the arbitration agreement is unlawful because it violates California's Unfair Competition laws, codified in California's Business and Professions code sections 17200 *et. seq.* Even if plaintiff's claims were not barred under the doctrine of res judicata, they would still fail. Plaintiff's unconscionability claim is without merit, and his unfair competition claim has numerous infirmities, including a fatal statute of limitations barrier.

### A. The arbitration agreement is not unconscionable under California law

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 113 (2000). If the contract is adhesive, the Court must then determine whether "other factors are present which, under established legal rules . . . operate to render it unenforceable"; that is, whether the contract is unconscionable. *Id.* (internal citations and quotations marks omitted). Unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. *Id.* at 114 (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486-87 (Cal. Ct. App. 1982) (internal quotation marks omitted)). Both elements must be

---

[3] See Plaintiff's Brief in Support of Motion for Temporary Restraining Order at 11, *Kayne v. Kinkade IV, supra*; *see also* Plaintiff's Brief in Opposition to Motion to Compel Arbitration and Motion to Dismiss at 2, *Kayne v. Kinkade IV.*

7

present, although not necessarily to the same degree. *Armendariz*, 24 Cal. 4th at 114. Courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa." *Id.*

Here, the Application for Credit and the Personal Guaranty, contained in the same two-page document, were a contract of adhesion because they were "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 113 (defining "adhesion"). Accordingly, the Court must measure the procedural and substantive qualities of the arbitration agreement.

### 1.     **Procedural unconscionability**

To evaluate procedural unconscionability, the Court must examine how the parties negotiated their contract and "the circumstances of the parties at the time." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003). Courts typically search for signs of surprise and oppression when evaluating procedural unconscionability. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (Cal. Ct. App. 1997). Surprise refers to "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (internal citations and quotation marks omitted). Oppression springs "from an inequality of bargaining power [that] results in no real negotiation and an absence of meaningful choice." *Id.*

Here, all of plaintiff's assertions are contradicted by the evidence. For example, while plaintiff contends he was presented with the arbitration provision "embedded" in the Application for Credit, in reality, the Application for credit was a short two-page document, the first page of which was comprised entirely of a blank form to be completed by plaintiff, and the second page of which contained no more than five operative paragraphs. *See* Complaint Ex. A. The arbitration clause appearing near the top of the page can hardly be construed as "buried in a two page document," as plaintiff asserts. Motion for a Temporary Restraining Order at 14. Furthermore, plaintiff's contention that the arbitration clause "contains no clear indication or heading" is simply wrong. *Id.* The arbitration clause is the second operative paragraph of the document, and is clearly marked "DISPUTES". *See* Complaint Ex. A. While it may be true that defendant was in a somewhat stronger bargaining position, plaintiff was not an

8

1 entirely weak party: he and his company operated several galleries throughout Georgia. Furthermore, 2 plaintiff has not alleged that defendant was the only potential source of credit for his business, thus 3 depriving him of a meaningful choice of financing options. This case simply does not present the kind 4 of procedural unconscionability that California law seeks to remedy.

### 2.    Substantive unconscionability

The harsh, one-sided results that might indicate substantive unconscionability are also not present here. *See Armendariz*, 24 Cal. 4th at 114.

Plaintiff contends that the arbitration clause requires him to submit to the "expedited" rules of the American Arbitration Association, which require parties to waive their rights to witness production.[4] Plaintiff contends that these rules were intended only for claims where less than $10,000 is in dispute. Plaintiff fails to note that the rules themselves state that they were also intended "for *other cases in which the parties agree*." AAA Rule E-6 (emphasis added). This is such a case.[5] Furthermore, this is not a one-sided result: both parties are equally bound by the arbitration agreement, the chosen rules, the chosen form, and the award. Accordingly, the Court finds that the arbitration agreement is not

---

[4] Plaintiff alleges he needed to conduct discovery and to call and cross-examine witnesses in the arbitration in order to advance his defenses of failure to disclose, material misrepresentation, and fraud in the inducement, all in relation to plaintiff's signing the Personal Guaranty and the arbitration clause therein. Amended Complaint ¶ 52. All of those defenses go to the existence and enforceability of the arbitration agreement. That issue has already been litigated, as discussed above. Furthermore, the Georgia district court found that "[t]he facts in this case are largely undisputed," and thus only legal issues remain. *See Kayne v. Thomas Kinkade Co.*, Case No. 06-CV-2168-CAP at *18.

Additionally, plaintiff contends he needed to call witnesses to address the invoices that defendant submitted in support of its arbitration claim. Opp'n at 22, 23. The Court notes that the no-witness provision applies equally to both parties, and that, in any event, plaintiff was permitted to submit documentary evidence, including declarations, in support of his arguments. *See* AAA Rules E-5 & E-6.

[5] When plaintiff resisted enforcement of the first arbitral award in this long-running dispute, he did so precisely because the arbitration clause invoked there did not call for the AAA's expedited rules, whereas the clause in the Application for Credit and Personal Guaranty did. Plaintiff's theory the last time he was before this Court and the Ninth Circuit was entirely procedural: "The single-arbitrator arbitration process set out in the separate 'Application for Credit' and incorporated by reference in the 'Personal Guaranty' was *never invoked*." Brief of Appellee David Kayne at *7, *Thomas Kinkade Company v. Kayne*, 233 Fed. App. 684 (9th Cir. May 24, 2007). Plaintiff argued in that prior case that the "issue of David Kayne's individual liability under the 'Personal Guaranty' . . . was not properly before the [Arbitration] Panel." *Id.* at *33. Now that TKC has remedied its prior procedural misstep, plaintiff's eleventh-hour attempt to challenge the enforceability of the very arbitration agreement it relied on before this Court three years ago strikes the Court as disingenuous.

substantively unconscionable.

In light of the Federal Arbitration Act's general policy favoring arbitration agreements, the Court finds that plaintiff would fail on the merits of his unconscionability defense. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (federal courts are required to rigorously enforce an agreement to arbitrate).

### B.  Plaintiff's section 17200 claims fail for several reasons

Plaintiff alleges that defendant violated California's unfair competition law by failing to provide certain disclosures to plaintiff as required by the California's Franchise Investment Law and the Federal Trade Commission's franchise regulations. Complaint ¶¶ 15-29, 65-71. He alleges he was induced to sign the arbitration agreement, and he asserts he would not have signed the arbitration agreement had the disclosures been made. *Id.* On that basis, he asks the Court to enjoin any enforcement of the arbitration agreement on the grounds that the clause is unlawful or otherwise violates California's unfair competition statute. *Id.*; *see also* 16 C.F.R. §§ 436 *et seq.*; Cal. Corp. Code § 31114; Cal. Bus. & Prof. Code §§ 17200 *et seq.*.

Defendant contends plaintiff's section 17200 claim is barred by the doctrine of res judicata, which it is because it directly challenges the enforceability of the arbitration agreement, and thus could have been raised before the District Court in Georgia. Defendant also contends that the claim should be dismissed on five additional grounds: (1) the claim is barred by the doctrine of collateral estoppel because the issue was already decided in a prior arbitration between the parties; (2) plaintiff's allegations fail to state a claim under section 17200; (3) plaintiff lacks standing under section 17200 because he cannot show the requisite harm; (4) the federal regulations plaintiff relies on do not apply because they did not come into effect until after defendant allegedly failed to make the relevant disclosures; and (5) the four-year statute of limitations expired on plaintiff's section 17200 claim well before plaintiff filed this action.

While the Court finds defendant's arguments compelling, it need not decide them all because the claim fails on two simple procedural grounds. First, as discussed above, the claim is barred under the doctrine of res judicata. Second, defendant is correct that the four-year statute of limitations expired

10

before plaintiff filed this action. *See* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."). Defendant contends that the cause of action accrued no later than October 2, 2001 when plaintiff signed the Personal Guaranty. Tellingly, plaintiff offers no response to defendant's argument. Furthermore, the Court notes that on February 3, 2003, plaintiff's company, Kayne Galleries, served an Answering Statement and Counterclaim in the first arbitration with defendant, alleging therein that defendant violated California's unfair competition laws and franchise laws by failing to make certain disclosures. *See* Weir Decl. Ex. 1 pp. 9-10. Thus plaintiff's claim had accrued by February 3, 2003 at the latest, although it likely accrued much earlier. Accordingly, the statute of limitations expired no later than February 3, 2007. Because plaintiff did not file his original complaint in this action until September 13, 2007, his section 17200 claims are barred by the four-year statute of limitations.

## CONCLUSION

For the foregoing reasons, and for cause shown, the Court GRANTS defendant's motion to dismiss plaintiff's first amended complaint WITH PREJUDICE [Docket No. 24]. The Court also DENIES defendant's motion to strike portions of the first amended complaint because it is rendered MOOT by this decision [Docket No. 25].

**IT IS SO ORDERED.**

Dated: December 5, 2007

SUSAN ILLSTON
United States District Judge